## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **STAN LABER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-1351-JWB-GEB** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF DEFENSE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER
## MEMORIALIZING RULINGS FROM FEBRUARY 22, 2021 HEARING

On February 22, 2021, the Court conducted a motion and discovery hearing. Plaintiff Stan Laber appeared personally. Defendant U.S. Department of Defense appeared through counsel, Sarah Macke, Tyson Shaw, Emily B. Metzger, and Christopher Allman. After reviewing all submitted briefing and hearing arguments, the Court orally entered the following orders (*see* Order, ECF No. 133): Defendant's motion to compel Plaintiff to provide his medical records from March 2013 to the present (**ECF No. 110**) was **GRANTED IN PART and DENIED IN PART**. Defendant's motion to compel Plaintiff to provide substantive and complete interrogatory responses to Request No. 15, et al. (**ECF No. 114**) was **DENIED**. Plaintiff's motion to compel Defendant to provide complete responses and answers to certain requests and interrogatories (**ECF No. 116**) was **DENIED** in large part. Finally, Plaintiff's motion to amend the complaint (ECF No. 122) was taken

under advisement and will be addressed by separate order. This order memorializes the Court's rulings on the motions to compel from the conference.

## I.   Background[1]

This is an employment action where Plaintiff Stan Laber contends he applied for numerous positions with Defendant through the Defense Contract Management Agency ("DCMA") in 2014 and 2015 posted on the USA Jobs website, but he was not offered employment. Plaintiff, proceeding pro se, brought 31 discrete failure-to-hire claims in his original Complaint. He brings claims alleging age, sex, and religious discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act.

Plaintiff's constitutional claims and jury demand were dismissed early in the case. (Mem. & Order, ECF No. 24.) Five claims were dismissed on early summary judgment for failure to exhaust administrative remedies (Mem. & Order, ECF No. 101), and 26 claims remained. Plaintiff voluntarily dismissed another claim, leaving 25 remaining claims. (Stip., ECF No. 112.)

Plaintiff filed this case more than two years ago on December 26, 2018. Since then, the undersigned found the case would be best managed in phases and entered three phased scheduling orders. The Phase I Scheduling Order (ECF No. 30, Aug. 30, 2019) focused on discovery generally limited to those claims for which Defendant planned to file an early

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 15), Answers (ECF No. 14, 18), and the briefing surrounding the pending motions to compel (ECF Nos. 110, 111, 114, 115, 121, 116, 123). This background information should not be construed as judicial findings or factual determinations.

dispositive motion. The Phase II Scheduling Order (ECF No. 60, Mar. 26, 2020) focused on written discovery, establishing a September 15, 2020 deadline for written discovery and setting a status conference to discuss a later deposition schedule. The currently operative Phase III Scheduling Order (ECF No. 100) was entered September 16, 2020 and focuses on completion of written discovery and fact depositions. Fact depositions are to be completed by April 16, 2021.

Since the inception of this lawsuit, the undersigned has held 11 conferences to discuss scheduling, status, motions and discovery disputes.[2] Throughout the pendency of the case, the parties have sought Court input prior to filing motions to compel, and deadlines for filing such motions were repeatedly extended for both parties. At the conclusion of the November 10, 2020 conference, the parties were directed to brief the issue of production of Plaintiff's medical records. (Order, ECF No. 106.) Not only was the motion regarding medical records filed (ECF No. 110), but each party filed motions to compel other written discovery (ECF Nos. 114, 116). As noted above, each motion was addressed during the hearing, and the rulings announced are explained below.

## II.    Defendant's Motion to Compel Plaintiff's Medical Records (ECF No. 110)

This issue was the topic of the November 10, 2020 discovery conference, and the parties submitted position statements prior to the conference which were incorporated into

---

[2] *See* Order, ECF No. 13 (Mar. 18, 2019); Min. Entry, ECF No. 29 (Aug. 27, 2019); Order, ECF No. 51 (Jan. 22, 2020); Order, ECF No. 57 (Mar. 10, 2020); ECF No. 59 (Mar. 25, 2020); Order, ECF No. 67 (May 20, 2020); Order, ECF No. 75 (July 2, 2020); Order, ECF No. 86 (Aug. 13, 2020);  ECF No. 99 (Sept. 16, 2020); Order, ECF No. 106 (Nov. 10, 2020); Order, ECF No. 133 (Feb. 22, 20201).

their motion briefing. Two of Defendant's Requests for Production addressed Plaintiff's medical records:

> **Def.'s RFP #284**: If you have sought treatment for any pain and suffering or other damages sought in this lawsuit, complete medical records for each healthcare provider from whom you sought or received medical treatment from January 1, 2012 through present. In lieu of providing these records, you may execute the attached medical records authorization for each healthcare provider responsive to this request.
>
> **Pl.'s Response to RFP #284**: Plaintiff has not sought treatment for any pain and suffering or other damages sought in this lawsuit from January 1, 2012 through present.
>
> **Def.'s RFP #288:** Complete medical records for each healthcare provider from whom you sought or received medical or dental treatment from March 1, 2013, through present. In lieu of providing these records, you may execute the attached medical records authorization for each healthcare provider responsive to this request.

Plaintiff responded to Defendant's RFP #288 with a number of objections and has provided neither access to his records nor any medical records.

### A.    Parties' Positions

#### 1.    **Defendant's position** (Motion, ECF No. 110)

Defendant contends if Plaintiff prevails on any of his remaining 26 claims, it must be prepared to defend his claim for significant emotional damages. Additionally, Defendant maintains four of Plaintiff's claims relate to positions for which he would have been deployable. To defend those claims, Defendant may need to challenge whether Plaintiff was medically qualified to be deployed to a combat zone at the time of his non-selection. And, in the event he prevails on any of those four claims, Defendant may need to determine

whether he would be medically qualified to be instated as he requests as equitable relief. (ECF No. 110 at 2.)

As to Plaintiff's claims for emotional damages, Defendant suggests unless Plaintiff stipulates to a cap of nominal damages on his claims for emotional damages,[3] it is entitled to discovery of his medical records under the *Owens*[4] authority. Defendant seeks Plaintiff's medical records from March 2013—one year prior to his first application—through the disposition of the case.

Regarding the relevance of Plaintiff's past medical records to Plaintiff's qualifications for the four deployable positions, Defendant argues the medical and dental records from 2014-2015 (the dates of Plaintiff's applications) are relevant because it is Plaintiff's burden to show he was qualified for each position when he applied as part of his prima facie case. The person selected for the position and subject to deployment would have to pass a medical and dental review before being hired.

As to his current and future medical records through the time of trial, it argues Plaintiff's current medical condition is relevant to determining whether instatement or front pay are appropriate remedies. Although Plaintiff believes otherwise, Defendant contends

---

[3] Although Plaintiff has not supplemented his initial disclosures to provide updated damages calculations, the topic was discussed during the November 10, 2020 conference. (*See* Order, ECF No. 106.) During that conference, Defendant said Plaintiff provided counsel a spreadsheet wherein his claim for backpay ranges from $500,000 and higher on various claims, along with many "other damages" categories, with $60,000 per claim on some. Defendant did not understand all Plaintiff's calculations and was working with him to clarify, but it was clear to this Court Plaintiff is seeking considerably more than nominal damages on each claim.  The November 10, 2020 conference was not recorded; the Court's own notes maintained in chambers file provide a record of said conference.

[4] *Owens v. Sprint/United Mgt. Co.*, 221 F.R.D. 657, 659 (D. Kan. 2004).

the period of time for which he could potentially be deployed would not run from his non-selection in 2014 or 2015, but instead from the time the Court orders instatement after trial concludes.  Defendant argues it would be more practical to gain this information through discovery now, rather than do such discovery after any trial concluded on liability to then determine whether Plaintiff is medically capable of deployment.

> ### 2.      Plaintiff's Position (Response, ECF No. 111)

As an initial matter, Plaintiff argues Defendant's RFP #288 is duplicative of #284, and because Defendant accepted Plaintiff's answer to RFP #284, Defendant waived any objection and should not get another bite at the medical records by restating the question in RFP #288.

Plaintiff also contends he never put his medical condition at issue, his records are privileged, and the *Owens* authority does not apply. If the Court finds otherwise, Plaintiff agrees to limit his claims for emotional distress to $1.00 for any or all claims.

As to his past medical records, Plaintiff argues they are not relevant because applicants were not required to submit medical records or submit to exams prior to selection. Applicants were only required to do so after selection, so Defendant found him qualified/unqualified for the positions regardless of any medical information and should not be permitted to now look back and deem him unqualified.

Plaintiff also argues his current medical records through trial similarly lack relevance. In the event he were instated, he believes he would not be deployable because deployments only occurred during the first four years after each selection, and that time would have already passed—a characterization with which Defendant disagrees.

Plaintiff maintains his medical records are not a substitute for, nor related to, the medical determination which never occurred, neither are they needed for any determination which may take place in the event of his success at trial. Plaintiff contends he will suffer "tremendous embarrassment, humiliation and horrific marital and family discord through unnecessary revelations of non-party family members' medical information and violation of spousal privileged communications" regardless of the current protective order. (ECF No. 111 at 5.)

During the November 10, 2020 discovery conference, Plaintiff indicated he may wish to retain counsel on this issue but did not secure counsel or address this in his briefing.

### B.    Legal Standards

#### 1.    Discovery Standards

Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court construes relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[5]

Under Fed. R. Civ. P.37(a), when a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel. The party seeking discovery bears the initial burden to establish relevance.[6] As explained above, the Court

---

[5] *Beaty v. Kansas Athletics, Inc.*, No. CV 19-2137-KHV, 2020 WL 1862563, at *2 (D. Kan. Apr. 14, 2020) (citing *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *2 (D. Kan. June 12, 2019) (other citations omitted).

[6] *Id.* at *3 (citing *Ad Astra Recovery Servs.*, 2019 WL 2448569, at *2).

construes relevance broadly, and it will grant the motion to compel unless "it is clear that the information sought can have no possible bearing on the claim or defense of a party."[7]

If the party seeking discovery has established relevance, or discovery appears relevant on its face, the party resisting discovery bears the burden to support its objections.[8] The party resisting discovery does not satisfy this burden by asserting "conclusory or boilerplate objections" that discovery requests are irrelevant, immaterial, unduly burdensome or overly broad.[9] The objecting party must instead "specifically show" that "despite the broad and liberal construction afforded by the federal discovery rules," each discovery request is objectionable.[10]

### 2. Discovery of Medical Records

District of Kansas authority is clear regarding the discovery of medical records when an employment discrimination plaintiff seeks damages for emotional suffering.  As described in *Owens v. Sprint/United Mgmt. Co.*,[11]

> Generally, discovery requests seeking an employment discrimination plaintiff's medical and psychological records are held to be relevant as to both causation and the extent of plaintiff's alleged injuries and damages if plaintiff claims damages for emotional pain, suffering, and mental anguish. The fact that these damages claims may be the "garden variety" of

---

[7] *Id.* (citing *Gilbert v. Rare Moon Media, LLC*, No. 15-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (other citations omitted)).

[8] *Id.* (citing *Ad Astra Recovery Servs.*, 2019 WL 2448569, at *2; *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) (once "low burden of relevance" is established, legal burden is on party opposing discovery request)).

[9] *Id.* (citing *Ad Astra Recovery Servs.*, 2019 WL 2448569, at *2 (citations omitted)).

[10] *Id.* (citing *Ad Astra Recovery Servs.*, 2019 WL 2448569, at *2 (citations omitted)).

[11] *Owens v. Sprint/United Mgt. Co.*, 221 F.R.D. 657, 659 (D. Kan. 2004).

damage claims for emotional distress does not automatically exempt them from discovery.[12]

## C.   Discussion

As a threshold issue, Plaintiff's waiver argument is overruled due to clear differences in the two requests. Defendant's first RFP #284 was limited to treatment for emotional damages, which Plaintiff denied and Defendant accepted.  The second request, RFP #288, was not so limited and relates not just to compensatory damages but also to Plaintiff's qualification for the positions and instatement/front pay.

Regarding production of Plaintiff's medical records for purposes of claimed emotional damages, the Court finds the information relevant under the *Owens* authority. However, because Plaintiff agrees to reduce his compensatory damages to $1 on each claim as offered and has already sworn through his discovery responses that he has sought no medical treatment for such damages—the Court finds Defendant's request moot on this topic.

This leaves at issue Defendant's request for Plaintiff's medical records from 2014 to present to prove 1) he wasn't qualified when he applied in 2014-15, and 2) he may not be qualified for instatement and/or front pay if he succeeds at trial.  As to Plaintiff's medical records from the time of his applications, the Court finds such records at least minimally relevant. Discovery is broad, and his physical condition appears relevant, at minimum, to

---

[12] *Owens v. Sprint/United Mgt. Co.*, 221 F.R.D. 657, 659 (D. Kan. 2004) (citing *Garrett v. Sprint PCS*, 2002 WL 181364, at *3 (D. Kan. Jan. 31, 2002); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997); *Bennett v. Emerson Tool Co.*, 2001 WL 1155301, at *1–2 (D. Kan. May 21, 2001); *Sims v. Unified Gov't of Wyandotte County/Kansas City, Kan.*, 2001 WL 1155302, *3 (D. Kan. May 1, 2001)).

Plaintiff's damages, particularly requested back pay.  Defendant should not be forced to reimburse Plaintiff for back pay if it learns he was not medically qualified for the positions to which he applied in 2014-15, making his medical condition somewhat akin to after-acquired evidence.[13] Discovery does not equate to admissibility, and Plaintiff will have an opportunity to later attempt to exclude any such records through motions in limine prior to trial. Any privacy concerns will be remedied by the Protective Order currently in place.

Therefore, the Court **GRANTS** Defendant's motion in part regarding Plaintiff's past medical and dental records. Plaintiff is ordered to sign a release permitting Defendant access to his medical and dental records from January 1, 2013 (the year prior to his applications) through December 31, 2015 (the year concluding his applications). It is anticipated Plaintiff will seek review of this order; therefore, Defendant is directed to prepare such medical authorizations such that the records will be produced to the chambers of the undersigned Magistrate Judge rather than directly to defense counsel. Although the Court does not anticipate reviewing such records, this procedure will permit the gathering process to commence as soon as possible but protect Plaintiff from dissemination of his records prior to final Court ruling on the topic.

---

[13] *See, e.g., Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1281 (10th Cir. 1999) (allowing evidence of the plaintiff's qualifications as circumstantial proof of defendant's legitimate, nondiscriminatory motives for not hiring him.  Although the *Anaeme* court reviewed *McKennon* in a discussion of the "after-acquired evidence" doctrine, the *Anaeme* court distinguished *McKennon*. It noted, "Defendants were permitted to litigate whether Plaintiff was qualified for a . . . position, and they were entitled to submit evidence about Plaintiff's qualifications in this regard. In short, *McKennon*'s discussion on after-acquired evidence does not apply to this case and the evidence to which Plaintiff objects was nonetheless admissible to show that Plaintiff's prima facie case was not supported by a preponderance of the evidence.") (analyzing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995)).

Because Plaintiff's response to the RFP certifies he sought no treatment for pain and suffering since January 1, 2012 through the present, this authorization does not include psychological treatment records.  However, because the Defendant contends both medical and dental qualifications apply to the deployable position, this authorization will include dental records.

As for Defendant's request for Plaintiff's current and future medical records—from 2016 to the time of trial—the Court finds such request lacks relevance at this time.  First, Plaintiff's medical or dental condition from 2016 until his potential success at trial has no bearing on any issue currently before this Court. A trial date is not yet set and is likely to be at least a year away. There is no indication any of the medical information in the intervening years, which would potentially contain five to six years of medical information, is relevant. In the event Plaintiff succeeds on liability at trial and the Court orders instatement or front pay, such relief could be conditional on a medical exam at the time of trial. In the meantime, the Court encourages the parties to work together to create some other method short of production of full medical records[14] to address the potential issue following trial.

### D.    Conclusion on Defendant's Motion to Compel Plaintiff's Medical Records

As announced during the hearing, Defendant's Motion **(ECF No. 110)** is **GRANTED in part and DENIED in part** as set forth above.  Plaintiff is ordered to sign

---

[14] For example, perhaps such information could be gleaned through a written or video deposition of Plaintiff's primary treating physician(s) during the relevant time frame, limited to the topics on which a person selected for the job would be evaluated.

a release permitting Defendant access to his medical and dental records from January 1, 2013 through December 31, 2015. Such authorizations shall be prepared by Defendant to direct production to the chambers of the undersigned.

III.   **Defendant's Motion to Compel Plaintiff to Provide Substantive and Complete Interrogatory Responses to Request No. 15, *et al.* (ECF No. 114)**

A.   **Duty to Confer**

The parties have a duty to confer regarding any discovery dispute prior to filing a motion pursuant to D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).  Defendant provides a "Certificate of Compliance" on its memorandum in support of its motion, confirming the parties exchanged multiple letters and emails and discussed the issues at length over more than one phone call. (ECF No. 115-6.) On review of the parties' discussions, the Court finds the parties have conferred as required.

B.   **Requests at Issue**

Defendant seeks more complete responses to 25 of its Phase II First Requests for Interrogatories, Numbers 15, 23, 33, 47, 54, 63, 79, 86, 93, 100, 107, 121, 128, 143, 150, 157, 180, 188, 197, 204, 211, 218, 225, 233, and 242. All are related to Plaintiff's allegation that agency officials knew of his religion when he was denied the jobs. In these interrogatories, Defendant asks Plaintiff to identify, relative to 25 different job applications:  1) the individuals Plaintiff contends had knowledge of his religion, 2) how Plaintiff contends that such individuals learned of Plaintiff's religion, and 3) when Plaintiff contends such individuals learned of his religion. (*See* ECF No. 115-1 at 1.)

Plaintiff's initial responses noted he was "unable to provide an answer until discovery is complete." (*See* ECF No. 115-2 at 1.) Plaintiff supplemented those responses twice, and his most recent supplemental responses state:

> (1) Plaintiff provides the identities [of] all HR specialists, panelists, selecting officials, reviewing officials and their supervisors as having knowledge of his religion, (2) Plaintiff contends that this know[ledge] was gained through one or more of the following methods: internet searches, word of mouth from colleagues, subordinates, or supervisors, from contacted references, from HR specialists, from EEO specialists, . . . and (3) Plaintiff currently does not know when any of the events identified in (2) occurred as he was not involved.

(ECF No. 115-5 at 1.)

### C.    Parties' Positions

Defendant asks the Court to order Plaintiff to provide "substantive and complete responses" within 14 days to these 25 Interrogatories. Defendant contends Plaintiff's responses to parts (1) and (2) of these interrogatories are incomplete under Fed. R. Civ. P. 33(b)(3) because they are nonresponsive in that Plaintiff identifies no individuals, and lists (as to 'how') only contingent and speculative alternatives. Defendant admits part three (3) of Plaintiff's response—Plaintiff does not know—is sufficiently answered, although Plaintiff has a duty to supplement if additional information is gained. (ECF No. 115.)

Plaintiff does not object to the relevancy of the interrogatories in general, and says he identified the individuals categorically rather than individually because aside from a few names, he has not yet been able to identify the decisionmakers. Regarding some of his charges, he "has identified the individual by name" and he "has agreed to continue to provide additional names as they become known." (ECF No. 121 at 1.) For example, "one

panelist admitted in his sworn declaration that he searched the internet and learned of Plaintiff's prior EEO activity and Plaintiff provided that name and source for declaration." (*Id*.)  Plaintiff promises to continue to supplement as he gains additional information, and asks the Court to deny the motion because he has "attempted to provide adequate answers and has agree to supplement appropriately." (*Id*. at 2.)

### D.    Discussion

Under Fed. R. Civ. P. 37(a)(4), an evasive or incomplete answer to an interrogatory "must be treated as a failure" to answer. When a court reviews the sufficiency of a response to an interrogatory, "the court considers whether the response, as a whole, discloses a conscientious endeavor to understand the question and to fully answer the question."[15] Rule 26(e)(1) requires a party to supplement its discovery responses "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect."

Although Plaintiff did not include names in all of his responses (and it is unclear to which interrogatories he did provide names), he identifies as to part (1) of the interrogatories "all HR specialists, panelists, selecting officials, reviewing officials and their supervisors." He also answered part (2), stating his belief the knowledge was "gained through one or more of the following methods: internet searches, word of mouth from

---

[15] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 3034810, at *4 (D. Kan. June 5, 2020) (citing 8B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2177 (3d ed.); *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, No. 12-2350-SAC, 2014 WL 806071, at *14 (D. Kan. Feb. 28, 2014) (considering whether the answer fairly met the substance of the question posed)*; Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 501 (D. Kan. 2006) (same); *Cont'l Illinois Nat. Bank & Tr. Co. of Chicago v. Caton*, 136 F.R.D. 682, 684 (D. Kan. 1991) ("The answers to interrogatories must be responsive, full, complete and unevasive.") (other internal citations omitted).

colleagues, subordinates, or supervisors, from contacted references, from HR specialists, from EEO specialists." Defendant accepted his supplemental responses to part (3) of the interrogatories, so these sections are not at issue.

On review of Plaintiff's supplemental responses and hearing arguments of the parties, the Court finds Plaintiff's responses to the above-mentioned interrogatories to be reasonable. At this stage of discovery, Plaintiff does not know what he does not know, and he is guessing at what happened. He clearly understands the questions Defendant propounded and has attempted to answer the questions as fully as he is capable. Aside from his ongoing duty under Rule 26(e) to supplement his responses, the Court finds he has provided the most information he has available to him.

### E.    Conclusion on Defendant's Motion to Compel (ECF No. 114)

For the reasons stated above, Defendant's Motion to Compel Plaintiff to Provide Substantive and Complete Interrogatory Responses to Request No. 15, *et al.* **(ECF No. 114)** is **DENIED.**

### IV.    Plaintiff's Motion to Compel Defendant to Provide Complete Responses and Answers to Certain Requests and Interrogatories (ECF No. 116)

### A.    Duty to Confer

Although Plaintiff does not specifically set out a certificate of conferral under D. Kan. Rule 37.2, it is evident from the briefing the parties generally conferred on multiple occasions regarding the subject requests. (See ECF No. 123-2, Ex. A.)  Therefore, the Court finds the parties adequately conferred as required prior to Plaintiff's filing of this motion.

### B.   Requests at Issue

Plaintiff's motion, filed December 11, 2020, involves three sets of discovery requests:  1) Plaintiff's First Phase II Requests for Production; 2) Plaintiff's Second Phase II Requests for Production; and 3) Plaintiff's Phase II Interrogatories.

Plaintiff's **First Phase II Requests for Production**, served on Defendant March 31, 2020, include RFP #1-59. (*See* ECF No. 123 at 2-3.) The parties conferred at length about these requests, and involved the Court in some discussions, as many involved significant electronically stored information ("ESI") searches.[16] Generally, Defendant argues it put together a search protocol and limited the time frame of information searched to three years as discussed with the Court in the July 2, 2020 conference. (*See* Order, ECF No. 75.) On July 15, 2020, Defendant submitted its written objections and responses to Plaintiff's 1st Phase II RFPs, along with its first production of documents in Phase II. (ECF No. 123, Ex. B.) Defendant served additional documents on July 21, August 6, and September 2, 2020. (See ECF No. 123 at 4.) On August 11, Plaintiff asked for permission to extend his deadline to file a motion to compel regarding the 1st Phase II discovery requests. Defendant opposed any extension regarding its written responses served July 15 because Plaintiff had not previously identified issues with the written responses. (*See* ECF No. 123 at Ex. E.) Defendant contends the parties did not substantively discuss Defendant's written responses until Plaintiff sent a Golden Rule letter on October 28, 2020—105 days

---

[16] *See, e.g.*, discovery conferences held May, July and November 2020 (ECF Nos. 67, 75, 106).

after Defendant served its objections, 56 days after Defendant finished the majority of its production, and 43 days after the close of Phase II discovery. (*Id.*at 5.)

Plaintiff served his **Second Phase II RFPs** (RFP #60-67) on August 15, 2020. Defendant served its written objections and responses on September 14 as well as responsive documents. (*Id.* at 5-6.) On December 8, 2020, Plaintiff emailed Defendant regarding what he perceived as missing information in RFP #67 (*see* email, ECF No. 123, Ex. G). After Defendant searched for the information but did not find anything further, it notified Plaintiff, and the parties engaged in no further discussion regarding RFP #67 or other RFPs in in Plaintiff's 2nd set of RFPs. (*Id.* at 6.)

In addition to the 67 Requests for Production, Plaintiff served Defendant with 310 **Phase II Interrogatories** on July 22, 2020.  Those 310 interrogatories generally asked the same 10 questions for each of Plaintiff's 31 claims. After receiving a two-week extension, Defendant provided its verified answers on September 4, 2020. (*See* ECF No. 123, Ex. H.) Plaintiff sent a Golden Rule letter on September 30, 2020, to which Defendant responded October 14, 2020, and the parties later conferred by phone.  Defendant does not argue Plaintiff failed to timely confer regarding the interrogatory responses.

### C.    Plaintiff's Motion

As a threshold issue, Defendant argues Plaintiff only provided a copy of his requests attached to the motion, not Defendant's responses, and his failure to provide copies of Defendant's objections and responses as required by D. Kan. Rule 37.1 is sufficient

grounds for denial.[17] Although Plaintiff is expected to abide by the local rules, he is offered some latitude as a pro se litigant,[18] and in the Court's discretion, it considers the motion on its merits.

Plaintiff seeks to compel 13 different categories of responses from Defendant. Each category of information sought by Plaintiff is addressed as noted in Plaintiff's motion, and addressed in turn.

> 1. **Defendant's Responses to (47) RFPs # 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 24, 25, 26, 27, 28, 29, 30, 31, 34, 35, 36, 37, 38, 42, 45, 46, 47, 48, 49, 51, 52, 56, 60, 61,63, 64, 65, and 66 Based on Alleged Boilerplate Objections**.

Plaintiff generally argues in a single paragraph that Defendant responded with boilerplate objections to each of the 47 listed requests. Plaintiff contends Defendant failed to "specifically show" how each request was objectionable, therefore the objections should be overruled and Defendant should respond completely to each RFP. (ECF No. 116 at 3.)

Defendant argues Plaintiff only contends the objections were "boilerplate" in a conclusory fashion, both in the parties' conferrals and in his motion, and does not explain why the objections are boilerplate or why Defendant's explicitly-identified " time frames, custodians, and locations Defendant searched" were insufficient. Defendant argues its

---

[17] *See Fulcher v. City of Wichita*, No. 06-2095-EFM-DJW, 2008 WL 5136613, at *1 (D. Kan. 2008) (denying motion to compel without prejudice because the moving party failed to provide a certificate of conferral under D. Kan. Rule 37.2 and failed to provide copies of the disputes requests under D. Kan. Rule 37.1).

[18] *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding a "pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers"); *DIRECTV, Inc. v. Graham*, No. 03-2543-GTV, 2005 WL 427512, at *1 (D. Kan. Feb. 16, 2005) ("Because Defendant is proceeding *pro se,* the court affords him more leniency").

objections were not boilerplate, but rather Plaintiff's requests were facially objectionable because they either contained no time limitations or overly broad time limits (for example, a 20-year period), or request searches of DCMA employees who were not involved with the hiring actions at issue in this case. And, Defendant did not make the same objections to each of the 47 requests. Defendant says, "Plaintiff made no attempt to confer on these objections or provide clarification as to what he intended the confusing and ambiguous RFPs to seek." (ECF No. 123 at 8.) Where Defendant asserted objections, it specifically noted the bases for its objection and responded to the extent the request was not objectionable.

After review of the RFPs at issue, and discussion during the conference, the Court **DENIES the motion as to Plaintiff's Request 1 regarding boilerplate objections**. As the party seeking to compel discovery, Plaintiff must ask the court to overrule *specific* objections by identifying each objection it seeks to have overruled.[19] That "brings the objection 'into play' and places the burden on the objecting party to support its objections."[20] Although Plaintiff provided a list of what he considers objectionable responses, Plaintiff does not specifically describe either Defendant's specific objections or why each of the objections lodged is inappropriate. Without such information, neither

---

[19] *Randall A. v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2016 WL 11268210, at *2 (D. Kan. Feb. 19, 2016), *objections overruled sub nom. Schneider v. Citimortgage, Inc.*, No. 13-4094-SAC, 2016 WL 1377340 (D. Kan. Apr. 7, 2016) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71, n.37 (D. Kan. 2004)).
[20] *Id*.

Defendant nor the Court can analyze the propriety of the objections. Plaintiff has therefore not met his burden with respect to this category of responses.

> **2.      Defendant's Responses to (50) RFPs: # 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 38, 42, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 60, 61, 63, 64, 65, and 66 Based on Limiting Parameters.**

Plaintiff argues each of Defendant's responses to these 50 requests included "one or more limiting factors of Defendant's choosing related to the location of the records or other parameters such as time period and source." Plaintiff contends these limitations had no basis and Defendant is trying to define the scope of discovery unilaterally. Plaintiff provides arguments regarding the parties' discussion on ESI search terms, and Plaintiff contends the parties "did not have a meeting of the minds regarding the final search terms or other search factors." (ECF No. 116 at 4.) Whatever limitations were applied (which are not altogether clear from Plaintiff's motion), Plaintiff argues "Although Defendant provided some documents, the limitations that were applied resulted in incomplete responses and therefore need to [be] redone without the limitations." (*Id*. at 5.)

Defendant maintains most of Plaintiff's RFPs were very broad, which required Defendant to adopt limitations to respond. Defendant contends its email and non-email search parameters were reasonable, as were the time frames imposed and custodians searched. Defendant maintains Plaintiff failed to timely confer regarding search parameters. Defendant also argues Plaintiff's delay in raising his concerns should weigh against requiring Defendant to "re-do" the production. (ECF No. 123 at 11.)

As to Defendant's search of emails, Defendant "identified all selecting officials, panel members, and HR staff members assigned to each of the 31 non-selections (over 130 individuals), and applied a terms search to each witness's inbox for various terms, including (1) "Stan" or "Laber", (2) the email addresses for each applicant to all 31 claims (approximately 3,500 applicants), (3) the Vacancy Identification Number (VIN) for each vacancy in this case, and (4) the Request for Personnel Action Number (RPA) for each vacancy in this case." (ECF No. 123 at 11.) Defendant's intent was to retrieve "all communications involving or among any selecting officials, panel members, or HR personnel that included a derivative of Plaintiff's first or last name, involved a communication with an applicant for the vacancies in question, or included one of the unique identification numbers associated with the vacancies in question." Defendant argues the searches were "comprehensive, and due to an inability to agree on more limiting search terms, significantly over-inclusive." (*Id.*)

Such searches resulted in over 200,000 electronic records, which the U.S. Attorney's office reviewed by establishing a team of 17 people to review and locate items responsive to Plaintiff's requests. Defendant did not "exclude any documents . . . for lack of relevance" but only for responsiveness to Plaintiff's requests," such as, for example, excluding emails related to another "Stan" which was clearly not related to Plaintiff. (*Id.*) Defendant provided the email search terminology to Plaintiff on June 5, 2020 (*see* ECF No. 123 at Ex. C). Because it has now been several months since the terms were provided and the exhaustive search undergone, to "redo" the search now would take considerable time, effort, and expense and is not in accordance with the intentions of Rule 1.

As to Defendant's <u>non-email searches</u>, specifically RFP #20, Defendant argues Plaintiff's motion "fails to articulate why these search locations are inadequate or to propose alternative locations from which to search for responsive documents." (ECF No. 123 at 14.)  Again, Defendant contends Plaintiff should have raised any concerns regarding search parameters while Defendant was still in the process of collecting, reviewing and processing documents.  Defendant argues it conferred with Plaintiff before employing the search protocols, and Plaintiff initially agreed to the search terms, aside from temporal scope, which was discussed during the July 2, 2020 discovery conference. During that conference, aside from the time frame, Plaintiff did not identify any specific search parameters for Defendant to add to the protocol, and now it is simply too late. (*Id.*)

As with the first category of requests, Plaintiff—as the party seeking to compel discovery—must ask the Court to overrule *specific* objections by identifying each objection it seeks to have overruled.[21] That "brings the objection 'into play' and places the burden on Defendant to support its objections."[22] Although Plaintiff provided Defendant's limits regarding one RFP, No. 20, Plaintiff does not specifically describe other of Defendant's limits on the responses/searches. And, on review of RFP #20, Defendant's limitations appear proper considering Plaintiff's extremely broad request (*see* ECF No. 123-3 at 28).

Plaintiff had the opportunity to suggest additional search terms but apparently did not. Defendant searched the agency database; the selecting officials' email accounts from 90 days before the vacancy was announced until either the date the selectee started or the

---

[21] *See supra* note 19.
[22] *Id.*

vacancy was cancelled; all email accounts of selecting officials from January 1, 2014 through January 1, 2017 that include the term "stan" or "laber" or reference the vacancy ID number; and other specific officials' email accounts. (*Id.* at 11.)

During the July 2, 2020 discovery conference, Plaintiff sought 20 years of searches. The undersigned found the non-email searches for prior complaints of discrimination from 2010-2020 appeared reasonable, and ordered them produced by August 7, 2020. (Order, ECF No. 75.) The email searches were limited to three years (2014-17), with an expectation that the email production would begin by July 15 and plan to conclude by September 2, 2020, and if Plaintiff found it insufficient, it would be discussed in a future conference. But the conferences held in August, September and November 2020 addressed other issues— not ESI search parameters. So although the July 2, 2020 dealt with the search parameter issue, and did not close the door on it—Plaintiff has not submitted his concerns in a timely manner. Defendant has clearly undergone significant work to provide the information Plaintiff seeks. By waiting until production was complete, Plaintiff increases the burden to Defendant to reevaluate its earlier production. The beleaguered discovery in this matter must continue moving forward, not backward. Therefore, after review of the RFPs and responses at issue, and discussion during the conference, the Court **DENIES the motion as to Plaintiff's Request 2 regarding unjustified limiting parameters**.

> **3.      Defendant's Responses to (22) RFPs: 1, 35, 36, 37 ,38, 43, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 63, 64, 65, and 66 Based on References to RFP #1**

This portion of Plaintiff's motion is confusing at best. With regard to these 22 RFPs, Plaintiff contends, "Although Defendant provided some documents, the limitations that

were applied by reference to RFP 1 resulted in incomplete responses and therefore each response needs to be redone without regard to RFP 1." (ECF No. 116 at 5.)

Defendant argues Plaintiff "fails to clearly articulate the bases for his concern" regarding these 22 RFPs and why reference to RFP #1 is inappropriate. Defendant objected to each request to the extent Plaintiff's requests asked to search all DCMA employees' emails account or to search accounts of individuals not connected to the vacancies at issue in this case. But, as described above, Defendant searched the email accounts of "all Selecting Officials, Panel Members, and HR Personnel involved in the 31 failure-to-hire claims in this case (over 130 individuals)." To try to "improve transparency" Defendant defined these terms ("Selecting Official, Panel Members, HR Personnel") by referring to its response to RFP #1 rather than repeating the definitions over and over. (ECF No. 123, Ex. B at 3-4.)

After review of the RFPs and responses at issue, and discussion during the conference, the Court **DENIES the motion as to Plaintiff's Request 3 regarding Defendant's references to RFP #1.**

### 4. Searchability of Defendant's Responses to RFPs #2, 3

Plaintiff contends the responses Defendant provided, which was information from various databases, were not searchable, so Plaintiff could not conduct a reasonable search of the information. (ECF No. 116 at 6.)

Defendant argues, pursuant to the parties' agreement, ECF No. 78,

all documents were provided to Plaintiff in both bates-stamped .pdf format as well as native format (unless the native contained privileged material, in which case it was only produced in .pdf format). To the extent information

> from a database was available to export in a spreadsheet format, it was
> provided to Plaintiff in a spreadsheet format (e.g., USA-127940, USA-
> 128031). Where the requested information was not available in a spreadsheet
> format, it was provided to Plaintiff via screenshot (e.g., USA-128032, USA-
> 128058). All documents produced in .pdf format were run through text
> recognition software prior to production to Plaintiff.

(ECF No. 123 at 16.) And, "[w]ithout citations to specific documents, Defendant cannot

provide further response" or offer any assistance. (*Id*. at 17.)

After review of the parties' written arguments and discussion during the conference,

the Court **DENIES the motion as to the searchability of Defendant's Responses to**

**RFPs #2 and 3**. Plaintiff should discuss with defense counsel any specific issue he has

with particular search issues, for example, if a specific file or page is not searchable. But

without additional information, the Court cannot assess his concerns.

### 5.    Completeness of Responses to RFP #8 for Interview Notes

Plaintiff argues the selection panelists' interview notes are crucial to his case, but

Defendant failed to produce all the notes. Plaintiff says he "conducted a comprehensive

search regarding Charge 02 interview notes but has not done so for other Charges because

of time and technical constraints." He believes the "notes were purposefully withheld or

destroyed because they contain direct evidence of discrimination." (ECF No. 116 at 6.)

Defendant contends it "obtained documents directly from the selecting officials and

panel members involved in the 31 vacancies, searched each individual's email such that if

any notes or recommendation memoranda were sent via email they would have been

captured in the email searches, and produced all documents contained in the USAStaffing

database relating to the 31 vacancies in this lawsuit . . . [then] specifically identified these

notes by Bates range as responsive to RFP 8." (ECF No. 123 at 17-18.) Defendant agrees Plaintiff is entitled to these notes but contends it has conducted an "exhaustive" search for them and has produced all it has found. (*Id.*)

Following thorough discussion during the February 22, 2021 conference, the Court finds both Plaintiff and the Court must take defense counsel at their word they have searched everywhere they could look and produced all notes they could discover. Defendant is reminded of its duty to supplement, but following the discussion, the Court **DENIES Plaintiff's motion as to Defendant's Responses to RFP #8 for Interview Notes.**

### 6. Defendant's Response to RFP #14 for Records Related to Pay and Benefits

Plaintiff argues Defendant's response to RFP #14 was only to provide a number of electronic Official Personnel Files ("eOPF") but the files do not contain payroll data, overtime, performance awards, training, travel, relocation, equipment, or other employee benefits. If no person was selected for a position, no eOPF was provided. Plaintiff contends he "should not be deprived of the opportunity to discover the benefits of the positions he sought." (ECF No. 116 at 7.)

Defendant contends RFP #14 was overly broad, unduly burdensome, and not proportional to the needs of this case. It argues the eOPF files of the persons selected for each job are the best source of information because those files contain salary information, promotions, changes in grade/step, and performance awards. After conferral and before Plaintiff filed his motion, Defendant also agreed to search for overtime reports for the

applicable selectees, and noted at the conference it had sent those records to Plaintiff by Federal Express prior to the hearing. But information regarding training and travel is difficult to quantify and unduly burdensome to gather, and has marginal relevance compared to the burden of trying to find the information. And, RFP #14 does not ask for "training" materials.

Following thorough discussion during the conference, the Court finds the relevancy of the additional information sought by Plaintiff is minimal and is outweighed by the considerable burden to Defendant to ascertain this information from individual non-party selectees. Additionally, this topic will be discussed in the upcoming Rule 30(b)(6) deposition; therefore, the information sought from RFP #14 is likely cumulative. Therefore, the Court **DENIES Plaintiff's motion as to Defendant's Responses to RFP #14.**

> 7.       **Defendant's Response to RFP #16 for Records Related to User Activity to View Applications**

In his RFP #16, Plaintiff asked Defendant to provide all documents, communications and ESI which reported or tracked individual user activity to view job applications for a time frame beginning 90 days prior to the start of recruitment to 180 days after entry on duty of the selectee or cancellation of the opening, whichever was later.  In a one-sentence contention, Plaintiff argues "Defendant provided login data but it did not report the activity of any selecting officials or panelists as alleged in the interrogatory responses." (ECF No.  116 at 8.)

Defendant argues it produced the requested access logs, which capture individual user activity to view applications in the USAStaffing database. (ECF No. 123 at 21.) For those DCMA officials who were not believed to have utilized the USA Staffing database for access, Defendant identified selecting officials who viewed the applications by name in answers to interrogatories, but no electronic log exists for those individuals.[23]

Following thorough discussion during the conference, the Court finds Defendant has sufficiently responded as contemplated by Fed. R. Civ. P. 34.  Plaintiff asked for reported or tracked user activity, and Defendant produced all existing electronic logs and other responsive documents to address the responses where logs were unavailable.  The Court therefore **DENIES Plaintiff's motion as to RFP #16**.

### 8.   Defendant's Response to RFP #23 for Plaintiff's Personnel Records

In RFP #23, Plaintiff sought a copy of his "official personnel file records for those periods when he was employed by Defendant during the period from 1981 to 2015." (ECF No. 123 at 21.) Although Defendant produced one electronic personnel file, "the file did not contain Plaintiff's training, his use of religious compensatory overtime, awards, performance appraisals, or similar documents he could use to substantiate his claims and qualifications." (ECF No. 116 at 8.) Plaintiff says Defendant only agreed to "search for training records pertaining to [his] time at DCMA" but did not agree to provide any other records.

---

[23] The February 22, 2021 conference was recorded and Defendant has requested a transcript. However, the transcript is not yet complete. (Zoom recording maintained in Chambers' file).

Defendant argues it requested Plaintiff's eOPF from its location in the national archives and produced it to Plaintiff on July 21, 2020. It produced precisely what Plaintiff asked for, and now in his motion, Plaintiff is trying to expand the request to include information ("training, his use of religious compensatory overtime, awards, performance appraisals, or similar documents he could use to substantiate his claims and qualifications") which was not included in his original request. Plaintiff did not request this information prior to the close of written discovery. Defendant agreed to search for, and produce as available, Plaintiff's training records for his time at DCMA.

Following discussion during the conference, the Court finds Plaintiff made compelling arguments that recent discovery leads him to question the completeness of Defendant's production regarding Plaintiff's past performance appraisals. Therefore, Plaintiff's motion is **DENIED in part and GRANTED in part regarding Defendant's response to RFP #23.** Defendant shall review the agencies which formerly employed Plaintiff to ascertain the availability of Plaintiff's past evaluations for his entire period of employment. Plaintiff noted he possesses many of the evaluations himself, so Plaintiff is ordered to work with defense counsel to determine which evaluations are missing, and Defendant is ordered to produce those which Plaintiff does not possess.

### 9. Defendant's Responses to RFP #30-33 for SCF Documents

Plaintiff describes the Special Consideration File ("SCF") as "a digitized file that allegedly ensured that applicants granted priority consideration would be enrolled and eventually referred." (ECF No. 116 at 8.) These four requests seek documents and communications regarding the SCF.  Plaintiff argues although Defendant provided some

documents reporting use of the SCF, no documents were provided showing the SCF ever resulted in anyone being referred on a priority basis or that any applicant was ever referred or entered. Plaintiff says he was "allegedly enrolled in the SCF but never referred for consideration." He believes he is "therefore entitled to discover what appears to him to be a sham consideration for the vacancies in dispute." (*Id.*)

Defendant maintains it searched and produced the portions of the SCF contained in the USAStaffing database for each of the 31 vacancies in this lawsuit, and also agreed to search for otherwise responsive documents in the possession, custody or control of the selecting officials, panel members, or HR personnel and in the universe of emails collected during discovery in this litigation. (ECF No. 123 at 22-23.) During the conference, Defendant explained the SCF is a living document—a spreadsheet which is continually updated. Defendant attempted to ascertain how the spreadsheet existed at the time of Plaintiff's applications; however, it has been written over and continually changed and there is no way, aside from the emails and other searches it has conducted, to access the document as it existed in 2015.[24]

Following discussion during the conference, the Court **DENIES Plaintiff's motion regarding Defendant's responses to RFPs # 30-33**. Defendant undertook a reasonable search and maintains it has produced everything it searched for related to these requests. Plaintiff's requests were overly broad and Defendant's limitations appear reasonable.

---

[24] *See supra* note 23.

### 10.   Defendant's response to RFPs #38, 61 for Interrogatory Related Records

Plaintiff sought from Defendant all documents "identified or reviewed or relied upon" in responding to Plaintiff's 1st set of Phase II Interrogatories, and asked Defendant to identify the documents related to each numbered interrogatory. Although Defendant responded, Plaintiff contends it did not identify any records as associated with any numbered interrogatory; therefore, Plaintiff believes this implies records were withheld or missing. (ECF No. 116 at 9.)

At the time Defendant responded to RFP #38 on July 15, 2020, Plaintiff had not yet served any interrogatories in Phase II, so Defendant had no responsive documents at that time. Later, in response to RFP #61, Defendant agreed to identify documents. It identified ECF No. 38-5 (a 246-page exhibit to Defendant's Summary Judgment motion, filed under seal) and provided Plaintiff with a separate 4½-page exhibit listing the Bates-stamped ranges for all non-privileged information Defendant relied upon in its interrogatory answers.

Upon review of the briefing and discussion during the conference, the Court **DENIES Plaintiff's motion regarding Defendant's responses to RFPs #38 and 61**. Defendant has pointed to specific documents it reviewed when answering the 310 interrogatories propounded by Plaintiff. Requiring Defendant to go back and specify every

document reviewed and create a document or list saying they reviewed specific documents related to each specific interrogatory appears unduly burdensome.[25]

### 11. Defendant's Responses to RFP #58 for Rosters and Organizational Charts

For each vacancy of Plaintiff's charges, he asked Defendant to "provide all documents, communications, and ESI related to roster and organization charts prepared during the years from 2010 to the present." Plaintiff contends on December 11, 2020, Defendant agreed to "search for organizational charts relating to the 25 remaining claims during the years 2014-2015." (ECF No. 116 at 9.) Plaintiff agrees to revise the time period to "2014 to present" but maintains responses must include rosters because DCMA organizational charts do not include the first names of employees and are not searchable. (*Id.*) As for the time period, Plaintiff argues it is "necessary to help Plaintiff find promotions that he might have received . . . had he been selected. Discovery could be limited to those organizations where the charges were alleged to have taken place <u>and</u> those organizations where the selecting officials worked when they made the decisions if they are different organizations." (*Id.*)

Defendant argues Plaintiff has not articulated why organizational charts beyond 2014-15 are relevant to his claims. Any claim by Plaintiff that such charts could show his

---

[25] *See, e.g.*, *Progressive N.W. Ins. Co. v. Gant,* 15-9267-JAR-KGG, 2017 WL 3530843, at *6 (D. Kan. Aug. 16, 2017) (denying a motion to compel documents reviewed or relied upon to correspond to interrogatories and 81 separate requests for admission, "given the all-encompassing nature" of the request, noting that defendant "has clearly stated that the responsive documents have been produced," and noting if the plaintiff needed "to know which documents were referenced or relied upon regarding *particular* Requests for Admissions, it [would] need to submit more specific document requests") (emphasis in original).

potential for achieving other positions beyond what he applied for are speculation. Plaintiff does not limit his request to the locations associated with each vacancy but only to the location and the organizations where the selecting officials worked, which are not always the same. If Plaintiff has not abandoned his request to provide "all documents, communications, and ESI related to" rosters and org charts, Defendant objects to such a comprehensive search as lacking relevance and proportionality, since doing so would require significant time and expense because the org charts and any drafts or communications are not maintained in a central location. (ECF No. 123 at 24-25.)

Defendant already agreed to supplement the organizational charts for the work units of the 25 remaining job vacancies for which Plaintiff applied, during the years 2014 and 2015.  Defendant contends this agreement should resolve this issue.

During the conference, Defendant was unsure regarding the burden of producing organizational charts from 2016 to present.  Because Defendant will already be contacting agencies for the 2014-15 charts, the additional burden seems minimal.  Therefore, the Court **GRANTS in part Plaintiff's motion regarding Defendant's Responses to RFP #58,** and requires Defendant to supplement its production with organizational charts from 2014 to present.

### 12.   Defendant's Response to RFP #67 for Certain Applications

In this RFP, Plaintiff asks for complete applications from each applicant who was offered an 1102 job series position at grade 11, 12, or 13 at DCMA Milwaukee from 2013-2017. (ECF No. 116 at 9-10; ECF No. 123 at 25.) Plaintiff reports Defendant plans to supplement its response, and asks the court to provide Plaintiff a 30-day extension of time

after Defendant supplements or notifies Plaintiff that no supplement will be provided to file any motion. (ECF No. 116 at 10.)

Defendant contends it conducted a search and after communication with Plaintiff performed an additional search for applicant materials and found no additional materials. (ECF No. 123 at 26.)

Plaintiff argued during the conference the issue could be resolved by Defendant providing a specific missing resume for Brian Erickson, because he was selected for the 1102 position. Defendant again responded it looked for all names suggested by Plaintiff but could not substantiate Plaintiff's belief that certain individuals were offered positions. Additionally, Defendant noted Mr. Erickson's materials were previously provided and could provide the Bates numbers for those documents.[26]

Upon review of the briefing and discussion during the conference, the Court **DENIES Plaintiff's motion regarding Defendant's responses to RFP #67**. Defendant states it has completed its search and provided everything it located.  Because this issue has been thoroughly discussed and discovery in this matter must move forward, Plaintiff's request for additional time to dispute this issue is denied.

> **13.  Defendant's Answers to (30) Interrogatories: 6, 25, 36, 46, 56 66, 76, 86, 96, 106, 116, 126, 136, 146, 156, 166, 176, 186, 196, 206, 216, 226, 236, 246, 256, 266, 278, 286, 296, 306**

Plaintiff asks the Court to waive Defendant's objections to these 30 interrogatories as boilerplate. Plaintiff asked substantially the same questions for each vacancy in this case.

---

[26] *See supra* note 23.

(*See* ECF No. 116 at 10; ECF No. 123 at 26, Ex. H.) Plaintiff seeks information regarding each individual who viewed Plaintiff's application package for each vacancy, including the reason for the viewing, every document or record related to the viewing, and contact information for each viewer. (*Id*.)

In Defendant's responses, it asserted the following objections: overly broad because the request lacks time restrictions; and seeks information which might invade the attorney-client and work product privileges. Defendant agreed to identify individuals who viewed any portion of Plaintiff's applications from January 1, 2014 through January 1, 2017 and agreed to provide the reason for each viewing, excluding attorneys who viewed it in the course of Plaintiff's EEO complaints or other legal proceedings. Defendant objected to identifying "every document or electronic record" related to such viewings as "vague, overly broad and unduly burdensome." But, in its responses, Defendant identified individuals who viewed Plaintiff's application and why, and directed Plaintiff to contact information for each individual. (ECF No. 123 at 27.) Defendant also produced the spreadsheet from USAStaffing which identified applications accessed through that database. (*Id*.)

Following discussion during the conference, the Court **DENIES Plaintiff's motion regarding Defendant's responses to the 30 named interrogatories**. The Court does not find the objections to be boilerplate; they are asserted to substantially similar requests for the same reasons. It appears Defendant has responded appropriately with production to the questions Plaintiff asked.

### D.      Conclusion on Plaintiff's Motion to Compel (ECF No. 116)

For the reasons set forth above, Plaintiff's Motion (**ECF No. 116**) is **DENIED in large part and GRANTED in part**.

## V.      Discussion Regarding Plaintiff's Proposed Rule 30(b)(6) Deposition Topics

Prior to the motion hearing, the parties contacted the undersigned for assistance with the Rule 30(b)(6) deposition topics proposed by Plaintiff. Plaintiff's proposed 30(b)(6) notice included 75 topics for examination. Defendant believes 43 of Plaintiff's notice topics are proper areas of inquiry in a Rule 30(b)(6) deposition, although objects to portions of the listed topics. Defendant does not object to 12 of Plaintiff's notice topics at all (though it has sought clarity of certain terms). However, Defendant objects to 20 topics.

Following discussion of the disputed topics, the Court ordered Plaintiff to revise his proposed Rule 30(b)(6) notice as discussed during the conference and confer with defense counsel regarding said revisions. The issue is set for conference on **March 4, 2021**.

## VI.   Conclusion

For the reasons discussed in the February 22, 2021 hearing and as set forth above, in the Court's discretion it enters the following orders:

**IT IS THEREFORE ORDERED** that Defendant's motion to compel Plaintiff to provide his medical records from March 2013 to the present (**ECF No. 110**) is **GRANTED IN PART and DENIED IN PART**, in that Plaintiff is ordered to produce his medical records from January 1, 2013 through December 31, 2015 as directed above.

**IT IS FURTHER ORDERED** that Defendant's motion to compel Plaintiff to provide substantive and complete interrogatory responses to Request No. 15, et al. (**ECF No. 114**) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel Defendant to provide complete responses and answers to certain requests and interrogatories (**ECF No. 116**) is **DENIED** in large part, but Defendant is to review Issue #8/RFP #23 to search for Plaintiff's performance appraisals and work with Plaintiff to locate any missing evaluations, and Defendant is to supplement its response to Issue #11/RFP #58 to produce the organizational charts from 2014-present.

Regarding the disputes about Plaintiff's proposed Rule 30(b)(6) deposition topics, **IT IS FURTHER ORDERED** that Plaintiff is ordered to revise his topics as discussed during the conference and confer with defense counsel regarding said revisions. The issue is set for a follow-up conference on **March 4, 2021 at 1:30 p.m**. by Zoom videoconference before the undersigned U.S. Magistrate Judge.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th day of March 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge