## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STAN LABER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 18-1351-JWB-GEB |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF DEFENSE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER
## ON PLAINTIFF'S MOTION TO AMEND COMPLAINT

On February 22, 2021, the Court conducted a motion and discovery hearing. After reviewing all submitted briefing and hearing arguments, the Court orally entered orders on the pending discovery motions. (*See* Order, ECF No. 133; Mem. and Order, ECF No. 137.) Although argument was also heard on Plaintiff's motion to amend the complaint (**ECF No. 122**), the motion was taken under advisement and is addressed separately herein.

### I.    Background[1]

The background of this case was thoroughly addressed in the most recent opinion (ECF No. 137) and will not be repeated here. Summarily, this is an employment action where Plaintiff Stan Laber contends he applied for numerous positions with Defendant through the Defense Contract Management Agency ("DCMA") in 2014 and 2015 but he

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 15), Answers (ECF No. 14, 18), and the briefing surrounding the pending motion to amend (ECF No. 122, 125, 127). This background information should not be construed as judicial findings or factual determinations.

was not offered employment. Plaintiff, proceeding pro se, brought 31 discrete failure-to-hire claims in his original Complaint. He brings claims alleging age, sex, and religious discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act. Twenty-five of those claims remain after early dispositive motion practice and stipulation.

Plaintiff filed this case more than two years ago on December 26, 2018. Since then, the undersigned entered three phased scheduling orders. The Phase I Scheduling Order (ECF No. 30, Aug. 30, 2019) focused on discovery generally limited to those claims for which Defendant planned to file an early dispositive motion. The Phase II Scheduling Order (ECF No. 60, Mar. 26, 2020) focused on written discovery, establishing a September 15, 2020 deadline for written discovery and setting a status conference to discuss a later deposition schedule. The currently operative Phase III Scheduling Order (ECF No. 100) was entered September 16, 2020 and focuses on completion of written discovery and fact depositions. Fact depositions are to be completed by April 16, 2021.

Since the inception of this lawsuit, the undersigned has held 12 conferences to discuss scheduling, status, motions and discovery disputes.[2] Following the November 10, 2020 conference, multiple discovery motions were filed (ECF Nos. 110, 114, 116), as well as Plaintiff's motion to amend his complaint. (ECF No. 122.) The discovery motions were

---

[2] *See* Order, ECF No. 13 (Mar. 18, 2019); Min. Entry, ECF No. 29 (Aug. 27, 2019); Order, ECF No. 51 (Jan. 22, 2020); Order, ECF No. 57 (Mar. 10, 2020); ECF No. 59 (Mar. 25, 2020); Order, ECF No. 67 (May 20, 2020); Order, ECF No. 75 (July 2, 2020); Order, ECF No. 86 (Aug. 13, 2020);  ECF No. 99 (Sept. 16, 2020); Order, ECF No. 106 (Nov. 10, 2020); Order, ECF No. 133 (Feb. 22, 20201); Min. Entry, ECF No. 136 (Mar. 4, 2021).

decided by separate order (ECF No. 137) and the Court now addresses the amendment of the Complaint.

## II.    Plaintiff's Motion to Amend the Complaint (ECF No. 122)

Since the filing of this case, Plaintiff amended his complaint as a matter of course on May 10, 2019. (Am. Compl., ECF No. 15). Plaintiff's Amended Complaint includes 31 separate charges for vacancies for which he applied and was not hired. (*Id*.)

Although motions for leave to amend the pleadings are generally set to occur within eight weeks of the scheduling conference, this case has not progressed in the usual fashion, given the number of claims by Plaintiff as a pro se party, and the resulting phased scheduling. As such, there has not been a deadline established for motions to amend the pleadings.

### A.    Parties' Positions

#### 1.    Plaintiff's Arguments

Plaintiff proposes to add a single new charge to his Complaint, "Charge 32." Plaintiff contends his proposed amendment relates to Defendant's discovery responses regarding Plaintiff's current Charge 12. Plaintiff notes on October 13, 2020, Defendant "revealed for the first time that Plaintiff was found to be a top candidate for a [separate] GS-1101-11 vacancy" but referred to the vacancy as one "not at issue in this lawsuit." (ECF No. 122 at 2.)

Defendant's response to Plaintiff's First Set of Phase II Interrogatories, Interrog. #112 notes Plaintiff was not a top candidate for the opening in Charge 12, but the same selecting official did choose Plaintiff as a top candidate for a different position that same

month. "The competition for the vacancy identified in Charge 12 was stronger than Plaintiff's competition for the other . . . position for which Gregory Russell also served as the Selecting Official." (*Id.*) After Plaintiff communicated with defense counsel following the discovery response, Defendant provided him the vacancy/position number of the other position and Plaintiff discovered he had never received notice—or he believed he had not—regarding the outcome of the second application.

It appears although Plaintiff interviewed for the other position, he got inconsistent information regarding the status of his applications and his communications with Mr. Russell, the selection official on both applications. Charge 12 of his operative complaint is a combination of allegations which conflate the two applications he submitted the same month to the same location in Palmdale, California, and the activity following the two applications. Plaintiff explains the "proposed new Charge 32 is derived by separating related portions out from Charge 12 and establishing the same as a separate charge." (ECF No. 122 at 3.) Plaintiff's original and proposed charges read as follows:

### [Original] Charge 12 Vacancy Number SWH814EHA4415191286045

287. On or about December 25, 2014, Plaintiff submitted his application for this GS-1102-11 Contract Specialist position in Palmdale, CA.

288. On or about June 18, 2015, he was notified that the selecting official Bridget Guillory or Gregory Russell [Russell] did not select him.

289. Plaintiff was deemed one of the best qualified, referred, and interviewed.

290. The investigator reported that she and the witnesses were unclear to why certain candidates were interviewed and others were not interviewed:

"Bridget Guillory was named as the selecting official but she explained that Gregory Russell, who is no longer with the Agency, was the selecting official. Due to Mr. Russell's departure from the Agency, it is unclear why certain candidates were chosen for interviews while others were not."

291. Neither Bridget Guillory nor any panelist was able to explain why Plaintiff was rated the highest of the 34 applicants but was not allegedly interviewed.

292. Plaintiff attested that he received an interview but doesn't recall the names of the interviewers.

293. After Plaintiff was interviewed, Russell called Plaintiff to tell him that he [Plaintiff] did extremely well in the interview and that he [Russell] intended to hire him.

294. Russell advised Plaintiff to expect a call from the HR office to formally offer the position.

295. Plaintiff was never offered the position.

296. On faith and belief, Plaintiff maintains that Russell became aware of Plaintiff's protected activities or claimed bases and did not select him because of that knowledge or bases.

Plaintiff now wishes to amend his Charge 12 as follows, and add a Charge 32:

### [Amended] Charge 12 Vacancy Number SWH814EHA4415191286045

287. On or about December 25, 2014, Plaintiff submitted his application for this GS-1102-11 Contract Specialist position in Palmdale, CA.

288. On or about June 18, 2015, he was notified that the selecting official Bridget Guillory or Gregory Russell [Russell] did not select him.

289. Plaintiff was deemed one of the best qualified, referred, and interviewed.

290. The investigator reported that she and the witnesses were unclear to why certain candidates were interviewed and others were not interviewed:

"Bridget Guillory was named as the selecting official but she explained that Gregory Russell, who is no longer with the Agency, was the selecting official. Due to Mr. Russell's departure from the Agency, it is unclear why certain candidates were chosen for interviews while others were not."

291. Neither Bridget Guillory nor any panelist was able to explain why Plaintiff was rated the highest of the 34 applicants but was not allegedly interviewed.

292. [space reserved][3]

293. [space reserved]

294. [space reserved]

295. Plaintiff was never offered the position.

296. On faith and belief, Plaintiff maintains that Russell became aware of Plaintiff's protected activities or claimed bases and did not select him because of that knowledge or bases.

**[Proposed] Charge 32 Vacancy Number SWH814EHA439681128478**

457. On or about January 04, 2015, Plaintiff submitted his application for this GS-1102-11 vacancy in Palmdale, CA.

458. Plaintiff attested that he received an interview but doesn't recall the names of the interviewers.[4]

459. After Plaintiff was interviewed, Russell called Plaintiff to tell him that he [Plaintiff] did extremely well in the interview and that he [Russell] intended to hire him.

460. Russell advised Plaintiff to expect a call from the HR office to formally offer the position.

461. Plaintiff was never offered the position.

---

[3] Court Note: Plaintiff removed the interview allegations and allegations regarding his discussions with Mr. Russell in lines 292, 293, and 294 from Charge 12 and moved the allegations to Charge 32 as noted in lines 458, 459, and 460.

[4] *See supra* note 3.

462. On faith and belief, Plaintiff maintains that Russell became aware of Plaintiff's protected activities or claimed bases and did not select him because of that knowledge or bases.

Plaintiff contends Defendant has had ample notice regarding the Charge 32 position, and the agency simply never notified him of the result of his application, and/or he was confused regarding the status of the two applications. Aside from the revisions to Charge 12 and the addition of Charge 32, Plaintiff seeks no other revisions to the Complaint. Plaintiff contends "during the entire administrative process, Plaintiff and the investigator were led to believe that the events reported in the proposed new Charge 32 took place under Charge 12 as a single vacancy and not two different vacancies. It wasn't until after detailed discovery that Plaintiff learned" what had actually happened. (ECF No. 122 at 6.)

Plaintiff argues the amendment is not futile because the facts remain unchanged— it is "still the same nonselection which involved the same selecting officials at the same time for the same position at the same location as the original complaint." He also contends no party is prejudiced because no material facts are changed, but rather clarified. He maintains Defendant is not prejudiced because there is no need for additional discovery, so there will be no increased costs or time required for the amendment.

If there is any cost or delay, Plaintiff argues Defendant should bear those, because it was Defendant's "defective and incomplete administrative record that caused the error and its behavior following the complaint that allowed [Plaintiff's misunderstanding] to persist." (ECF No. 122 at 7.) Defendant knew or should have known that "the severe and obvious discrepancies in the administrative record indicated that two different vacancy authorities existed." (*Id*.)

## 2.      Defendant's Arguments

Defendant argues the motion should be denied because 1) Plaintiff failed to exhaust this claim with the DCMA Equal Employment Opportunity office ("DCMA EEO" or "EEO") so the claim is futile; 2) Plaintiff does not adequately explain his undue delay in seeking amendment; and 3) the amendment is prejudicial to Defendant. Defendant contends it must conduct written discovery on the claim after this case is now over two years old, and information regarding this claim, which would have occurred in 2015, may no longer be available. (ECF No. 125 at 1-2.)

Defendant's Response clarifies the underlying facts as follows:

> Plaintiff applied for two positions in Palmdale, CA, one purportedly in December 2014 (Charge 12), and another in January 2015 (proposed Charge 32). Plaintiff received only one interview—for the Job Opportunity Announcement identified in proposed Charge 32. [During the pre-suit administrative investigation,] Plaintiff sought to amend his EEO Complaint to add the position underlying Charge 12. He did not seek to add the position underlying proposed Charge 32. The administrative investigation repeatedly revealed that Plaintiff had not been interviewed for the Job Opportunity Announcement underlying Charge 12. . . . Plaintiff knew he applied for two positions and knew he only received one interview. Plaintiff had the information available to identify any mistake he made in identifying the positions he applied for in 2015 when he received the record of investigation, which included declarations stating that Plaintiff was not interviewed for Charge 12, and the Final Agency Decision [dated 11/30/15], which concluded the same.

(ECF No. 125 at 2, internal citations omitted.)[5]

_____

[5] Defendant explains how job postings are identified.  "Each job posting in USAJobs is identified by a different Job Opportunity Announcement ("JOA") identifier. Here, these identifiers typically begin with "SWH" and are a combination of letters and numbers, typically 21-23 digits in length." (ECF No. 125, n.1.)  Plaintiff's Charge 12 of his Amended Complaint references Vacancy Number SWH814EHA4415191286045, applied for December 25, 2014, located in Palmdale, CA. (_Id._ at

Defendant argues Plaintiff's delay in investigating any confusion regarding these two applications does not justify his untimely motion. And, even if Plaintiff did not discover his error until Defendant responded to discovery on September 4, 2020, he still waited over three months—to December 28, 2020—to file a motion to amend, while comprehensive discovery was taking place. (*Id*. at 11.)

Defendant also contends it tried to obtain records from the USAStaffing Legacy database regarding the Charge 32 vacancy but the records on the vacancy have been purged from the database. This lack of records could prejudice Defendant's ability to defend Plaintiff's proposed claim. Additionally, because Defendant was not on notice this vacancy was at issue, the DCMA EEO office did not investigate "while witness recollections were fresh or gather documents relevant to the claim at the administrative level"—all of which Defendant argues is prejudicial. (*Id*. at 13.)

### B.     Legal Standard

The Rule 15 standard for permitting a party to amend his or her pleading is well-established. In cases such as this where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of court under Rule 15(a)(2).

---

5, 7.) The proposed Charge 32 relates to Vacancy Number SWH814EHA439681128478, applied for on January 4, 2015, also located in Palmdale, CA. (*Id*. at 4.)

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[6] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[7] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[8] The Tenth Circuit acknowledged Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[9] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[10]

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated, because the schedule itself is affected.  Rule 16(b)(4) provides a "schedule may be modified only for good cause and with the judge's consent." However, in this case, there is no scheduling order deadline for amending the pleadings, so Rule 16 does not apply in this circumstance, even though this motion comes later in the case. Neither party makes Rule 16 "good cause" arguments.

---

[6] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[7] *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc*., No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[8] *Hinkle v. Mid-Continent Cas. Co*., No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[9] *Carefusion 213*, 2010 WL 4004874, at *4 (citing *Minter,* 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

[10] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

### C.      Discussion

Each Rule 15 factor is addressed in turn.

### 1.      Timeliness

Because there was no formal deadline to file a motion to amend the pleadings, Plaintiff is not required to demonstrate good cause under Rule 16.  But this is not the only question regarding timeliness. "Denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"[11] "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."[12]

The question before the Court is whether Plaintiff knew or should have known of the facts on which his proposed Charge 32 are based and should have asserted them nearly two years ago when he filed his Amended Complaint. Plaintiff knew he applied for two jobs in Palmdale and interviewed for one, yet the DCMA EEO investigation noted he had not been interviewed. Plaintiff received the Final Agency Decision of the DCMA EEO administrative investigation on November 30, 2015. (ECF No. 127-4, *sealed.)* A review of Defendant's sealed exhibits (ECF No. 127)—which contain 256 pages of EEO reports and declarations from hiring officials—shows Plaintiff did not separately include the new Charge 32 in his EEO complaint, supporting his contention he was confused or mistaken

---

[11] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (internal citation omitted).

[12] *Curtis v. Bd. of Cty. Comm'rs of Clay County, Kan.*, 12-4028-JTM-KMH, 2012 WL 3984473, at *1 (D. Kan. Sept. 11, 2012) (quoting *Las Vegas Ice & Storage Co. v. Far West Bank,* 893 F .2d 1182, 1185 (10th Cir. 1990) (other internal citations omitted)).

about the status of his Palmdale applications. However, those same records repeatedly state Plaintiff was not interviewed for Charge 12, the Palmdale position for which he did pursue a complaint. Even if he was confused, Defendant argues Plaintiff has not explained why he delayed in investigating his confusion and the information was before him, even if he simply was mistaken.

But Plaintiff is proceeding pro se, and although this expansive lawsuit is a creature of his own choosing, he is pursuing a number of claims simultaneously. As a pro se party, he must be provided some leniency and is "to be given reasonable opportunity to remedy the defects in [his] pleadings."[13] As shown above, the allegations Plaintiff presents in his proposed amendment are, in significant part, restructured from prior allegations, which also supports his contention of confusion and lessens any burden imposed by amendment.

Although he might have suspected something was amiss due to Defendant's repeated denials of an interview on Charge 12, a hallmark of this lawsuit and the repeated disputes since its inception has been a lack of trust between the parties. The Court perceives this lack of trust as significant factor underlying Plaintiff's mistake regarding how/when/why the single interview occurred.

Defendant argues even if the Court permits Plaintiff leniency regarding his confusion, Plaintiff still inexplicably waited 16 weeks after Defendant served its discovery responses on September 4, 2020 to seek amendment on December 28, 2020. But as previously noted, this case is complex—not necessarily in the legal analysis required but

---

[13] *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) (citing *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir.1990); *Jaxon v. Circle K Corp.,* 773 F.2d 1138, 1140 (10th Cir.1985).

in the sheer amount of discovery necessary as a result of the number of claims and agencies involved.  In fact, Defendant assembled a team of individuals to assist it in completing discovery (*see* Mem. & Order, ECF No. 137) but Plaintiff proceeds pro se and it likely took him considerable time to review the voluminous discovery, even if he received the very volume he requested. Given the complexity of the case, the Court would give similar consideration to any party facing such inequities. And, the nature of discovery is such that written discovery is often the time when new information is uncovered.

In consideration of the above, the Court finds the timing of Plaintiff's request not unreasonable given all circumstances discussed herein.

### 2.      Bad Faith

The parties do not argue bad faith, and there is no evidence of bad faith.  The Court finds this factor neutral to the analysis.

### 3.      Prejudice to Defendant

As the party opposing the amendment, Defendant bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[14] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[15] While any amendment invariably causes some

---

[14] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).

[15] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).

"practical prejudice," undue prejudice means that the amendment "would work an injustice to the defendant."[16]

Plaintiff's motion and his arguments during the February 22 hearing suggest no additional discovery is necessary on his part. Defendant, on the other hand, claims it requires additional discovery and some information, including electronic discovery and witness testimony, may be destroyed or no longer available due to the age of the claim. Defendant argues it conducted discovery only specific to the claim in Charge 12, and no discovery specific to proposed Charge 32. It contends it cannot access records regarding this vacancy from the USAStaffing database and may not be able to prove the date Plaintiff was noticed of his nonselection on this vacancy. (ECF No. 125 at 12-13.)

However, it seems at least some discovery the parties already possess will be applicable to this claim. Even if Defendant will need to conduct previously unrequested discovery on the selection panel members for the Charge 32 opening, Defendant indicated it previously searched the selecting officials' emails applicable to Charge 32,[17] because the timing and location of the two job openings and the selecting officials were substantially similar, if not the same. And, if Plaintiff did not exhaust his claims, for example—Charge 32's absence from the DCMA EEO record will be borne out from the discovery already produced.

---

[16] *Id.* (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).

[17] The February 22, 2021 conference was recorded and Defendant has requested a transcript. However, the transcript is not yet complete. (Zoom recording maintained in Chambers' file).

Although Plaintiff should have been aware of some confusion regarding his Palmdale applications, Defendant should likewise have been on notice something was amiss with the two convoluted applications. Plaintiff repeatedly claimed he was interviewed, and Defendant repeatedly insisted he was not. Though it is incumbent on Plaintiff—and not Defendant or this Court—to draft his claims, Defendant cannot claim to have been caught completely unaware.

Defendant relies on the 2000 District of Kansas case, *Stieinert v. The Winn Group*,[18] to argue "requiring the defendants to defend entirely new causes of action at an advanced stated of litigation [is] prejudicial." (ECF No. 125 at 12.) But the facts in *Stienert* are distinguishable.  In *Steinert*, the Plaintiff was seeking to "assert four new claims against the current defendants and ten against the proposed new defendants."[19] Here, Plaintiff does not seek to add parties, and this single proposed claim is not "entirely new" because the amendment is actually a clarification of the confusion of two claims in the Amended Complaint. And, despite the age of this case, this matter is still in the fact discovery phase and not quite to an "advanced stage of litigation."

Discovery necessary to this single claim appears minimal, and fact discovery is ongoing. Discussions during the February 22 hearing revealed Plaintiff will be deposed again, regardless of whether this claim was added.  Although the Court informed the parties written discovery is concluded and this matter must move forward (*see* Mem. & order, ECF

---

[18] *Steinert v. The Winn Group, Inc.*, 190 F.R.D. 680, 683 (D. Kan. 2000).
[19] *Id.*

No. 137), the Court will permit Defendant some leniency for additional written discovery if necessary on this new claim.

There is no doubt Defendant will bear some practical prejudice as a result of this amendment.  However, the Court does not find this prejudice rises to the level of "undue" prejudice, given the existing discovery, relationship of the amendment to the earlier claims and the ongoing fact discovery.  Although prejudice to the opposing party is generally considered the "most important"[20] factor; it is but one factor the Court must consider, and the Court finds prejudice under these circumstances does not bar the amendment.

### 4.   Futility

As the party opposing amendment, Defendant bears the burden of establishing its futility.[21] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[22] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[23] Only if the court finds "the proposed claims do not

---

[20] *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011) (citing *Minter,* 451 F.3d at 1207 and noting "the prejudice factor is the "most important" consideration in the decision.")

[21] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[22] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)); *see also Neonatal Prod. Grp.*, 2015 WL 1957782, at *2 (internal citations omitted).

[23] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[24] should the court find the amendment futile.

Although Plaintiff argues the amendment is not futile because the facts remain unchanged, and contends his proposed claim is "still the same nonselection which involved the same selecting officials at the same time for the same position at the same location as the original complaint"—this is not entirely true.  Although the timing of the applications was similar, and the location and selecting officials appear allegedly the same, the two charges relate to two different positions—therefore, the facts are *not* entirely the same.

Defendant makes legitimate arguments regarding the potential futility of Plaintiff's proposed Claim 32 regarding administrative exhaustion.  There is no doubt Plaintiff must have exhausted his administrative remedies before bringing a Title VII or ADEA claim.[25] As a first step, he must informally present his claim to an EEO counselor within 45 days of the alleged discriminatory action.[26] But a claim of refusal to hire "accrues when the decision is 'first announced to the plaintiff.'"[27] "If a decision is not announced, a court may 'revert to asking when the plaintiff did or a reasonable employee would have known of the employer's decision.'"[28] After the informal attempts at resolution, the claimant must then

---

[24] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).
[25] Mem & Order, ECF No. 101 (Broomes, J., Sept. 17, 2020) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309, 1311 (10th Cir. 2005).
[26] *Id*.
[27] *Id*. (citing *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011).
[28] *Id*. (citing *Almond* at 1177).

file a formal EEO charge with the agency, participate in the agency's investigation, and receive the agency's decision before filing a lawsuit.[29]

It is possible Plaintiff failed to exhaust this proposed Charge 32.  And, given the sheer amount of discovery completed to date, and review of the EEO decision, it appears he possesses information which should have made it clear to him this proposed Charge 32 was separate from his Charge 12. However, at this stage of the proceedings, the Court is tasked with viewing the facts in the light most favorable to Plaintiff. Plaintiff is proceeding pro se, and he was clearly confused regarding the two similar applications—submitted within 10 days of one another, at the same location, with the same selecting officials. At this juncture, this Court makes no rulings as to whether it would have been reasonable for Plaintiff to know of the DCMA's decision at some point prior to receipt of the discovery, or whether the information he previously submitted to the DCMA regarding Charge 12 contains information which would have put the agency on notice of his proposed Charge 32, regardless of whether he named the position by announcement number. These are factual determinations to be borne out by further discovery and argued later at summary judgment and/or trial.

Both this Court and other magistrate judges in this district have found it more appropriate to decline to decide amendment on the basis of futility and permit the district judge to address the dispositive arguments at other procedural junctures, such as at

---

[29] *Id.* (citing 29 C.F.R. § 1614.106, -1614.110; *Mayberry v. E.P.A.*, 366 F. App'x 907, 912 (10th Cir. 2010)

summary judgment.[30] Even though this claim comes after Defendant's initial early dispositive motion, it seems likely Defendant will file a summary judgment motion at the close of discovery and will have the opportunity to address the exhaustion issue at that time. Therefore, the Court makes no findings on futility and finds the futility factor neutral to this analysis.

## III.   Conclusion

Because of the unique scheduling of this case, Plaintiff's request is technically timely under Fed. R. Civ. P. 16 as it is not filed outside any scheduling order deadlines. And, though Plaintiff possesses information which should have led him to question the accuracy of his prior Claim 12, he is proceeding pro se, and in the Court's discretion, it permits him leniency in pursuing his claims. No bad faith is asserted, and the Court finds none. Although practical prejudice will result from amendment, discovery is ongoing and therefore Defendant failed to demonstrate undue prejudice which may occur as a result of the amendment.

Even if the eventual viability of Plaintiff's proposed Claim 32 is unclear, at this point the Court is tasked with viewing the facts in the light most favorable to him. Defendant will have the later opportunity to file summary judgment motions to further

---

[30] *See, e.g.*, *McCormick v. City of Lawrence*, 03-2195-GTV-JPO, (D. Kan. Dec. 1, 2003), objection overruled by 2004 U.S. Dist. LEXIS 2157 (D. Kan Jan. 29, 2004); *Couser v. Somers*, No. 18-1221-JWB-GEB, 2020 WL 6742790, at *15 (D. Kan. Nov. 17, 2020), *report and recommendation adopted in part sub nom.*, No. 18-1221-JWB, 2021 WL 236080 (D. Kan. Jan. 25, 2021) (noting "Defendants will have the later opportunity to file summary judgment motions to further clarify the claims presented"); and *Watkins v. Genesh, Inc.*, No. 19-2486-JAR-GEB, 2020 WL 5993641, at *4 (D. Kan. Oct. 9, 2020) ("Exercising its discretion and recognizing Defendant will have an opportunity to challenge the sufficiency of the new claims through a later dispositive motion, the Court will not deny Plaintiff's proposed amendment based on futility").

clarify the claims presented. At this juncture, considering the procedural posture of the case and the lack of bad faith, the Court prefers this case to proceed on its full merits.[31] In the interests of justice, and in its discretion, the Court will allow Plaintiff to amend his Complaint as described above, with one exception.

In Line 289 of Plaintiff's proposed Second Amended Complaint, he notes he was "deemed one of the best qualified, referred, *and interviewed*" for Charge 12 (emphasis added). However, it appears from the briefing he was allegedly not interviewed for Charge 12; therefore, the Court suggests Line 289 should either remove the reference to an interview or read "and allegedly interviewed" in line with Line 291.[32]

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend his complaint (**ECF No. 122**) is **GRANTED**. Plaintiff must file his Second Amended Complaint no later than **March 19, 2021**.

**IT IS FURTHER ORDERED** that the deadline to file any motion to amend the pleadings is set for **April 2, 2021**. This deadline is established to provide the parties one final opportunity to review their pleadings in light of the progress of this matter thus far. However, given the posture of this matter and the considerable leniency provided to Plaintiff as a pro se litigant on this motion, any future request to amend pleadings will be highly scrutinized and disfavored.

---

[31] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

[32] *See supra* note 3 and discussion of the proposed charges, pages 4-7 above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th day of March 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge