## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **STAN LABER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-1351-JWB-GEB** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF DEFENSE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER
## MEMORIALIZING RULINGS FROM SEPTEMBER 13, 2021 HEARING

On September 13, 2021, the Court conducted a motion and discovery hearing. Plaintiff Stan Laber appeared personally. Defendant U.S. Department of Defense appeared through counsel, Sarah Macke, Tyson Shaw, Steven Brookreson, and Christopher Allman. After reviewing all submitted briefing and hearing arguments, the Court orally entered the following orders (*see* Order, ECF No. 183): Defendant's motion to file certain exhibits under seal (**ECF No. 180**) was **GRANTED**, with the addition of Ex. 8 to Defendant's Response. Plaintiff's Motion to Compel Defendant to Provide Certain Requested Records and Motion to Appeal Any Decision on Any Requests Deemed Previously Ruled Upon (**ECF No. 179**) was considered as two motions: 1) a motion for reconsideration of issues ruled upon in the Court's July 13, 2021 discovery conference; and 2) a motion to compel discovery.

As to the motion to reconsider, of the Plaintiff's Phase IV requests previously decided (*see* Order, ECF No. 175), Plaintiff's motion did not dispute RFP Nos. 2 and 11.

1

Plaintiff's motion to reconsider the Court's rulings on RFP Nos. 1 and 4 was **DENIED**.

Regarding Plaintiff's motion to compel discovery, the motion was **DENIED** in large part, with the following reservations: as to Plaintiff's Phase IV RFP No. 6, the request was denied in part but Plaintiff was permitted to submit a written deposition question for Mr. Moffatt's response, and that has since occurred. The Court's ruling on Plaintiff's Phase IV RFP No. 15 was reserved until Plaintiff had the opportunity to locate a specific email discussed at hearing and to confer with defense counsel regarding any items related to that email he wished to discover. Discussion and production regarding RFP No. 15 were to conclude no later than September 30, 2021, and the Court now considers the issue resolved as described below.

This order memorializes the Court's rulings from the conference.

## I.     Background[1]

The background of this case was thoroughly addressed in earlier opinions (ECF No. 137) and will not be repeated here. Summarily, this is an employment action where Plaintiff Stan Laber contends he applied for numerous positions with Defendant through the Defense Contract Management Agency ("DCMA") in 2014 and 2015 but he was not offered employment. Plaintiff, proceeding pro se, brought 31 discrete failure-to-hire claims in his original Complaint. He brings claims alleging age, sex, and religious discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, and the Age Discrimination in

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 15), Answers (ECF No. 14, 18), and the briefing surrounding the pending motions to compel (ECF Nos. 179, 181). This background information should not be construed as judicial findings or factual determinations.

Employment Act. Twenty-one of those claims remain after early dispositive motion practice and stipulations by the parties. (*See* Stip., ECF Nos. 112, 168.)

Plaintiff filed this case nearly three years ago on December 26, 2018. Since then, the undersigned entered four phased scheduling orders. The Phase I Scheduling Order (ECF No. 30, Aug. 30, 2019) focused on discovery generally limited to those claims for which Defendant planned to file an early dispositive motion. The Phase II Scheduling Order (ECF No. 60, Mar. 26, 2020) focused on written discovery, establishing a September 15, 2020 deadline for written discovery and setting a status conference to discuss a later deposition schedule. A Phase III Scheduling Order (ECF No. 100, Sept. 16, 2020) focused on completion of written discovery and fact depositions.

After a status conference on April 20, 2021, the undersigned entered a Phase IV Scheduling Order, noting "Shy of some truly exigent circumstance, Phase III fact discovery will close May 21, 2021, including completion of the 13-plus depositions previously cancelled by Plaintiff. Phase IV scheduling will then proceed, which will consist of any remaining discovery, including expert discovery and other cleanup discovery. All such Phase IV discovery must be completed by July 9, 2021." (ECF No. 157.)

Since the inception of this lawsuit, the undersigned has held at least 15 conferences to discuss scheduling, status, motions, and discovery disputes.[2] Throughout the pendency

---

[2] *See* Order, ECF No. 13 (Mar. 18, 2019); Min. Entry, ECF No. 29 (Aug. 27, 2019); Order, ECF No. 51 (Jan. 22, 2020); Order, ECF No. 57 (Mar. 10, 2020); Min. Entry, ECF No. 59 (Mar. 25, 2020); Order, ECF No. 67 (May 20, 2020); Order, ECF No. 75 (July 2, 2020); Order, ECF No. 86 (Aug. 13, 2020); Min. Entry, ECF No. 99 (Sept. 16, 2020); Order, ECF No. 106 (Nov. 10, 2020); Order, ECF No. 133 (Feb. 22, 20201); Min. Entry, ECF No. 136 (Mar. 4, 2021); Order, ECF No. 139; Min. Entry, ECF No. 171 (June 1, 2021); Order, ECF No. 175 (July 13, 2021).

of the case, the parties have sought Court input prior to filing motions to compel, and deadlines for filing such motions were repeatedly extended for both parties.

The conference set for July 13, 2021 was intended to discuss proposed pretrial deadlines. Instead, the conference focused on discovery disputes regarding Plaintiff's Phase IV written discovery to Defendant. This written discovery was intended to conclude any residual discovery following depositions. Defendant complained the discovery requests were "very large in scope," and at the time of the July 13 conference, the parties had several disputes pending. However, from the parties' correspondence, it appeared they had only conferred regarding four requests (Phase IV, Plaintiff's RFP Nos. 1, 2, 4, 11.) Because the Court could only ascertain conferral as required by D. Kan. Rule 37.2 on those four requests, the undersigned ruled on only those requests. (*See* Order, ECF No. 175; Transcript, ECF No. 177.)

The Court's order entered July 13, 2021 states,

With regard to Plaintiff's RFP Nos. 1 and 2, the Court sustained Defendant's objections. As to Plaintiff's RFP Nos. 4 and 11, Defendant is ordered to supplement its production, and to certify the production as discussed during the conference. Such supplementation and certification should be complete no later than 8/13/21. The parties are also ordered to fully confer regarding the remainder of the Phase IV discovery. To this end, the Phase IV/cleanup discovery is extended through 8/13/21. However, any wrap-up must be complete and all non-expert discovery will close by 8/13/21.

The undersigned clearly announced at that conference the Court would "not . . . make any more orders after August 13 with regard to written and fact discovery." (Transcript, ECF No. 177 at 46.)

Following the conference, the parties emailed chambers because Plaintiff intended to file a motion to compel, but the parties could not agree on the timing or scope of such a motion. On August 19, 2021, Plaintiff was given until August 30 to file a motion to compel, and Defendant's response deadline was set for September 7. No replies were permitted because a conference was set to discuss said briefing. (Order, ECF No. 178.) The undersigned emailed the parties on August 20, 2021 to clarify, after multiple emails from the parties, this anticipated motion to compel "relates to Plaintiff's Phase IV written discovery requests, excluding the four requests (RFP Nos. 1, 2, 4, 11) previously addressed by Judge Birzer in the [July 13, 2021] discovery conference."[3]

Thereafter, Plaintiff filed his motion, titled "Motion to Compel Defendant to Provide Certain Requested Records and Motion to Appeal Decision on Any Requests Deemed Previously Ruled Upon." (ECF No. 179.) Defendant then sought to file two exhibits (Ex. 9, 11) to their Response (ECF No. 181) under seal. (Motion, ECF No. 180.) As noted above, each motion was addressed during the hearing, and the rulings announced are explained below.

## II.    Defendant's Motion to File Exhibits Under Seal (ECF No. 180)

Defendant asked to file the unredacted versions of two exhibits (Exs. 9 and 11) to their Response (ECF No. 181) under seal, because the exhibits identify non-party applicants for employment. Defendant contends publicly identifying these non-party applicants would violate the Privacy Act, 5 U.S.C. § 552a.  Defendant filed redacted public

---

[3] Email from ksd_Birzer_chambers@ksd.uscourts.gov to counsel (Aug. 20, 2021, maintained in chambers file).

versions of the exhibits attached to their Response. Defendant's motion indicated Plaintiff objected to one of the exhibits being filed under seal, but there was no explanation as to the basis for the objection.

During the hearing, defense counsel noted they inadvertently filed an additional exhibit without redacting the identifying information of another non-party in Exhibit 8 to their Response, and verbally requested the sealing of Exhibit 8 on the same basis.

When asked regarding his objection, Plaintiff indicated he did not view Exhibit 9 as containing information which would be protected by the Privacy Act, or that could not simply be redacted rather than filed under seal. Plaintiff had not yet reviewed Exhibit 8.

Given Plaintiff's inability to review Exhibit 8, the Court reserved ruling on that exhibit until the end of the day of the hearing to permit Plaintiff an opportunity to review and lodge any objection. No objection was received; therefore, the verbal request of Defendant to seal Exhibit 8 was unopposed.

Because Defendant submitted redacted versions of the exhibits at issue as suggested by Plaintiff, this dispute is likely moot. However, finding Defendant sought to seal only the minimum amount of information required, the Court **GRANTED** Defendant's motion to seal (**ECF No. 180**) Exhibits 8, 9, and 11 to its Response brief (ECF No. 181). (Order, ECF No. 183.)

### III.    Plaintiff's Motion to Compel / Review (ECF No. 179)

Plaintiff served his Phase IV discovery requests on June 8, 2021, which contained 16 Requests for Production. Defendant served its responses to the Phase IV RFPs on July 2, 2021, including a privilege log and documents. The undersigned reviewed the parties'

correspondence to that date before addressing some of the requests at the July 13 conference. Plaintiff sent his first Golden Rule letter to Defendant on July 16, 2021, which did not address any issues with RFP Nos. 12-13. Defendant responded on July 21, 2021 (ECF No. 181, Ex. 2), and the parties held a conferral conference the next day. Defendant supplemented its responses (as ordered by the Court at the July 13 conference) on July 30, 2021. (ECF No. 176.)

After some disagreement about the deadline for his motion, the undersigned permitted Plaintiff an extension to file his motion to compel. (ECF No. 178.) On August 16, 2021, Plaintiff sent Defendant a second Golden Rule letter. (ECF No. 179, Ex. 5.) Defendant responded on August 23, 2021 (ECF No. 181 at Ex. 6) and the parties conferred by phone on August 25, 2021. (*Id.* at 4.)

Given the correspondence and telephonic conferrals by the parties, as well as the July 13 discovery conference held by the undersigned, the Court found the parties have sufficiently conferred as required by D. Kan. Rule 37.2.

### A. Plaintiff's Motion to Reconsider on Phase IV RFP Nos. 1, 2, 4, 11

Because the Court reviews this portion of Plaintiff's motion as a motion to reconsider its earlier discovery rulings, D. Kan. Rule 7.3(b) applies. Under Rule 7.3(b), a party seeking reconsideration of a non-dispositive order "must file a motion with 14 days after the order is filed unless the court extends the time." Further, such a motion must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."[4]

---

[4] D. Kan. Rule 7.3(b).

Plaintiff did not file an order seeking reconsideration within 14 days of the Court's July 13, 2021 ruling. Even giving him the benefit of the doubt and considering perhaps he was confused about whether any motion to compel would contain those four requests, he did not reach out for any clarification regarding the issue until August 18, 2021, when it was clarified through emails between the parties.[5] More than a month elapsed before any party put the Court on notice Plaintiff may seek reconsideration or appeal of the Court's orders on those four discovery requests.

Plaintiff has repeatedly been given considerable deference as a pro se litigant. However, he is expected to comply with all federal and local rules, and in fact, cites them to his advantage when beneficial.[6] Because Plaintiff's motion is simply untimely, the Court may deny the motion on that ground alone.[7]

Even if the Court reviews his request for reconsideration on the merits, his motion fails. Plaintiff's motion does not dispute the rulings on RFP Nos. 2 and 11; he only takes issue with his **RFP Nos. 1 and 4**. Each request is analyzed in turn.

- **<u>RFP No. 1</u>**. In this Request, Plaintiff seeks 6 categories of information regarding 169 DCMA vacancies for which he applied, none of which are at issue in this case. And, Plaintiff's motion to compel adds a 7th category of

---

[5] *See* emails between Plaintiff Stan Laber and defense counsel Sarah Macke (Aug. 18-20, 2021, maintained in chambers file).

[6] See email from Plaintiff Stan Laber to defense counsel (Aug. 17, 2021, part of the email string from Aug. 18, 2021; maintained in chambers file). Plaintiff cites D. Kan. Rules 7.1 and 37.2 outlining the proper timing of a motion to compel.

[7] *See*, e.g. *United States v. Chavez-Cadenas*, No. 09-20005-10-DDC, 2021 WL 3737126, at *2 (D. Kan. Aug. 24, 2021) (denying motion to reconsider, in part, due to untimeliness) (citing *Randall*, 666 F.3d at 1243 (10th Cir. 2021) (affirming district court's denial of defendant's motion to reconsider because defendant "filed his motion for reconsideration. . . fifty-five days after the period for appeal ended"). *See also Calumet Gaming Grp.-Kansas, Inc. v. Kickapoo Tribe of Kansas*, 987 F. Supp. 1321, 1331 (D. Kan. 1997) (denying plaintiff's motion to reconsider as untimely under D. Kan. Rule 7.3 when filed five calendar days after the deadline).

information:  a "Copy of the Job Opportunity Announcement (JOA)" for each of the 169 vacancies. (ECF No. 181, Ex. 3.)

Defendant objected to the original request as "overly-broad, unduly burdensome, and not proportional to the needs of the case, and as seeking irrelevant information to the extent it sought documents for vacancies not at issue in this lawsuit." (ECF No. 181 at 7.) Defendant also complained the request is not the residual discovery intended and exceeds the scope of Phase IV discovery, and is duplicative of prior requests with regard to the claims at issue in this lawsuit. Defendant notes of the 169 vacancies identified, only "25 of the vacancies correspond with vacancies at issue (or previously at issue) in this lawsuit . . . [and] all the categories of documents requested in RFP 1 were produced to Plaintiff in Phases I and II of discovery." (*Id.*) "Of the remaining vacancies listed, 14 correspond to vacancies at issue in a separate federal lawsuit, and at least 15 correspond with vacancies currently in the administrative process. Accordingly, Plaintiff likely has already received some of the information requested for those vacancies." (*Id.* at 8.)

Defendant argues compiling the information would require a "significant outlay of time and resources as each listed category must be pulled individually, and this would have to be done for each vacancy in the USAStaffing database (or its predecessor database)." Defendant contends even if the information were relevant, Plaintiff should have requested this information much earlier in the case, as the Tenth Circuit case he cites was decided in June 2019, more than a year before Phase II discovery ended in September 2020. (*Id.*)

In the Court's July 13 ruling, it found "if [Plaintiff] felt like [he] needed comparative data, that's something that [he] should have known even in [his] pro se status prior to . . . a week before the close of discovery." (7/13/21 Tr., ECF No. 177 at 15:13-17.)

Plaintiff argues the request seeks relevant information to his ability to demonstrate pretext, and cites *Jones v. Azar*, 772 F. App'x 692, 697 (10th Cir. 2019) for this argument. He also complains he did not have sufficient notice that the Court planned to rule at the July 13, 2021 conference and the ruling was premature "because it failed to properly consider that the request was directly relevant and timely." (ECF No. 179 at 4.)

"A motion to reconsider is only appropriate where the court has obviously misapprehended a party's position, the facts or applicable law, or where the party produces new evidence that it could not have obtained earlier through the exercise of due diligence."[8] A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed."[9]

Here, both parties were on notice of the Court's intent to discuss discovery issues at the July 13 conference. Before the hearing, Plaintiff submitted to the undersigned Defendant's discovery responses, its privilege log, and an email exchange between the parties.[10] Plaintiff also presented essentially the same arguments contained in his current Motion during the July 13 hearing. Although Plaintiff did not directly cite the Tenth Circuit opinion at that time, he outlined the general findings of the case for the Court's

---

[8] *Stafford v. Flextronics Int'l USA, Inc.*, No. 14-2254-JWL, 2016 WL 880505, at *2 (D. Kan. Mar. 7, 2016) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).
[9] *Id.*
[10] Two emails from Plaintiff Stan Laber to ksd_Birzer_chambers@ksd.uscourts.gov (July 7, 2021; maintained in chambers file.)

consideration. (7/13/21 Tr., ECF No. 177 at 12-13.) The Court was fully informed as to his arguments regarding relevance and he did not present an argument regarding timeliness during the conference.

Plaintiff has been permitted extensive and thorough discovery over the nearly three-year life of this case. The Court has extended discovery deadlines on multiple occasions, most often in Plaintiff's favor. Plaintiff was repeatedly cautioned the residual discovery intended for Phase IV was directed at any new issues arising from depositions—not for broad discovery on topics he should have identified earlier. Whether to further extend or reopen discovery is committed to the sound discretion of the court, and in the Court's discretion, discovery is now closed.[11]

Therefore, the Court has not misapprehended his position, the facts, or the applicable law as to his Phase IV RFP No. 1. Plaintiff has not presented new evidence, and this is not an opportunity for Plaintiff to simply strengthen his arguments. Plaintiff's motion to reconsider was **DENIED** regarding his Phase IV RFP No. 1.

- **RFP No. 4**. This request seeks the native copy of any file uploaded to IRCMS (the web-based platform utilized by the DOD's Investigations and Resolutions Directorate ("IRD")) for each report of selecting official or panel scoring, evaluation or recommendation appearing in the Report of Investigation ("ROI").

During the July 13 hearing, the Court found Defendant had investigated the availability of the native format Plaintiff sought, but it did not exist. Additionally, the undersigned noted Plaintiff and Defendant made an agreement on how information would

---

[11] *See, e.g., Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

be produced, in PDF format, and it appears Plaintiff was backtracking on that agreement. (7/13/21 Tr., ECF No. 177 at 24-25.) However, the Court found Defendant must supplement its response to RFP No. 4 with the additional information it articulated during the hearing as to why the native information regarding the upload is unavailable. (*Id*. at 26.)

On July 20, 2021, Defendant supplemented as ordered. (*See* Certif. of Service, ECF No. 176 and ECF No. 181 at 9-10.) In this supplement, Defendant described the case management system (IRCMS) utilized by the investigative agency charged with investigating complaints of discrimination. It explained who has access to the system, the retention policy of information uploaded to the system, and "the specific documents Plaintiff seeks in this Request are no longer available in the IRCMS system. While the documents uploaded to IRCMS are no longer available in IRCMS, the documents themselves are part of the Investigative File and were produced at LABER-00008334-10637." (ECF No. 181 at 9-10.)

Defendant's response is consistent with its written response and its argument at the July 13 hearing. (*See* 7/13/21 Tr., ECF No. 177 at 24.) Because Defendant supplemented as ordered, Plaintiff failed to timely bring his motion to reconsider, and now fails to present new evidence, his motion to reconsider was **DENIED** regarding Phase IV RFP No. 4.

B.    **Plaintiff's Motion to Compel Re: Phase IV Requests Not Previously Discussed**

The identity of the disputed requests is somewhat confusing. In his motion, Plaintiff disputes the sufficiency of Defendant's responses to his Phase IV RFP Nos. 1, 3-10, and

14-16. But the first page of Plaintiff's Motion references RFP Nos. 1, 3-9, and 12-15 as disputed. However, the body of Plaintiff's Motion mentions neither RFP Nos. 12 nor 13 but does address RFP Nos. 10 and 14-16. Because RFP Nos. 1, 2, 4, and 11 are addressed above, the Court now examines RFP Nos. 3, 5-10, and 14-16 as examined at hearing.

Defendant again argues Plaintiff's Phase IV discovery requests "largely ignore the Court's directive to engage in" only residual necessary discovery and "border on abuse. Defendant has engaged in exhaustive and reasonable searches to obtain and produce documents responsive to Plaintiff's extensive discovery requests throughout this litigation. Plaintiff's demands for more lack merit." (ECF No. 181 at 5.)

### 1. Legal Standards

Under Fed. R. Civ. P.37(a), when a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel. The party seeking discovery bears the initial burden to establish relevance.[12] The Court construes relevance broadly, and it will grant the motion to compel unless "it is clear that the information sought can have no possible bearing on the claim or defense of a party."[13]

If the party seeking discovery has established relevance, or discovery appears relevant on its face, the party resisting discovery bears the burden to support its objections.[14] The party resisting discovery does not satisfy this burden by asserting

---

[12] *Beaty v. Kansas Athletics, Inc.*, No. 19-2137-KHV, 2020 WL 1862563, at *2 (D. Kan. Apr. 14, 2020) (citing *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *2 (D. Kan. June 12, 2019) (other citations omitted).

[13] *Id*. (citing *Gilbert v. Rare Moon Media, LLC*, No. 15-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (other citations omitted)).

[14] *Id*. (citing *Ad Astra Recovery Servs*., 2019 WL 2448569, at *2; *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012)

"conclusory or boilerplate objections" that discovery requests are irrelevant, immaterial, unduly burdensome or overly broad.[15] The objecting party must instead "specifically show" that "despite the broad and liberal construction afforded by the federal discovery rules," each discovery request is objectionable.[16] The party filing the motion to compel, however, "must ask the court to overrule *specific* objections by identifying each objection it seeks to have overruled." *Id.*

"As the party seeking to compel discovery, Plaintiff must ask the court to overrule *specific* objections by identifying each objection it seeks to have overruled.[17] That "brings the objection 'into play' and places the burden on the objecting party to support its objections."[18]

### 2.   Analysis of Requests at Issue

Each disputed request is analyzed individually as follows:

- **RFP No. 3**. In this request, Plaintiff seeks generally "all records that identify the file that was uploaded to the IRCMS, such as the name of the file, the date it was prepared, when it was uploaded, and the identity of the person who uploaded it," for various evaluations, recommendations and similar documents appearing in the ROI. (ECF No. 181 at 12.)

Plaintiff argues Defendant's objection to RFP No. 3 is boilerplate and lacks detail regarding why the request is overly broad, unduly burdensome, or outside the scope of

---

(once "low burden of relevance" is established, legal burden is on party opposing discovery request)).

[15] *Id.* (citing *Ad Astra Recovery Servs.*, 2019 WL 2448569, at *2 (citations omitted)).

[16] *Id.* (citing *Ad Astra Recovery Servs.*, 2019 WL 2448569, at *2 (citations omitted)).

[17] *Randall A. v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2016 WL 11268210, at *2 (D. Kan. Feb. 19, 2016), *objections overruled sub nom. Schneider v. Citimortgage, Inc.*, No. 13-4094-SAC, 2016 WL 1377340 (D. Kan. Apr. 7, 2016) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71, n.37 (D. Kan. 2004)).

[18] *Id.*

Phase IV discovery. (ECF No. 179 at 5-6.) He contends he does not seek documents appearing in ICMS but rather the metadata about documents appearing in the ROI which were prepared using ICMS. (*Id.*)

Defendant argues no records responsive to this request exist. (ECF No. 181 at 12.) Defendant indicated as such in its original response (*see* ECF No. 181-4 at 27) and clarified this in its supplementation (ECF No. 179-4 at 13). Defendant outlines "IRCMS no longer maintains the evaluations, recommendations, and other evidentiary case files uploaded during the course of the investigation, and it also does not have a record or metadata showing the name of specific evidentiary files uploaded to IRCMS, the date individual files uploaded to IRCMS were prepared, when individual files were uploaded to IRCMS, or the identity of the person uploading specific files to IRCMS." (ECF No. 181 at 12.) Again, Defendant clarifies, "While information regarding the uploading of documents contained in the ROI is no longer available, the documents themselves are part of the Investigative File and were produced at LABER-00008334-10637." (*See* ECF No. 179, Ex. C.)

To the extent Plaintiff disagrees with the method or analysis defense counsel have utilized to attempt to retrieve such information, defense counsel has now submitted, as officers of the Court in filed documents, that they have spoken to the necessary IRD personnel to confirm unavailability of the information. (ECF No. 181 at 13.) Defendant's response that no such records exist is accepted, and Plaintiff's motion was **DENIED** as to Phase IV RFP No. 3.

- **RFP Nos. 5-6**.  No. 5 seeks "[f]or each report of selecting official or panel scoring, evaluation, or recommendation that appears in the ROI, provide the native copy of draft and other versions of the same file." Plaintiff provides

an example a specific Bates number, USA-00109281/USA00109282, and asks for "information of the source of each document and similar meta data." This example is related to Charge 2, the November 7, 2014 recommendation of panel member Mr. John Moffatt.

No. 6 seeks "[f]or each report of selecting official or panel scoring, evaluation, or recommendation that appears in the ROI, provide the native copy of all ESI and communications that provide native copies of all ESI that discusses the file or its contents. contains the file or discusses the file." Plaintiff provides an example of a November 7, 2014 recommendation related to Charge 2, contained in the ROI, and asks for Defendant to produce "native copies of all ESI that discusses the file or contents."

Defendant objected to both RFPs as overly broad, unduly burdensome, and not proportional to the needs of the case. Defendant also argues these requests are duplicative of multiple prior requests from Phase II discovery, but especially Phase II RFP No. 8, which sought all documents and/or ESI related to evaluation of applications or similar documents prepared by each selecting official. (*See* ECF No. 181, Ex. 7.)

Plaintiff maintains Defendant's objections to these requests are boilerplate objections and lack detail as to why the requests are overly broad, unduly burdensome or outside the scope of the intended Phase IV discovery. (ECF No. 179 at 11-12.) As to Phase IV RFP No. 5, Plaintiff provides no other argument. Plaintiff does not specifically describe why each of the objections are inappropriate. Therefore, Plaintiff's motion to compel as to RFP No. 5 is denied.

As to RFP No. 6, the request is not only confusing, but is duplicative of prior discovery. Pursuant to the parties' July 2020 agreement, Defendant produced to Plaintiff both the PDF and native versions of all documents provided to defense counsel. Defendant thoroughly outlined the searches it conducted responsive to Phase II RFP No. 8. (ECF No.

181 at 15, Ex. 7.) Defendant contends all privileged documents within its searches for discoverable information have now been identified on its privilege log. The Court reviewed the log prior to the July 13 hearing and found it sufficient. (7/13/21 Tr., ECF No. 177 at 44-45.)

As part of the discussion regarding RFP No. 6, Plaintiff accused Defendant of previously withholding a document produced during the recent conferral process, USA-00148689-00148691. Based on this production, Plaintiff asks the Court to permit him a second deposition of Mr. Moffatt at Defendant's expense. (ECF No. 179 at 12.)

After review, the Court finds the document referenced by Plaintiff is not related to the ROI, as sought by RFP Nos. 5-6, and is therefore nonresponsive to these requests. And, a portion of the email thread at issue was produced in Phase II discovery, and in fact was used by Plaintiff during Mr. Moffatt's deposition. (*See* ECF No. 181, Ex. 8, including excerpts from the Moffatt Dep.) Therefore, Plaintiff had notice of the existence of this document before Mr. Moffatt's deposition, and Defendant's belated production of this document with questionable relevance is not a sufficient basis to now reopen discovery at this late stage.

For these reasons, Plaintiff's motion was largely **DENIED** as to Phase IV RFP Nos. 5 and 6. However, during the discussion at hearing and in light of the recently-produced document, the Court permitted Plaintiff to submit a follow-up deposition question, in writing per Fed. R. Civ. P. 31 for Mr. Moffatt's written response. Plaintiff was to submit such question to defense counsel by September 17, 2021 with the witness's response due October 9, 2021. As of the date of this opinion, no further discussion regarding this order

has been directed to the Court. A Certificate of Service of Mr. Moffatt's Response to Plaintiff's September 17, 2021 Question (ECF No. 191) was served on October 5, 2021, so the undersigned considers this issue concluded.

- **RFP No. 7**. In RFP No. 7, Plaintiff seeks native copies of all ESI and communications for each of the selection official or panel recommendations that appear in the ROI, "to include the original source file and all notes and records used to prepare it." Plaintiff again references Charge 2 and all "ESI and communications between Mr. Moffatt and Mr. Bennett" as it relates to the use of the information as a template for recommendations in other vacancies. (ECF No. 181 at 18.)

On review, the Court finds RFP No. 7 is duplicative of Phase II discovery because, like so many requests in Phase II, it seeks copies "of all ESI and communications that contain the file or discusses the file" for documents contained in the ROI. Through multiple discovery conferences and briefing, the Court concluded the searches conducted by Defendant in Phase II were reasonable and thorough and there is no reason to reevaluate or further expand those searches.

To the extent Plaintiff seeks a "template" which selecting officials or panel members may have used for their recommendations, and this is a new search he now wishes Defendant to undertake, this is outside the scope of Phase IV discovery. Prior such templates have been produced through Phase II discovery (*see* ECF No. 181, Ex. 9) to the extent they fell within the previously-approved search terms. Plaintiff also had the opportunity to depose the selecting officials on this topic and did not. At this stage of the case, the Court will not permit further reopening of discovery.

Regarding the "Oshkosh memorandum" discussed by Plaintiff, this is apparently a memo referenced in an email string for which the initiating or earlier emails did not contain

the relevant search terms, so only the later documents which contained the search terms —

including a November 7, 2014 email from Mr. Moffatt—were produced. Once Plaintiff

specifically identified this document in discovery, Defendant pointedly searched for the

memorandum and produced it. Plaintiff argues this is evidence of Defendant's intentional

deceit because it possessed this document all along. The Court disagrees. To search the

wide universe of documents requested through discovery, Defendant utilized appropriate

search terms. This "Oshkosh memorandum" did not fall within the scope of those terms;

however, the November 7, 2014 email—a part of the email string—was produced by

Defendant during Phase II, both in PDF and native format, on September 2, 2020. (ECF

No. 181 at 20.) Plaintiff had ample time to review this discovery and request anything

additional he felt was necessary to his case.

For the above reasons, the Court **DENIED** Plaintiff's motion as to Phase IV RFP

No. 7.

- **RFP No. 8**. This RFP seeks "[f]or each declaration appearing in the ROI provide all versions of it prior to the date it was uploaded to IRCMS."

Plaintiff argues the retention policy of the IRCMS "should have resulted in the

[retention] of the records to the EEO office independently of the actual report, and the meta

data retained for 15 years," so the records should exist. He contends Defendant has either

not adequately searched for or destroyed the information. (ECF No. 179 at 16.)

Defendant's primary objection is this request is duplicative of Phase II RFP No. 64,

and as such, Defendant has already conducted comprehensive searches for such documents

and produced all nonprivileged information responsive to the request. (*See* ECF No. 181

at Ex. 12.)  It argues any further searches would be duplicative, overly broad, an undue burden, and lack proportionality, along with being outside the scope of Phase IV. Plaintiff already filed a motion to compel regarding Phase II RFP No. 64, which was denied, and Plaintiff did not seek review of that specific ruling. (*See* Order, ECF No.  137 at 18-20, 23-24; and Pl.'s Motion for Review, ECF No. 143.)

The Court finds this request is duplicative of Phase II RFP No. 64, and the Court accepts Defendant's repeated explanation that IRCMS has no metadata responsive to either Phase IV RFP No. 8 or Phase II RFP No. 64. Therefore, Plaintiff's motion was **DENIED** as to Phase IV RFP No. 8.

- **RFP No. 9**: This request seeks "[f]or each declaration that appears in the ROI, provide all records that identify the file that was uploaded to the IRCMS, such as the name of the file, the date it was prepared, when it was uploaded, and the identity of the person who uploaded it."

As with others, Defendant objected to this request as vague and confusing, and stated if Plaintiff seeks "documents already produced, but in a different format, Defendant objects to this request as overly-broad, unduly burdensome, and not proportional to the needs of this case, as duplicative of prior discovery, and as beyond the scope" of Phase IV discovery. (ECF No. 179 at 16.) Defendant later supplemented its response, as in its response to RFP No. 4, to explain the case management system (IRCMS) utilized by the investigative agency charged with investigating complaints of discrimination. It explained who has access to the system, the retention policy of information uploaded to the system, and "the specific documents Plaintiff seeks in this Request are no longer available in the IRCMS system. While the documents uploaded to IRCMS are no longer available in

IRCMS, the documents themselves are part of the Investigative File and were produced at LABER-00008334-10637." (ECF No. 181-3 at 20.)

Plaintiff presents two arguments: one, that the records <u>should</u> exist due to the retention polices of the IRCMS, and two, that the request is for documents in the ROI, "not as they may have existed in IRCMS." (ECF No. 179 at 17.)

Defendant has repeatedly stated this information is not available in IRCMS. To the extent Plaintiff seeks some other type of record, his request is unclear, and as stated above, the Court will not reopen discovery at this stage of the case. For these reasons, Plaintiff's motion was **DENIED** as to Phase IV RFP No. 9.

- **<u>RFP No. 10</u>**. This request seeks "For each declaration that appears in the ROI which was shared by the declarant or investigator with any individual, provide the ESI and communications associated with the sharing of each declaration for the period January 1, 2015 to December 31, 2016."

In response to this request, Defendant again argues it has already searched for, and produced, all known responsive non-privileged/work product protected information. Defendant outlines its search terms utilized and analyzed by the Court *ad nauseam* through the discovery period.

Plaintiff argues the objection is boilerplate and lacks detail, and he again takes issue with the ESI searches previously undertaken. He specifies the Defendant "provided relevant documents from Ms. Horton's email account, [but] there is no evidence that her email account was ever searched at all." (ECF No. 179 at 18.)

Defendant argues its discovery responses in Phase II, as well as its response to this Phase IV RFP No. 10, specifically outline "Melissa Horton's work e-mail account to the

extent documents include the term 'Laber'" was a location from which Defendant produced documents in Phase II. (ECF Nol. 181 at 23, citing Ex. 12, Def's Resp. to Phase II, RFP 64, pp. 5-6.) Defendant both searched the work email accounts of the applicable Selecting Officials, Panel Members, and HR Personnel for the relevant time frame, and collected all "non-privileged e-mails from this time period containing the term 'Laber' from Melissa Horton's and Richard Harris's e-mails." (ECF No. 181-3 at 21.) Plaintiff takes issue with the method of search of Ms. Horton's email, given that she was not an employee of DCMA and asked to search her own email. (*See* 9/13/21 Tr., ECF No. 193 at 70-75.)

The Court finds Defendant has sufficiently responded through previous discovery. To the extent Plaintiff seeks declarations sent by selecting officials to counsel, these are attorney-client privileged and have been identified on Defendant's privilege log, which has not been challenged in this motion. And, as noted by Defendant, Plaintiff has already received both the initial drafts of the declarations provided by the EEO investigator to the witnesses, and the final declarations provided by witnesses. As for Ms. Horton, not only does the Court find the search of her email appropriate, the emails Ms. Horton sent to the selecting officials would also have appeared through the search of the inboxes of the selecting officials, which were specifically searched. For these reasons, the Court **DENIED** Plaintiff's motion as to Phase IV RFP No. 10.

- **RFP No. 14**. This request seeks "[c]opies of all legal holds placed on information related to EEO complaints prior to the initiation of a civil suit for the period 2015 to the present."

Defendant argues Plaintiff did not articulate why legal holds issued in cases bear any relevance and therefore fails to meet his burden to demonstrate relevance. According

to Defendant, after conferral Plaintiff agreed to limit his request to the 2015-2017 timeframe, and Defendant supplemented its response to note the legal hold issued regarding the vacancies in this case did not issue until after 2017. (ECF No. 181 at 24.) Also, because DCMA does not maintain legal hold information in a central location, it would be burdensome for defense counsel to locate each DCMA attorney who handled EEO complaints between 2015-2017 and individually inquire regarding any legal holds issued. Not only would this take significant time, but Defendant contends it bears no relevance to the issues in this case. (*Id.* at 24-25.)

During discussion at the September 13 conference, defense counsel clarified no legal hold letter was issued regarding the claims in this case before 2017, and no legal hold was issued prior to the initiation of the civil suit. Defense counsel also stated no policies exist regarding the EEO complaints. (*See* 9/13/21 Tr., ECF No. 193 at 80-85.)

The Court agrees Plaintiff has not met his burden to establish the relevance of legal holds regarding vacancies not at issue in this lawsuit. And, to search for them, particularly in this phase of discovery, would not be proportional to the needs of this case, given the lack of relevancy and likelihood of the privileged nature of such communications. Defendant has sufficiently responded regarding the legal holds issued relative to the claims in this case. Therefore, Plaintiff's motion was **DENIED** as to Phase IV RFP No. 14.

- **RFP No. 15**. Plaintiff seeks "[c]opies of all ESI and communications from or to Douglas Yee for the period 2015 to his death related to the instant matter *whether or not they contain "Laber" not previously provided*. For example, questions from Mr. Yee to the EEO office, communications with his supervisors, co-workers, HR personnel, and the investigator." (emphasis added)

Defendant responded by objecting to this request as overly broad, unduly burdensome, and lacking in proportionality. Defendant also responded, "to the extent [the request] seeks additional communications to or from Doug Yee not previously produced. Defendant has already searched for and produced all documents from Mr. Yee's email account which (1) include the term "Stan" or "Laber," are related to Plaintiff, and were sent or received from January 1, 2014 through January 1, 2017, (2) include the term "affidavit," "declaration," or "testimony," refer to the declaration of Doug Yee which appears in the ROI, and were sent or received from January 1, 2015 through September 4, 2015, or (3) include the terms "EEO" and either "Stan" or "Laber" and were sent or received from June 19, 2018 through the date of Mr. Yee's death." (ECF No. 181 at 25.)

Plaintiff's Motion contends the objections are boilerplate, based upon the wrong time period, and suggests Defendant's search was limited to "criteria of its own choosing." Plaintiff contends the Court in its July 13, 2021 ruling agreed the requested time period was "appropriate because it covered the period wherein Mr. Yee was involved in communication related to mandatory compliance for training regarding EEO." (ECF No. 179 at 20.)

This request relates to Phase IV RFP No. 11, which was discussed at the July 13 hearing. During that hearing, Defendant was ordered to supplement its responses after an expanded search of emails involving Mr. Yee. Defendant was to search the DCMA email accounts of five specific custodians (Mr. Bennett, Mr. Moffatt, Mr. Hanson, Mr. Wirt, and Mr. Yee) using the prior search terms but expanded to the date of Mr. Yee's death in 2020.

(*See* 7/13/21 Tr., ECF No. 177 at 33-34.) Defendant represents it has searched and supplemented as previously ordered.

During the September 13 hearing, Plaintiff referenced a specific email from a supervisor to an attorney in the EEO office, noting the individual spoke with Mr. Yee and Mr. Yee indicated he was remorseful. Plaintiff believed he may have received it from the EEO office and reviewed it, and the Defendant's failure to produce it in its most recent search is evidence of Defendant's incomplete search. However, Plaintiff was unable to locate said email. (9/13/21 Tr., ECF No. 193 at 86-91.)

Following discussion at the September 13 hearing, Plaintiff was instructed to locate the subject email and confer with defense counsel regarding his specific needs. The Court's ruling as to Plaintiff's Phase IV RFP No. 15 was reserved until Plaintiff had the opportunity to locate the document discussed and to confer with defense counsel regarding any specific items related to that document he wishes to discover. During the hearing, defense counsel noted it located during the discussion a document which appeared to match the one Plaintiff was seeking. (9/13/21 Tr., ECF No. 193 at 104-105.) The Court ordered any discussion and production regarding RFP No. 15 to conclude no later than September 30, 2021. The Court has received no further communication from the parties regarding this dispute and considers it resolved.

Therefore, for the reasons set forth above, Plaintiff's motion is **DENIED** regarding Phase IV RFP No. 15.

- **<u>RFP No. 16</u>**. This request seeks ""[a]ll emails in Mr. Moffatt's Hotmail email account in native format with native format attachments for the period

> September 1, 2014 to the present which are related to the instant suit, or to Plaintiff, or to his duties to assist in personnel recruitment at DCMA."

Here, Plaintiff seeks information regarding Mr. Moffatt's personal email account, not his DCMA official account. He argues Defendant has "custody or control" over Mr. Moffatt's personal account. (ECF No. 179 at 20-21.) He cites one document produced in discovery, USA-00109283, which appears to be an email sent from Moffatt's DCMA email to his own personal email at moffatt66@hotmail.com. (*Id*. at 21.) Plaintiff seeks "all of the emails and attachments to emails that Mr. Moffatt received *in his DCMA account* from his Hotmail account or *sent from his DCMA account* to his Hotmail account." (emphasis added.)

Defendant objected on the basis it "does not have possession, custody, or control over Mr. Moffatt's Hotmail email account and thus, has no documents responsive to this request." (ECF No. 181 at 26.) Additionally, Defendant notes Plaintiff deposed Mr. Moffatt, and Moffatt testified he cleared this account "several times over" since November 2014. He also testified that he and the selecting official, Mark Bennett, did not secretly communicate across their personal e-mails, and it is not possible that notes from the panelists are in his Hotmail account as he "know[s] it's not there." (Moffatt Dep., ECF No. 181-1, 85:14-18.) Further, in Defendant's efforts to obtain and produce documents responsive to Plaintiff's Phase II RFPs, they asked Mr. Moffatt whether he had any documents relating to Plaintiff's Claim 2 and he did not. (*See* ECF No. 179 at 20.[19])

---

[19] Citing email from defense counsel to Plaintiff (Aug. 2, 2021).

The Court agrees with Defendant's analysis. The cases cited by Plaintiff, including *Tomlinson v. El Paso Corp*., 245 F.R.D. 474, 476 (D. Colo. 2007); *Ice Corp. v. Hamilton Sundstrand Corp*., 245 F.R.D. 513, 517 (D. Kan. 2007); *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501– 02 (D. Kan. 2001); and *Noaimi v. Zaid*, 283 F.R.D. 639, 641 (D. Kan. 2012, are not persuasive. One case is from the District of Colorado, and other District of Kansas cases are distinguishable on their facts. One case, *Ice Corp*., has been explicitly described as "flawed and not persuasive."[20]

More persuasive is the analysis presented in *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Nemaha Brown Watershed Dist*.[21]  As the party seeking production, Plaintiff bears the burden to prove that Defendant has control, under Fed. R. Civ. P. 34, over Mr. Moffatt's personal email account.[22] In *Kickapoo*, the court found the plaintiff did not demonstrate "the [defendant] District has the legal right to obtain the documents requested on demand from former District Board members, staff, or employees." This was, in part, because there was no law or policy granting access to such information. The court found it could not compel the former members of defendant's "Board of Directors, former staff, or former employees to produce documents that are in their possession but are not in the possession of the District itself."[23] The court also found the District did not have possession, custody or control of the personally-owned computers and electronic

---

[20] *Noaimi v. Zaid*, 283 F.R.D. 639, 641 (D. Kan. 2012) (noting "the *Ice Corporation* standard quoted by defendants is flawed and not persuasive.")
[21] 294 F.R.D. 610, 613-14 (D. Kan. 2013).
[22] *Id*. at 613-14 (internal citations omitted).
[23] *Id*. at 614.

equipment of those Board members, employees, and staff. "As a result, the District cannot be compelled to produce these items for inspection under Rule 34."[24]

As noted above, Defendant has previously sought documents from Mr. Moffatt—including a search of his official DCMA account falling within its Phase II search parameters—and Plaintiff has deposed Mr. Moffatt. Any emails sent to or from Mr. Moffatt's DCMA account—whether or not his personal Hotmail account were searched—would have been produced through prior discovery (*see, e.g*., the search of his email as part of responses to RFP No. 15, above). For these reasons, Plaintiff's motion as to Phase IV RFP No. 16 was **DENIED**.

## IV.    Other Scheduling / Status

Following discussion of the discovery disputes during the conference, the Court addressed the overall progress of this case. Plaintiff's deadline to submit expert disclosures was September 3, 2021, but the docket reflected none. However, Plaintiff indicated he served expert disclosures on Defendant but had not filed a formal certificate of such service. Plaintiff was instructed to file the certificate of service of his expert disclosure, which he did on September 17. (ECF No. 188.)  Defendant's deadline to serve expert disclosures was set for October 29, 2012, and later extended to November 29, 2021. (*See* Motion, ECF No. 189; Order, ECF No. 190.)

To permit a period for the conclusion of written expert discovery and any expert depositions, a status conference was set for December 2, 2021. Following Defendant's extension of its expert disclosure deadline, the conference was continued to **January 6,**

---

[24] *Id*. at 619.

**2022 at 10:00 a.m. by Zoom videoconference** before the undersigned. (Order, ECF No. 190.) Expert discovery MUST be concluded prior to said conference. At this conference, the Court will establish deadlines for submission of a proposed pretrial order and pretrial conference. Prospects for mediation or other alternative dispute resolution will also be discussed during the pretrial conference.

## V.   Other Arguments

At various times during the September 13 hearing, Plaintiff presented argument regarding his desire to file a written Reply brief in support of his motion to review and compel. (*See, e.g.,* 9/13/21 Tr., ECF No. 193 at 5, 106.) He indicated he was unaware the Court would be making rulings on his discovery requests during the September 13, 2021 hearing. (*Id.* at 106.) However, throughout the life of this matter, the undersigned has held repeated conferences (*see supra* note 2) to address discovery disputes, and the method by which this particular conference occurred is no different. More explicitly, the Court's August 19, 2021 order was abundantly clear:

> . . . the Court will permit Plaintiff's filing of a motion to compel by no later than 8/30/21. No further extension will be permitted. Defendant will have 7 days to respond to said motion; therefore, any response should be filed no later than 9/7/21. ***No replies will be permitted. Any such motion will be discussed and decided at the conference currently set for 9/13/21.*** It is the Court's intent this will be the final conference to discuss written discovery.

(Order, ECF No. 178, emphasis added.)  Therefore, Plaintiff's request to file a written Reply was **DENIED**. Plaintiff was provided ample opportunity to present his arguments during the motion hearing.

## VI.    Conclusion

For the reasons discussed in the September 13, 2021 hearing and as set forth above, in the Court's discretion it enters the following orders:

**IT IS THEREFORE ORDERED** that Defendant's motion to file certain exhibits under seal (**ECF No. 180**) is **GRANTED**, with the addition of Ex. 8 to Defendant's Response. Defendant's Exhibits 8, 9, and 11 to its Response brief (ECF No. 181) may be filed under seal with redacted versions filed on the public docket.

**IT IS FURTHER ORDERED** that Plaintiff's Motion (**ECF No. 179**) for reconsideration of issues ruled upon in the Court's July 13, 2021 discovery conference is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel discovery (**ECF No. 179**) is **DENIED** in large part, with the following reservations: as to Plaintiff's Phase IV RFP No. 6, the request was denied in part and granted in part, in that Plaintiff was permitted to submit a follow up deposition question, in writing for Mr. Moffatt's written response. (*See* discussion *supra* pp. 17-18.) The Court's ruling regarding Plaintiff's Phase IV RFP No. 15 was reserved until Plaintiff could locate the document discussed at hearing and to confer with defense counsel regarding any specific items related to that document he wished to discover. Discussion and production regarding RFP No. 15 was to conclude no later than September 30, 2021. (*See* discussion *supra* p. 25.)

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 21st day of October 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge
