UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STAN LABER,

      Plaintiff,

vs.                            Case No. 18-1351-JWB-GEB

LLOYD J. AUSTIN, III, SECRETARY,
UNITED STATES DEPARTMENT OF
DEFENSE,

      Defendant.

## FINAL PRETRIAL ORDER

Pretrial conferences were conducted in this case on March 11, and March 22, 2022, by U.S. Magistrate Judge Gwynne E. Birzer.  The plaintiff, Stan Laber, appeared pro se. The defendant, Lloyd J. Austin, III, Secretary, United States Department of Defense, appeared through counsel, Assistant United States Attorneys Chris Allman, Tyson Shaw, Sarah Burch Macke, and Steven Brookreson.

This pretrial order supersedes all pleadings and controls the subsequent course of this case.  It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice.  Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

1.      **PRELIMINARY MATTERS.**

      a.      **Subject-Matter Jurisdiction.**  Subject-matter jurisdiction is invoked under 28 U.S.C. § 1331 and is not disputed.

  **b.**  **Personal Jurisdiction.** The court's personal jurisdiction over the parties is not disputed.

  **c.**  **Venue.** Venue in this court is not disputed.

  **d.**  **Governing Law.** Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

> Federal law governs the claims and defenses in this case. Plaintiff's claims for gender and religious discrimination, as well as retaliation, are governed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff's claims for age discrimination are governed by the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

**2.** **STIPULATIONS.**

  **a.**  The following facts are stipulated:

  1.  Plaintiff is a male born in 1945, who observes the Jewish religion.

**Plaintiff's Employment/Application History**

  2.  Plaintiff began his employment with the Department of Defense (DoD) in August 1981, as a GS-0305-03 File Clerk.

  3.  On January 9, 2015, Plaintiff retired from government service. At the time of his retirement, Plaintiff was covered by the Civil Service Retirement System (CSRS).

  4.  Plaintiff's salary on the date of his retirement was $139,642.

  5.  Upon retirement, Plaintiff received a lump-sum payout for 569.75 hours of unused annual leave.

6. A CSRS employee's basic annual annuity is calculated by first determining the employee's average salary for the employee's highest three consecutive years, (which for Mr. Laber, was from 1/10/2012 to 1/09/2015) and equaled $136,064, and determining the employee's "years of service" or "length of service." Length of service is determined by adding all periods of creditable service with the period represented by unused sick leave, and then eliminating any fractional part of a month from the total. Once the "average salary" and "years of service" are calculated, three additional computations are done and added together to determine the basic annual annuity: (1) 1.5% of the average salary multiplied by the first five years of service, (2) 1.75% of the average salary multiplied by service between 5 and 10 years, and (3) 2% of the average salary multiplied by the remaining years of service.

7. Mr. Laber began receiving annuity payments in 2015 and his annuity was calculated, using the above formula, as follows:

**Basic Annuity Computation**

| | |
|---|---|
| 1.5 % of average salary multiplied by first 5 years of service | $10,204.80 |
| 1.75 % of average salary multiplied by service between 5 and 10 years | $11,905.60 |
| 2 % of average salary multiplied by remaining service        ( 25.083333 ) | $68,258.77 |
| **Basic Annual Annuity** | $90,369.17 |

8. Mr. Laber's annuity has increased periodically since 2015 and is subject to future periodic increases.

## Charge 2 – Vacancy Number SWH8149YEHA3385731204424

9. On September 18, 2014, Plaintiff submitted his application for this GS-1102-11 full time, permanent Contract Administrator position in Milwaukee, WI. This is the vacancy at issue in Charge 2 of Plaintiff's Second Amended Complaint.

10. The salary range for this position when posted was $59,983 to $77,978.

11. Minerva Coffey, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy, by including Plaintiff's name on the Certificate of Eligibles.

12. Mark Bennett served as the Selecting Official for this vacancy.

13. Lt. John Moffatt, Douglas Yee, and Maj. Aaren Hanson served as panel members for this vacancy, with Lt. Moffatt serving as the panel lead.

14. Plaintiff was selected to interview and interviewed for this vacancy via phone on November 5, 2014, at approximately 9 AM CST.

15. Interviews were conducted with applicants from the Certificate of Eligibles containing Plaintiff's name on November 5, 6, and 7, 2014, with the last applicant to interview, Mr. Foss, interviewing at approximately 8 AM CST Friday November 7, 2014.

3

16.     On December 30, 2014, Plaintiff identified this position, among others, in an email to DCMA's EEO office as a vacancy for which he believed he had been discriminated and/or retaliated against in the hiring process.

**Charge 5 – Vacancy Number SWH814EHA3492621236403**

17.     On or about October 22, 2014, Plaintiff submitted his application for this GS-1102-11 full time, permanent Contract Administrator position in Fort Wadsworth, NY.   This is the vacancy at issue in Charge 5 of Plaintiff's Second Amended Complaint.

18.     The salary range for this position when posted was $65,377 to $84,990.

19.     Charyse McDaniel, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy, by including Plaintiff's name on the Certificate of Eligibles.

20.     Eileen Kelly served as the Selecting Official for this vacancy.

21.     Maria Chappe, Helen Meija, and Vasken Kolancian served as panel members for this vacancy.

22.     Plaintiff was selected to interview and interviewed for this vacancy via phone on or about Jan. 7, 2015.

23.     The panel submitted its results from the interviews on Jan. 15, 2015, and an offer was made to the selectee, Ellen Reed, on or about Feb. 2, 2015.  The selectee declined.

24.     Plaintiff was not selected for this vacancy.

**Charge 6 – Vacancy Number SWH814EHA3923661270260**

25.     On or about December 15, 2014, Plaintiff submitted his application for this GS-1910-11 full time, permanent Quality Assurance Specialist (Electronics) position in San Diego, CA.  This is the vacancy at issue in Charge 6 of Plaintiff's Second Amended Complaint.

26.     The salary range for this position when posted was $63,076 to $81,999.

27.     On or about April 14, 2015 Plaintiff was notified that he was not referred to the Selecting Official.

28.     Phyllis Williams is the HR Specialist that reviewed Plaintiff's application and did not include him on the Certificate of Eligibles.

**Charge 7 – Vacancy Number SWH814EHA4045651268773**

29.     On or about December 15, 2014, Plaintiff submitted his application for this GS-1150-11 full time, permanent Industrial Specialist (General) position in Pittsfield, MA.  This is the vacancy at issue in Charge 7 of Plaintiff's Second Amended Complaint.

30.     The salary range for this position when posted was $57,982 to $75,376.

4

31.　　Charyse McDaniel, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy on February 3, 2015, by including Plaintiff's name on the Certificate of Eligibles.

32.　　Russell Sherman served as the Selecting Official for this vacancy.

33.　　Mr. Sherman did not utilize a panel for this vacancy.

34.　　Plaintiff was not interviewed for this position.

35.　　Mr. Sherman selected Mark Lis, a male born in 1964, to fill this position.

36.　　Plaintiff was not selected for this vacancy.

## Charge 9 – Vacancy Number SWH814EHA4149481271532

37.　　On or about December 15, 2014, Plaintiff submitted his application for this GS-1910-11 full time, permanent Quality Assurance Specialist position in Syracuse, NY.  This is the vacancy at issue in Charge 9 of Plaintiff's Second Amended Complaint.

38.　　The salary range for this position when posted was $57,982 to $75,376.

39.　　Rachel Owens is the HR Specialist that reviewed Plaintiff's application and did not include him on the Certificate of Eligibles.

40.　　Ms. Owens issued the Certificate of Eligibles for this vacancy.

## Charge 10 – Vacancy Number SWH814EHA4293661275778

41.　　On or about December 15, 2014, Plaintiff submitted his application for this GS-1515-12 full time, permanent Operations Research Analyst position in Syracuse, NY.  This is the vacancy at issue in Charge 10 of Plaintiff's Second Amended Complaint.

42.　　The salary range for this position when posted was $69,497 to $90,497.

43.　　Elizabeth Infante, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy on February 4, 2015, by including Plaintiff's name on the Certificate of Eligibles.

44.　　Wayne Wall served as the Selecting Official for this vacancy.

45.　　Mr. Wall did not utilize a panel for this vacancy.

46.　　The selectee for this position was Maxwell Edwards, a male younger than Plaintiff.

47.　　Plaintiff was not selected to interview for this vacancy.

## Charge 11 – Vacancy Number SWH814EHA4294541275650

48.　　On or about December 15, 2014, Plaintiff submitted his application for this GS-1150-11 full time, permanent Industrial Specialist (General) position in Syracuse, NY.  This is the vacancy at issue in Charge 11 of Plaintiff's Second Amended Complaint.

49. The salary range for this position when posted was $57,982 to $75,376.
50. Elizabeth Infante, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy on February 9, 2015, by including Plaintiff's name on the Certificate of Eligibles.
51. Julie White served as the Selecting Official for this vacancy.
52. Ms. White did not utilize a panel for this vacancy.
53. Plaintiff was selected to interview and interviewed via phone with Ms. White for this position.
54. Ms. White selected Nichole Landphere, a female younger than Plaintiff, for this position.
55. Plaintiff was not selected for this vacancy.

**Charge 12 – Vacancy Number SWH814EHA4415191286045**
56. On or about January 4, 2015, Plaintiff submitted his application for this GS-1102-11 full time, permanent Contract Administrator position in San Diego, CA. This is the vacancy at issue in Charge 12 of Plaintiff's Second Amended Complaint.
57. The salary range for this position when posted was $63,076 to $81,999.
58. Monique King, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy on February 13, 2015, by including Plaintiff's name on the Certificate of Eligibles.
59. Gregory Russell and Bridget Guillory served as the Selecting Officials for this vacancy.
60. Karen Stierer, Clarence Westbrook, and Jill [Mejia] Mahdessian served as panel members for this vacancy, with Jill [Mejia] Mahdessian serving as the panel lead.
61. Plaintiff was not interviewed for this vacancy and not selected for this vacancy.
62. Nguyen Truong, a male, was the first selectee and after he declined, Kristen Zeimantz, a female younger than Plaintiff, was selected for this vacancy.

**Charge 13 – Vacancy Number SWH814P31914791196942**
63. On or about August 29, 2014, Plaintiff submitted his application for this GS-1910-12 full time, permanent Quality Assurance Specialist position in Herzliyya, Israel.  This is the vacancy at issue in Charge 13 of Plaintiff's Second Amended Complaint.
64. Monique King is the HR Specialist that reviewed Plaintiff's application and did not include him on the October 7, 2014, Certificate of Eligibles.

65.     On December 30, 2014, Plaintiff identified this position in an email to DCMA's EEO office as a vacancy for which he believed he had been discriminated and/or retaliated against in the hiring process.

**Charge 15 – Vacancy Number SWH814P44028791264857**

66.     On or about December 8, 2014, Plaintiff submitted his application for this GS-1102-12 full time, permanent Contract Administrator position in Endicott, NY.  This is the vacancy at issue in Charge 15 of Plaintiff's Second Amended Complaint.

67.     The salary range for this position when posted was $69,497 to $101,866.

68.     Monique King, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy, by including Plaintiff's name on a February 1, 2015, Certificate of Eligibles.

69.     Robert Clark served as the Selecting Official for this vacancy.

70.     Joy Parish, Homer La Rue, Gary Hmurcik, and Marianne Del Greco served as panel members for this vacancy, with Joy Parish serving as the panel lead.

71.     Plaintiff was selected to interview and interviewed for this vacancy in mid-February 2015.

72.     Plaintiff was not selected for this vacancy.

73.     The panel recommended one female and two males, Sheila Holmes, Jeffrey Strong, and LeRoy Grant, as potential selectees for this position.

74.     Mr. Clark selected Sheila Holmes, and after the selectee rescinded acceptance, Mr. Clark selected Jeffrey Strong, a male younger than Plaintiff, for this vacancy.

**Charge 18 – Vacancy Number SWH814P62954451226646**

75.     On or about October 14, 2014, Plaintiff submitted his application for this GS-1910-11 Quality Assurance Specialist position in San Antonio, TX. This is the vacancy at issue in Charge 18 of Plaintiff's Second Amended Complaint.

76.     The salary range for this position when posted was $57,982 to $75,376.

77.     Rachel Owens is the HR Specialist did not refer Plaintiff for further consideration by DCMA.

78.     On December 30, 2014, Plaintiff identified this position in an email to DCMA's EEO office as a vacancy for which he believed he had been discriminated and/or retaliated against in the hiring process.

**Charge 19 – Vacancy Number SWH814P63363521260556**

79.     On or about December 4, 2014, Plaintiff submitted his application for this GS-1910-11/12 full time, permanent Quality Assurance Specialist (Nuclear) position in Milwaukee, WI.  This is the vacancy at issue in Charge 19 of Plaintiff's Second Amended Complaint.

80.     The salary range for this position when posted was 57,982 to $106,955.

81.     Elizabeth Infante is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

82.     Ms. Infante issued a Certificate of Eligibles for this vacancy.

**Charge 20 – Vacancy Number SWH814P63709691254693 or HRQRSWH814P63709691254693**

83.     On or about November 17, 2014, Plaintiff submitted his application for this GS-1102-12 full time, permanent Contract Administrator position in Woburn, MA.  This is the vacancy at issue in Charge 20 of Plaintiff's Second Amended Complaint.

84.     The salary range for this position when posted was $75,974 to $98,764.

85.     The area of consideration for the vacancy was:  (1) Current Department of Defense Employees, (2) Reinstatement Eligibles, (3) Veterans and Preference Eligible under Veterans Employment Opportunity Act (VEOA) of 1998, and (4) Interagency Career Transition Assistance Plan, and (ICTAP) Eligibles.

86.     On November 26, 2014, Plaintiff was informed that he was not referred because he was outside the area of consideration: "IAOC You were not referred for this position because you were outside of the area of consideration."

87.     Christina Swisher is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

**Charge 23 – Vacancy Number SWH814P6EHA1436321174634**

88.     On or about August 1, 2014, Plaintiff submitted his application for this GS-1102-11 full time, permanent Contract Administrator position in Boston, MA.  This is the vacancy at issue in Charge 23 of Plaintiff's Second Amended Complaint.

89.     The salary range for this position when posted was $63,386 to $82,402.

90.     Deana Hansford, the HR Specialist reviewing Plaintiff's application, referred Plaintiff to the DCMA Selecting Official for this vacancy on September 15, 2014, by including Plaintiff's name on the Certificate of Eligibles.

91.     Dane Hutchison served as the Selecting Official for this vacancy.

92. Michael Delloiacono, Cheryl Gonzalez, Jayson Thorton, Paul Sullivan, and Deborah Jansen served as panel members for this vacancy, with Mr. Delloiacono serving as the panel lead.

93. Plaintiff was selected to interview for this position, but was not interviewed.

94. The panel recommended four individuals for selection, all male:  Robert Bauke, Kelly Byers, Ralph Housman, and Jason Bullen.

95. Offers were made to Mr. Bauke and Mr. Byers, and both declined.

96. Mr. Hutchison requested additional names to review and ultimately selected Phillip Bort, a male younger than Plaintiff, to fill this vacancy.

97. Plaintiff received a notice that the Selecting Official did not select him for this position. The notice also stated:

    Code Definition: Withdrawn from Consideration
    Code Explanation: The selecting office has indicated that you requested to be withdrawn from further consideration.

98. On December 15, 2014, Plaintiff e-mailed the AST applicant help inbox and stated that he had no communication with the Selecting Official and did not request to be withdrawn from further consideration.

**Charge 24 – Vacancy Number SWH814P6EHA1510901197316**

99. On or about September 4, 2014, Plaintiff submitted his application for this full time, permanent GS-1150-11 Industrial Specialist (General) position in Syracuse, NY.  This is the vacancy at issue in Charge 24 of Plaintiff's Second Amended Complaint.

100. The salary range for this position when posted was $57,982 to $75,376.

101. Gilbert Conners, the HR Specialist, referred Plaintiff to the DCMA Selecting Official for this vacancy on September 19, 2014, by including Plaintiff's name on the Certificate of Eligibles.

102. Julie White served as the Selecting Official for this vacancy.

103. Ms. White did not utilize a panel for this vacancy.

104. Plaintiff was not selected to interview for this vacancy.

105. Ms. White selected Robert Natale, a male, for this position, and after he declined, selected Aric Dingman, a male younger than Plaintiff, for this position.

106. On December 30, 2014, Plaintiff identified this position in an email to DCMA's EEO office as a vacancy for which he believed he had been discriminated and/or retaliated against in the hiring process.

**Charge 26 – Vacancy Number SWH814P73154221245352**

107.   On or about November 17, 2014, Plaintiff submitted his application for this GS-1150-11 full time, permanent Industrial Specialist (General) position in Milwaukee, WI.   This is the vacancy at issue in Charge 26 of Plaintiff's Second Amended Complaint.

108.   The salary range for this position when posted was $59,983 to $77,978.

109.   Kyshia Hayes is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

110.   Ms. Hayes issued a Certificate of Eligibles for this vacancy.

111.   On or about January 8, 2015, Plaintiff was notified that he was not referred to the Selecting Official because:   "ID You do not meet the minimum education and/or experience requirements for this specialty".

**Charge 27 – Vacancy Number SWH814P83037751225507**

112.   On or about October 14, 2014, Plaintiff submitted his application for this GS-1910-11 full time, permanent Quality Assurance Specialist position in San Diego, CA.   This is the vacancy at issue in Charge 27 of Plaintiff's Second Amended Complaint.

113.   The salary range for this position when posted was $63,076 to $81,999.

114.   Phyllis Williams is the HR Specialist that and did not refer Plaintiff for further consideration by DCMA.

115.   Ms. Williams issued a Certificate of Eligibles for this vacancy.

116.   On December 30, 2014, Plaintiff identified this vacancy in an email to DCMA's EEO office as a vacancy for which he believed he had been discriminated and/or retaliated against in the hiring process.

**Charge 28 – Vacancy Number SWH814PH3899701256979**

117.   On or about December 8, 2014, Plaintiff submitted his application for this GS-1102-12 full time, permanent Procurement Analyst position in Boston, MA.   This is the vacancy at issue in Charge 28 of Plaintiff's Second Amended Complaint.

118.   The salary range for this position when posted was $75,974 to $98,764.

119.   Jesecah Everson is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

120.   Ms. Everson issued the first Certificate of Eligibles for this vacancy on December 31, 2014.

121.   This vacancy was only open to (1) current DOD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants.   It was not open to all U.S. Citizens.

122.   Plaintiff submitted two SF-50s for this position.  One SF-50 showed Plaintiff was in the excepted service, and the other SF-50 showed that Plaintiff had previously held a position in the competitive service.

123.   Plaintiff was notified that he was not referred because he was outside the "Area of Consideration".

**Charge 29 – Vacancy Number SWH815EHA6129451373850**

124.   On or about April 19, 2015, Plaintiff submitted his application for this GS-1102-11 full time, permanent Contract Administrator position in San Diego, CA.  This is the vacancy at issue in Charge 29 of Plaintiff's Second Amended Complaint.

125.   The salary range for this position when posted was $63,707 to $82,820.

126.   Nancy Klaverweiden is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

127.   Plaintiff was notified that he was not referred to the Selecting Official because he did not: "meet the minimum education and/or experience requirements for this specialty and grade."

**Charge 30 – Vacancy Number SWH815P44027741326193**

128.   On February 19 or 20, 2015, Plaintiff submitted his application for this GS-1102-11 full time, permanent Contract Administrator position in Endicott, NY.  This is the vacancy at issue in Charge 30 of Plaintiff's Second Amended Complaint.

129.   The salary range for this position when posted was $58,562 to $76,131.

130.   Amani Wood is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

131.   Plaintiff was notified that he was not referred because: "ID You do not meet the minimum education and/or experience requirements for this specialty and grade."

**Charge 31 – Vacancy Number SWH815P45134861320413**

132.   On or about February 11, 2015, Plaintiff submitted his application for this GS-1910-12 full time, permanent Quality Assurance Specialist (Electronics) position in Syracuse, NY.  This is the vacancy at issue in Charge 31 of Plaintiff's Second Amended Complaint.

133.   The salary range for this position when posted was $70,192 to $91,255.

134.   Nancy Klaverweiden is the HR Specialist that did not refer Plaintiff for further consideration by DCMA.

135.   Plaintiff received a notice that he was not referred because he did not "meet the minimum education and/or experience requirements for this specialty and grade".

**b.**      The parties stipulate that Mr. Yee's declaration appearing in the Report of Investigation (ROI) may be admitted into evidence at summary judgment and trial without further foundation as to authenticity.   All other objections are reserved relating to the declaration, including but not limited to objections as to hearsay, probative value, relevance, authorship, truthfulness, or any other aspect other than authenticity.   Copies of documents may be used as exhibits at summary judgment and trial in lieu of originals.

## 3.      FACTUAL CONTENTIONS.

### a.      Contentions of Plaintiff.

The conduct of internet searches is common practice of employers and DCMA has no policy that prevents or prohibits this practice. Most government contract specialists' names are mandatorily made available in an online Government Acquisition Portal. Plaintiff alleges that one or more of selecting officials for each vacancy searched the internet and found Plaintiff's EEO complaint activity. Plaintiff's religion was known to all selecting officials and personnelists based on his prior protected activity which was reported on the internet.

Plaintiff's age was known to all selecting officials, including Human Resource specialists, and anyone who reviewed his application because his application always included the dates he graduated from high school, colleges, and universities. Plaintiff's sex was evident from his name and the use of male pronouns in his evaluations and award citations.

Anyone who performed the above search, found Plaintiff's EEO complaint activity on the internet. Anyone who read about Plaintiff's protected activity became aware of to his age, sex, religion, and additional details of his protected activities. Anyone who found Plaintiff's protected activity advised others of Plaintiff's protected activity, advised colleagues and supervisors of Plaintiff's protected activities.

Whenever Plaintiff was asked by any selecting official about his availability for travel, he normally mentioned his Jewish Sabbath observance, thus informing panelists of his religion and possible need for an accommodation. Whenever Plaintiff was asked by any selecting official about his experience in Israel, he included the fact that he sought the assignment because he is Jewish. Whenever Plaintiff interviewed in person, he wore distinctly Jewish garb such as a skullcap and his beard which is full and untrimmed, hallmarks of Jewish religious observance.

Plaintiff alleges that in addition to the discrimination that occurred during the consideration of each application and eventual rejection thereof, each selecting official, human resource specialist, EEO official, and DCMA representative retaliated against Complaint after he or she learned of a complaint or opposition to discrimination that Plaintiff or other individual made or said he/she would make or believed he would make. For all charges, Plaintiff has stated a claim for discrimination under the ADEA because of his age (over 40) he was either not referred, not equitably evaluated, not granted an interview, or not selected in favor of significantly younger applicants who were treated more favorably under "circumstances giving rise to an inference of discrimination."

All of acts, facts, and events of retaliation stated herein (and not stated herein) were revealed during the investigation or since the investigation, and consisted of such acts as providing false or incomplete information to the investigator, freely discussing Plaintiff's complaints and details of those complaints with persons for no legitimate business purpose, making derogatory remarks that were untrue, or purposefully rating him, his application, or his interview performance lower than was actually warranted because of his protected activities and bases.

Plaintiff's age, sex, religion and prior EEO activity were considered and known to all selecting officials either because of their personal participation or the participation of a colleague or individual involved in the administrative processing of his applications, EEO counseling, or investigations.

Plaintiff was the oldest applicant for every charge and significantly older than the selectee and all other applicant(s) treated more favorably. "More favorably" refers to final selectee(s) or any applicant referred, selected for interview, or any applicant who received further consideration where Plaintiff was not granted such advancement in the evaluation process because of his protected bases.

No performance evaluation issued at any time in Plaintiff's employment within the Defense Department or a Defense agency was below average, minimal, or resulted in an adverse action or loss of promotion, step increases, training, awards, or benefits.

Plaintiff alleges that Defendant failed to preserve his application and the applications of other applicants.

Plaintiff alleges that Defendant failed to preserve the notes of selecting officials and personnelists. Plaintiff alleges that Defendant failed to preserve the demographics information of applicants and hiring practices. Defendant's investigator did not report demographic data for the selecting officials' selections. No personnelist requested that plaintiff submit any additional information or clarification of any application submitted for any vacancy comprising this complaint.

Plaintiff was the only Jewish applicant with prior complaints based on his religion.

Plaintiff completed the highest level of education of any applicant based on his graduate degree and PhD coursework as reported on his application. Plaintiff completed the highest number of training courses documented in any candidate's application. Plaintiff completed over 200 courses related to acquisition as shown in his application. Plaintiff held a top secret (TS) clearance from 1990 to 1991 and 2003 to 2015 and had experience administering classified contracts during that period. In regard to every vacancy where transcripts were required to document completion of a minimum positive education requirement, Plaintiff submitted his university transcripts.

Plaintiff's age, gender, religion, and prior protected activity were the "but for" reasons in every non selection.

At all times relevant to all charges forming this complaint, Plaintiff was a reinstatement eligible based on his having achieved "Competitive Status" as defined by 5 CFR § 212.301.

At all times relevant to these matters, the hiring of any annuitant was at the discretion of the Defendant. In applications where GS-1150 Industrial Specialist experience was relevant, Plaintiff sometimes included a mention of his prior EEO complaint and decision which determined that he was to be "deemed to have served" as a GS-1150-11 for two years in the early 1990s.

Plaintiff never declined any opportunity to interview for a job offer except for the VA. Plaintiff never withdrew or attempted to withdraw any application for employment. Plaintiff regularly provided references when requested to the best of his ability and with no delay and full cooperation. Plaintiff was never advised that he was the top choice or the only applicant for a position with Defendant. In order to facilitate references, Plaintiff regularly advised his references of the possibility that they may be contacted and by whom and the most recent information. If no current contact information was available, he provided alternate references.

Plaintiff never asked for relocation assistance. Plaintiff made an accommodation request except to accommodate his religion.

Plaintiff completed BS and MA degrees, and PhD coursework (not the PhD degree) as shown in his applications. Plaintiff holds three DAWIA certificates at Level 3 plus three other DAWIA certificates. Plaintiff received awards for nearly every year of service as shown in his application. Plaintiff completed 24 semester hours in in a combination of the following fields: accounting, business, finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management within a degree program the degree or in addition to the degree as demonstrated in the transcripts in his application to qualify for the Contract Specialist positive education requirement.

Plaintiff included his/her most recent performance appraisal in each application. Each evaluation Plaintiff submitted with his application showed his past performance rating as "Excellent". Plaintiff's USAJOBS Questionnaire he submitted for each vacancy charge was rated at the highest possible score of 100. Plaintiff's application demonstrated the highest number of Defense Acquisition Workforce Improvement Act (DAWIA) Certifications held by any applicant.

Plaintiff held various contract warrants from different agencies, including "unlimited" and "limited" [dollar value] warrants. Plaintiff was qualified for the Operations Research Analyst position which included a positive education requirement.

Plaintiff had no interim earnings for the period January 09, 2015 to the present.

Plaintiff maintains that Defendant did not cooperate with its own investigators.

The above statements are incorporated as though re-stated as facts again within each and every numbered charge below beginning with Charge 02 and ending with Charge 31.

Plaintiff at all times was ready, willing, able, and desirous of employment, would have relocated with or without government assistance, and without any remote work accommodation or any accommodation, including those related to his religious needs. When he submitted his application, and at all times relevant to all charges forming this complaint, Plaintiff was a reinstatement eligible based on his having achieved "Competitive Status" as defined by 5 CFR § 212.301.

For all charges, Defendant has failed to meet its burden of production because it has not provided a legitimate, non-discriminatory, specific, clear, and individualized explanation for rejecting Plaintiff such that Plaintiff had an opportunity to prove that the proffered explanation was a pretext for discriminatory animus or retaliation for any charge.


**Charge 02 – Vacancy Number SWH8149YEHA3385731204424**

Plaintiff was discriminated on the basis of his religion, retaliation, and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq as amended and because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq as amended when he was not selected by Defendant on 11/14/2014 when younger applicants and protected statuses were treated more favorably and the interview had a disparate impact on his selection.

Plaintiff's prior protected activity was known to all the selecting officials on or before 11/05/2014. Mr. Yee advised his fellow panelists and the other selecting officials to not hire Plaintiff because of Plaintiff's prior request for religious accommodation and EEO activity which he found on the internet. Mr. Bennet selected Mr. Moffatt to be team leader and provided him criteria to use to screen and rank the resumes. Mr. Moffat wrote two version of the panel's recommendation with the same date and no interview or panel notes exist except for Ms. Hansen's notes. Mr. Yee believed that [Complainant] was high risk based may have influenced our decision."

Patricia L. Woodhouse, a female, born in 1966, was offered the position. Ms. Woodhouse was not an observant Jew, and had no record of prior protected activity.

The panel's written recommendations to the selecting official is the sole official record of the panel's proceedings as defined by Defendant's merit promotion regulation. Mr. Yee notified the panelists and the selecting official of Plaintiff's prior protected activity and advised them not to hire Plaintiff because of Plaintiff's need for a religious accommodation. Defendant did not preserve any resume review notes or interview notes. Yee's affidavit further stated, "In our discussion of Mr. Laber, l had commented on him being "high risk" which was based on my reading the article about his actions against the Army base in Germany."

16

**Charge 05 - Vacancy Number SWH814EHA3492621236403**
On or about October 22, 2014, Plaintiff submitted his application for this GS- 1102-11 Contract Specialist position in Fort Wadsworth, NY. Plaintiff was found best qualified and selected for an interview. Plaintiff maintains he was rated higher than the applicants who were offered the position but not offered the position because of the discriminatory bases alleged.

Defendant withheld or destroyed the original notes of the panelists. The panel team lead, Ms. Chappe, did not know why Plaintiff was rated fourth or why any applicant received any rating, ranking or recommendation. Ms. Reed was offered the position on January 2, 2015. All interviewees were significantly younger than Plaintiff. All interviewees were not observably Jewish or had engaged in prior EEO complaints except for plaintiff. Only Ms. Reed's references were contacted. Ms. Reed was DAWIA certified at Level 1. Ms. Reed had 18 months of Contract Specialist (1102) experience overseas. 12 months as a GS-9 and 6 months as a GS-11. Interview notes were destroyed.

**Charge 06 - Vacancy Number SWH814EHA3923661270260**
On or about December 12, 2014, Plaintiff submitted his application for this GS- 1910-11 Quality Assurance Specialist (Electronics) position in San Diego, CA. On or about April 14, 2015 Plaintiff was notified that he was not referred to the selecting official. Plaintiff maintains Williams treated applicants without prior EEO activity more favorably when she did not disqualify them on the same alleged bases. Williams treated applicants not in Plaintiff's protected groups more favorably. Plaintiff maintains that Williams advised her colleagues to improperly disqualify Plaintiff in retaliation for his complaints.

Plaintiff was previously referred by the same office personnelists for the following GS-1910-11 (or higher) Quality Assurance Specialist vacancies when Plaintiff cited the same experience as that which he cited in his instant application. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 07 - Vacancy Number SWH814EHA4045651268773**
On December 15, 2014, Plaintiff submitted his application for this GS- 1150-11 Industrial Specialist position in Pittsfield, MA. On February 23, 2015, Plaintiff was notified that the selecting official Russell Sherman did not select him.

Plaintiff alleges that there was a large qualifications gap between his [Plaintiff's] qualifications and those of Lis. Lis's resume showed that he was enrolled in an "AS" non-degree program at some time. Mr. Lis was earning a salary of $51,150 per year at his most recent employment at Global Foundries as a Cleanroom Production Machine Maintenance Technician from 07/27/2012 to 01/10/2013. Mr. Lis did not have or claim that he held a

"business systems degree". Mr. Lis reported no training. Mr. Lis reported no current employment other than his reserve duty. Mr. Lis reported no completion of any educational degree. Mr. Lis was 50 years old when selected. Mr. Lis stated in his application that he had experience with contracts. Mr. Lis had no experience with contracts. Mr. Sherman new or must have known that Lis was not qualified for the position.

See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 08 - Vacancy Number SWH814EHA4065161260912**
On or about December 5, 2014, Plaintiff submitted his application for this GS- 1102-11 Contract Specialist position in Taunton, MA. On December 30, 2014, Plaintiff sought counseling from the EEO Specialist. On March 25, 2015, Plaintiff received a notice that he was not selected. Plaintiff was referred as one of the best qualified.

Plaintiff discussed the matter with the DCMA EEO counselor who agreed to add the non-selection because it was "like or related" to the other non-selections, but never took further action. Defendant did not investigate or ask Plaintiff for additional information. Defendant provided no further information.

Plaintiff maintains that other applicants not of his protected class were treated more favorably. Mr. Sherman's claim that Plaintiff had no production experience was simply false and constituted direct evidence of retaliation. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 09 - Vacancy Number SWH814EHA4149481271532**
On December 10, 2014, Plaintiff submitted his application for this GS- 1910-11 Quality Assurance Specialist position in Syracuse, NY. On January 29, 2015, Plaintiff was notified that he was not referred to the selecting official because he allegedly did not "meet the minimum education and/or experience requirements for this specialty and grade."

At the time Rachel Owens prepared the referral list, she knew or had to have known that Plaintiff met the specialized experience requirements for this vacancy. Plaintiff was qualified based on his having served in the same position previously with Defendant at the same grade. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 10 - Vacancy Number SWH814EHA4293661275778**
On December 15, 2014, Plaintiff submitted his application for this GS-1515-12 Operations Research Analyst position in Syracuse, NY. On February 4, 2015, Plaintiff

was notified that he had been determined to be one of the best qualified and referred to the selecting official. Plaintiff did not receive any additional notice.

Mr. Wall supervised Ms. White who advised him prior to December 2014 that Plaintiff's had prior or current EEO activity as of December 31, 2014.

## Charge 11 - Vacancy Number SWH814EHA4294541275650
On December 15, 2014, Plaintiff submitted his application for this GS- 1150-11 Industrial Specialist position in Syracuse, NY. Plaintiff was deemed best qualified and referred. On June 03, 2015, Plaintiff was notified that he was not selected by Julie White and another applicant selected. Defendant did not investigate or ask Plaintiff for additional information. Plaintiff previously served in the same position and grade with Defendant.

Defendant's claims that "the selectee evidenced more familiarity than Plaintiff with manufacturing processes, including hands-on experience through her prior employment with a government contractor. Plaintiff appeared to the Selecting Official to have more of a contracting background, but less background in manufacturing and quality."

## Charge 12 - Vacancy Number SWH814EHA4415191286045
On December 25, 2014, Plaintiff submitted his application for this GS- 1102-11 Contract Specialist position in Palmdale, CA. On June 18, 2015, he was notified that the selecting official Bridget Guillory or Gregory Russell did not select him. Plaintiff was deemed one of the best qualified, referred, but not interviewed.

The investigator reported that she and the witnesses were unclear to why certain candidates were interviewed and others were not interviewed: "Bridget Guillory was named as the selecting official but she explained that Gregory Russell, who is no longer with the Agency, was the selecting official. Due to Mr. Russell's departure from the Agency, it is unclear why certain candidates were chosen for interviews while others were not."

Plaintiff was rated the highest of the 34 applicants. Plaintiff maintains that Russell became aware of Plaintiff's protected activities or claimed bases and did not select him because of that knowledge or bases. Mr. Russell expressed his opinion to other officials that Plaintiff's age would prevent him keeping up with the workload.

## Charge 13 - Vacancy Number SWH814P31914791196942
On September 1, 2014, Plaintiff submitted his application for this GS- 1910-12 Quality Assurance Specialist position in Herzliyya, Israel. On November 22, 2014, Plaintiff was notified that he was not referred to the selecting official by Monique King. Plaintiff was qualified for the vacancy based on the fact he previously served in the exact same position

in Israel for two years as demonstrated in his resume but was not referred.

On November 22, 2014 Plaintiff appealed his non-referral to Beverly Lynch. Neither Lynch nor any personnelist provided a reason for not referring Plaintiff. Plaintiff maintains that the personnelists collectively seized every opportunity to punish. The agency personnelist, Ms. King, who issued the notice was unsure as to why she did not refer Plaintiff.

The selectee was Christina Oberle, a 32 year old female who had never previously worked in Israel. Other applicants who lost consideration were provided priority consideration but they had not threatened to file an EEO complaint as Plaintiff had. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 15 - Vacancy Number SWH814P44028791264857**
On December 1, 2014, Plaintiff submitted his application for this GS- 1102-12 Contract Specialist position in Endicott, NY. On February 23, 2015, the selecting official Robert Clark (Clark) did not select Plaintiff. The selecting official selected Jeffrey Strong (Strong), a male 28 years old.

Strong's resume showed 3.5 years of DCMA experience, no current TS clearance, and DAWIA Level 2 certification in Contracting. Defendant rated and scored Plaintiff's application and interview lower than other applicants and destroyed or failed to retain the records necessary to reconstruct its actions or to allow Plaintiff to discover its discriminatory actions against him.

**Charge 18 - Vacancy Number SWH814P62954451226646**
On October 14, 2014, Plaintiff submitted his application for this GS- 1910-11 Quality Assurance Specialist position in San Antonio, TX. On an unknown date, Plaintiff was not referred or not selected by unknown officials. Plaintiff brought the matter to Defendant in his formal complaint but Defendant did not investigate or ask Plaintiff for additional information.

Plaintiff was referred by the same office personnelists for the following GS-1910- 11 (or higher) Quality Assurance Specialist vacancies when Plaintiff cited the same experience as that which he cited in his instant application. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 19 - Vacancy Number SWH814P63363521260556**
On October 14, 2014, Plaintiff submitted his application for this GS- 1910-11/12 Quality Assurance Specialist (Nuclear) position in Milwaukee, WI. On February 9, 2015, Plaintiff was notified that he was not referred to the selecting official by Elizabeth Infante. On

February 11, 2015 Plaintiff requested EEO counseling.

On September 3, 2015, Human Resource specialist Elizabeth Infante (Infante) alleged that she mistakenly failed to refer Plaintiff because she failed to see a second SF-50 that he had submitted. Plaintiff maintains that she did so in retaliation for his prior complaints. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 20 - Vacancy Number SWH814P63709691254693 [also referred to as] HRQRSWH814P63709691254693**
On November 17, 2014, Plaintiff submitted his application for this GS-1102-12 Contract Specialist position in Woburn, MA. Plaintiff's basis for eligibility was "Reinstatement" as shown in his application and with proof based on his SF-50. On November 26, 2014, Plaintiff was informed that he was not referred because he was outside the area of consideration: "IAOC You were not referred for this position because you were outside of the area of consideration." On November 26, 2014, Plaintiff requested reconsideration and how he could stop from having his application rejected. Plaintiff brought the matter to the EEO Officer on December 7, 2014. Defendant did not investigate or ask Plaintiff for additional information. See below Plaintiff's "GS-1102 Vacancies and Educational Requirements" for additional facts.

**Charge 23 - Vacancy Number SWH814P6EHA1436321174634**
On August 1, 2014, Plaintiff submitted his application for this GS-1102- 11 Contract Specialist position in Boston, MA. On December 15, 2014, Plaintiff was notified that the selecting official Dane Hutchinson (Hutchinson) did not select him in favor of another applicant. The notice also stated: "Code Definition: Withdrawn from Consideration. Code Explanation: The selecting office has indicated that you requested to be withdrawn from further consideration."

Delloiacono attested that he heard from Julie White a week before his 6/29/15 testimony that Plaintiff had won a complaint against the Air Force. Based on knowledge and belief, Plaintiff alleges that the selecting officials ignored his application and created a false basis to cover up their discrimination.

**Charge 24 - Vacancy Number SWH814P6EHA1510901197316**
On August 15, 2014, Plaintiff submitted his application for this GS-1150- 11 Industrial Specialist position in Syracuse, NY. Defendant found Plaintiff best qualified and referred his application to the selecting official for consideration. Ms. White wrote comments on each resume that she reviewed. Ms. White interviewed 7 of the 14 applicants for interviews. Plaintiff alleges the true reason White failed to interview Plaintiff was because of his prior EEO activity of which she was aware. Ms. White did not use the mandated

elements required by the Defendant's promotion regulation, specifically DAWIA certification which was a requirement of the position. Ms. White purposefully scored Plaintiff based on his protected status.

Plaintiff had the highest overall score of any applicant after applicant Robert Natale. Plaintiff was not selected for an interview. Defendant destroyed or failed to preserve White's contemporaneous handwritten notes on the resumes and the applications of those treated more favorably than Plaintiff. Plaintiff was in the same category as those who were interviewed.

### Charge 26 - Vacancy Number SWH814P73154221245352

On November 17, 2014, Plaintiff submitted his application for this GS- 1150-11 Industrial Specialist position in Milwaukee, WI. On January 8, 2015 Plaintiff was notified that he was not referred to the selecting official because "ID You do not meet the minimum education and/or experience requirements for this specialty". Plaintiff appealed the next day to no avail.

Plaintiff's qualifications were based on his actual service in the position, his EEO deemed service in the position, his quality assurance experience which overlapped in responsibilities, and his training, his DAWIA level 3 in Production and Manufacturing. Plaintiff maintains that Lynch treated other applicants not of his protected more favorably. Plaintiff maintains Lynch's action was direct evidence of discrimination because such an error, particularly on appeal, would have been resolved in his favor but for her discriminatory intent to disqualify him. The same office referred Plaintiff for other GS-1150-11 vacancies when he used the identical or similar application as he used here: SWH814EHA4045651268773, SWH814EHA4294541275650, and SWH814P6EHA1510901197316. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

### Charge 27 - Vacancy Number SWH814P83037751225507

On November 10, 2014, Plaintiff submitted his application for this GS- 1910-11 Quality Assurance Specialist position in San Diego, CA. On April 16, 2015, Plaintiff was notified that he was not referred because he allegedly did "not meet the minimum education and/or experience requirements for this specialty and grade." Plaintiff submitted a resume that showed many years wherein he performed qualifying GS-1910 service as employed by Defendant and others. Plaintiff was referred by the same office personelists for GS-1910-11 (or higher) Quality Assurance Specialist vacancies when Plaintiff cited the same experience as that which he cited in his instant application. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**Charge 28 - Vacancy Number SWH814PH3899701256979**

On December 8, 2014, Plaintiff submitted his application for this GS- 1102-12 Contract Procurement Analyst position in Boston, MA. On January 30, 2015, Plaintiff was notified that he was not referred because he was outside the "Area of Consideration". The personnelist, Ms. Everson alleged that Plaintiff was not referred because the SF-50 Plaintiff submitted showed he was in the excepted service. Ms. Everson maintained her opinion even after her office advised her that she was wrong. Ms. Everson maintained her opinion because of her intent to retaliate for Plaintiff's prior protected activity. Defendant did not refer Plaintiff for the position.

Plaintiff was referred by the same personnel office for the following GS-1102-11 (or higher) vacancies based on the nearly identical experience Plaintiff cited in his instant application. See below Plaintiff's "GS-1102 Vacancies and Educational Requirements" for additional facts. Plaintiff's age, religion, and prior protected activity were the "but for" reasons in this hiring action.

**Charge 29 - Vacancy Number SWH815EHA6129451373850**

On April 10, 2015, Plaintiff submitted his application for this GS-1102-11 Contract Specialist position in Palmdale, CA. On June 24, 2015 Plaintiff was notified that he was not referred to the selecting official by Nancy Klaverweiden allegedly because he did not: "meet the minimum education and/or experience requirements for this specialty and grade." Plaintiff maintains that Nancy Klaverweiden retaliated against Plaintiff for his prior complaint activity. Plaintiff maintains that the personnelist treated other applicants more favorably and referred them. Plaintiff maintains that she also advised her colleagues to improperly disqualify him in retaliation for his protected activities. Plaintiff was referred by the same personnel office for the following GS-1102-11 (or higher) vacancies based on the nearly identical experience Plaintiff cited in his instant application. See below Plaintiff's "GS-1102 Vacancies and Educational Requirements" for additional facts.

**Charge 30 - Vacancy Number SWH815P44027741326193**

On February 20, 2015, Plaintiff submitted his application for this GS- 1102-11 Contract Specialist position in Endicott, NY. On April 14, 2015 Laber was notified that he was not referred to the selecting official by Amani Wood. Plaintiff maintains Wood treated applicants without prior EEO activity more favorably when she did not disqualify them on the same alleged bases. She advised her colleagues to disqualify him in retaliation for his complaints. Plaintiff was referred by the same personnel office for the following GS-1102-11 (or higher) vacancies based on the nearly identical experience Plaintiff cited in his instant complaint. See below Plaintiff's "GS-1102 Vacancies and Educational Requirements" for additional facts.

**Charge 31 Vacancy Number SWH815P45134861320413**

On February 12, 2015, Plaintiff submitted his application for this GS- 1910-12 Quality Assurance Specialist position in Endicott, NY. The area of consideration stated in the vacancy announcement included "reinstatement eligible" applicants among other eligibilities. On April 9, 2015 Plaintiff received a notice that he was not referred to the selecting official by Ms. Klaverweiden because she determined that Plaintiff did not "meet the minimum education and/or experience requirements for this specialty and grade". On June 17, 2015, Ms. Klaverweiden stated to the investigator that Plaintiff could be granted priority for a like position based on the non-referral. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

**GS-1910 and GS-1150 Vacancies Specialized Experience**

Plaintiff met the specialized experience requirements and qualifications for Charges 6, 9, 13, 18, 26, and 27.  The personnelists involved made errors during their initial reviews of applications they processed. When, challenged by an applicant, a review is usually conducted to determine if indeed an error occurred and whether any corrective should be taken. The same AST office previously determined that Plaintiff met the specialized experience requirement for every job series and grade. Indeed, in Charge 28 Vacancy Number SWH814PH3899701256979 herein also required nearly the same specialized experience, Plaintiff was granted priority consideration. Indeed, that granting required higher level reviews.

**Disparate Impact**

[***Defendant objects to Plaintiff's attempts to add facts relating to a disparate impact claim relating to "every charge" as beyond the scope of what the Court has authorized. Defendant's objections regarding disparate impact are stated in detail in the legal claims section below.***]

[Court note: See Section III.B.1 of the Report and Recommendation filed simultaneously with this Pretrial Order.]

In every charge, Plaintiff maintains that applicants not of his protected statuses were treated more favorably. In every charge, every official was aware of Plaintiff's protected statuses. Defendant did not apply its Merit Promotion Regulations, DoD, and OPM regulations to Plaintiff. Defendant made all personnel decisions regarding Plaintiff based on illegitimate, prohibited, discriminatory, and retaliatory factors.

Plaintiff can establish a causal connection between his alleged protected conduct and adverse personnel actions based on the timing, prior knowledge of the officials. Applicants were provided opportunities to amend their applications where Plaintiff was not. Applicants who challenged dispositions of their applications were granted referral or priority consideration where Plaintiff was not. Applicants were referred or interviewed or recommended or selected who were not qualified. Some applicants' OPM questionnaires

qualified them but Plaintiff's questionnaires with the same response failed to qualify him. Applicants' scoring and evaluations were inconsistent with how Plaintiff was scored and evaluated.

Plaintiff's claims for damages are warranted, supported by evidence, and not speculative. Plaintiff has diligently mitigated damages and monetary losses. Plaintiff has suffered damages as a result of the alleged conduct, and is entitled to damages of any nature. Plaintiff relied on his annuity as a source of income.

## Disparate Treatment

In every charge, Plaintiff maintains that applicants not of his protected statuses were treated more favorably. In every charge, every official was aware of Plaintiff's protected statuses. Defendant did not apply its Merit Promotion Regulations, DoD, and OPM regulations to Plaintiff. Defendant made all personnel decisions regarding Plaintiff based on illegitimate, prohibited, discriminatory, and retaliatory factors. Plaintiff can establish a causal connection between his alleged protected conduct and adverse personnel actions based on the timing, prior knowledge of the officials. Applicants were provided opportunities to amend their applications where Plaintiff was not. Applicants who challenged dispositions of their applications were granted referral or priority consideration where Plaintiff was not. Applicants were referred or interviewed or recommended or selected who were not qualified. Some applicants' OPM questionnaires qualified them but Plaintiff's questionnaires with the same response failed to qualify him. Applicants' scoring and evaluations were inconsistent with how Plaintiff was scored and evaluated.

Plaintiff's claims for damages are warranted, supported by evidence, and not speculative. Plaintiff has diligently mitigated damages and monetary losses. Plaintiff has suffered damages as a result of the alleged conduct, and is entitled to damages of any nature. Plaintiff relied on his annuity as a source of income.

## Non-Referrals

Plaintiff has previously been employed by Defendant in the exact same job series and at the same or higher grade level for every vacancy, he was often not referred. In the case of **Charge 13 (**Quality Assurance Specialist in Israel), he had worked for Defendant at a higher grade at the same location. In those vacancies where Plaintiff was found ineligible and therefore not referred, Defendant either admitted that a simple clerical errors had been made or denied any error. For two vacancies (**Charge 19,** Quality Assurance Specialist (Nuclear), GS-1910-11/12 vacancy in Milwaukee, WI and **Charge 28,** GS-1102-12 full time, permanent Procurement Analyst position in Boston, MA), Defendant admitted errors had occurred, and on that basis granted Plaintiff priority considerations for future vacancies. To date, Plaintiff has not been considered for any vacancy as a priority candidate. For other vacancies where Defendant admitted its errors, Defendant took no

action. See below Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

For the remainder of the non-referrals for GS-1102 vacancies, Plaintiff maintains he met the educational requirement in various ways, including waiver. Plaintiff met the specialized experience requirement for GS-1150, GS-1515, and GS-1150 as explained below in Plaintiff's "GS-1910 and GS-1150 Vacancies Specialized Experience" and below in "GS-1102 Vacancies and Educational Requirements."

Plaintiff admits that some errors may have been initially not discriminatory but explains how Defendants actions, after he filed complaints, were discriminatory.

For all charges, Plaintiff has stated a claim for discrimination or retaliation under Title VII or ADEA and presented either direct or circumstantial evidence to demonstrate pretext and establish a prima facie case of failure to hire.  Plaintiff applied for every vacancy, was in the area of consideration or otherwise eligible to be considered, was qualified because he was previously employed by Defendant in the same series at an equal or higher grade, and despite his plainly superior qualifications was rejected. In the language of a prima facie case:

(1) he "belonged to a protected class (based on his prior, anticipated, or actual complaints, was observably of the Jewish religion, and a male"

(2) he "applied and was qualified for a job for which the employer was seeking applicants" (based on his referral and his resume which showed he had been previously employed in the same job series at the same or higher grade as the vacancy and his service was recognized with awards and promotions;

(3) "despite being qualified, [he] was rejected" or suffered an adverse employment action (based on the fact that he was not referred or not selected or unreasonably evaluated); and

(4) "after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications (based on either a selection of a less qualified applicant or a request for additional candidates or a sham request to cancel the recruitment)".

In regard to a prima facie showing for retaliation which requires a causal connection, Plaintiff has shown causal relationships for his rejection because in every charge, the selecting officials and HR specialists were aware of his prior or instant activity either because of their personal involvement, or informed by another individual, or through the internet, or informed by the EEO when the informal complaint was filed. Animus was evident by the fact that the selecting officials decided to retaliate by alleging false facts regarding his qualifications and eligibility. The timing of every rejection was within a few days, or at most, a few months of becoming aware of the protected activity. The same

persons were aware of his age because his resume included his age directly and in other ways.  The persons were aware of his sex because of his name and pronouns in his application package. The same persons were aware of his religion based on his prior complaints and as reported on the internet or by colleagues, or by Mr. Harris.

For all charges, Plaintiff's retirement should have had no bearing as he applied and was referred as a reinstatement eligible or current DoD employee, and Defendant has admitted that every vacancy, permanent or temporary was eligible for the hiring of annuitants. The fact that Defendant raised this as a defense was itself evidence of retaliation because in every charge it was an after the fact basis.  Further, Defendant has admitted that some vacancies had nothing to do with retirement as a defense for Defendant because Plaintiff was not retired when he was considered. Finally, if Plaintiff prevails on any charge he will have been deemed to have served without a break in service and therefore would never have been an annuitant. Plaintiff maintains that Defendant does not understand the law and regulations related to the hiring of annuitants and how they should have been applied in the instant matter.

For all charges, Defendant has failed to meet its burden of production because it has not provided a legitimate, non-discriminatory, specific, clear, and individualized explanation for rejecting Plaintiff such that Plaintiff had an opportunity to prove that the explanation provided was a pretext for the protected bases.

**GS-1102 Vacancies and Educational Requirements**
Defendant's challenge to Plaintiff's educational qualifications via Charges 5, 10, 12, 15, 28, 29, and 30 fails because Defendant itself has agreed that Plaintiff met the requirement. The personnelists involved could have made innocent errors during their initial reviews given the high volume of applications they process.  When, however, each charge became the subject of a complaint, the AST and EEO personnel thoroughly reviewed every charge to determine if indeed an error had been made.  The moment that these same officials decided against taking any form of corrective action when they knew or had to have known that the requirement was met, their animus took hold as direct evidence of discrimination. They knew full well they were retaliating because the same AST office, at its highest levels, had previously determined that Plaintiff met the specialized experience requirement.

Alternatively, it could have been waived, and finally is potentially moot because if Plaintiff prevails on any charge he is deemed to have served without a break in service and never as an annuitant and therefore me the requirement. It is important to cite that the educational requirement no longer exists and was removed by law signed on December 20, 2019. Finally, whether or not Plaintiff met the educational requirement is moot

because of the undisputed fact that he was referred for the following 36 vacancies for the same job series by the same AST staff, and some as part of the instant complaint:

| | |
|---|---|
| SWH814EHA3492621236403 | SWH814EHA4396811284780 |
| SWH814EHA4415191286045 | SWH814P44028791264857 |
| SWH814P6EHA2994621215494 | SWH815EHA5452411329035 |
| SWH815EHA7148751435558 | SWH815EHA7206531424029 |
| SWH815EHA7589001444487 | SWH815EHA8141481458280 |
| SWH815EHA8621101534446 | SWH815EHA8952901494283 |
| SWH815EHA9362431511403 | SWH815P66263981366476 |
| SWH815P67265401409217 | SWH815P6945031392348 |
| SWH815P69864841527030 | SWH815P8EHA9192851551517 |
| SWH816P45898791795428 | SWH816P46643111815753 |
| SWH816P64429731743999 | SWH816P64429731827519R |
| SWH817EHA1774501988348 | SWH817EHA8260601911668R |
| SWH817P61007516357 | SWH817P63149964137EA |
| SWH817P6464299551 | SWH817P64642995513 |
| SWH817P64680874728 | SWH817P694613235348EA |
| SWH817PH0998861992202 | SWH817PH2129862003602 |
| SWH818P61847920289EA | SWH818P71179850006EA-R |
| SWH818P71739157557EA | SWH818P72912823998EA |

Plaintiff maintains that each charge where he was not referred because he allegedly did not meet the educational requirement fails because Defendant itself has agreed that Plaintiff met the requirement.  The personnelists involved could have made innocent errors during their initial reviews given the high volume of applications they process. When, however, each charge became the subject of a complaint, the AST and EEO personnel thoroughly reviewed every charge to determine if indeed an error had been made.  The moment that these same officials decided against taking any form of corrective action when they knew or had to have known that the requirement was met, their animus took hold as direct evidence of discrimination.  They knew full well they were retaliating because the same AST office, at its highest levels, had previously determined that Plaintiff met the specialized experience requirement.   They knew full well they were retaliating because the same AST office, at its highest levels, determined that my educational qualifications were satisfactory. In Charge 28 - Vacancy Number SWH814PH3899701256979 where Plaintiff was granted a priority consideration, the matter was thoroughly examined in his favor. This should have prevented any more innocent mistakes.

b.      **Contentions of Defendant(s).**

Defendant disagrees with Plaintiff's factual contentions, including Plaintiff's interpretations of applicable DCMA policies, Plaintiff's characterizations of various events, witness declarations, and testimony, and Plaintiff's allegations regarding the retention of documents and the EEO process.  Defendant denies that Plaintiff is entitled to any damages of any nature.

Plaintiff worked as a civilian employee of the Federal government from 1981 through his voluntarily retirement in January 2015.  During that time, Plaintiff worked for numerous federal agencies, primarily DOD agencies, including DCMA. Plaintiff last worked for DCMA in 2000, when he moved to a position with the Department of the Army.  After an approximate 13-year absence from DCMA, Plaintiff began applying for positions with DCMA in 2013, and continues to do so.

### *Contentions relating to Plaintiff's non-selection for 21 vacancies*

After not being selected for numerous positions in 2014, Plaintiff reported to DCMA's EEO office that he was not hired due to discrimination based on age, gender, and religion, and in retaliation for prior protected activity. He amended his EEO complaint numerous times in 2015 to add additional positions he applied for in 2014 and 2015. Plaintiff's EEO complaint underlying this lawsuit was his first EEO complaint filed against DCMA since his prior employment with DCMA.

Of the 21 remaining charges in this lawsuit, approximately 44 individuals were involved in reviewing Plaintiff's application and having input as to whether Plaintiff should receive further consideration, receive an interview, or be recommended/selected for hire.  Of these individuals, only one had heard of Plaintiff at the time of the hiring decisions, based on a short overlap when he worked at the same agency/location as Plaintiff approximately two decades earlier.  The remaining 43 AST HR Specialists reviewing applications for referral, DCMA panel members, and DCMA Selecting Officials had never heard of Stan Laber, did not know his age, gender (though some may have presumed male based on voice/name), religion, or whether he had engaged in prior protected activity.  In most cases where Plaintiff was referred to DCMA for consideration, a male was either the first recommendation or selection or the ultimate selection to fill the position.  Likewise, AST HR Specialists referred numerous traditionally male names to DCMA for further consideration and in many instances, HR Specialists who did not refer Plaintiff for vacancies below referred Plaintiff for other vacancies with DCMA.  Plaintiff's age, gender, religion, and prior protected activity played no role in the decisions made by these HR Specialists, panel members, or Selecting Officials in reviewing applicants and making decisions relating to the vacancies at issue in this lawsuit.  Rather, Defendant had

29

legitimate, non-discriminatory and non-retaliatory reasons for its decisions during the hiring process for each vacancy at issue.

***Charge 2***.  Plaintiff applied for this permanent Contract Administrator, GS-1102-11 vacancy in Milwaukee, WI on September 18, 2014, and was referred to DCMA on October 31, 2014.   Plaintiff was interviewed on November 5, 2014, and was not recommended for hire by the panel.   Only one person, panel member Doug Yee, had previously heard of Plaintiff at the time decisions were made relating to this Contract Administrator 1102-11 vacancy in Milwaukee, WI. Mr. Yee's knowledge and understandings regarding Plaintiff's protected characteristics or prior EEO activity had no impact on the other panel members' recommendations, John Moffatt and Aaren Hanson, and had no impact on the ultimate hiring decision made by Mark Bennett, the Selecting Official. Lt. Moffatt and Aaren Hanson would not have recommended Mr. Laber for selection absent any input from Mr. Yee. The panel's recommendation memorandum suggested a first selection, first back-up selection, and second back-up selection.  Both the first and first back-up selections were male. Mr. Bennett did not select any of the individuals listed on Plaintiff's certificate of eligibles or interviewed at the same time as Plaintiff, and would not have hired Plaintiff even if the panel had recommended Plaintiff for hire.

***Charge 5***.  Plaintiff applied for this permanent Contract Administrator, GS-1102-11 vacancy in Fort Wadsworth, NY on October 31, 2014.   Plaintiff was one of five applicants selected to interview for this vacancy.  Panel members Maria Chappe, Helen Meija, and Vasken Kolancian conducted a phone interview with Plaintiff on or about January 7, 2015 and determined that he did not exhibit knowledge in all of the areas the interview was designed to cover.  Only one candidate answered all of the questions as desired.  The panel submitted its results from the interview to the Selecting Official, Eileen Kelly, on January 15, 2015.  Ms. Kelly decided to offer the only candidate that answered all questions as desired the position, and after that candidate declined, the vacancy was cancelled.  While the panel members could presume Plaintiff's gender based on his voice during the interview, they did not know of his age, religion or prior protected activity—nor did the Selecting Official.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

***Charge 6***.   Plaintiff applied for this permanent Quality Assurance Specialist (Electronics), GS-1910-11 vacancy in San Diego, CA on December 15, 2014. HR Specialist Phyllis Williams reviewed Plaintiff's application on or about January 20, 2015, and determined that Plaintiff did not meet the "specialized experience" for this position. Specifically, Ms. Williams determined that Plaintiff's resume did not support having one year of specialized experience at the next lower grade of a GS-09 in applying full range of principles, concepts, and methodology related to the mechanical and electronics

commodities to evaluate suppliers conformance to contractual quality requirements, experience in mechanical and electronics manufacturing, production methods, processes, product characteristics, and testing techniques, and experience performing statistical and quality data analysis and evaluation to determine supplier compliance with contractual requirements. At the time Ms. Williams did not refer Plaintiff, Ms. Williams did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 7*. Plaintiff applied for this permanent Industrial Specialist (General), GS-1150-11 vacancy in Pittsfield, MA on December 16, 2014, and was referred to DCMA on February 3, 2015. The Selecting Official, Russell Sherman, did not use a panel in conjunction with this vacancy, but reviewed and ranked the resumes of the top 12 candidates based on experience, education, awards, training, and outside activities. Mr. Sherman then made a selection without conducting interviews. Mr. Sherman ranked Plaintiff around 4th or 5th, but did not view Plaintiff as having in-plant production experience, which Mr. Sherman believed important for this position. The selectee Mark Lis, a male, appeared to have experience in a production environment and held a degree directly applicable to the position. Mr. Sherman could presume gender based on Plaintiff and the selectee's names, but did not know either the selectee or Plaintiff's age or religion, or whether either had engaged in prior EEO activity at the time of the selection. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 9*. Plaintiff applied for this permanent Quality Assurance Specialist, GS-1910-11 vacancy in Syracuse, NY on December 15, 2014. HR Specialist Rachel Owens reviewed Plaintiff's application on or about January 29, 2015, and determined Plaintiff did not meet the specialized experience for this vacancy. At the time Ms. Owens did not refer Plaintiff, Ms. Owens did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity. Ms. Owens has subsequently referred Plaintiff for at least four vacancies with DCMA. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 10*. Plaintiff applied for this permanent Operations Research Analyst, GS-1515-12 vacancy in Syracuse, NY on December 15, 2014, and was referred to DCMA on February 4, 2015. The Selecting Official, Wayne Wall, did not use a panel in conjunction with this vacancy, and wanted to and did hire an engineer for this vacancy. Mr. Wall understood that to post a GS-0801-12 "General Engineer" vacancy, he also had to post the vacancy as a GS-1515-12 position. Mr. Wall received a referral list from each posting and immediately returned the GS-1515-12 referral list containing Mr. Laber's name unused on February 4, 2015. Mr. Wall did not review the applicants on the GS-1515-12 list and only considered applicants on the GS-0801-12 General Engineer referral list, on

which Mr. Laber did not appear.  Mr. Wall selected a male applicant, Maxwell Edwards, from the General Engineering referral list, who had a degree in engineering and was an industrial engineer.  Mr. Wall did not know either the selectee or Plaintiff's age or religion, or whether either had engaged in prior EEO activity at the time of the selection.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 11*.  Plaintiff applied for this permanent Industrial Specialist (General), GS-1150-11 vacancy in Syracuse, NY on December 15, 2014, and was referred to DCMA on February 9, 2015.  Julie White served as the Selecting Official for this vacancy and did not utilize a panel.  Ms. White interviewed Plaintiff over the phone on or about February 12, 2015.  Ms. White viewed Plaintiff's resume as showing more of a "contracting" background and less of a "manufacturing and quality" background.  The selectee for this position evidenced more familiarity with the manufacturing process than Plaintiff, and had hands-on experience in her prior employment with a government contract. While Ms. White could presume gender based on Plaintiff's voice, Ms. White did not have knowledge of Plaintiff's age, religion, or prior protected activity when she evaluated candidates, or when she determined not to select Plaintiff for this vacancy.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 12*.  Plaintiff applied for this permanent Contract Administrator, GS-1102-11 vacancy in San Diego, CA, on January 4, 2015, and was referred to DCMA on February 13, 2015.  Gregory Russell and Bridget Guillory served as the Selecting Officials for this position.   After receiving the first referral list, Selecting Official Bridget Guillory requested an additional referral list with more candidates due to her belief that the candidates on the first list did not meet expectations and that a larger competitive pool was necessary.  The second referral list was issued on March 2, 2015.  Michelle Romero, Mary Farren, and Gregory Russell reviewed applications to determine which applicants to interview.  Plaintiff was not initially selected to interview for this position and did not interview for this position.  Interviews for this position were scheduled by March 9, 2015, and occurred on March 10, 2015.  Karen Stierer, Clarence Westbrook, and Jill Mahdessian conducted the interviews and made recommendations to Mr. Russell.  The first selectee for this position, Nguyen Truong, a male, was chosen on March 12, 2015.  After Mr. Truong declined, the position was offered to Kristen Zeimantz.  While Plaintiff's gender could arguably be presumed based on his name, none of the individuals reviewing Plaintiff's application, assisting on the panel, or serving as a Selecting Official had knowledge of Plaintiff's age, religion, or prior protected activity at the time Plaintiff was not selected to interview for this position.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 13*.  Plaintiff applied for this permanent Quality Assurance Specialist, GS-1910-12 vacancy in Israel on August 29, 2014.  HR Specialist Monique King reviewed

Plaintiff's application on or about October 6, 2014, and determined Plaintiff did not meet the specialized experience requirements for this specialty and grade. At the time Ms. King did not refer Plaintiff, Ms. King did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity. Ms. King subsequently referred Plaintiff for at least two positions, including the Contract Administrator vacancies at issue in Charges 12 and 15 in this lawsuit. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

***Charge 15***. Plaintiff applied for this permanent Contract Administrator, GS-1102-12 vacancy in Endicott, NY on December 8, 2014, and was referred to DCMA on or about February 1, 2015. Robert Clark served as the Selecting Official for this vacancy. Joy Parish, Gary Hmurcik, Marianne Del Greco, and Homer LaRue served as panel members for this vacancy and conducted a phone interview with Plaintiff on or about February 20, 2015. All panel members determined that Plaintiff gave a weak interview, answered multiple questions poorly, did not perform as well as other candidates during his interview, and that other candidates were better suited for the position. Two of the three candidates recommended to the Selecting Official were male. Mr. Clark's first selection, declined, and his second selection, Jeffery Strong, male, accepted. While Plaintiff's gender could arguably be presumed based on his name and voice, Mr. Clark, Ms. Parish, Mr. Hmurcik, Ms. Del Greco, and Mr. La Rue did not have any knowledge of plaintiff's age, religion, or prior protected activity. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

***Charge 18***. Plaintiff applied for this Quality Assurance Specialist, GS-1910-11 vacancy in San Antonio, TX on October 14, 2014. HR Specialist Rachel Owens reviewed Plaintiff's application on or about December 11, 2014, and determined that Plaintiff did not meet the specialized experience for this vacancy. At the time Ms. Owens did not refer Plaintiff, Ms. Owens did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

***Charge 19***. Plaintiff applied for this permanent Quality Assurance Specialist (Nuclear), GS-1910-11/12 vacancy in Milwaukee, WI on December 4, 2014. HR Specialist Elizabeth Infante reviewed Plaintiff's application on or about January 29, 2015, and determined that Plaintiff was outside the area of consideration for this vacancy. The area of consideration for this vacancy was (1) current DOD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants. Plaintiff had uploaded two SF-50s with his application, one labelled "SF-50" and the other labelled "Other." Ms. Infante only saw one SF-50 that she believed did not show Plaintiff within the area of consideration and did not see the second SF-50 which showed Plaintiff within the area of consideration. This seeming error was discovered in 2015 and a letter was

issued to Plaintiff advising that he would be entitled to priority consideration for the next Quality Assurance Specialist (Nuclear) GS-1910-11/12 with DCMA located in Milwaukee, WI.  At the time Ms. Infante did not refer Plaintiff, Ms. Infante did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity. Ms. Infante had previously referred Plaintiff for the vacancy in Charge 25, and subsequently referred Plaintiff for the vacancies in Charges 10 and 11.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 20*.  Plaintiff applied for this permanent Contract Administrator, GS-1102-12 vacancy in Woburn, MA, on November 17, 2014.  HR Specialist Christina Swisher reviewed Plaintiff's application on or about November 26, 2014, and determined that Plaintiff was outside the area of consideration for this vacancy.  The area of consideration for this vacancy was (1) current DOD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants.  Plaintiff had uploaded two SF-50s with his application, one labelled "SF-50" and the other labelled "Other."  Ms. Swisher determined Plaintiff was not within the area of consideration based on the SF-50 uploaded and labelled SF-50, which she believed did not show Plaintiff in the area of consideration. At the time Ms. Swisher did not refer Plaintiff, Ms. Swisher did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 23*.  Plaintiff applied for this permanent Contract Administrator, GS-1102-11 vacancy in Boston, MA on August 1, 2014, and was referred to DCMA on or about September 15, 2014.  Dane Hutchison served as the Selecting Official for this vacancy. Michael Delloiacono, Cheryl Gonzalez, Jayson Thornton, Paul Sullivan, and Deborah Jansen served on the interview panel for this vacancy.  Plaintiff was selected to interview for this position and Michael Delloiacono contacted applicants to arrange interviews.  Mr. Delloiacono received a voicemail he believed to be from Plaintiff withdrawing from consideration.  In response, he put a sticky note on Plaintiff's resume that said, "left voice mail message declined."  Mr. Delloiacono made no further effort to contact Plaintiff to arrange an interview and Plaintiff was given no further consideration.  The top four candidates for this vacancy were male and the Selecting Official eventually hired a male for this position after one of the top candidates could not be hired due to his status as a retired annuitant, the next two applicants declined, and the fourth applicant had accepted another position.  While Plaintiff's gender could arguably be presumed based on his name and voice, Mr. Delloiacono, Ms. Gonzalez, Mr. Thorton, Mr. Sullivan, Ms. Jansen, and Mr. Hutchison did not have any knowledge of plaintiff's age, religion, or prior protected activity.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

Plaintiff first received notice that he had not been selected for this claim on October 16, 2014.  Plaintiff did not timely seek counseling from the EEO office within 45 days of this notification and thus failed to exhaust administrative remedies as to this Charge.

***Charge 24***.  Plaintiff applied for this permanent Industrial Specialist, GS-1150-11 vacancy in Syracuse, NY on September 4, 2014, and was referred to DCMA on or about September 19, 2014.  Julie White served as the Selecting Official for this vacancy and did not utilize a panel.  Ms. White selected candidates to interview from the referral list and did not select Plaintiff because she viewed his resume as reflecting primarily contract experience and only minimal manufacturing experience.  The candidates selected to interview appeared to have more relevant experience in manufacturing and quality than Plaintiff.  Both of the applicants Ms. White selected for this position were male, Robert Natale (declined position) and Aric Dingman.  While Ms. White could presume gender based on Plaintiff's name, Ms. White did not have knowledge of Plaintiff's age, religion, or prior protected activity when she evaluated candidates, or when she determined not to interview/select Plaintiff for this vacancy.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

***Charge 26***.  Plaintiff applied for this permanent Industrial Specialist (General), GS-1950-11 vacancy in Milwaukee, WI on November 17, 2014.  HR Specialist Kyshia Hayes reviewed Plaintiff's application on or about January 8, 2015, and determined that Plaintiff's application did not reflect that he met the specialized experience reflected in the job announcement requiring a practical knowledge of the methods, materials, machinery, and facilities used in industrial production operations, which includes industrial planning of facilities and layout and comprehensive survey and analysis of industrial operations. And, Ms. Hayes determined that while education can be substituted for experience, Plaintiff's application did not reflect that he possessed a Ph.D. or equivalent doctoral degree or three full years of progressively higher level graduate education leading to such a degree.  At the time Ms. Hayes did not refer Plaintiff, Ms. Hayes did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity.  Ms. Hayes subsequently referred Plaintiff for the Quality Assurance Specialist position identified in Charge 3 of this lawsuit.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

***Charge 27***.  Plaintiff applied for this permanent Quality Assurance Specialist, GS-1910-11 vacancy in San Diego, CA on October 14, 2014.  HR Specialist Phyllis Williams reviewed Plaintiff's application on or about November 20, 2014, and determined that Plaintiff's application did not demonstrate the required specialized experience for referral for this vacancy because his resume did not support having one year of specialized experience at the next lower grade of a GS-09 in applying the full range of principles, concepts, and methodology related to the mechanical and electronics commodities to

evaluate suppliers conformance to contractual quality requirements, experience in mechanical and electronics manufacturing, production methods, processes, product characteristics, and testing techniques, or experience performing statistical and quality data analysis and evaluation to determine supplier compliance with contractual requirements. At the time Ms. Williams did not refer Plaintiff, while she could infer gender, she did not have knowledge of Plaintiff's age or religion, and did not have knowledge of Plaintiff's prior protected activity. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 28*. Plaintiff applied for this permanent Procurement Analyst, GS-1102-12 vacancy in Boston, MA on December 8, 2014. HR Specialist Jesecah Everson reviewed Plaintiff's application on or about December 31, 2014, and determined that Plaintiff was outside the area of consideration because he was in the excepted service. The area of consideration for this vacancy was (1) current DOD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants. Plaintiff had uploaded two SF-50s with his application, one labelled "SF-50" and the other labelled "Other." One SF-50 showed Plaintiff in the excepted service and the second showed him in the competitive service. Ms. Everson determined Plaintiff was not within the area of consideration based on the SF-50 uploaded which showed Plaintiff in the excepted service, which she believed did not show Plaintiff to be in the area of consideration. At the time Ms. Everson did not refer Plaintiff, Ms. Everson did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 29*. Plaintiff applied for this permanent Contract Administrator, GS-1102-11 vacancy in San Diego, CA on April 19, 2015. HR Specialist Nancy Klaverweiden reviewed Plaintiff's application on or about June 24, 2015, and determined that Plaintiff did not meet the education requirement for the vacancy as (1) the transcripts provided by Plaintiff did not provide 24 semester hours in a combination of the following fields: accounting, business finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management, and (2) Plaintiff could not be grandfathered into the position as he was not a current DOD employee. At the time Ms. Klaverweiden did not refer Plaintiff, Ms. Klaverweiden did not know Plaintiff's age or religion. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 30*. Plaintiff applied for this permanent Contract Administrator, GS-1102-11 vacancy in Endicott, NY on February 19, 2015. HR Specialist Amani Wood reviewed Plaintiff's application on or about April 8, 2015, and determined that Plaintiff did not meet the educational requirement for the vacancy as (1) Plaintiff did not attach a transcript that

showed he possessed 24 hours of the required educational coursework to meet the minimum qualifications for this 1102 position, and (2) he could not be grandfathered into the position as he was not a current DOD employee.  At the time Ms. Wood did not refer Plaintiff, Ms. Wood did not know Plaintiff's age or religion, and did not know of Plaintiff's prior protected activity.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

*Charge 31*.  Plaintiff applied for this permanent Quality Assurance Specialist (Electronics), GS-1910-12 vacancy in Syracuse, NY on February 11, 2015.  HR Specialist Nancy Klaverweiden reviewed Plaintiff's application on or about April 8, 2015, and determined that Plaintiff was outside the area of consideration for this vacancy.  To be within the area of consideration for this position an applicant must have been (1) a current federal employee; (2) reinstatement eligible; (3) veterans and preference eligible applicants under the Veterans Employment Opportunity Act (VEOA) of 1998; or (4) ICTAP Eligible.  At the time Ms. Klaverweiden did not refer Plaintiff, Ms. Klaverweiden did not know Plaintiff's age, gender, or religion, and did not know of Plaintiff's prior protected activity.  Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action.

### Educational Requirements for certain vacancies

Pursuant to DOD policy, in order to qualify for a GS-1102 series, step 11 or step 12 position, the applicant must satisfy a positive education requirement, which requires that the applicant complete 24 semester credit hours in business disciplines including, Accounting, Business, Finance, Law, Contracts, Purchasing, Economics, Industrial Management, Marketing, Quantitative Methods, or Organization and Management.  When implementing this requirement, DOD also adopted an exception to this requirement for (1) current DOD employees, (2) who held an 1102-series position (3) prior to September 30, 2000—such employees are considered "grandfathered in" and need not meet the educational requirements.  DOD Policy is clear, however, that once an employee leaves federal service, the employee is no longer "grandfathered-in" when applying for 1102-series positions and must satisfy the positive education requirement.  Plaintiff did not hold the required education requirements and after his retirement, was no longer grandfathered-in under DOD policy.  Thus, Plaintiff did not meet the educational requirements for the vacancies in charges 2, 5, 12, 15, 20, 23, 28, 39, and 30 to the extent he sought to enter these positions after retirement.  Likewise, the vacancy in charge 10, for a GS-1515 position, also had a different positive-education requirement, laid out in the job opportunity announcement, that Plaintiff did not satisfy and thus, was not qualified for the position.

### *Plaintiff's status as a Retired Annuitant*

Plaintiff voluntarily retired from federal civil service on January 9, 2015, and began receiving an annuity under the CSRS retirement system.  Pursuant to DCMA policy, effective in 2014 and 2015, annuitants may only be reemployed under certain limited circumstances, only with high-level authorization, and not through the competitive hiring process.  None of the circumstances justifying the hire of an annuitant were present in any of the vacancies at issue in this lawsuit.  No retired annuitants were hired for any of the vacancies at issues in this lawsuit.  Indeed, Plaintiff's status as a retired annuitant precluded him from being hired for any of the vacancies in this lawsuit where selection decisions were made after Plaintiff's retirement.  Also, to the extent Plaintiff seeks instatement into any position, such action would violate DCMA policy and should not be authorized.

### *Plaintiff has no economic damages*

Plaintiff has stipulated to seek a maximum of $1 for compensatory damages, including for any pain and suffering or emotional distress.

Plaintiff has not acted with reasonable care or diligence or in good faith to mitigate his losses.  While Plaintiff applied for hundreds of positions with the federal government after his retirement from federal service—at nearly every salary level along the GS pay scale, including entry-level—he applied for positions almost exclusively with Defendant. Plaintiff unreasonably focused his job-seeking efforts on positions with DCMA and other DoD agencies rather than seeking private employment or self-employment, despite the fact that he had previously performed consulting work and had experience that would have been attractive to government contractors.  His decision to focus nearly his entire effort to gain employment with agencies he contends discriminate/retaliate against him lacks good faith and was not reasonably diligent.  Likewise, Plaintiff knew his status as a retired annuitant severely impacted his ability to obtain employment with any federal agency, DoD or non-DOD, but still did not seek employment outside the federal government.  As to those claims arising prior to his retirement, Plaintiff failed to mitigate for the same reasons as just stated, and further failed to mitigate by voluntarily retiring from a more lucrative position.  Plaintiff has also withdrawn or effectively withdrawn himself from consideration for positions.

Plaintiff's claims for damages are speculative and unsupported, and seek damages which would provide Plaintiff a windfall and/or which are not available to him.  To the extent Plaintiff can prove a violation of law, any damages award must be offset by the hundreds of thousands of dollars Plaintiff has received since 2015 as a result of his decision to become a retired annuitant, as well as any income received through alternate

employment, including self-employment, or that Plaintiff could have received with reasonable and good faith effort. Defendant's expert has provided calculations demonstrating that Plaintiff's economic damages are essentially nothing.

Contrary to Plaintiff's position, he could only possibly work one full time job at the DOD at a time, and if he prevails on more than one failure to hire claim for more than one position, his claims for lost wages and benefits are limited to recovery in regard to only one failure to hire claim.

In the event that Plaintiff prevails on any failure to hire claim, if this Court decides to provide Plaintiff with an equitable remedy, Defendant will ask this Court to award reasonable front pay in lieu of instatement.

Throughout this case, Plaintiff abused the discovery process, seeking substantial discovery from Defendant when he had no good faith basis for the claims supposedly justifying such discovery. Indeed, Plaintiff has pursued numerous claims in this case with no factual or good faith basis. For example, Plaintiff pursued gender discrimination claims where male applicants were selected and hired for the vacancies in question. Plaintiff scheduled depositions of several witnesses—current or former employees of Defendant—and then cancelled them for no articulated reason, including cancelling a Rule 30(b)(6) agency representative deposition—after the Defendant invested substantial time and effort into preparing the witnesses for those depositions. Defendant contends these actions are relevant to prove Plaintiff's motives and bias as well as to the propriety of an award for the extensive costs incurred by and on behalf of Defendant in this action, as well as any potentially recoverable costs by Plaintiff.

Plaintiff has indicated that he may obtain legal review of documents he has prepared for filing with the Court, including the pretrial order and summary judgment filings, and that he "may or may not advise" Defendant, but will add the cost of such services when he seeks costs. Defendant reserves the right to contest any fees incurred in the preparation of pleadings in violation of this Court's and this jurisdiction's rules regarding ghostwriting.

## 4.   LEGAL CLAIMS AND DEFENSES.

The Court has dismissed the claims relating to the positions identified in Charges 4, 8, 14, 17, and 22 based on a failure to exhaust administrative remedies. *See* Doc. 101.

Plaintiff voluntarily dismissed the claims relating to the positions identified in Charges 1, 3, 16, 21, 25, and 32. *See* Docs. 112 & 168.

a.      **Legal Claims of Plaintiff.**

Plaintiff asserts that he is entitled to recover damages upon the following theories: Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.

Defendant rejected (failed to hire) Plaintiff in violation of Title VII and ADEA, specifically, by discriminating against him because of retaliation for his prior protected activity, his anticipated protected activity, and his actual protected activity in pursuing the instant complaints for Charges 2, 5, 6, 7, 9, 10, 11, 12, 13, 15, 18, 19, 20, 23, 24, 26, 27, 28, 29, 30, and 31 of amended complaint, 21 charges in the amended complaint.

Defendant rejected (failed to hire) Plaintiff in violation of Title VII, specifically, by discriminating against him because of his religion for Charges 2, 5, 6, 7, 9, 10, 11, 12, 13, 15, 18, 19, 20, 23, 24, 26, 27, 28, 29, 30, and 31 of amended complaint, 21 charges in the amended complaint.

Defendant rejected (failed to hire) Plaintiff in violation of Title VII, specifically, by discriminating against him because of his gender (male) in those instances where females were treated more favorably for Charges 2, 5, 11, 12, 13, 15, 24, and 27 in the amended complaint. [Court note: See Section III.B.5 of the Report and Recommendation filed simultaneously with this Pretrial Order.]

Plaintiff relies on the theory of Retaliation for Title VII and ADEA for every charge.

Plaintiff relies on the theories of Disparate Treatment and Disparate Impact based on Title VII and ADEA for every charge. [***The Court has already ruled that Plaintiff's Disparate Impact claim is limited to disparate impact based on age under the ADEA and only for those vacancies where Plaintiff was interviewed—Charges 2, 5, 11, and 15. Accordingly, Defendant objects to Plaintiff's attempt to pursue a disparate impact claim (1) under Title VII and (2) for "every charge". Further, Defendant objects that Plaintiff did not comply with the Court's specific instruction to Plaintiff to provide a brief paragraph identifying the basis for a disparate impact claim, including specifically identifying the challenged employment practice. Nowhere in the PTO does Plaintiff identify the employment practice or policy he contends resulted in a disparate impact, and both Defendant and the Court are entitled to know the basic premise of Plaintiff's claim. While Plaintiff include one allegation regarding disparate impact based on age in his second amended complaint (paragraph 53), he does not even include that allegation in the PTO. Absent the identification of a specific employment practice,***

40

Defendant *requests that Plaintiff's disparate impact claim be fully removed from the PTO.]* [Court note: See Section III.B.1 of the Report and Recommendation filed simultaneously with this Pretrial Order.]

For all charges, Plaintiff relies on the theories of Disparate Impact, Disparate treatment, Failure to accommodate, Retaliation, and Pattern and Practice as **Direct and indirect Corporate (DCMA) liability** as separate from those above which are normally attributed to Defendant (Head of the Secretary of Department of Defense). [*Defendant understood the Court to have ruled that Plaintiff may not, as a matter of law, pursue these theories under a "direct and indirect Corporate (DCMA) liability as separate from those above."*] [Court note: See Section III.B.4 of the Report and Recommendation filed simultaneously with this Pretrial Order.]

Plaintiff also claims failure to accommodate. [*Defendant objects that the failure to accommodate claims are not limited as ordered by the Court on March 22, 2022. The Court has limited the failure to accommodate to charges 2, 5, 11, and 15—those charges where Plaintiff was interviewed.*] [Court note: See Section III.B.2 of the Report and Recommendation filed simultaneously with this Pretrial Order.]

Plaintiff also claims Defendant had a Pattern and Practice of discrimination. [*Defendant objects that a pattern and practice claim cannot be pursued in this case as a matter of law, as recognized by the Court on March 22, 2022.*] [Court note: See Section III.B.3 of the Report and Recommendation filed simultaneously with this Pretrial Order.]

For all charges, Defendant has failed to meet its burden of production in every charge because it has not provided a legitimate, non-discriminatory, specific, clear, and individualized explanation for rejecting Plaintiff such that Plaintiff had an opportunity to prove that the proffered explanation was a pretext for discriminatory animus or retaliation for any charge.

For all charges, Plaintiff's theory of liability is one or a combination of the following three scenarios. The first scenario is when the ultimate decision maker manipulated the panel (or certain panelists) to execute his/her own discriminatory and retaliatory motives and intent by advising the panel to reject Plaintiff when the panel (or certain panelists) otherwise would not have done so and did not otherwise hold discriminatory and retaliatory motives or any improper intent. The second is the reverse, where the panel (or certain panelists) held the discriminatory and retaliatory motives and was influenced by the selecting official or ultimate official who otherwise held no discriminatory and retaliatory motives to reject Plaintiff. The third was when the both the panel (or certain panelists) and the selecting official or ultimate official both held discriminatory and

retaliatory motives and acted in consort to reject Plaintiff.  In this third scenario it was common for either the panel, the selecting official, or both to deny having any discriminatory or retaliatory motive or intent.

Plaintiff relies on both direct evidence and pretext theory for all charges.  To any extent that his claims for economic damages (i.e. back pay, front pay, costs, stated herein) might be limited, he reserves the right to rely on the theory or theories that afford the greatest economic remedies or he may choose to favor non-economic remedies for other reasons, or a combination of theories.  He reserves the right to choose different, separate, or both theories for each charge. Each charge may have different or multiple theories.  The nature of the evidence Plaintiff presents to meet his various burdens is not intended to be determinative of a specific legal theory or basis for any specific type of remedy. Should new information arise, he reserves the right modify the above.  The use the phrase "but for" for any charge herein is not meant to limit reliance on a particular theory or theories, nor does it dictate the highest or lowest bar within each that Plaintiff is required to make.

**b.    Defenses of Defendant.**

Defendant asserts the following defenses:

1.    Plaintiff has failed to state a claim for discrimination under the ADEA.
2.    Plaintiff has failed to state a claim for discrimination or retaliation under Title VII.
3.    Plaintiff cannot meet his prima facie case of discrimination or retaliation for any of his claims under the ADEA or Title VII.
4.    Plaintiff was not eligible to fill any position that he would have been entering after his retirement from the federal government.
5.    Plaintiff's status as retired from the federal government and receiving an annuity would have precluded him from being hired into any of the vacancies at issue.
6.    Plaintiff did not meet the educational requirements to be hired for the positions in Charges 5, 10, 12, 15, 28, 29, and 30.
7.    To the extent Plaintiff claims that he would have retired and been hired into the positions in Charges 2, 20, and 23, Plaintiff would not have been hired not only because of his status as a retired annuitant, but also because he would no longer satisfy the educational requirements for such positions.
8.    Plaintiff's application did not reflect that he met the specialized experience requirements to be hired for the positions in Charges 6, 9, 13, 18, 26, and 27.
9.    Defendant made all personnel decisions regarding Plaintiff based solely on legitimate, nondiscriminatory, and nonretaliatory factors.

42

10.  To the extent Plaintiff can establish that differential treatment based on his age, gender, religion, or prior protected activity played some part in the personnel action made, he cannot show that such differential treatment was a but-for cause of the ultimate decision not to hire Plaintiff, and the same decision would have been made absent such differential treatment.

11.  Plaintiff cannot establish a causal connection between his alleged protected conduct and an adverse personnel action.

12.  Plaintiff cannot establish that the reason for any job action or decision involving Plaintiff constitutes pretext for unlawful discrimination or retaliation.

13.  Plaintiff has not suffered damages as a result of the alleged conduct, and is not entitled to damages of any nature.

14.  Plaintiff's damages, if any, are not of the nature or to the extent claimed.

15.  Plaintiff's claims for damages are barred to the extent that they are speculative in nature.

16.  Plaintiff's claim for liquidated damages is barred due to waiver and because such damages are not available against a Federal Agency under principles of sovereign immunity.

17.  Plaintiff has failed to mitigate damages/any monetary loss alleged by Plaintiff in conjunction with each charge.

18.  Defendant is entitled to offset or otherwise reduce any monetary award based on Plaintiff's receipt of annuity payments since 2015, receipt of alternative employment earnings, and/or receipt of damages or a settlement in a different employment discrimination/retaliation lawsuit against Defendant.

19.  To the extent Plaintiff alleges the investigative process violates Title VII or the ADEA, such a claim is not recognized under Title VII or the ADEA.

20.  To the extent Plaintiff seeks to assert a retaliation claim based upon Defendant's alleged actions during the administrative process, Plaintiff has not preserved such a claim, did not exhaust remedies over such a claim, has no damages for such a claim, and has not stated a cognizable claim for such actions.

21.  Plaintiff failed to exhaust administrative remedies as to Charge 23, and as to all claims asserting a violation of law based on "disparate impact," "pattern and practice" or a failure to accommodate.

22.  Claims 4, 8, 14, 17, and 22 have been dismissed by this Court and cannot be pursued at trial.

23.  Plaintiff voluntarily dismissed Claims 1, 3, 16, 21, 25, and 32, and cannot be pursued at trial.

24. Plaintiff has failed to identify a specific identifiable employment practice or policy in relation to any Claims pending in this lawsuit and has failed to state a claim for disparate impact.
25. Plaintiff cannot establish that any employment practice or policy of defendant caused a significant disparate impact on a protected group.
26. Plaintiff did not request a religious accommodation in connection with any charge.

## 5. DAMAGES AND NON-MONETARY RELIEF REQUESTED.

### a. Plaintiff requests the following damages, liquidated damages, and non-monetary relief:

The bases for Plaintiff's claims for damages and remedies for each of the 21 charges in the second amended complaint are Title VII and the ADEA, and 29 CFR. 1614, all as amended.

Plaintiff provides the following chart for back pay which is based on OPM salary tables, DCIPS (Defense Civilian Intelligence Program) salary tables, and DSSR (Department of State Standardized Regulation) tables for allowances. An excel spreadsheet will be provided to Defendant as a supplemental disclosure to show the calculations and other assumptions.

If a claim for damages is not specifically cited herein, but is revealed in the future as one that Plaintiff would have gained, he may ask the court for permission to modify or add to the lists below. [*Defendant objects to Plaintiff's attempt to reserve the right to modify his claim for damages.* ***Further, the Court has already sustained this objection and this paragraph and the objection should be removed.***] [Court note: See Section III.D. of the Report and Recommendation filed simultaneously with this Pretrial Order.]

Should certain claims require substantiation or proof, Plaintiff agrees to provide it in a form acceptable to the court.

Plaintiff made reasonable attempts and applied reasonable diligence to obtain interim employment which he has documented to Defendant and will continue to update.  It includes non-federal government.

**Charge 13:** 2015 and 2016 rates are based on retained pay base of 112,450. Sunday premium (25% of basic for 8 hours).  Pay rates are based on DCIPS IA-

44

1102-04 tables estimates except 2017 uses a melded rate of 3 months in Israel and 9 months at DCIPS IA-1102-04.

**Charge 19:** Based on GS 11 Step 10 for 2015 and GS-12 Step 10 for years 2016-2023.

Plaintiff's damages for each charge by category of damages follow:

| Charge No. | Back Wages 01/15/2015 to 03/06/2023 | Interest on Back Wages | Tax Neutra-lization | Other Damages (From Table Below) | Total Back Pay | Front Pay | Total Damages (Back pay + Front Pay) |
|---|---|---|---|---|---|---|---|
| Charge 02 | 1,273,634 | 230,440 | 425,472 | 1,964,895 | 3,894,442 | 4,720,534 | 8,614,976 |
| Charge 05 | 1,403,613 | 253,957 | 468,893 | 1,964,895 | 4,091,358 | 4,959,221 | 9,050,580 |
| Charge 06 | 1,358,042 | 245,712 | 453,670 | 1,964,895 | 4,022,319 | 4,875,537 | 8,897,856 |
| Charge 07 | 1,224,380 | 221,528 | 409,019 | 1,964,895 | 3,819,823 | 4,630,087 | 8,449,910 |
| Charge 09 | 1,224,380 | 221,528 | 409,019 | 1,964,895 | 3,819,823 | 4,630,087 | 8,449,910 |
| Charge 10 | 1,467,553 | 265,526 | 490,253 | 1,964,895 | 4,188,227 | 5,076,638 | 9,264,865 |
| Charge 11 | 1,224,380 | 221,528 | 409,019 | 1,964,895 | 3,819,823 | 4,630,087 | 8,449,910 |
| Charge 12 | 1,358,042 | 245,712 | 453,670 | 1,964,895 | 4,022,319 | 4,875,537 | 8,897,856 |
| Charge 13 | 2,052,336 | 371,331 | 685,607 | 1,964,895 | 5,074,169 | 6,150,507 | 11,224,676 |
| Charge 15 | 1,682,301 | 304,380 | 561,992 | 1,964,895 | 4,513,569 | 5,470,991 | 9,984,560 |
| Charge 18 | 1,224,380 | 221,528 | 409,019 | 1,964,895 | 3,819,823 | 4,630,087 | 8,449,910 |
| Charge 19 | 1,498,380 | 271,103 | 500,551 | 1,964,895 | 4,234,930 | 5,133,247 | 9,368,177 |
| Charge 20 | 1,623,168 | 293,681 | 542,238 | 1,964,895 | 4,423,982 | 5,362,402 | 9,786,384 |
| Charge 23 | 1,354,229 | 245,022 | 452,396 | 1,964,895 | 4,016,542 | 4,868,535 | 8,885,077 |
| Charge 24 | 1,224,380 | 221,528 | 409,019 | 1,964,895 | 3,819,823 | 4,630,087 | 8,449,910 |
| Charge 26 | 1,274,045 | 230,514 | 425,610 | 1,964,895 | 3,895,064 | 4,721,288 | 8,616,352 |
| Charge 27 | 1,358,005 | 245,705 | 453,658 | 1,964,895 | 4,022,263 | 4,875,470 | 8,897,733 |
| Charge 28 | 1,623,168 | 293,681 | 542,238 | 1,964,895 | 4,423,982 | 5,362,402 | 9,786,384 |
| Charge 29 | 1,358,042 | 245,712 | 453,670 | 1,964,895 | 4,022,319 | 4,875,537 | 8,897,856 |
| Charge 30 | 1,224,380 | 221,528 | 409,019 | 1,964,895 | 3,819,823 | 4,630,087 | 8,449,910 |
| Charge 31 | 1,467,553 | 265,526 | 490,253 | 1,964,895 | 4,188,227 | 5,076,638 | 9,264,865 |

| Other Damages for each Charge | |
|---|---:|
| Relocation (based on 2 cars) | 500.00 |
| Compensatory Damages | 1.00 |
| Real Estate Expenses Fairfax VA | 23,818.00 |
| Relocation (Fairfax VA to Albany NY April 2914 | 5,166.00 |
| Court and other costs (depositions, expert(s), fees, travel, and supplies estimated | 20,000.00 |
| SF-50 forms for back periods | 0.00 |
| Social Security Benefit reduction per year of (12,588-7,788=4,440) x 8.25 years=39,600) | 39,600.00 |
| Reimbursement for taxes on mandatory IRA disbursements (Internal Revenue Code, Section 401(a)(9)(C)) due to not being employed. (~20K/y times 8.25 years =165K x tax rate of 27%) | 44,550.00 |
| Reimbursement for taxes on mandatory TSP disbursements | 5,000.00 |
| Annuity adjustment for the back pay period to reimburse OPM (95K x 8.25 years | 783,750.00 |
| Annual Leave in Hours (@208 hours/year) for 8.25 years =1,716 hours , if paid value is (~60 x 1716) | 102,960.00 |
| Roth and TSP/401  Contributions and interest earning (no contributions allowed without income (65K per year for 8.25 years)=536K for tax avoidance | 107,200.00 |
| Health Savings Act (HSA) benefits that were lost ($100 per year for 8.25 years= | 827.00 |
| Sick Leave in hours(104 hours/year) for 8.25 years= 858 if paid =(~60 x 858 = | 51,480.00 |
| Religious Compensatory Overtime (170 hours @ $60/hour for 8.25 years) | 84,150.00 |
| Increase of high 3 from 136,064 to 174,829 (separate from years of service) = (174839-136064)*0.7 (35.2 years*.02)*18 years (charge 13) or front pay | 488,565.00 |
| Loss in increased annuity from 95K/year for 10 years based 2%/year for 8.25 years =16.5%  95*16.5%*825 | 129,328.00 |
| Loss in Insurable Interest Annuity (10K/year compounded monthly for 70 years @1.75%) and Spousal annuity (5K per year compound for 5 year **1.75%**s) | 78,000.00 |
| Subtotal | **1,964,895.00** |

**b.  Defendant requests the following damages and non-monetary relief:**

Defendant made a Fed. R. Civ. P. 68 Offer of Judgment on March 1, 2021. Since that date, Defendant has incurred costs in defending this lawsuit. Defendant will continue to incur costs through trial and will seek all costs, as allowed in Fed. R. Civ. P. 68, should Plaintiff not recover an amount in excess of the 2021 Offer of Judgment.  Defendant also reserves the right to file a bill of costs if Defendant prevails.

**6.**     **AMENDMENTS TO PLEADINGS.**

None.

**7.**     **DISCOVERY.**

Under the scheduling order and any amendments, all fact discovery was to have been completed by August 13, 2021, and expert discovery completed by the parties' January 6, 2022, status conference.  All discovery is now complete.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions or other pretrial preparations.  Although discovery may be conducted beyond the deadline for completion of discovery <u>if</u> all parties are in agreement to do so, under these circumstances the court will <u>not</u> be available to resolve any disputes that arise during the course of such extended discovery.

**8.**     **MOTIONS.**

**a.**     **Pending Motions.**

Defendant's Motion to Strike (Doc. 210). This motion will be decided by the undersigned Magistrate Judge in due course.

**b.**     **Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Defendant intends to file a motion for summary judgment, as well as a motion to exceed the standard page limit for summary judgment motions. Defendant also intends to file motions in limine/other pre-trial motions in the event this matter proceeds to trial.

47

Plaintiff may file a motion for sanctions related to Defendant's failure to reasonably update its responses to discovery and interrogatories.
Plaintiff intends a motion to exclude the report and testimony of Mr. White, Defendant's forensic economist expert.

Plaintiff may file a motion for sanctions related to Defendant's failure to reasonably update its responses to discovery and interrogatories.

Plaintiff may file a motion for summary judgment and a motion to exceed the standard page limit for motions and replies.   Plaintiff also intends to file motions in limine/other pre-trial motions in the event this matter proceeds to trial.

Plaintiff intends to file post judgment motions for economic losses and interest and tax bump up on those amounts cited herein and those discovered during trial. Some may require expert assistance and others are simple.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **May 05, 2022**.

The parties should follow the summary-judgment guidelines available on the court's website below, as well as any further Judge-specific guidelines:

http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf

**c.**     **Motions Regarding Expert Testimony.**  All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed in accordance with the dispositive-motion deadline stated above.

9.     **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **February 6, 2023, at 9:00 a.m., in Wichita, Kansas.**  This case will be tried to both the jury and the Court.  The Title VII claims will be tried to the jury and the ADEA claims will be tried to the Court, concurrently.  Trial is expected to take approximately 3-4 weeks.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

**IT IS SO ORDERED.**

Dated April 5, 2022, at Wichita, Kansas.


s/ Gwynne E. Birzer
Gwynne E. Birzer
U. S. Magistrate Judge

49