UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


STAN LABER,
    Plaintiff,

                                    Case No. 18-1351-JWB-GEB

                                                Jury Trial


vs.


LLOYD J. AUSTIN, III, SECRETARY,
    UNITED STATES DEPARTMENT OF
    DEFENSE,
     Defendant,


**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMEMT**


This opposition specifically applies to Defendant's ECF 241 Motion dated May 19, 2022.

Plaintiff has alleged discrimination on the bases of age, religion, sex, and reprisal in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq as

amended and because of his age in violation of the Age Discrimination in Employment

Act, 29 U.S.C. § 621, et seq as amended when he was not selected for 21 vacancies

with Defendant in 2014 and 2015.

The following numbered alleged undisputed facts appear as submitted by Defendant

and each is followed Plaintiff's response of "Undisputed" or "Disputed" with his basis for

disputation.

1. UNDISPUTED.

2. Plaintiff worked for numerous Federal agencies from 1981 to January 9, 2015, including the Department of Veterans Affairs ("VA"), Defense Logistics Agency, U.S. Army Corps of Engineers, Department of the Army, DCMA, and National Geospatial-Intelligence Agency, with substantially all, if not all, of his positions in the acquisition field. Dep. of Stan Laber (Oct. 7, 2019) ("Laber 2019 Dep."), 75:18, 77:2-8; 78:24-25; 85:4-8; 104:24 – 105:1, attached as Ex.1. DISPUTED. Plaintiff disputes the conclusory opinion of his experience as "substantially all, if not all, of his positions in the acquisition field". The citations don't cite or support this conclusion. It is also specifically contradicted by Plaintiff's Affidavit and supporting exhibits which report that he has been employed by additional agencies, not only the five cited. Of the five cited, the VA was a medical field position, and the Corps of Engineers was in the logistics and information management fields. See PAf, Line 3.

3. Plaintiff worked for DCMA or its predecessor agency, during some of the 1980's, most of the 1990's, and into October 2000, when Plaintiff moved to the Department of the Army in lieu of termination. Excerpts from Official Personnel File of Stan Laber, pp. 2-7, attached as Ex. 2; Email forwarding attached Resume of Stan Laber ("Laber 2017 Resume"), pp. 2-9, attached as Ex. 3. DISPUTED. Plaintiff agrees that he transferred from DCMA in Chicago to the Army in Wiesbaden Germany effective October 23, 2000 but it was not "in lieu of termination" as alleged. Plaintiff was never "terminated". His attorney negotiated a "transfer". See PAf, Line 3.

4. UNDISPUTED.

5. Plaintiff began seeking positions with DCMA in 2013 and continues to seek employment. Doc. 141, Plaintiff's Second Amended Complaint, ¶ 22. DISPUTED. Plaintiff agrees to the fact but his complaint did does not agree that he had not sought employment with DCMA prior to 2013 to the exclusion of other employers. See PAf, Line 4 which states he believes he began applying for jobs outside of NGA about 7 years before he retired in 2015. He accepted one position but later declined the offer.

Relationship between AST and DCMA

6. In 2014 and 2015, AST, part of the Department of the Army, provided HR services to DCMA related to recruiting individuals to fill vacant positions. Decl. of Leslie Davis ("Davis Decl."), ¶ 5, attached as Ex. 4. DISPUTED. Plaintiff agrees to the fact that a relationship existed whereby AST provided Defendant with certain HR (Human Resource) services but the terms and conditions are unknown. Government agencies only perform services under detailed written agreements. Discovery would be required if any personnel matter were to be determined based on the limits of the agreement. Issue that are uncertain are the s authority and the extent of the use of DCMA guidance (regulations, policies, practices) versus Army guidance and to the extent to which

Defendant required AST to apply DoD, DCMA, OPM or other guidance. For example, the following HR issues appear to be within that domain. 1. Source and authority for waivers of qualifications, 2. Pay setting guidance. 3. Granting and appeals for qualifications, recruitment incentives, 4. Use of Official AST position descriptions versus descriptions agreed upon between the personnelist and selecting official, 5. Hiring annuitants 6. Method to establish a cutoff for referral, 7. Use of OPM versus DoD qualifications guidelines.  This is list is not complete.

7. AST posted vacancies for DCMA on the website USAJobs; conducted an initial review of applicants to determine which applicants' applications showed the minimum qualifications for education (if any), showed the required specialized experience, and fell within the "area of consideration" to be included on a "Certificate of Eligibles" (the "referral list"); sent the referral list to the DCMA selecting official(s) for the vacancy in question; and performed or coordinated pre-employment checks after a tentative offer had been made. Ex. 4, Davis Decl., ¶ 7. DISPUTED Davis Decl., ¶ 7 makes this claim but does not substantiate through any competent evidence that AST or any individual AST personnelist performed any of these activities or other activities in regard to any instant charge at any time in the manner claimed. No written policy, guideline, or procedure is proffered as competent evidence to support the claimed process or the source(s) of guidance that was followed or was required to be followed. No record regarding a specific applicant or any specific vacancy is alleged to have been performed in the manner stated by Ms. Davis nor would she have any first-hand knowledge because there is no evidence she performed the duties of those whom she supervised.

8.. UNDISPUTED.

9. AST HR Specialists initially evaluated whether applicants met the required education, specialized experience, and area of consideration based only on the application materials. Ex. 4, Davis Decl., ¶ 8. DISPUTED. The cited Ex. 4, Davis Decl., ¶ 8 Davis Decl., ¶ 8 makes this claim but does not substantiate through any competent evidence that AST or any individual AST personnelist performed any of these activities or other activities in regard to any instant charge at any time in the manner claimed. No written policy, guideline, or procedure is proffered as competent evidence to support the claimed process or the source(s) of guidance that was followed or was required to be followed. No record regarding a specific applicant or any specific vacancy is alleged to have been performed in the manner stated by Ms. Davis nor would she have any first-hand knowledge because there is no evidence she performed the duties of those whom she supervised.

10. When evaluating specialized experience, HR Specialists look to the descriptions provided for listed work experience and not just the job titles or series/grades. Ex. 4, Davis Decl., ¶ 8. DISPUTED.  The cited Ex. 4, Davis Decl., ¶ 8 makes this claim but does not substantiate that AST or any individual AST personnelist performed any of these activities or that no other activities were performed in regard to any instant charge at

any time in the manner claimed. No written policy, guideline, or procedure is proffered as evidence to support the claimed process. No record of any applicant determinations performed in the manner stated by Ms. Davis is cited.  It is also contradicted by the fact the log of personnelists' time in dispositioning and adjudicating applications in the instant matter. The log demonstrates that each application is reviewed for a period of averaging about 60 seconds.  To review an application for job series/titles or grades and the entire text of all the work experience blocks to find specialized service is not possible in such a short period of time. It is also contradicted by the fact that most of the errors to which Defendant recognized, were based on information not located in the first few pages of an application, such as additional experience and assignments.

11. Once AST performed an initial review of applicants and sent the referral list to the DCMA Selecting Official, the Selecting Official could convene a panel to assist in reviewing applications, conducting interviews, and recommending an applicant for hire. Or, if the position was a GS-14 or below, the Selecting Official could review applicants, conduct interviews (if desired), and make a selection (or not) without the use of a panel. Decl. of Kathleen Butera Fanney ("Butera Decl."), ¶ 30, attached as Ex. 5. DISPUTED. No written policy, guideline, or procedure is proffered as evidence to support the claim that Selecting Officials had the choices claimed. Ms. Butera Fanney does not have personal hand knowledge as she does not state that she was every employed by AST or was a selecting official during 2014 or 2015 at any time.  The citation does not substantiate that AST or any individual AST personnelist or any hiring official performed any of these activities in regard to any instant charge at any time.

12. If interviews were conducted, pursuant to DCMA hiring practices, interviewers would read a scripted introduction and all applicants would be asked the same questions and evaluated based on their answers to those questions. Ex. 5, Butera Decl., ¶ 31. DISPUTED. No written policy, guideline, or procedure is proffered as evidence to support the claim. Ms. Buter does not have first knowledge of what occurred in any specific claims.  Further she does not state that was employed by AST at any time. The citation does not substantiate that AST or any individual AST personnelist performed any of these activities in regard to any instant charge or any specific applicant at any time.

13. The Selecting Official makes the ultimate hiring decision, even if a panel is utilized. Ex. 5, Butera Decl., ¶ 30. DISPUTED. This fact is contradicted by the email at Plaintiff's Exhibit G whereby it states that the selecting delegated her authority to a panelist to a Ms. Brown, to make the ultimate decision to select an applicant.  This raises serious doubt about the true identities of the selecting officials and whether or not there was a reviewing official for every vacancy. Based on the casual manner this occurred evidenced herein, it rises to being a material dispute for every vacancy. Even if the certificate displays the electronic signature of the intended selecting official, the decision could actually have been entered by a panelist, the reviewing official, or anyone who makes a request for access to AST.  This includes not only the selectee but

the status code for every applicant, who for example, could be coded as having declined an offer or withdrew consideration.

14. During 2014 and 2015, AST commonly had 1000+ vacancies pending at any given time, with 300+ vacancies at the referral stage (after the application period had closed and before the referral list was issued). Ex. 4, Davis Decl., ¶ 12. DISPUTED. This is not substantiated by any competent evidence or state how the alleged fact relates to any claim in dispute. Even if trues, Defendant does not admit or deny that any application submitted by Plaintiff or any applicant was untimely dispositioned or what was done about it.

15. It was common for AST to run a significant backlog in 2014-15. Ex. 4, Davis Decl., ¶ 13. DISPUTED. This is not substantiated by any competent evidence and does state any vacancies to which it might apply or how the alleged fact relates to any claim in dispute. Defendant does not admit or deny that any application submitted by Plaintiff or any applicant was untimely dispositioned or what was done about it.

16. During 2014 and 2015, depending upon experience and efficiency, an HR Specialist preparing a referral list would review on average between 20 and 40 applications per day. Ex. 4, Davis Decl., ¶ 14. DISPUTED. This is not substantiated by any competent evidence and does state any time period to which it might apply or how the alleged fact relates to any claim in dispute. Defendant does not admit that any application submitted by Plaintiff or any applicant was erroneously dispositioned or what was done about it.

17. While AST tried to minimize mistakes, at times applicants who should have been referred were not included on the referral list, and at times applicants who should not have been referred were included on the referral list. Ex. 4, Davis Decl., ¶ 15. 12 Charges where AST did not refer Plaintiff for consideration by DCMA – Charges 6, 9, 13, 18, 19, 20, 26, 27, 28, 29, 30, and 31. DISPUTED. Plaintiff agrees that he was not referred for the cited 12 vacancies. More importantly, Defendant has failed to identified any candidate with whom Plaintiff should not have competed.  Additional discovery is needed to ascertain this material issue not only for the 12 vacancies, but the impact on the remaining 9 vacancies where Plaintiff unnecessarily evaluated lower than an unqualified applicant.  Ultimately, it is undisputed that there are 21 triable issues.  See Plaintiff's argument regarding each herein.  Defendant's claim that it tried to minimize mistakes is contradicted by the fact that it cites no proactive effort to identify any root causes or any mitigation effort.  Further, when an error is found, no corrective action is taken, except for issuing a few sham priority consideration letters that resulted in no referral for Plaintiff for the last 8 years or anyone who was issued such a letter.

Charge 6 (Job Opportunity Announcement ("JOA") ending in 0260)

18. UNDISPUTED.

19. UNDISPUTED.

20. Phyllis Williams is the HR Specialist who reviewed Plaintiff's application and did not include Plaintiff on the referral list. Doc. 215, PTO SF 28. DISPUTED. Plaintiff agrees that he was not entered on the referral list but disputes who else may have reviewed and been involved in rejecting him, particularly after Defendant learned or must have learned of the alleged innocent error. Plaintiff cannot present facts essential to justify his opposition without time to obtain affidavits or declarations from each person, other than the personnelist who failed to refer him, to learn of his or her legitimate non-discriminatory basis for not taking appropriate corrective action.  See Rule 56(d) affidavit which specifies what is needed, why it is essential to opposition, why the very extensive discovery already conducted failed to provide or could not have provided what is now requested.

21. Ms. Williams rated Plaintiff's application on January 20, 2015, and issued the first referral list for this vacancy on January 22, 2015. Ex. 4, Davis Decl., ¶ 22. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery.  See 56(d) Affidavit for "additional referrals".

22. The "specialized experience" for this vacancy was defined as one year at the next lower grade with: "Experience which involved the Quality Assurance (Electronics) principles, concepts, and methodology when analyzing the products or services of a contractor's processes." Ex. 4, Davis Decl., ¶ 23; see also Ex. 4, Attach. D (Job Announcement). DISPUTED. There is also no competent record that the alleged specialized experience was the correct or intended specialized experience or that it was based on the position description or that it was planned as part of the SCD or that is was stated in the vacancy announcement or OPM questionnaire, in other references to it, was identical to that which was applied to every applicant, or that an applicant could have met the requirement through equivalent education or waiver, or that it was inconsistent with other statements appearing in other vacancies based on the identical same position description and job title and grade as required by AST standardized position descriptions.

23. On January 20, 2015, Ms. Williams entered the following note into the USAStaffing database as the reason for non-referral: "Applicant's resume lacks at least one year of specialized experience equivalent to at least the GS-09 grade level or equivalent under other pay systems in the Federal service which involved the Quality Assurance (Electronics) principles, concepts, and methodology when analyzing the products or services of a contractor[']s processes." Ex. 4, Davis Decl., ¶ 24. DISPUTED. This alleged note is not substantiated or cited by any competent evidence. It is contradicted by the fact the specialized experience position description for this vacancy was coded as H8336351. See Plaintiff's Exhibit C, ROI, Page 1478. Plaintiff was referred for

H8336351.  This PD code is identical to the PD code for Vacancy (0556) where Plaintiff was granted a priority consideration as reported herein at 73. Before granting the priority consideration, Defendant must have thoroughly reviewed Plaintiff's application. Not surprisingly, the vacancy had the identical position description number, "H8336351" at Plaintiff's Exhibit B ROI Page 000473.  Defendant cannot be at war with itself. The applications that Plaintiff submitted for each vacancy are nearly identical at Defendant's attachments D and M respectively, to Defendant's Exhibit 4, Declaration of Ms. Davis. A reasonable jury could find that because Defendant learned of the error and took no action to correct it for over 8 years, it now serves as direct evidence of retaliation against Plaintiff for filing his complaint.

24. At the time Ms. Williams did not refer Plaintiff, Ms. Williams did not know Plaintiff's age or religion, and did not know of Plaintiff's prior protected activity. Decl. of Phyllis Williams ("Williams Decl."), p. 6, attached as Ex. 6. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

25. Plaintiff's age, religion, and prior protected activity played no role in Ms. William's qualifications analysis. Ex. 6, Williams Decl., p. 7. DISPUTED, Plaintiff maintains Plaintiff's age, religion, and prior protected activity played a "but for" role in her rejection of Plaintiff.

26. Ms. Williams referred another applicant who submitted an application reporting military service in 1966—making him presumably born in the 1940s. Ex. 4, Davis Decl., ¶ 25. DISPUTED. The fact is not substantiated by any competent evidence that it occurred or shows and relevancy to Plaintiff's claim that he was discriminatorily not referred for a 1910-11 vacancy. Ms. Davis has no personal knowledge as she was not the personnelist who made the referral.

27. Ms. Williams referred Plaintiff for a different vacancy on August 7, 2015 (Vacancy ID 1435558). Ex. 4, Davis Decl., ¶ 91. DISPUTED. Plaintiff agrees that he was also referred for Vacancy ID 1435558 on July 22, 2015 for a GS-1102-12 vacancy in San Diego, which was a Quality Assurance Specialist (Electronics) vacancy and therefore not relevant.

28. UNDISPUTED.

Charge 9 (JOA ending in 1532)

29. UNDISPUTED.

30. UNDISPUTED.

31. Rachel Owens is the HR Specialist who reviewed Plaintiff's application and did not include him on the referral list. Doc. 215, PTO SF 39. DISPUTED. Plaintiff agrees that he was not entered on the referral list but disputes who else may have reviewed and been involved in rejecting him, particularly after Defendant learned or must have learned of the alleged innocent error. Plaintiff cannot present facts essential to justify his opposition without time to obtain affidavits or declarations from each person, other than the personnelist who failed to refer him, to learn of his or her legitimate non-discriminatory basis for not taking appropriate corrective action.  See Rule 56(d) affidavit which specifies what is needed, why it is essential to opposition, why the very extensive discovery already conducted failed to provide or could not have provided what is now requested.

32. Ms. Owens rated Plaintiff's application and issued the referral list for this vacancy on January 29, 2015. Ex. 4, Davis Decl., ¶ 27. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

33. The specialized experience for this position stated, "To qualify, applicants must possess one year of specialized experience equivalent to the next lower grade/level GS-09. Specialized experience is defined as: experience in Quality Assurance manufacturing, electronics or mechanical principles, concepts, and methodology when analyzing the products or services of a contractor's processes." Ex. 4, Davis Decl., ¶ 28; see also Ex. 4, Attach. F (Job Announcement). DISPUTED. There is also no competent record that the alleged specialized experience was the correct or intended specialized experience or that it was based on the position description or that it was planned as part of the SCD or that is was stated in the vacancy announcement or OPM questionnaire, in other references to it, was identical to that which was applied to every applicant, or that an applicant could have the requirement through equivalent education or waiver, or that it was consistent with other statements appearing in other vacancies based on the same position description and job title and grade.  See Affidavit for examples of the inconsistent definitions and when and how Plaintiff met each alleged specialized requirement. Ms. Davis has no personal knowledge as she was not the personnelist.

34. Ms. Owens determined Plaintiff did not meet the specialized experience for this position and on January 29, 2015, entered the following note into the USAStaffing database as the reason for non-referral: "Resume does not include 52 weeks of experience at the GS-09 level with quality assurance manufacturing, electronics or mechanical principles, concepts and methodology when analyzing the products or services of a contractor's processes." Ex. 4, Davis Decl., ¶ 29. DISPUTED. There is also no competent record that the alleged specialized experience was the correct or intended specialized experience or that it was based on the position description or that

it was planned as part of the SCD or that is was stated in the vacancy announcement or OPM questionnaire, in other references to it, was identical to that which was applied to every applicant, or that an applicant could have the requirement through equivalent education or waiver, or that it was consistent with other statements appearing in other vacancies based on the same position description and job title and grade. See Affidavit for examples of the inconsistent definitions and when and how Plaintiff met each alleged specialized requirement. Ms. Davis has no personal knowledge as she was not the personnelist. This alleged note is not substantiated or cited by any competent evidence. It is contradicted by the fact the specialized experience position description for this vacancy was coded as H8336351. See Plaintiff's Exhibit C, ROI, Page 001384. Plaintiff was referred for H8336351. This PD code is identical to the PD code for Vacancy (0556) where Plaintiff was granted a priority consideration as reported herein at 73. Before granting the priority consideration, Defendant must have thoroughly reviewed Plaintiff's application. Not surprisingly, the vacancy had the identical position description number, "H8336351" at Plaintiff's Exhibit B ROI Page 000473. Defendant cannot be at war with itself. The applications that Plaintiff submitted for each vacancy are nearly identical at Defendant's attachments F and M respectively, to Defendant's Exhibit 4, Declaration of Ms. Davis. A reasonable jury could find that because Defendant learned of the error an took no action to correct it for over 8 years, it now serves as direct evidence of retaliation against Plaintiff for filing his complaint.

35. At the time Ms. Owens made this determination, she did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity. Decl. of Rachel Owens ("Owens Decl."), at pp. 6-7 (Attach. A), attached as Ex. 7. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases. See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

36. Plaintiff's age, religion, and prior protected activity played no role in Ms. Owens' qualifications analysis. Ex. 7, Owens Decl., pp. 7-8 (Attach. A). DISPUTED.

37. Ms. Owens referred Plaintiff for at least six subsequent positions on the following dates: (1) July 29, 2015, Vacancy 1436250; (2) Dec. 3, 2015, Vacancy 1511403; (3) April 21, 2016, JOA SWH816EHA1656095228992; (4) Nov. 6, 2018, JOA SWH818P61847920289EA; (5) Dec. 11, 2018, JOA SWH818P62344650811EA; and (6) June 7, 2019, JOA SWH819P65602882164. Ex. 4, Davis Decl., ¶ 91. DISPUTED

38. UNDISPUTED

Charge 13 (JOA ending in 6942)

39. UNDISPUTED.

40. The salary range for this position was $60,877 to $79,138, and while locality pay would not apply during the overseas tour, the selectee would receive other allowances. Ex. 4, Davis Decl., ¶ 31. DISPUTED. Plaintiff agrees the salary range was the posted range and but that locality pay would not apply until the selectee returned from overseas to a US based position. The Job announcement also stated that *"Pay retention may be offered to successful applicants for positions at overseas locations. For this provision to apply to employees already overseas, the selected individual would have to require permanent change of station move and would have to be selected as a result of a recruitment effort that had been extended outside of the overseas command involved."* Plaintiff's Exhibit C ROI, Page 001181. See PAffsal at line 40, regarding other pay benefits.

41. This position, due to its location, was limited to a tour length of 2 years accompanied, and the selectee would return to the United States after the tour. Ex. 4, Davis Decl., ¶ 32. DISPUTED. Plaintiff agrees the initial tour would be 2 years but, could be extended up to a total of 5 years per Title 10, United States Code, Section 1586 - Rotation of career-conditional and career employees assigned to duty outside the United States and DoDI 1400.25, Volume 1230, 26 Jul 12 – Employment in the Foreign Areas and Employee Return Rights.

42. Monique King is the HR Specialist who reviewed Plaintiff's application and did not include him on the October 7, 2014, referral list. Doc. 215, PTO SF 64. DISPUTED. Plaintiff agrees that he was not entered on the referral list but disputes who else may have reviewed and been involved in rejecting him, particularly after Defendant learned or must have learned of the alleged innocent error. Plaintiff cannot present facts essential to justify his opposition without time to obtain affidavits or declarations from each person, other than the personnelist who failed to refer him, to learn of his or her legitimate non-discriminatory basis for not taking appropriate corrective action.  See Rule 56(d) affidavit which specifies what is needed, why it is essential to opposition, why the very extensive discovery already conducted failed to provide or could not have provided what is now requested.

43. Ms. King rated Plaintiff's application on October 6, 2014, and issued the first referral list for this vacancy on October 7, 2014. Ex. 4, Davis Decl., ¶ 34. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery.  See 56(d) Affidavit for "additional referrals".

44. UNDISPUTED.

45. Ms. King determined Plaintiff did not meet the specialized experience requirements for this specialty and grade and on October 6, 2014, Ms. King entered the following note into the USAStaffing database as the reason for non-referral: "lacks specialized

experience at the GS-11 as a Quality Assurance Specialist manufacturing, production methods, processes, inspection systems and testing techniques to determine product conformance to contractual quality and technical requirements; performing statistical and quality data analysis and evaluation to determine contractor compliance; and experience of acquisition quality assurance to design, plan, and implement an economical risk management program." Ex. 4, Davis Decl., ¶ 34. DISPUTED. Plaintiff agrees he was not referred but there is no competent evidence that the note appears anywhere or that if it does exist, that it was placed there by Ms. King on October 6, 2014, or that its placement was the basis for Plaintiff's rejection. Ms. Davis was not the personnelist was an AST supervisor who did not process personal actions, she only supervised others.   There is also no competent record that the alleged specialized experience was the correct or intended specialized experience or that it was based on the position description or that it was planned as part of the SCD or that is was stated in the vacancy announcement or OPM questionnaire, in other references to it, was identical to that which was applied to every applicant, or that an applicant could have the requirement through equivalent education or waiver, or that it was consistent with other statements appearing in other vacancies based on the same position description and job title and grade.  See Affidavit for examples of the inconsistent definitions and when and how Plaintiff met each alleged specialized requirement. Ms. Davis has no personal knowledge as she was not the personnelist.  Finally, Ms. King knew or had to have known that she made an error.  At some point, even as late as after Plaintiff filed his formal complaint, Defendant had to have reviewed Ms. King's decision and discussed it with her and made a determination that there was an error. Defendant must have concluded that an error occurred because the position description code for this vacancy, as stated in Defendant's motion at 44, was identical to the position description code that appears in the ROI on the page defining the Position Description code for the vacancy at Plaintiff's Exhibit ROI D, Page 001161, "H8336352".  The same PD number appears in the recruit file at Plaintiff's Exhibit C, Page ROI 001159.

It is undisputed that Plaintiff was granted priority consideration for Charge 19, Vacancy (0556) as Defendant reported in 73 herein.  Plaintiff cannot dispute that when it granted Plaintiff priority consideration, it most carefully reviewed his qualifications for vacancy (0556).  Not surprisingly, the vacancy had the identical position description number, "H8336352" at Plaintiff's Exhibit B ROI Page 000473.  Defendant cannot be at war with itself. The applications that Plaintiff submitted for each vacancy are nearly identical at Defendant's attachments J and M respectively, to Defendant's Exhibit 4, Declaration of Ms. Davis.

46. At the time Ms. King determined Plaintiff was not qualified she did not know Plaintiff's age, gender, or religion, or whether he had engaged in prior protected activity, and did not check Plaintiff's gender during the rating period. Decl. of Monique King ("King Decl."), pp. 2, 3-4, attached as Ex. 8. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was

aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection. A reasonable jury could find that because Defendant learned of the error an took no action to correct it for over 8 years, it now serves as direct evidence of retaliation against Plaintiff for filing his complaint.

47. Plaintiff's age, gender, religion, and prior protected activity played no role in Ms. King's qualification analysis. Ex. 8, King Decl., p. 5. DISPUTED. See Affidavit.

48. Ms. King referred 21 individuals on the October 7, 2014 referral list. Sixteen of those individuals had traditionally male names. Ex. 4, Davis Decl., ¶ 35; Ex. 4, Attach. II. DISPUTED. See Affidavit.

49. Ms. King referred Plaintiff for subsequent positions, including two vacancies in February 2015—Charges 12 and 15 in this lawsuit. Doc. 215, PTO SF 58, 68. DISPUTED.  Plaintiff agrees but finds it immaterial.

50. UNDISPUTED.

51. An applicant born in 1961 and who was a GS-14 DCMA employee was erroneously not referred for this position. Ex. 4, Davis Decl., ¶ 36. DISPUTED. Plaintiff agrees that Mr. Bahary was not referred but after his appeal he received a priority referral, albeit a sham.  Plaintiff also appealed and filed an EEO complaint which caused him to not receive anything in retaliation.

52. DCMA has no record of EEO activity involving the applicant identified in Fact 51 from at least 2009 through present. Decl. of Victoria Seabury ("Seabury Decl."), ¶ 4, attached as Ex. 9. Charge 18 (JOA ending in 6646) DISPUTED. Plaintiff maintains that this fact, if true, substantiates his claim of retaliation.

Charge 18 (6646)

53. UNDISPUTED.

54. UNDISPUTED.

55. Rachel Owens is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 77. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

56. On or about December 11, 2014, Ms. Owens rated Plaintiff's application for this vacancy, and issued the first referral list for this vacancy. Ex. 7, Owens Decl., ¶ 5.

DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery. See 56(d) Affidavit for "additional referrals".

57. UNDISPUTED.

58. Ms. Owens determined that Plaintiff did not meet the specialized experience for referral for this position and on December 11, 2014, entered the following note into the USAStaffing database as the reason for non-referral: "Resume does not include 1 year of experience at the GS09 level which involved the full range of principles, concepts, and methodology related to functional programs, performing statistical and quality data analysis and evaluation to determine supplier compliance with contractual requirement." Ex. 7, Owens Decl., ¶ 8. DISPUTED. This is not substantiated by any competent evidence. Regardless, Plaintiff met the cited requirement as evidenced by the undisputed fact that Defendant evaluated his resume for this identical requirement and found that he met the identical requirement for Claim 19 for which he was granted priority consideration. Both vacancies shared the identical PD numbered H8336351. See Plaintiff's Exhibit B, ROI Page 000890 and Additionally, other persons made the same determination later which then constituted direct evidence of retaliatory discrimination.

59. At the time Ms. Owens made this determination, she did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity. Ex. 7, Owens Decl., ¶ 10. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases. See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

60. Plaintiff's age, religion, and prior protected activity played no role in Ms. Owens's qualifications analysis. Ex. 7, Owens Decl., ¶ 11. DISPUTED. There was a direct role because the error was the proximate reason Plaintiff was rejected and no corrective action taken for 8 years.

61. UNDISPUTED.

62. UNDISPUTED.

Charge 19 (JOA ending in 0556)

63. On or about December 4, 2014, Plaintiff submitted his application for this GS-1910-11/12 full time, permanent Quality Assurance Specialist (Nuclear) position in Milwaukee,

WI. This is the vacancy at issue in Charge 19 of the Second Amended Complaint. Doc. 215, PTO SF 79. UNDISPUTED.

64. The posted salary range for this position was $57,982 to $106,955. Doc. 215, PTO SF 80. UNDISPUTED.

65. Elizabeth Infante is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 81. UNDISPUTED.

66. Ms. Infante rated Plaintiff's application on January 29, 2015, and issued the first referral list for this vacancy on February 2, 2015. Ex. 4, Davis Decl., ¶ 38. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. There is no competent evidence supporting this alleged fact that others did not review Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery.  See 56(d) Affidavit for "additional referrals".

67. This vacancy was only open to (1) current DoD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants. It was not open to all U.S. Citizens. Ex. 4, Davis Decl., ¶ 39; see also Ex. 4, Attach. M (Job Announcement). DISPUTED. Every vacancy may be filled in any manner permitted by Defendant's rules and regulations, not just the four stated sources.

68. To fall within the Area of Consideration ("AOC") as a "current DoD employee," the applicant had to be employed as a permanent career or career-conditional employee in the competitive service. This also included current DoD employees with excepted service status on a Veteran's Recruitment Appointment. Ex. 4, Davis Decl., ¶ 42. DISPUTED. Every vacancy may be filled in any manner permitted by Defendant's rules and regulations, not just the four stated sources.

69. UNDISPUTED.

70. Ms. Infante determined that Plaintiff was outside the AOC for this vacancy, and on January 29, 2015, entered the following note into the USAStaffing database as the reason for non-referral: "SHOWS EXCEPTED SERVICE – DOES NOT MEET AOC." Ex. 4, Davis Decl., ¶ 41. DISPUTED. No competent evidence is cited to substantiate this fact.

71. Mr. Nonamaker explained the mistake as follows:
The vacancy was open to Current Federal Employees, former employee's eligible for reinstatement, Veterans eligible for VEOA and Interagency transfers eligible for ICTAP. Mr. Laber supplied his most current SF50 and correctly titled it "SF50". This SF50 showed that he was in the Excepted service, so he was marked as not being within the Area of Consideration for this announcement. Upon further review, I found a second SF50 that Mr. Laber had supplied that was titled "Other

documents" which showed that he had previously held a position in the Competitive service, which entitled him to reinstatement eligibility. Mr. Laber should have been referred to the hiring official. Ex. 10, Nonamaker Decl., p. 6. DISPUTED. No competent evidence supports his explanation conclusion that it was a mistake.  This is especially here when he had no first-hand knowledge of the underlying facts.

72. When originally reviewing Plaintiff's application, Ms. Infante did not see that Plaintiff had uploaded two SF-50s, and while the SF-50 uploaded as "SF-50" did not show Plaintiff as within the AOC, the SF-50 uploaded as "Other" showed that Plaintiff was in the AOC. Later, Ms. Infante concurred that Plaintiff should have been referred for this vacancy. Decl. of Elizabeth Infante ("Infante Decl."), pp. 4, 5, 6, attached as Ex. 11. DISPUTED.  Plaintiff maintains that this is direct evidence of discrimination because there is no competent evidence that any corrective was taken or even considered beyond the issued letter which was a sham letter because after 8 years of no action, it certainly rises to the level that a jury may find that Defendant's lack of action in the face of its own knowledge as retaliatory discrimination.

73. A letter was issued to Plaintiff advising him that he would be entitled to priority consideration for the next Quality Assurance Specialist (Nuclear) GS-1910-11/12 with DCMA located at Milwaukee, WI before other competitive and non-competitive candidates are referred. Ex. 10, Nonamaker Decl., pp. 6, 8, 9. DISPUTED. Plaintiff agrees he received letter but it is contradicted in that it resulted in nothing.  There is no competent evidence that he was entered into any database at or that he was considered for any vacancy based on having received the letter.  It was all a sham and not in accordance with OPM guidance regarding lost consideration.  The PD number was H8336351 and H8336352 for grades 11 and 12 respectively, See Plaintiff's Exhibit B, ROI 000469.

74. At the time Ms. Infante made her determination, she did not know Plaintiff's age, gender, religion, or whether he had engaged in prior protected activity. Ex. 11, Infante Decl., pp. 3-4. DISPUTED. Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

75. Plaintiff's age, religion, and prior protected activity played no role in Ms. Infante's analysis. Ex. 11, Infante Decl., pp. 4-5. DISPUTED. Her role was critical because even if she made an innocent error initially, she and Defendant sat on it for 8 years in retaliation for Plaintiff's complaints. This constitutes direct evidence.

76. If Plaintiff had only submitted the SF-50 showing his excepted service, the AST HR specialist's determination would have been correct. But, Plaintiff's second SF-50 demonstrated that he had previously held a competitive service position, and he should

have been considered within the AOC based on his status as reinstatement eligible. Ex. 4, Davis Decl., ¶ 43. DISPUTED. No competent evidence supports this speculation.

77. Ms. Infante had previously referred Plaintiff for the vacancies in Charges 22 and 25 of this lawsuit, and subsequently referred Plaintiff for the vacancies in Charges 10 and 11. Doc. 215, PTO SF 43 (Charge 10), SF 50 (Charge 11); compare Ex. 4, Davis Decl., ¶ 91 and Doc. 141, pp. 58, 64 (identifying JOA numbers associated with Charges 22 and 25). DISPUTED. No competent evidence supports these claims. Plaintiff agrees that Ms. Infante referred him for other vacancies but finds this fact immaterial in regard to this vacancy.

78.
UNDISPUTED.

Charge 20 (JOA ending in 4693)

79. UNDISPUTED.

80. The posted salary range for this position was $75,974 to $98,764. Doc. 215, PTO SF 84. UNDISPUTED.

81. UNDISPUTED.

82. Ms. Swisher rated Plaintiff's application and issued a referral list on November 26, 2014. Ex. 4, Davis Decl., ¶ 45. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

83. This vacancy was only open to (1) current DOD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants. Doc. 215, PTO SF 85. DISPUTED. Plaintiff maintains every vacancy may be filled by any means, not just a job posting.

84. Ms. Swisher determined that Plaintiff was outside the AOC and on November 26, 2014, entered the following note into the USAStaffing database as the reason for non-referral: "applicant is in the excepted service." Ex. 4, Davis Decl., ¶ 47. DISPUTED. There is no competent evidence to support this and Ms. Davis did not have first-hand knowledge of any of the relevant events.

85. To fall within the AOC as a "current DoD employee," the applicant had to be employed as a permanent career or career-conditional employee in the competitive service. This also included current DoD employees with excepted service status on a Veteran's Recruitment Appointment. Ex. 4, Davis Decl., ¶ 48. DISPUTED. There is no competent evidence to support this and Ms. Davis did not have first-hand know ledge of any of the relevant events.

86.  UNDISPUTED.

87. Ms. Swisher believed Plaintiff was not within the AOC based on the SF-50 uploaded and labelled "SF-50," which showed Plaintiff on an excepted appointment. Decl. of Christina Swisher ("Swisher Decl."), p. 5, attached as Ex. 12. DISPUTED. That fact may have been true but it is undisputed at some later, even when Plaintiff filed his formal complaint, Ms. Swisher and Defendant learned of the error and took no action to correct the error for over 8 years.

88. At the time Ms. Swisher determined Plaintiff was not qualified, she did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity. Ex. 12, Swisher Decl., pp. 45. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

89. Plaintiff's age, religion, and prior protected activity played no role in Ms. Swisher's analysis. Ex. 12, Swisher Decl., p. 6. DISPUTED. This is contradicted by the fact that her initial action caused Plaintiff to not be employed for 8 years.

90. If Plaintiff had only submitted the SF-50 showing his excepted service, the AST HR specialist's determination would have been correct. But, Plaintiff's second SF-50 demonstrated that he had previously held a competitive service position, and he should have been considered within the AOC based on his status as reinstatement eligible. Ex. 4, Davis Decl., ¶ 49. DISPUTED. "would have been" is not relevant to what occurred.

91. On November 26, 2014, Plaintiff was informed that he was not referred because he was outside the AOC: "IAOC You were not referred for this position because you were outside of the area of consideration." Doc. 215, PTO SF 86. DISPUTED. Defendant exhibits no remorse and had no reason not to take any corrective, even when it had no doubt than an error occurred. This converts what could have been innocent behavior to direct evidence of retaliatory discrimination after 8 years.

92. UNDISPUTED.

Charge 26 (JOA ending in 5352)

93. UNDISPUTED.

94.. UNDISPUTED.

95. Kyshia Hayes is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 109. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

96. Ms. Hayes rated Plaintiff's application and issued a referral list on January 8, 2015. Ex. 4, Davis Decl., ¶ 51. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

97. UNDISPUTED.

98. Ms. Hayes gave the following reason for not referring Plaintiff:
The applicant was not referred because the information provided does not reflect that he meets the specialized experience reflected in the job announcement demonstrating a practical knowledge of the methods materials machinery and facilities used in industrial production operations which includes industrial planning of facilities and layout comprehensive survey and analysis of industrial operations.  Education can be substituted for experience nor does he possess PhD or equivalent doctoral degree or 3 full years of progressively higher level graduate education leading to such a degree. Decl. of Kyshia Hayes ("Hayes Decl."), p. 4, attached as Ex. 13. DISPUTED. Plaintiff agrees he was not referred but there is no competent evidence that the alleged specialized experience was the correct or intended specialized experience or that it was based on the position description or that it was planned as part of the SCD or that is was stated in the vacancy announcement or OPM questionnaire, in other references to it, was identical to that which was applied to every applicant, or that an applicant could have the requirement through equivalent education or waiver, or that it was consistent with other statements appearing in other vacancies based on the same position description and job title and grade.  See Affidavit for examples of the inconsistent definitions and when and how Plaintiff met each alleged specialized requirement. Finally, Ms. Hayes knew or had to have known that she made an error.  At some point, even as late as after Plaintiff filed his formal complaint, Defendant had to have reviewed Ms. Hayes' decision and discussed it with her and made a determination that there was an error. Defendant must have concluded that an error occurred because the position description code for this vacancy, as stated in the ROI on the page defining the Position Description code for the vacancy at Plaintiff's Exhibit ROI C, Page 001047 "H8252013".  The same PD number appears in the recruit file for other GS-1150-11 vacancies where Plaintiff was referred and interviewed. See Charges 07 (8773 which relied on PD number H8G0125 at ROI 00045 and Charge 24 (7316) which cited H822945 at ROI C, Page 001215.

While these are facially three different PD numbers, they are all equal as explained at See Plaintiff's RO1Exhibit C, Page 1052.

*Background: RPAs were submitted to reassign several employees from H8 GOl25 (a GS-1150-11 DCMA standardized PD) to Job # H8 22945 (a GS-1150-11 DCMA PD*

*established in 2000 to which some of the affected employees were previously assigned). Reassignments occurred due to management decision (with employees concurring) that PD [H8]GO125 is not accurate as far as its inclusion of Major Duty I (b) re: duties pertinent to "SPECTRUM" - a system that was used to identify areas of deficiency or non-compliance. Management's determination was that the old PD of 22945 was an appropriate description of the major duties and responsibilities of the job. In that no evaluation statement existed for 22945, the current evaluation of the job is recorded as follows herein.*

99. On or about January 8, 2015, Plaintiff was notified that he was not referred to the Selecting Official because: "ID You do not meet the minimum education and/or experience requirements for this specialty". Doc. 215, PTO SF 111. DISPUTED. As explained immediately above,  Plaintiff was erroneously not referred.

100. At the time Ms. Hayes determined Plaintiff was not qualified, she did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity. Ex. 13, Hayes Decl., pp. 34. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

101. Plaintiff's age, religion, and prior protected activity played no role in Ms. Hayes' qualification analysis. Ex. 13, Hayes Decl., p. 2, 5 (stating she was unaware of Plaintiff's protected characteristics at the time of her non-referral determination). DISPUTED. Plaintiff maintains that her role was critical because she made an error that wasn't corrected for 8 years and now should be viewed by a jury as direct evidence of discrimination in retaliation for Plaintiff's protected activity.

102. Ms. Hayes subsequently referred Plaintiff on or about February 9, 2015, for the vacancy identified in Charge 3 of this lawsuit. Compare Ex. 4, Davis Decl., ¶ 91, with Doc. 141, p. 36 (identifying JOA number associated with Charge 3). DISPUTED. Plaintiff agrees that Ms. Hayes may have referred him for other vacancies but it is immaterial to this charge.

103.The Selecting Official for Charge 26 made the initial selection from the list of candidates on January 28, 2015. Ex. 4, Davis Decl., ¶ 53. DISPUTED.

104. UNDISPUTED.

Charge 27 (JOA ending in 5507)

105. UNDISPUTED.

106. UNDISPUTED.

107. Phyllis Williams is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 114. DISPUTED. Others followed the same.

108. Ms. Williams rated Plaintiff's application on Nov. 20, 2014, and issued the first referral list for this vacancy on Nov. 21, 2014. Ex. 4, Davis Decl., ¶ 55. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery.  See 56(d) Affidavit for "additional referrals".

109. UNDISPUTED.

110. Ms. Williams determined Plaintiff's resume did not demonstrate the specialized experience required for referral for this position, and on November 20, 2014, entered the following into the USAStaffing database as the reason for non-referral:

Applicant's resume lacks the one year of specialized experience equivalent to at least the GS-09 grade level or equivalent under other pay systems in the Federal service which involves the full range of principles, concepts, and methodology related to the mechanical and electronics commodities to evaluate suppliers conformance to contractual quality requirements. Experience in mechanical and electronics manufacturing, production methods, processes, product characteristics, and testing techniques. Experience performing statistical and quality data analysis and evaluation to determine supplier compliance with contractual requirements. Ex. 4, Davis Decl., ¶ 57; Ex. 6, Williams Decl., p. 4. DISPUTED. Plaintiff agrees he was not referred but there is no competent evidence that the alleged specialized experience was the correct or intended specialized experience or that it was based on the position description or that it was planned as part of the SCD or that is was stated in the vacancy announcement or OPM questionnaire, in other references to it, was identical to that which was applied to every applicant, or that an applicant could have the requirement through equivalent education or waiver, or that it was consistent with other statements appearing in other vacancies based on the same position description and job title and grade.  See Affidavit for examples of the inconsistent definitions and when and how Plaintiff met each alleged specialized requirement. Finally, Ms. Williams knew or had to have known that she made an error.  At some point, even as late as after Plaintiff filed his formal complaint, Defendant had to have reviewed Ms. Williams' decision and discussed it with her and made a determination that there was an error. Defendant must have concluded that an error occurred because the position description code for this vacancy, as stated in the ROI on the page defining the Position Description code for the vacancy at Plaintiff's Exhibit ROI C, Page 001047 "".  The same PD number appears in the recruit file for other GS-1150-11 vacancies where Plaintiff was referred and interviewed. See Charges 07 (8773 which relied on PD number H8 at ROI 5 and Charge 24 (7316) which cited H822945 at ROI C, Page 001215.

111. At the time of non-referral, Ms. Williams did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity. Ex. 6, Williams Decl., pp. 3-4. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

112. Plaintiff's age, gender, religion, and prior protected activity played no role in Ms. Williams's analysis. Ex. 6, Williams Decl., p. 5. DISPUTED. Her analysis was determined by Plaintiff's age, gender, religion, and prior protected activity.

113. Of the 17 names included on the November 21, 2014, referral list, approximately 15 appear to be traditionally male names. Ex. 4, Davis Decl., ¶ 58; Ex. 4, Attach. JJ. DISPUTED. No competent substantiates the claimed appearance

114. UNDISPUTED.

115.UNDISPUTED.

Charge 28 (JOA ending in 6979)

116. UNDISPUTED.

117.The posted salary for this position was $75,974 to $98,764. Doc. 215, PTO SF 18. UNDISPUTED.

118. Jesecah Everson is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 119. DISPUTED. After the error, others failed to correct it.

119. Ms. Everson issued the first referral list for this vacancy on December 31, 2014. Doc. 215, PTO SF 120. DISPUTED. Discovery. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery.  See 56(d) Affidavit for "additional referrals".

120. This vacancy was open to (1) current DOD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) ICTAP eligible applicants. Doc. 215, PTO SF 121. DISPUTED. Plaintiff maintains that every vacancy can be filled by various ways.

121. UNDISPUTED.

122. In reviewing Plaintiff's application, Ms. Everson determined that Plaintiff was outside the AOC because he was in the excepted service, and on December 30, 2014, Ms. Everson entered the following note into the USAStaffing database as the reason for non-referral: "Applicant is in the excepted service." Ex. 4, Davis Decl., ¶ 60. DISPUTED. Davis D

123. Plaintiff received notice on Jan. 30, 2015, that he was not referred because he was outside the AOC. Ex. 4, Davis Decl., ¶ 64. DISPUTED.

124. Plaintiff submitted two SF-50s for this position. One SF-50 showed Plaintiff was in the excepted service, and the other SF-50 showed that Plaintiff had previously held a position in the competitive service. Doc. 215, PTO SF 122. DISPUTED.

125. If Plaintiff had only submitted the SF-50 showing his excepted service, the AST HR specialist's determination would have been correct. But, Plaintiff's second SF-50 demonstrated he had previously held a competitive service position, and he should have been considered within the AOC based on his status as reinstatement eligible. Ex. 4, Davis Decl., ¶63. DISPUTED. The point may be moot, but Defendant provides no competent evidence for the alleged fact that Plaintiff's excepted service disqualified him for being within the AOC. DoD DCIPS employees were subject to an interchange agreement.

126.At the time Ms. Everson did not refer Plaintiff, Ms. Everson did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity. Decl. of Jesecah Everson ("Everson Decl."), pp. 3-4, attached as Ex. 14. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

127. Plaintiff's age, religion, and prior protected activity played no role in Ms. Everson's analysis. Ex. 14, Everson Decl., pp. 4-5. DISPUTED. Her analysis was determined by Plaintiff's age, gender, religion, and prior protected activity.

128. The Selecting Official first took action on this referral February 3, 2015. Ex. 4, Davis Decl., ¶ 65. DISPUTED.

129.An AST team lead, Jason Nonamaker, subsequently determined that Ms. Everson made a mistake in not referring Plaintiff, and Plaintiff was issued a letter advising him that he would be entitled to priority consideration for the next Procurement Analyst, GS-

1102-12, with DCMA located in Boston, MA before other competitive and non-competitive candidates are referred. Ex. 10, Nonamaker Decl., p. 4, 8, 10. DISPUTED.

130. Mr. Nonamaker explained the mistake as follows:
The vacancy was open to Current Federal Employees, former employee's eligible for reinstatement, Veterans eligible for VEOA and Interagency transfers eligible for ICTAP. Mr. Laber supplied his most current SF50 and correctly titled it "SF50". This SF50 showed that he was in the Excepted service, so he was marked as not being within the Area of Consideration for this announcement. Upon further review, I found a second SF50 that Mr. Laber had supplied that was titled "Other documents" which showed that he had previously held a position in the Competitive service, which entitled him to reinstatement eligibility. Mr. Laber should have been referred to the hiring official. Ex. 10, Nonamaker Decl., p. 4. DISPUTED. The explanation is not substantiated by any competent evidence that would indicate it was an innocent error versus a discriminatory error.

131. An applicant born in 1982, who also was not referred for this position, complained to AST that he should have been referred because he previously applied to the same position in the same location and was referred and offered the position but declined for personal reasons. Ex. 4, Davis Decl., ¶ 66. DISPUTED. Plain finds irrelevant.

132. DCMA has no record of EEO activity from the applicant identified immediately above from at least 2009 through the date of his nonreferral. Ex. 9, Seabury Decl., ¶ 5. DISPUTED. Plain finds irrelevant.

133.. UNDISPUTED.

Charge 29 (JOA ending in 3850)

134.. UNDISPUTED,

135. The salary range for this position was $63,707 to $82,820. Doc. 215, PTO SF 125. UNDISPUTED,

136. Nancy Klaverweiden is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 126. DISPUTED. Others,

137. Ms. Klaverweiden rated Plaintiff's application and issued a referral list for this vacancy on June 24, 2015. Ex. 4, Davis Decl., ¶ 68. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application. Plaintiff is unaware of a second referral and therefore cannot properly oppose without discovery of same.

138. This position required applicants to meet an education requirement stated in the job opportunity announcement as:
A bachelor's degree from an accredited educational institution authorized to grant baccalaureate degrees AND at least 24 semester hours in any combination of the following fields: accounting, business finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management. (This requirement can be obtained within the degree or in addition to the degree).

NOTE: Current civilian personnel in DoD, who occupied GS-1102 positions or contracting positions with authority to award or administer contracts above the simplified acquisition threshold in an Executive Department on or before September 30, 2000 are exempt from meeting this requirement. Ex. 4, Davis Decl., ¶ 69; see also Ex. 4, Attach. T (Job announcement). DISPUTED. Waiver

139. As referenced in the JOA, in 2015, DCMA recognized an exception to this education requirement for (1) current employees, (2) who held an 1102-series position (3) prior to September 30, 2000—such employees are considered "grandfathered in" and need not meet the educational requirement. Ex. 4, Davis Decl., ¶ 70; Ex. 4, Attach. T (Job Announcement). DISPUTED. Decl,

140. In 2015, if an employee had left federal service and reapplied for an 1102-series position, the employee was no longer entitled to the benefit of this exception and must satisfy the education requirement. Ex. 4, Davis Decl., ¶ 71. DISPUTED. Decl. no competent.

141. On June 24, 2015, Ms. Klaverweiden entered the following note into USAStaffing as the reason for non-referral: "Transcripts provided did not provide 24 semester hours in any combination of the following fields: accounting, business finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management. (This requirement can be obtained within the degree or in addition to the degree). Applicant is retired so he cannot be grandfathered for this position." Ex. 4, Davis Decl., ¶ 72. DISPUTED. Decle compt waived

142. Ms. Klaverweiden explained that she did not refer Plaintiff because the "[t]ranscripts provided did not provide 24 semester hours in" the required combination of fields. Supp. Decl. of Nancy Klaverweiden ("Supp. Klaverweiden Decl."), p. 2, attached as Ex. 15. DISPUTED. If true, Plaintiff maintains that Defendant had a responsivity to review for waiver.

143. The transcripts Plaintiff submitted for Charge 29 are attached as Attachment DD to Ex. 4. Ex. 4, Davis Decl., ¶ 19. DISPUTED. Plaintiff is unable to determine and therefore disputes the fact.

144. Plaintiff received both his undergraduate degree and master's degree in communications. Ex. 1, Laber 2019 Dep., 67:12 – 68:3. DISPUTED.  No competed that Subject area is not a factor, only semester hours.

145. Plaintiff's age, religion, and prior protected activity played no role in Ms. Klaverweiden's analysis. Ex. 15, Supp. Klaverweiden Decl., pp. 2-3. DISPUTED. Her analysis was determined by Plaintiff's age, gender, religion, and prior protected activity.

146.. UNDISPUTED.

Charge 30 (JOA ending in 6193)

147. UNDISPUTED.

148.The salary range for this position was $58,562 to $76,131. Doc. 215, PTO SF 129. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

149. Amani Wood is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 130. DISPUTED. others

150. Ms. Wood rated Plaintiff's application on April 8, 2015, and issued a referral list for this vacancy on April 14, 2015. Ex. 4, Davis Decl., ¶ 74. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

151. The education requirement for this vacancy was the same as that for Charge 29, identified in Fact 138-140, above. Ex. 4, Davis Decl., ¶ 75. DISPUTED. Davis decl.

152. Ms. Wood used the "DoD qualifications standards for the 1102 series" in determining which applicants to refer and stated that she did not refer Plaintiff because:

Mr. Laber did not attach a transcript that showed he possessed 24 hours of business related courses which is a minimum qualification for the 1102 series. Although Mr. Laber had served as a GS-1102 prior to September 30th, 2000, with the DoD, he no longer qualified under this stipulation because he was not a current DoD employee who had been serving in the 1102 series since or before 1 October, 2000. Decl. of Amani Wood ("Wood Decl."), p. 4, attached as Ex. 16. DISPUTED. Waiver OPM qual

153.On April 8, 2015, Ms. Wood entered the following note into the USAStaffing database as the reason for non-referral: "Applicant does not possess 24 hours of

business related courses - Applicant is not grandfathered due to lapse in service." Ex. 4, Davis Decl., ¶ 76.  DISPUTED. Waiver OPM qual

154. The transcripts Plaintiff submitted for Charge 30 are attached as Attachment EE to Exhibit 4. Ex. 4, Davis Decl., ¶ 19. DISPUTED. Plaintiff is unable to determine and therefore disputes the fact.

155. At the time Ms. Wood did not refer Plaintiff, she did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity. Ex. 16, Wood Decl., pp. 3-4. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

156. Plaintiff's age, religion, and prior protected activity played no role in Ms. Wood's analysis. Ex. 16, Wood Decl., pp. 4-5. DISPUTED. Plaintiff maintains that she was aware of each of Plaintiff's bases which determined her analysis.

157. UNDISPUTED.

Charge 31 (JOA ending in 0413)

158. UNDISPUTED.

159.The salary range for this position was $70,192 to $91,255. Doc. 215, PTO SF 133. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

160. Nancy Klaverweiden is the HR Specialist who did not refer Plaintiff for further consideration by DCMA. Doc. 215, PTO SF 134. DISPUTED. Others.

161. Ms. Klaverweiden rated Plaintiff's application on April 8, 2015, and issued a referral list for this vacancy on April 9, 2015. Ex. 4, Davis Decl., ¶ 78. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

162.The specialized experience for this position was defined as:
To qualify applicants must possess one year of specialized experience equivalent to the next lower grade/level (GS-11). Specialized experience is defined as:
Experience of Quality Assurance Manufacturing; production methods, processes, inspection systems and testing techniques to determine product conformance to

contractual quality and technical requirements; performing statistical and quality data analysis and evaluation to determine contractor compliance; and experience of acquisition quality assurance to design, plan, and implement an economical risk management program. Ex. 4, Davis Decl., ¶ 79. DISPUTED. Specialized.

163. On April 8, 2015, Ms. Klaverweiden entered the following note into the USAStaffing database as the reason for non-referral:
Applicant does not possess Specialized experience is defined as: Experience of Quality Assurance Manufacturing; production methods, processes, inspection systems and testing techniques to determine product conformance to contractual quality and technical requirements; performing statistical and quality data analysis and evaluation to determine contractor compliance; and experience of acquisition quality assurance to design, plan, and implement an economical risk management program. Ex. 4, Davis Decl., ¶ 80. DISPUTED. Specialized.

164. At the time Ms. Klaverweiden did not refer Plaintiff, Ms. Klaverweiden did not know Plaintiff's age, or religion, or whether he had engaged in prior protected activity. Decl. of Nancy Klaverweiden ("Klaverweiden Decl.), pp. 7-8, attached as Ex. 17. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

165. Ms. Klaverweiden subsequently stated that Plaintiff should have been on the list and said this was an "oversight" on her part. Ex. 17, Klaverweiden Decl., p. 7. DISPUTED.
This is direct evidence of discrimination because Defendant took no action to correct it alleged innocent error.  When it was reported to Ms. Kianoury, she replied "we're good".

166. UNDISPUTED.

## II. **Charges where AST referred Plaintiff to DCMA for consideration – Charges 2, 5, 7, 10, 11, 12, 15, 23, and 24. Charge 2 (JOA ending in 4424)**

167. UNDISPUTED.

168. The salary range for this position was $59,983 to $77,978. Doc. 215, PTO SF 10. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

169.. UNDISPUTED.

170. On or about November 18, 2014, the Selecting official returned the referral list containing Plaintiff's name on it with no selection. Ex. 4, Davis Decl., ¶ 81. DISPUTED. This is contradicted by the notice itself which indicates that Plaintiff was considered and selected. This assumes the parties are referring to the same cert.

171. UNDISPUTED

172. UNDISPUTED.

Charge 5 (JOA ending in 6403)

173. UNDISPUTED.

174.The salary range for this position was $65,377 to $84,990. Doc. 215, PTO SF 18. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

175. Plaintiff was referred for this position on December 7, 2014, and was one of five candidates selected to interview out of 21 applicants referred. Ex. 4, Davis Decl., ¶ 82; Dec. of Eileen Kelly ("Kelly Decl."), p. 4, attached as Ex. 18. DISPUTED. This alleged fact is contradicted by Complainant's Exhibit B ROI, Page 000769 which states that five additional applicants were referred and offered the position.

176.. UNDISPUTED.

177. UNDISPUTED.

178. After the interviews, the panel members collectively discussed how the interviewees answered each of the eight questions and demonstrated the target skills for the position, and the panel filled out a spreadsheet indicating whether there was (1) "strong evidence that skill is not present," (2) "some evidence that skill is not present," (3) "some evidence that skill is present," (4) "strong evidence that skill is present," or (5) "insufficient evidence for or against skill." Ex. 19, Luke Decl., at ¶ 6; Ex. 19, Attach. C. Ex. 19, Luke Decl., at ¶ 6;  DISPUTED. Ex. 19, Attach. C does not support the conclusion that there was a discussion and no competent evidence is provided regarding any discussion.

179. The applicant selected was found to have strong evidence the skill was present for six questions and some evidence the skill was present for two questions. Ex. 19, Luke Decl., ¶ 7, & p. 10 (Attach. C). DISPUTED. Plaintiff maintains that his scores were wholly subjective and purposefully based on his age and religion.

180. Plaintiff did not receive any marks suggesting strong evidence a skill existed, received five marks that there was some evidence the skill existed, two marks that there was some evidence the skill was not present, and one mark indicating insufficient evidence to determine. Ex. 19, Luke Decl., ¶ 8, & p. 13 (Attach. C) DISPUTED. Plaintiff maintains that his scores were wholly subjective and purposefully based on his age and religion.

181. The panel submitted the interview results on January 15, 2015. Doc. 215, PTO SF 23. DISPUTED. This is not supported by any competent documentation. Does not conform to regulations it does not explain how another 5 candidates were offered the position ahead of Plaintiff. See Plaintiff's Exhibit B ROI, Page 000769

182. Only one candidate answered all of the questions in a manner showing either "strong" or "some evidence that skill is present." Ex. 19, Luke Decl., ¶ 7. DISPUTED. This conclusion is not supported by any evidence. Additionally, no records of the interviews were provided except a total of 5 pages by an unknown author on an unknown date.

183. Eileen Kelly served as the Selecting Official for this vacancy and selected only one applicant for this position. Ex. 18, Kelly Decl., p. 4. DISPUTED. This is contradicted by ROI 000769 which states that an additional 5 applicants were selected and offered the job, including 5 who were never interviewed.

184. After the applicant declined, the JOA was cancelled. Ex. 18, Kelly Decl., p. 5. DISPUTED.  There is no competent evidence that the JOA or recruitment was canceled or reactivated or any applicant declined an offer.

185. While Plaintiff's gender could be presumed based on his voice, Ms. Chappe, Ms. Mejia (now Luke), Mr. Kolancian, and Ms. Kelly did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity when they evaluated candidates, or when Ms. Kelly determined not to select Plaintiff for this vacancy. Ex. 18, Kelly Decl., pp. 2-3; Ex. 19, Luke Decl ¶ 9; Decl. of Maria Chappe ("Chappe Decl."), pp. 2-3, attached as Ex. 20; Decl. of Vasken Kolancian ("Kolancian Decl."), p. 5, attached as Ex. 21. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

186. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action. Ex. 18, Kelly EEO Decl., p. 5; Ex. 19, Luke Decl., ¶ 10; Ex. 20, Chappe Decl., p. 5; Ex. 21, Kolancian Decl., p. 5. DISPUTED. Plaintiff maintains his statuses were the bases for his rejection.

187. UNDISPUTED.

Charge 7 (JOA ending in 8773)

188. UNDISPUTED.

189. The salary range for this position was $57,982 to $75,376. Doc. 215, PTO SF 30. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

190. UNDISPUTED.

191. UNDISPUTED.

192. UNDISPUTED.

193. Mr. Sherman considered production experience as the most important factor. Ex. 22, Sherman Decl., ¶ 9. DISPUTED. This is contradicted by the fact that the selectee had no no production experience and was otherwise referred in error.

194. In evaluating candidates, Mr. Sherman used P for "Poor", G for "Good", and E for "Excellent." Ex. 22, Sherman Decl., at p. 6 (Attach. A). DISPUTED. Other fact shown

195. Mr. Sherman evaluated Plaintiff as "Poor" in production experience, "Good" in education, "Good" in awards, "Poor" in outside activities, and "Excellent" in training, and evaluated the selectee as "Excellent" for production experience, "Excellent" in education, "Poor" for awards, "Good" for outside activities, and "Good-Poor" with more "Good" than "Poor" for training. Ex. 22, Sherman Decl., ¶¶ 7-8, & at p. 10 (Attach. B). DISPUTED. Plaintiff maintains that his evaluation was purposefully false and his low scores were inconsistent with application while the selectee was wholly unqualified because he was a machine repairman with no connection to contracting.  His application was facially a lie that Mr. Sherman had have there rated him low,

196. Plaintiff ranked about 4th or 5th overall, but had a degree unrelated to the position's function and did not appear to have in-plant production experience, which Mr. Sherman believed was important for this position. Ex. 22, Sherman Decl., at p. 7 (Attach. A). DISPUTED. This is a self-serving after the fact declaration that is wholly unsubstantiated in fact.

197. The selectee's resume indicated that he held a business systems degree that was directly applicable to the position and that he had experience in a production environment. Ex. 22, Sherman Decl., at p. 6 (Attach. A). DISPUTED. This is a self-

serving after the fact conclusion that is contradicted by the selectee's resume which no supports any degree at all.

198. Mr. Sherman made his selection on or about February 4, 2015. Ex. 4, Davis Decl., ¶ 83. Ex. 4, Davis Decl., ¶ 83 DISPUTED. Decl is not supported by any evidence whatsoever.

199. Mr. Sherman did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity at the time of his selection. Ex. 22, Sherman Decl., ¶ 10. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

200. Plaintiff's age, religion, and prior protected activity played no role in this hiring action. Ex. 22, Sherman Decl., ¶ 11. DISPUTED. Plaintiff maintains his statuses were the "but for" bases for his rejection.

201. UNDISPUTED.

Charge 10 (JOA ending in 5778)
202. UNDISPUTED.

203. UNDISPUTED.

204.Plaintiff was referred for this position on February 4, 2015. Doc. 215, PTO SF 43. DISPUTED. There is no competent evidence supporting this fact and that others did not review or rate Plaintiff's application.

205. UNDISPUTED.

206. Mr. Wall wanted to hire an engineer for this vacancy. Decl. of Wayne Wall ("Wall Decl."), ¶ 5, attached as Ex. 23. DISPUTED. This is contradicted by Mr. Wall's signature on the certificate.

207. Mr. Wall understood that he was required to post this vacancy as both an Operations Research Analyst and General Engineer position. Ex. 23, Wall Decl., ¶ 5. DISPUTED. No evidence is proffered to substantiate that Mr. Wall was required to post two separate vacancy announcements for the same vacancy.

208. Mr. Wall received two referral lists, one for the General Engineer posting and one for the Operations Research Analyst posting. Ex. 23, Wall Decl., ¶ 6. DISPUTED. No

evidence is proffered to substantiate that Mr. Wall was required to post two separate vacancy announcements for the same vacancy.

209. Mr. Wall did not consider any applicant, including Plaintiff, who appeared solely on the Operations Research Analyst referral list. Ex. 23, Wall Decl., ¶ 7. DISPUTED. This is contradicted by Mr. Wall's signature on the certificate.

210. The selectee for this position applied to the General Engineer announcement, held an engineering degree, and had the desired engineering background for this position. Ex. 23, Wall Decl., ¶ 8. DISPUTED. ECF 215 PTO identifies the selectee was Mr. Edwards but his selection is contradicted by Mr. Wall's signature on the certificate which shows that Mr. Edwards applied but was not selected.

211.Mr. Wall returned his selection to AST on February 23, 2015. Ex. 4, Davis Decl., ¶ 84. DISPUTED.  There is no competent evidence of this action. It is also contradicted by Mr. Wall's signature on the certificate on February 17, 2016.

212. The selectee for this position was brought on board as a "General Engineer." Ex. 4, Davis Decl., ¶ 85. DISPUTED . For example, he cannot identify the alleged selectee or if or how he was brought on board. ECF 215 PTO identifies the selectee was Mr. Edwards but his selection is contradicted by Mr. Wall's signature on the certificate which shows that Mr. Edwards applied but was not selected.

213. At the time he made his selection, Mr. Wall did not know Plaintiff's age or religion, or whether Plaintiff had engaged in prior protected activity. Ex. 23, Wall Decl., ¶ 9. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection. Also Mr. Wall was the supervisor of Ms. White who more likely than not advised Mr. Wall of her awareness of Plaintiff's prior protected activity in the same manner as she advised Mr. Delloiacono, another selecting official.

214. Plaintiff's age, religion, and prior protected activity played no role in this personnel action. Ex. 23, Wall Decl., ¶ 9. DISPUTED. See Affidavit.  Also Mr. Wall was the supervisor of Ms. White who more likely than not advised Mr. Wall of her awareness of Plaintiff's prior protected activity in the same as she advised Mr. Delloiacono, another selecting official. DISPUTED. Plaintiff maintains his statuses were the "but for" bases for his rejection.

215. UNDISPUTED.

Charge 11 (JOA ending in 5650)

216. UNDISPUTED.

217. The salary range for this position was $57,982 to $75,376. Doc. 215, PTO SF 49. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

218. UNDISPUTED.

219. UNDISPUTED.

220. Ms. White interviewed Plaintiff over the phone on or about February 12, 2015. Doc. 215, PTO SF 53; Decl. of Julie White ("White Decl."), ¶ 8, attached as Ex. 24. DISPUTED

221.. UNDISPUTED.

222. The applicant selected for this vacancy evidenced more familiarity with the manufacturing process than Plaintiff did, including hands-on experience with her prior employment with a government contractor. Ex. 24, White Decl., ¶ 11. DISPUTED. This is contradicted by Ms. White's notes and evaluation spreadsheets.

223. Ms. White believes that Plaintiff's background evidenced more of a "contracting" background and less of a "manufacturing" background, and ranked him third among the candidates she interviewed. Ex. 24, White Decl., ¶ 11. DISPUTED. This is contradicted based her own notes that state Plaintiff's experience in contracts versus manufacturing, 6 years for each.

224. While Ms. White could presume gender based on Plaintiff's voice, she did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity when she evaluated candidates or determined not to select Plaintiff for this vacancy. Ex. 24, White Decl., ¶ 12. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases. See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection. Additionally, Ms. White shared her knowledge and awareness with her supervisors and colleagues, specifically Mr. Wall and Mr. Delloiacono and Mr. Hutchinson.

225. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action. Ex. 24, White Decl., ¶ 13. DISPUTED. Plaintiff maintains his statuses were the "but for" bases for his rejection.

226. UNDISPUTED.

Charge 12 (JOA ending in 6045)

227. UNDISPUTED.

228.The salary range for this position was $63,076 to $81,999. Doc. 215, PTO SF 57. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

229. Gregory Russell and Bridget Guillory served as the Selecting Officials for this position.  Doc. 215, PTO SF 59. DISPUTED. Plaintiff agrees that Mr. Russell and Ms. Guillory names appear in emails regarding this vacancy. Plaintiff is unable to fully oppose this fact without a copy of the proposed letter of removal that Ms. Guillory issued to Mr. Russell regarding the discrimination that took place.  See 56(d) Affidavit.

230. Monique King referred Plaintiff for this position on the referral list issued February 13, 2015. Doc. 215, PTO SF 58. DISPUTED. Plaintiff has since reviewed the actual referral lists for this vacancy and finds two certifications were issued: 1. MF-15-MRK-12534S0 issued on 02/13/2015 with 12 candidates including Laber but without the selectee using a cut-off >96 see Plaintiff's EXHIBIT E ROI 002177-002180.  3. MF-15-MF-MRK-12534S1 issued 03/12/15 with 22 candidates including the selectee (without Plaintiff) with cutoff >85. See Plaintiff's EXHIBIT E ROI 002172-002176.
Mr. Truong was coded as DR but Plaintiff cannot find and Defendant does not substantiate this code on SF-39 and no record supporting the code in the record as provided as required by OPM on SF-39 instructions.

231. A second referral list, with an expanded field of candidates, was issued on March 2, 2015. Ex. 4, Davis Decl., ¶ 87. DISPUTED. Davis Decl. This is not supported by competent evidence.

232. Michelle Romero, Mary Farren, and Greg Russell reviewed applications to determine which applicants to interview. Decl. of Greg Russell ("Russell Decl.), ¶ 4, attached as Ex. 25. DISPUTED. This fact is contradicted by the declaration of Ms. Stierer who stated that Mr. Russell wanted Plaintiff to be interviewed. See Plaintiff Exhibit F, ROI Exhibit B, Page 001962 and Plaintiff was rated as the top candidate. Plaintiff's Exhibit D, Page 001996.

233. UNDISPUTED.

234. Plaintiff was not selected for an interview for this vacancy. Doc. 215, PTO SF 61; Ex. 25, Russell Decl., ¶ 5-6. DISPUTED. This is contradicted by the fact that Plaintiff was rated number 1 of 37 applicants. See Plaintiff's Exhibit D, Page 001996.

235. UNDISPUTED.

236.AST was notified of the selectee for this position on March 12, 2015. Ex. 4, Davis Decl., ¶ 88. DISPUTED. Plaintiff maintains that Mr. Russell discriminated against him on the basis of his age by choosing not to interview him because he (Russell) believed that Plaintiff was so old, he might not have the energy to perform.  See Plaintiff's Exhibit P.

237.UNDISPUTED.

238. Michelle Romero had no knowledge of Plaintiff's age, religion, or prior protected activity when she reviewed resumes for this vacancy. Decl. of Michelle Romero "Romero Decl."), ¶ 5, attached as Ex. 26. DISPUTED. See Paff regarding knowledge of selecting officials.

239. Mary Traylor, then Mary Farren, had no knowledge of Plaintiff's age, religion, or prior protected activity when she reviewed resumes for this vacancy. Decl. of Mary Traylor ("Traylor Decl."), ¶ 6, attached as Ex. 27. DISPUTED. See Paff regarding knowledge of selecting officials.

240. At the time Mr. Russell did not select Plaintiff for an interview, he had not had any contact with Plaintiff and did not have any knowledge regarding Plaintiff except what was listed in Plaintiff's resume. Ex. 25, Russell Decl. ¶ 6. Did have contact on March 9 See SF 244. DISPUTED. Plaintiff is unable to fully oppose this fact without a copy of the proposed letter of removal that Ms. Guillory issued to Mr. Russell regarding the discrimination that took place.  Plaintiff maintains that Mr. Russell discriminated against him on the basis of his age by choosing not to interview him because he (Russell) believed that Plaintiff was so old, he might not have the energy to perform.  See Plaintiff's Exhibit P. Also, see 56(d) Affidavit.

241. Mr. Russell separated from DCMA in April 2015, and Bridget Guillory took over as the sole Selecting Official upon Mr. Russell's separation. Ex. 5, Butera Decl., ¶ 33. She signed both in May 2015. DISPUTED. Ms. Butera had no first-hand knowledge of the facts alleged. Plaintiff maintains that Mr. Russell admitted that he failed to select Plaintiff because of his [Mr. Russell's] belief that Plaintiff was too old to have the "energy" to perform.  Plaintiff is unable to fully oppose this fact without a copy of the proposed letter that Ms. Guillory issued to Mr. Russell regarding the discrimination that took place.  See Plaintiff's Exhibit P. See 56(d) Affidavit.

242. Plaintiff's age, gender, religion, and prior protected activity played no role in this

personnel action. Ex. 25, Russell Decl., ¶ 10; Ex. 26, Romero Decl., ¶ 6; Ex. 27, Traylor Decl., ¶ 7. DISPUTED. This is disputed by the ageist opinion of Mr. Russell who voiced his concern that Plaintiff would not be able to have the energy to perform based on his age. See Plaintiff's Exhibit P. Russell decided not to interview Plaintiff because of his ageist belief evidenced by Plaintiff's Exhibit P. The belief was formed when Russell first viewed Plaintiff's resume.

243. UNDISPUTED.

244. On March 9, 2015, Mr. Russell invited Plaintiff to interview for the deployable position on March 11, 2015. Ex. 25, Russell Decl., ¶ 12. DISPUTED. Plaintiff agrees with simple facts but additionally maintains that it has no relationship to any other vacancy. Russell decided not to interview Plaintiff because of his ageist belief evidenced by Plaintiff's Exhibit P. The belief was formed when Russell viewed Plaintiff's resume.

245. Plaintiff interviewed for the deployable position on March 11, 2015, and the panel recommended Plaintiff as a top candidate for the deployable position on March 12, 2015. Ex. 25, Russell Decl., ¶ 13, p. 21 (Attach. D).7 DISPUTED. Plaintiff was not "a top candidate", he was "the top candidate" as confirmed by the panel' s evaluation recor

246. The salary range for a GS-1102-11 position in San Diego, CA has steadily increased, and for 2022, the range was from $74,574 to $96,941. See Fact 146, supra. 7 Plaintiff was not hired for this vacancy and challenged this vacancy in his Second Amended Complaint as Charge 32, but stipulated to its dismissal. See Doc. 141, p. 73; Doc. 168 (dismissing Charge 32). DISPUTED. Two certs were issued MF-15-MRK-12534S0 (issued 02/13/2015 12 candidates including Laber without the selectee) with cut-off >96 see EXHIBIT E ROI 002177-80 Truong code DR and MF-15-MF-MRK-12534S1 (issued 03/12/15 with 22 candidates) including the selectee without Laber cutoff >85 EXHIBIT E ROI 002172-76.

Charge 15 (JOA ending in 4857)

247. UNDISPUTED.

248. The salary range for this position was $69,497 to $101,866. Doc. 215, PTO SF 67. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

249.. UNDISPUTED.

251. On or about Feb. 20, 2015, Plaintiff had a phone interview with the hiring panel, consisting of Joy Parish, Gary Hmurcik, Marianne Del Greco, and Homer La Rue. Decl.

of Joy Parish ("Parish Decl.), ¶ 5 & p. 4, attached as Ex. 28. Doc. 215, PTO SF 71.
DISPUTED. Plaintiff agrees these individuals were panelist but does not agree that each
participated.

252. Each candidate was asked the same five questions, and if the interviewee had any
questions. Ex. 28, Parish Decl., ¶ 6; Ex. 28, Attach. B (interview questions). DISPUTED.
No original notes substantiate this and scoring of interview responses were otherwise
prohibited by Defendant's regulation. See Plaintiff's Exhibit E, Page 002223 paragraph
9.1.1.1.

253. The notes reflecting each panel members' analysis of Plaintiff's interview answers
show that each panel member scored Plaintiff's interview answers lower than the
candidates recommended for hire. See Ex. 28, Parish Decl., ¶ 6; Ex. 28, at pp. 11-22
(Attach. C). DISPUTED. No original notes substantiate this and scoring of interview
responses were otherwise prohibited by Defendant's regulation. See Plaintiff's Exhibit E,
Page 002223 paragraph 9.1.1.1.

254. Ms. Parish stated in her EEO Declaration that Plaintiff answered the first question
"somewhat" well, that he did not answer questions 2 through 5 at all, and that Plaintiff
was "a really good resume writer" but "[i]f he really had the skills we were looking for,
he could have talked to them in the interview, but he actually did not answer the
questions with anything remotely close to what we were looking for in the interview."
Ex. 28, Parish Decl., pp. 6-7 (Attach. A). DISPUTED.  An attorney edited the declaration
and advised her to focus on the interview and make unsubstantiated and self-serving
after the fact claims in her declaration. No original notes substantiate this and scores of
interview responses were otherwise prohibited by Defendant's regulation. See Plaintiff's
Exhibit E, Page 002223 paragraph 9.1.1.1.

255. On a scale of green/yellow/red with green the highest and red the lowest, Ms. Del
Greco rated Plaintiff's answer to the first question green, questions 2-3 yellow, and
questions 4-5 red, with an overall interview rating of red. Marianne Del Greco ("Del
Greco Decl."), p. 4, attached as Ex. 29. DISPUTED. No original notes substantiate this
and scores of interview responses were otherwise prohibited by Defendant's regulation.
See Plaintiff's Exhibit E, Page 002223 paragraph 9.1.1.1.

256. Ms. Del Greco gave Plaintiff a final assessment of yellow, noting that he "talked
around subjects due to not having utilized processes." Ex. 29, Del Greco Decl., p. 5.
DISPUTED. No original notes substantiate this and scores of interview responses were
otherwise prohibited by Defendant's regulation. See Plaintiff's Exhibit E, Page 002223
paragraph 9.1.1.1.

257. Ms. Del Greco did not assess a "red" score to any of the top candidates' interview
responses. Ex. 29, Del Greco Decl., p. 4. DISPUTED. No original notes substantiate this

and scores of interview responses were otherwise prohibited by Defendant's regulation. See Plaintiff's Exhibit E, Page 002223 paragraph 9.1.1.1.

258. Ms. Del Greco also knew of the top applicant's work and understood her to be sharp and a quick learner with Contract Administrator experience. Ex. 29, Del Greco Decl., p. 5. DISPUTED. Plaintiff cannot oppose this without knowing the identity of the top applicant.

259. Mr. Hmurcik assigned a negative (-) rating to Plaintiff's answers to questions 3, 4, and 5, and viewed Plaintiff's responses as very brief, not thorough in how he would handle certain types of issues, and that they did not convey he was familiar with DCMA's systems and processes. He noted in his EEO Declaration that there "was a significant disconnect between the resume and the answers [Plaintiff] provided in the interview." Decl. of Gary Hmurcik (Hmurcik Decl.), p. 4, attached as Ex. 30. DISPUTED. No original notes substantiate this and scores of interview responses were otherwise prohibited by Defendant's regulation. See Plaintiff's Exhibit E, Page 002223 paragraph 9.1.1.1.

260. Mr. La Rue rated the top applicant as his top applicant because she was familiar with the special programs environment and Business Systems Clause, had strong responses to the top 3 questions and no significant flaws in any other questions. Decl. of Homer La Rue (La Rue Decl.), p. 4, attached as Ex. 31. DISPUTED. No original notes substantiate this and scores of interview responses were otherwise prohibited by Defendant's regulation. See Plaintiff's Exhibit E, Page 002223 paragraph 9.1.1.1.

261. On a scale of green/yellow/red with green being strong, yellow being satisfactory/adequate, and red being poor, Mr. La Rue rated Plaintiff highly on the first question, satisfactory to questions 2, 3, and 4, and poor on question 5. Ex. 31, La Rue Decl., p. 4. DISPUTED. No original notes substantiate this and scores of interview responses were otherwise prohibited by Defendant's regulation. See Plaintiff's Exhibit E, Page 002223 paragraph 9.1.1.1.

262. Two of the top three candidates recommended by the panel were male. Doc. 215, PTO SF 73. DISPUTED. A female was selected.

263. UNDISPUTED.

264. Mr. Clark returned his selection to AST on or about February 25, 2015. Ex. 4, Davis Decl., ¶ 89. DISPUTED. No competent evidence substantiates this alleged fact.

265. While Plaintiff's gender could be presumed based on his voice, at the time of this hiring action, Mr. Clark, Ms. Parish, Mr. Hmurcik, Ms. Del Greco, and Mr. La Rue did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity. Ex. 28, Parish Decl., ¶ 10; Ex. 29, Del Greco Decl., pp. 2-3; Ex. 30, Hmurcik Decl., pp. 2-3;

Ex. 31, La Rue Decl., pp. 2-3; Decl. of Robert Clark ("Clark Decl."), pp. 2-3, attached as Ex. 32. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases. See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

266. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action. Ex. 28, Parish Decl., p. 8; Ex. 29, Del Greco Decl., pp. 2-3, 6; Ex. 30, Hmurcik Decl., p. 5; Ex. 31, La Rue Decl., p. 5. Ex. 32, Clark Decl., p. 5. DISPUTED. This is contradicted by the admission of Mr. La Rue at deposition that all of the panelists were advised of Plaintiff's prior protected activity. See Plaintiff's Page 17 line 12.

267. UNDISPUTED.

Charge 23 (JOA ending in 4634)

268. UNDISPUTED.

269.The salary range for this position was $63,386 to $82,402. Doc. 215, PTO SF 89. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

270. UNDISPUTED.

271. UNDISPUTED.

272. UNDISPUTED.

273. UNDISPUTED.

274. On or about September 23, 2014, an applicant left a voicemail for Michael Delloiacono withdrawing from consideration. Decl. of Michael Delloiacono ("Delloiacono Decl."), pp. 4-5, attached as Ex. 33. DISPUTED. No competent evidence exists to substantiate this self-serving declaration. Plaintiff denies that he left a voicemail withdrawing himself from consideration. When he learned from the personnelist that there was a report that he had withdrawn, he immediately denied the fact.

275. Mr. Delloiacono believed the voicemail stated something to the effect of, "This is Stan Laber. I am no longer interested in the position. Thank you," and he put a sticky note on Plaintiff's resume that said "left voice mail message declined." Ex. 33, Delloiacono Decl., p. 4; Decl. of Dane Hutchison ("Hutchison Decl."), ¶ 5 & p. 9 (Attach.

B), attached as Ex. 34. DISPUTED. No competent evidence exists to substantiate these self-serving declarations. Plaintiff denies that he left a voicemail withdrawing himself from consideration. When he learned from the personnelist that there was a report that he had withdrawn, he immediately denied the fact.

276.On September 23, 2014, Mr. Delloiacono informed a fellow panelist that "Stan Leber has declined." Sept. 23, 2014, email from Delloiacono to Thornton, attached as Ex. 35. DISPUTED. DISPUTED. No competent evidence exists to substantiate these self-serving declarations. Plaintiff denies that he left a voicemail withdrawing himself from consideration. When he learned from the personnelist that there was a report that he had withdrawn, he immediately denied the fact.

277. UNDISPUTED.

278. Mr. Delloiacono and Mr. Hutchison did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity at the time of this hiring action. Ex. 33, Delloiacono Decl., pp. 2-3; Ex. 34, Hutchison Decl., ¶ 6. DISPUTED Plaintiff maintains that both were aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection. Additionally, Mr. Delloiacono testified that he had learned about Plaintiff's prior EEO activity, which included all of the bases, from Ms. Whites.

279. UNDISPUTED.

280. Mr. Hutchison was informed that he could not select his initial choice for this vacancy because that applicant was a retired annuitant and he was told there were very strict guidelines on rehiring retirees. Ex. 34, Hutchison Decl., p. 7 (Attach. A). DISPUTED. No competent.

281. Plaintiff's age, religion, and prior protected activity played no role in this hiring action. Ex. 33, Delloiacono Decl., p. 5; Ex. 34, Hutchison Decl., ¶ 7. DISPUTED. Plaintiff maintains his statuses were the "but for" bases for his rejection.

282. UNDISPUTED.

283.. UNDISPUTED.

284. UNDISPUTED.

## Charge 24 (JOA ending in 7316)

285. UNDISPUTED.

286.The salary range for this position was $57,982 to $75,376. Doc. 215, PTO SF 100. DISPUTED. Plaintiff agrees that this was the "posted" salary and not necessarily the range that would apply to Plaintiff based on various pay setting regulations that could have been applied such as retained pay and incentives.

287. UNDISPUTED.

288.. UNDISPUTED.

289.UNDISPUTED.

290. In evaluating applicants' resumes, functional experience was Ms. White's "number one priority vice the other categories." Ex. 24, White Decl., p. 19 (Attach. D). DISPUTED. This was self-serving after the fact testimony that requires careful cross examination in front of a jury. The merit promotion program does not allow priority scoring for functional experience over other categories.

291. Ms. White viewed the candidates selected to interview as having more relevant experience, such as in "manufacturing or quality", which she viewed as more related to manufacturing than Plaintiff's listed experience. Ex. 24, White Decl., p. 20 (Attach. D). DISPUTED. The fact itself is facially inconsistent because she claims that she looked for relevant experience in "manufacturing or quality" but fails to discuss Plaintiff's "manufacturing or quality" experience as stated in his resume. In her summary of Plaintiff's application, she stated that he had 6 years of experience in quality which she claimed was "minimal". Additionally, she could not have relied on "manufacturing or quality" as alleged, because based on her own record of her reviews, she chose to interview a James Loncher who had no "manufacturing or quality" experience all. He was a trainer who had sales experience. His resume doesn't indicate if his experience was full time, part-time, or weekends only. His salary is not revealed to determine if he had an equivalent of one year of experience at a grade 09. He had no training or awards, and his education was unclear. See USA-00061321. When Ms. White previously reviewed his resume, she wrote that he had no "functional experience at all" as evidenced by her entering "0"s for each of the subcategories she applied to candidates in evaluation for every GS-1150 evaluation she conducted. Contract Administration, Production Planning, Manufacturing Management, Scheduling Analysis, Supply chain Mgmt, Industrial Engineering, and Quality. See Laber-0001778. Ms. White testified that she interviewed 7 applicant's ROI 001605 but her spreadsheet shows that she interviewed 5 applicants.

292. Ms. White believed that Plaintiff's resume reflected primarily contract experience with minimal manufacturing experience, and that "the contract experience he had was not very relevant to this position." Ex. 24, White Decl., p. 19 (Attach. D). DISPUTED.

This fact is contradicted by the fact she chose to interview 5 candidates who she rated lower than Plaintiff. Additionally, her claim that his "contract experience" was "not very relevant to the position" is contradicted by the fact that his score on "contract experience" contributed significantly to his overall high score.  See Plaintiff's Exhibit C ROI Page 001253.

293. While Ms. White could presume gender based on Plaintiff's name, Ms. White did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity when she evaluated candidates or determined not to select Plaintiff. Ex. 24, White Decl., ¶ 18. DISPUTED Plaintiff maintains that she was aware of each of Plaintiff's bases.  See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but for" basis for his ultimate rejection.

294. Plaintiff's age, gender, religion, and prior protected activity played no role in this hiring action. Ex. 24, White Decl., ¶ 19. DISPUTED. Plaintiff maintains his statuses were the "but for" bases for his rejection.

295. UNDISPUTED.

296. UNDISPUTED.

297. Less than a year prior to this vacancy, Ms. White selected and hired a male applicant born in 1948 for an Industrial Specialist, GS-1150-11 position. Ex. 24, White Decl., ¶ 14. DISPUTED.  The fact is contradicted in the instant case because she actually selected Mr. Dingman YOB 1975. See Exhibit C ROI 001246.

298. UNDISPUTED.

299. UNDISPUTED.

III. Plaintiff's discovery responses regarding the merits of Charges 5-7, 9-13, 15, 18-20, 23-24, and 26-31 (all Charges except Charge 2).

300.Defendant submitted the same 6 interrogatories for each of Plaintiff's claims, seeking the basic details and facts supporting his allegations of retaliation and discrimination based on age, gender, and religion. See, e.g., Excerpts from Def's Phase 2 ROGs to Pltf, ROGs 10-15, attached as Ex. 36. DISPUTED. No competent. Excerpts.

301. UNDISPUTED.

302. For Charges 5-7, 9-13, 15, 18-20, 23-24, and 26-31, with one exception, Plaintiff

responded to the immediately above interrogatories by stating either "None at this time", he "is unable to provide facts at this time," "he has no material facts that are responsive at this time," or a substantially similar answer. Id. 302.a. The exception is Charge 7, where Plaintiff stated in response to ROG 58 that his referrals as best qualified for other vacancies support his allegation of age discrimination. He did not identify any further facts. Ex. 37, Pl's Aug. 7, 2020 Supp. Ans, p. 8. DISPUTED. Plaintiff agrees with the responses he made at that time but disputes the conclusory summation of "did not provide identify any further facts."

303. UNDISPUTED.

304. Plaintiff's original and supplemental answers to the above interrogatory did not provide any specific details, but generally alleged that "Plaintiff is unable to provide an answer until discovery is complete" and "that during the course of their consideration or some other time, selecting officials and officials serving them learned of all of his protected status via the internet, his application, or their colleagues or through EEO officers or investigators." Id. DISPUTED. Plaintiff agrees with the responses he made at that time but disputes the conclusory summation "did not provided any specific details." See Paff for updated bases for awareness.

305. On December 8, 2020, Plaintiff further supplemented his answers to the interrogatories noted in Fact 303, relating to knowledge of Plaintiff's religion, by stating: (1) Plaintiff provides the identifies all HR specialists, panelists, selecting officials, reviewing officials and their supervisors as having knowledge of his religion, (2) Plaintiff contends that this know [sic] was gained through one or more of the following methods: internet searches, word of mouth from colleagues, subordinates, or supervisors, from contacted references, from HR specialists, from EEO specialists, how you contend that such individual(s) learned of your religion, and (3) Plaintiff currently does not know when any of the events identified in (2) occurred as he was not involved. Excerpt of Plf's Dec. 8, 2020, Supp. Resps. to Def's Phase 2 ROGs, p. 2, attached as Ex. 38. DISPUTED. See Paff for updated bases for awareness.

306. Defendant served Plaintiff with an interrogatory for each charge asking, if Plaintiff contended that "any individual(s) involved in the" applicable vacancy "had knowledge of your prior protected activity, identify (1) all individuals you contend had knowledge of such protected activity, (2) what protected activity you allege that such individual(s) had knowledge, (3) how such individual(s) learned of such protected activity, and (4) when you contend such individual(s) learned of such protected activity." Ex. 37, Pl's Aug. 7, 2020 Supp. Ans., ROGs 46 (Charge 5); 53 (Charge 6); 62 (Charge 7); 78 (Charge 9); 85; (Charge 10); 92 (Charge 11); 99 (Charge 12); 106 (Charge 13); 120 (Charge 15); 142 (Charge 18); 149 (Charge 19); 156 (Charge 20); 179 (Charge 23); 187 (Charge 24); 203 (Charge 26); 210 (Charge 27); 217 (Charge 28); 224 (Charge 29); 232 (Charge 30); and 241 (Charge 31). DISPUTED. See Paff for updated bases for awareness.

307. In response to the immediately preceding interrogatories, Plaintiff provided substantially the same answer regarding alleged knowledge of his prior protected activity for Charges 5-7, 913, 15, 18-20, 23-24, and 26-31 and stated either "that he is unable to provide facts at this time," "has no material facts that are responsive at this time," "is unable to provide an answer until discovery is complete," or "does not have information responsive to this request at this time." Id. DISPUTED. Plaintiff maintains that the conclusion of "the same" is not substantiated by any competent evidence. See Paff for updated bases for awareness.

308. UNDISPUTED.

309. Plaintiff agrees that "making the wrong decision – An innocent mistake or a clerical mistake is not discrimination." Ex. 39, Laber 2021 Dep., 238:24 – 239:5. DISPUTED. Plaintiff agrees but maintains that because Defendant later became aware that the individual personnel decision was in error and took no meaningful corrective action, the original decision rose to the level of direct evidence of retaliatory discrimination.

310. Plaintiff alleges disparate impact based on age where he "was asked a question related to his future plans and career intentions during the interview." Doc. 141, ¶ 53. DISPUTED. No competent evidence substantiates,

311. UNDISPUTED.

312. Without reference to specific vacancies, Plaintiff alleges questions he was asked "were not related to the position description and had a disparate impact on external candidates who were unfamiliar with the unique local jargon and practices." Doc. 141, ¶ 52. DISPUTED. Plaintiff agrees he made the statement, but at the time it was made, it was intended it to apply to specific vacancies. No competent evidence substantiates this.
313. Plaintiff has not alleged a "disparate impact" on any other basis. Id. DISPUTED. Plaintiff agrees he made the statement, but at the time it was made, it was intended it to apply to specific vacancies. No competent evidence substantiates this.

314.. UNDISPUTED.

IV. Plaintiff's retirement and post-retirement activities

315. UNDISPUTED

316. Plaintiff was not asked to retire and did not retire as part of a reduction in force or other voluntary or involuntary reduction action. Ex. 39, Laber 2021 Dep., at 193:13 – 194:24. DISPUTED. Plaintiff maintains that he does not recall all of the reasons he retired but it was voluntary.

317. UNDISPUTED.

318. UNDISPUTED.

319. At the time of his retirement, Plaintiff served as a Contract Specialist, earning an annual salary of $139,642, excluding awards or overtime. Ex. 2, Excerpt of Official Personnel File of Stanley Laber, at p. 2; Ex. 39, Laber 2021 Dep., 196:21 – 197:8 & Dep. Ex. 2. DISPUTED. Plaintiff agrees that his last SF 50 shows this salary but it was not necessarily applicable to other actions such as lump sum payment or salary that would have applied had he transferred to another position before or after his retirement.

320. UNDISPUTED.

321. Plaintiff's minimum pay increases and salary if he remained at NGA and maintained his prior level of performance (or above "poor performance") would have been: Year Minimum Salary Increase Salary if stayed at NGA
2015 1% $141,038.42
2016 1.46% $143,097.58
2017 2.88% $147,218.79
2018 2.29% $150,590.10
2019 2.27% $154,008.50
2020 3.52% $159,429.60
2021 1% $161,023.89
2022 3.02% $165,886.81 See Ex. 4, Davis Decl., ¶ 93. DISPUTED. Plaintiff's salary at NGA was under DCIPS and not under OPM rate tables. Additionally, ECF 198-01 Dr. White Report.pdf at page 09 contradicts the facts with:
2015  $137,174      2016  $143,100      2017  $147,217      2018  $150,592.
2019  $154,014      2020  $157,514      2021  $163,051.
All the above estimates are contradicted by Plaintiff's actual salary in 2014 stipulated at $139,642 PTO, ECF 215 Page 2, a, 4.

322.. UNDISPUTED.

323. UNDISPUTED.

324. UNDISPUTED.

325. UNDISPUTED.

326. UNDISPUTED.

327. UNDISPUTED.

328. UNDISPUTED.

329. Plaintiff has experience providing consulting services. Ex. 39, Laber 2021 Dep., 37:20 – 38:10, 43:3-9; 57:1-23. See generally Dubinsky v. United States, 44 Fed. Cl. 360 (1999) (noting Stan Laber was retained as a contract consultant and billed the plaintiff at an hourly rate of $150). DISPUTED.  Plaintiff agrees that he billed the Plaintiff for non-legal consultant fees but the Judge refused to allow Plaintiff reimbursement for any consultant fees only because the Judge opined that the Defendant had paid for Plaintiff's extensive training.

330. Plaintiff has represented in his resume that he has provided consulting services since 2015. Ex. 3, Laber 2017 Resume, at p. 2. DISPUTED.  Plaintiff agrees that many resumes showed an experience block but he later removed it. See Affidavit.

331. Plaintiff testified that he does not advertise his consulting services, does not maintain a website for his consulting services, has not been paid for consulting services since 2006, and stopped receiving K-1s in about 2013 or 2014. He also could not remember the name of his consulting business. Ex. 39, Laber 2021 Dep., 37:20 – 39:13; 43:1-4; 56:21-25; 45:7-10. DISPUTED. Plaintiff disagrees with the conclusion. See Paff paragraph "Mitigation".

332. Plaintiff does not recall looking for opportunities with private employers and has not applied for any private industry positions since at least 2014. Ex. 39, Laber 2021 Dep., 201:21 – 205:8. that he "wasn't aware of any opportunity," but admitted, "I can't say I really looked for opportunities." Ex. 39, Laber 2021 Dep., 204:17-23. DISPUTED. Plaintiff recalls that he looked for opportunities with private employers and has applied for private industry positions since at least 2014. See PAff.

334. UNDISPUTED.

335. Plaintiff received an offer for a Contract Specialist position with the Veterans Affairs Administration ("VA") in Milwaukee, WI in late January 2015, and declined the position in early February 2015. Ex. 39, Laber 2021 Dep., 218:11-20, 228:20-21; Feb. 2015, email exchange re VA Offer, p. 2 (noting verbal declination), attached as Ex. 41. DISPUTED. Plaintiff maintains that the reason he declined the position was in writing, not verbal.  The reason given chosen to be polite.  See Affidavit which states that the true reason he declined was that he was suspicious of the offer because he had not been interviewed nor had he spoken with any selecting official. Additionally, Plaintiff expected better offers with DoD employers which he expected to more beneficial to his future employment.

336. In early February 2015, Plaintiff received an e-mail from a VA HR specialist explaining that Plaintiff would not receive a salary if he accepted the position because Plaintiff's annuity exceeded the salary he would have received under OPM's salary offset policy applicable to retired annuitants seeking employment with non-DoD agencies. Feb. 2015 Email Exchange with Plaintiff re Annuity Offset, attached as Ex. 42. DISPUTED. This is not substantiated by any competent evidence.

337. Plaintiff has continued to apply for positions with Defendant since the vacancies in this action. Ex. 39, Laber 2021 Dep., 205:20-23. V. Plaintiff's EEO activity. DISPUTED. Plaintiff agrees that he has applied for positions with Defendant but not exclusively. See Affidavit which states that Plaintiff applied for more vacancies outside of DCMA.

338. Plaintiff first contacted DCMA's EEO office regarding the claims at issue in this lawsuit on or about December 9, 2014. Ex. 9, Seabury Decl., ¶ 6. UNDISPUTED.

339. Between the year 2000, which was Plaintiff's last employment with DCMA, and December 9, 2014, Plaintiff did not engage in any other EEO activity involving DCMA. Ex. 9, Seabury Decl., at ¶ 8; Ex. 39, Laber 2021 Dep., 253:12-24. DISPUTED. Plaintiff is unable to respond because he is unclear as to definitions of "engage" and "EEO activity involving DCMA".  Plaintiff agrees that there was a period of least 10 years wherein he did not apply for DCMA vacancies or file new EEO complaints against DCMA. See Plaintiff Affidavit.

340. UNDISPUTED.

341. UNDISPUTED.

342. UNDISPUTED.

343. Mr. Harris did not reach out to AST or DCMA personnel regarding Plaintiff's complaint until after Plaintiff filed his formal complaint and provided the signed document on February 27, 2015. Ex. 43, Harris Decl., ¶ 7. DISPUTED. Plaintiff opposes this because he is unable to understand the compounded fact or the definition of "reach out".  Additionally, Plaintiff cannot understand how the beginning date of the EEO counselor's activities is a material fact requiring an answer when consideration by the court is de novo and the date of anyone's activity has never been previously disputed for any reason known to Plaintiff. Therefore, for the convenience of the court, Plaintiff agrees to admit that he does not know and could not have known any activity of Mr. Harris, including "reached out", whatever its meaning.

344. UNDISPUTED.

345. UNDISPUTED.

346. UNDISPUTED.

VI. DCMA's policy regarding reemployed annuitants

347. UNDISPUTED.

348. UNDISPUTED.

349. Congress exempted DoD agencies from the requirement that annuitants' annuity be offset from salary in post-retirement employment with the DoD. 5 U.S.C. § 9902(g). DISPUTED. Plaintiff maintains that other regulations also applied and the conclusion is not supported by competent evidence.

350. UNDISPUTED.

351. The DoD Instruction provides that "DoD Components may fill positions with reempl. UNDISPUTED.

352. UNDISPUTED.

353. UNDISPUTED.

354. UNDISPUTED.

355. UNDISPUTED.

356. Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31 involve vacancies where the first selection decisions occurred after Plaintiff's voluntary retirement. See supra Facts 21, 32, 66, 103, 128, 137, 150, 161, 181, 190, 204, 218, 230, and 249 (showing timing of Plaintiff's referral, panel recommendation, or first selection being after January 9, 2015). DISPUTED. Plaintiff is unable to respond as he cannot locate any timing information at all. Plaintiff agrees that many of the applications he submitted were for vacancies that were first announced after his retirement date of January 9, 2015. Plaintiff also notes that if he had been hired for any vacancy before he retired or within 90 days of his retirement, he would not have been a retired annuitant any time. Similarly, if this court orders instatement or any remedy that revises his retirement he will then be deemed to have never retired.

357. The job opportunity announcements for Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31 specifically referenced DOD policy (which would include DCMA's supplement), and notified potential applicants that "[t]he Department of Defense (DoD) policy on employment of annuitants will be used in determining eligibility of annuitants." Ex. 5, Butera Decl., ¶¶ 7, 16. DISPUTED. This is contradicted by the fact that DCMA's

supplement did not appear in any vacancy announcement or reference any DCMA policy or regulation related to DoD policy.

358. Each of the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31 involved a permanent position. Doc. 215, PTO SF 17, 25, 29, 37, 41, 48, 56, 66, 79, 112, 117, 124, 128, and 132; Ex. 5, Butera Decl., ¶¶ 7, 22. DISPUTED. This is contradicted by the fact that DCMA's supplement did not appear in any vacancy at issue.

359. Before Plaintiff applied to the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31, the determination was made that reemployed annuitants were not eligible to fill such vacancies, as each vacancy was opened as a full time, permanent position. Ex. 4, Davis Decl., ¶ 94. DISPUTED. No competent evidence supports this conclusion.

360. All vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31 used the competitive selection or merit promotion process; none used the non-competitive process required to hire a retired annuitant. Ex. 5, Butera Decl., ¶ 19.  DISPUTED. No competent evidence supports this conclusion. Ms. Butera was not employed by AST and therefor has no personal knowledge of every process that was used by AST.

361. No request for approval memoranda attempting to justify the hiring of a retired annuitant was submitted for any of the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31; nor was any approved. Ex. 5, Butera Decl., ¶¶ 20-21. . DISPUTED. No competent evidence supports this conclusion. Ms. Butera was not employed by AST and therefore has no personal knowledge of every process that was used by AST.

362. As part of processing the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31, AST HR specialists were required to create a document where they described the position, including whether the position was available to reemployed annuitants. All such documents for Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31, indicated "no" next to reemployed annuitant, or did not check the box next to the reemployed annuitant option. Ex. 4, Davis Decl., ¶ 95; see also Ex. 4, Attach. MM. DISPUTED. No competent evidence supports this conclusion. Ms. Butera was not employed by AST and therefore has no personal knowledge of the activities of AST HR specialists. The existence of a check mark or the lack of a check mark on a planning document such as the SRD (Strategic Recruitment Document) has no indication on it that indicates that it is a binding document.

363. No retired annuitants were hired to fill any of the vacancies associated with the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 28, 30, or 31. Ex. 5, Butera Decl., ¶ 23. DISPUTED. No competent evidence supports this conclusion. Ms. Butera

was not employed by AST and therefore has no personal knowledge of every process that was used by AST.

364. While the vacancies for Charge 5 and 30 were cancelled, the individuals hired to fill the vacancies in Charges 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, and 31 were hired on a permanent basis and none were retired annuitants. Ex. 4, Davis Decl., ¶ 96. DISPUTED. No competent evidence supports this conclusion.

365. From the time period of at least 2014 to present, DCMA has not approved a justification memorandum from a Selecting Official seeking permission to select a reemployed annuitant applicant to fill a permanent, full-time vacancy. Ex. 5, Butera Decl., ¶ 22. DISPUTED. No competent evidence supports this conclusion. Ms. Butera was not employed by AST and therefore has no personal knowledge of memoranda submitted to AST.

366. None of the vacancies associated with the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31 involved circumstances where hiring a retired annuitant would be necessary to meet "critical mission needs," such as when a position has been designated "hard-to fill," involves a position that is "critical to accomplish the organization's mission or to complete a specific project or initiative," involves an annuitant with a unique or specialized skill," or similar situations. Ex. 5, Butera Decl., ¶¶ 7, 18. DISPUTED. No competent evidence supports this conclusion. Ms. Butera was not a selecting official or employed by AST and therefore has no personal knowledge of all of the circumstances that existed for every vacancy,

367. Under DCMA's policies and procedures applicable to hiring retired annuitants, Plaintiff was not eligible to be hired for the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31. Ex. 5, Butera Decl., ¶¶ 7, 17. DISPUTED. This is contradicted by the fact that for every vacancy, Plaintiff was deemed eligible to be considered.  Even when he was rejected, he was never rejected based on any policy or practice regarding retirement.

368. Because of his status as a reemployed annuitant, Plaintiff would not have been hired into any of the vacancies in Charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31, even had a selection official identified Plaintiff as the top candidate. Ex. 5, Butera Decl., ¶¶ 7, 25. DISPUTED. This is contradicted by Defendant's admission that annuitant eligibility was determined by DoD policy which allowed for appointment of annuitants to permanent and temporary vacancies. Defendant appears to at war with itself.

369. That an applicant for a position is reinstatement eligible does not authorize the agency to disregard or otherwise ignore other agency policies, including DCMA-INST 624. Ex. 5, Butera Decl., ¶ 26. DISPUTED. This is contradicted by the fact that for every

vacancy, Plaintiff was deemed eligible to be considered.  Even when he was rejected, it undisputed he was never rejected based on any policy or practice regarding retirement.

370. UNDISPUTED.

371. UNDISPUTED.

Argument


**Plaintiff's Summary for Denying Defendant's Motion**

Charge 05 (ending 6403) – Plaintiff Established Prima Facie Case and Defendant failed to meet Burden of Production

      In charge 05, Plaintiff established a prima facie case of failure to hire based on age, religion, and gender, because it is undisputed he was an observably Jewish male over 40, applied, was found to be a "best qualified" applicant, referred, interviewed, and rejected when Defendant selected Ms. Reed, a female born in 1984 (See Plaintiff's Exhibit F. Reed SF-50), under circumstances that give rise to an inference of age, religion, and gender discrimination. If resume qualifications and experience had been considered as required by Defendant's regulations, a reasonable decision-maker could easily conclude that Plaintiff should have been selected as the top candidate.  This is because Ms. Reed had less than 18 months of experience as a contract specialist, all of which was performed overseas. See Plaintiff's Exhibit F Reed SF-50, block 31 which shows that her first government employment was 7-15-2013 when she was appointed to a GS-1102-09 (Blocks 8,9,10) position overseas and then promoted to GS-1102-11 (blocks 17,18,19) effective 7-27-2014 (Block 4), for a grand total of less than 18 months of experience when considered.  Compared to Plaintiff's over 20 years of 1102 experience at much higher grades is the kind of qualifications difference that jumps out and "slaps a decision-maker in the face".

      This was 12 months as a GS-09 plus 3 months as a GS-11 if rounded to the nearest month.  Plaintiff's 20 years of contract specialist experience is so substantially superior in length and breadth.

The relevant merit promotion required that "*the panel will assess the relative strengths of candidates' qualifications for the specific position being filled, using the template in paragraphs 9.2.2.1.1. through 9.2.2.1.6., below, as a guideline. The majority recommendations of the panel will be recorded in writing, and will document an evaluation of each of the factors identified in the template, i.e., experience, education (including self-development) and training related to the job being filled, and pertinent outside activities (refer to paragraphs 9.2.2.1.1. through 9.2.2.1.6., below). (The*

*panel's written recommendations to the selecting official will be the sole official record of the panel's proceedings.) See Plaintiff's Exhibit ROI A, Page 000331.*

It is undisputed that the above required methodology was not applied at all and what was applied was so complex that it was equivalent to no evaluation.

Each panelist allegedly listened to the answers to the nine interview questions (collectively or separately) with the intent of scoring 8 undefined and undifferentiated skills identified as (1. experience, 2. contract completion, 3. contract financing, 4. contract management, 5. contract workload, 6. priorities, and 7. teamwork, and 8. skills & experience).   A reasonable fact finder looking at the skills would be hard pressed to be fathom the difference between the skill labeled "1. experience" and the nearly identical skill labeled "8. Skills & experience".  Based on simultaneously making a determination on the strength of the evidence supporting that each skill based on 5 undefined and undifferentiated adjectives (1. Strong Evidence that the skill is not Present, 2. Some evidence that skill is not present, 3. Some evidence that the skill is present. 4. Strong evidence that the skill is present, and 5. Insufficient evidence for or against the skill).  The 8 questions asked (Plaintiff Exhibit B, Page ROI 000777) each candidate to provide examples of different situations. The evaluation was based entirely on the interview to the exclusion of the resume.

It is well established that the use of subjective criteria." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (The 10th Cir. 2002) (quotation omitted) may be indicator of discrimination. Here, applicants were asked nine questions (ROI Exhibit B at page 000777) which were to be answered based on each applicant's unique experience. Somehow, and without explanation of how, a panel consensus was reached, as to an adjective for the level of the "presence" of each of 8 different skills.  Because the individual score sheets and notes were destroyed or withheld, Plaintiff is unable demonstrate disparate treatment.

Indeed, even if the criteria and ratings sheets were somehow valid, a reasonable factfinder could conclude that Plaintiff was the next highest rated applicant after Ms. Reed because he had the next highest score and therefore should have been selected when Ms. Reed allegedly declined. Plaintiff scored 5 skills (ROI Exhibit B, page 000781) as present but the panel recommended two applicants with lower skill totals of 4 (ROI Exhibit B, page 779) and 2 (ROI Exhibit B, page 780) instead. Ms. Chaffe claimed that the panel recommended Raymond Gallup as second choice and Shawn Michael Delaney as third, with Plaintiff being rated fourth. See Plaintiff's Exhibit D, Page 001633.

The selecting officials' testimonies are merely self-serving after the fact denials authored by Defendant's attorneys. Vigorous cross examination is required to discern the truth.  This is especially so because the panelists did not consider candidates' qualifications, only the panelists' subjective views of the interview answers.

No hiring official was asked if Plaintiff's name was searched on the internet as occurred in Charge 02. An obvious indication of the falsity of the testimonies is that each official denied knowledge of Plaintiff's age. This is direct evidence of false testimony because Plaintiff's age was known or had to be known as it is stated in his application.  See Plaintiff's PAff, Line 1.  Plaintiff has met a prima facie case of age discrimination, gender, and religious discrimination but Defendant has not met its burden of production because it failed to provide any clear, specific, or individualized non-discriminatory reason for rejecting Plaintiff that he could rebut. No official had any recollection of why Plaintiff received lower ratings than Ms. Reed.  Indeed, there is no evidence that the five other selectees, were ever interviewed.  A reasonable decision-maker could easily spot the inconsistencies and lack of adherence to agency policies.

If the court determines that Plaintiff failed to establish a prima facie case, it can be because Defendant destroyed or failed to produce any interview notes, reference notes, communications, or applications where such information could have revealed hiring officials' knowledge of Plaintiff's prior protected activity.

In order to prove a claim of intentional discrimination, the plaintiff must prove that the decision-maker(s) had knowledge of the plaintiff's protected status—whether it be age, gender, religion, or other protected characteristic. See, e.g., Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1305-1306 (11th Cir. 2002) (finding Plaintiff did not state a prima facie case of discrimination based on religion where decision-maker did not know plaintiff's religion and including a string cite of cases standing for this proposition). Here, Plaintiff's age was clearly known based on his application.  His religion was known to the panelists based on his answer to a question about his contribution to teamwork. Plaintiff explained in his answer to an interview *question "7. Give an example of how you worked with a team to solve a problem and ensure customer satisfaction. What was your contribution to the team?"* He answered that because he is Jewish he volunteered to work on Sundays and Christian holidays.  See Paff

Charge 06 (0260)

Summary judgment is not appropriate where Plaintiff has met his prima facie claim because he is of protected status (over 40, male, observably Jewish, and has a history of prior protected activity that was known to the selecting officials involved at the time of his rejection, whenever it occurred).  This charge is based on a known numbered vacancy that was not canceled before he was rejected. He applied and was undisputedly qualified. He was not referred because of an alleged error that Defendant refused to correct even when it learned of the error. Defendant has not met its burden of production because it offers no explanation for not taking any corrective action after it confirmed the error and did so in retaliation for Plaintiff's complaint. The required nexus is evident in that Defendant, after learning of the error, refused to take any meaningful corrective action.  Such gamesmanship should not be condoned by the court.

Plaintiff was qualified by the fact the specialized experience position description for this vacancy was coded as H8336351. See Plaintiff's Exhibit C, ROI, Page 1478. Plaintiff was referred for H8336351.  This PD code is identical to the PD code for Vacancy (0556) where Plaintiff was granted a priority consideration as reported herein at 73. Before granting the priority consideration, Defendant must have thoroughly reviewed Plaintiff's application. Not surprisingly, the vacancy had the identical position description number, "H8336351" at Plaintiff's Exhibit B ROI Page 000473.  Defendant cannot be at war with itself. The applications that Plaintiff submitted for each vacancy are nearly identical at Defendant's attachments D and M respectively, to Defendant's Exhibit 4, Declaration of Ms. Davis. A reasonable jury could find that because Defendant learned of the error and took no action to correct it for over 8 years, it now serves as direct evidence of retaliation against Plaintiff for filing his complaint.


Charge 7 (8773)

        Summary judgment is not appropriate where Plaintiff has met his prima facie claim because he is of protected status (over 40, male, Jewish, and has a history of prior protected activity that was known to the selecting officials involved at the time of rejection, whenever it occurred).  This charge is based on a known numbered vacancy that was not canceled before he was rejected. He applied and was undisputedly qualified. He was referred but despite his superior qualifications was rejected in favor of a younger (age 50) unqualified applicant.  Complainant had 7 years of contractor in-plant monitoring and surveillance experience as a quality assurance specialist 5/7/9/11 and 12 and as an industrial specialist 11. He had an additional 20 years of related acquisition experience as a contract specialist. He performed this work at the same or higher grade when he was employed by DCMA and the Army. The experience blocks are in his resume at ROI 002119 - 002123. He was certified at DAWIA Level 3 in Production, Quality, Assurance, and Manufacturing as stated in the job announcement at Plaintiff's Exhibit ROI 000418. He completed advanced degrees, thousands of hours of related technical training, numerous performance awards, and other related certifications. The Commission has noted that in nonselection cases, pretext may be found where the complainant's qualifications are demonstrably superior to the selectee's. Bauer v. Bailar, 647 F.2d 1037, 1048 (10th Cir. 1981).

Charge 9 (1532)

Summary judgment is not appropriate where Plaintiff has met his prima facie claim because he is of protected status (over 40, male, Jewish, and has a history of prior protected activity that was known to the selecting officials involved at the time of rejection, whenever it occurred). This charge is based on a known numbered vacancy that was not canceled before he was rejected. He applied and was undisputedly qualified. He was not referred because of an alleged error that Defendant refused to correct even when it learned of the error. Defendant has not met its burden of production because it offers no explanation for not taking any corrective action after it confirmed the error and did so in retaliation for Plaintiff's complaint. The required nexus is evident in that Defendant, after learning of the error, refused to take any meaningful corrective action. Such gamesmanship should not be condoned by the court.

Plaintiff was qualified based the PD code which is identical to the PD code for Vacancy (0556) where Plaintiff was granted a priority consideration as reported herein at 73. Before granting the priority consideration, Defendant must have thoroughly reviewed Plaintiff's application. Not surprisingly, the vacancy had the identical position description number, "H8336351" at Plaintiff's Exhibit B ROI Page 000473. Defendant cannot be at war with itself. The applications that Plaintiff submitted for each vacancy are nearly identical at Defendant's attachments F and M respectively, to Defendant's Exhibit 4, Declaration of Ms. Davis. A reasonable jury could find that because Defendant learned of the error and took no action to correct it for over 8 years, it now serves as direct evidence of retaliation against Plaintiff for filing his complaint.

Charge 10 (5778)

Summary judgment is not appropriate where Plaintiff has met his prima facie claim because he is of protected status (over 40, male, Jewish, and has a history of prior protected activity that was known to the selecting official, Mr. Wall who was the supervisor of Ms. White who was keenly aware of Plaintiff's prior protected activity at the time of the rejection, whenever it occurred). This charge is based on a known numbered vacancy that was not canceled before he was rejected. He applied and was undisputedly qualified. He was referred but despite his superior qualifications was rejected in favor of a younger applicant. Defendant's defense that no one was considered on the cert which held Plaintiff's name is false because the same cert was returned signed and the code "NS".

Charge 11 (5650)

Summary Judgment is not appropriate when Plaintiff has established a prima facie case. maintains that she was aware of each of Plaintiff's bases. See Paff at the paragraph titled "Awareness ", which explains when and how each named HR personnelist and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the "but

for" basis for his ultimate rejection. Additionally, Ms. White shared her knowledge and awareness with her supervisors and colleagues, specifically Mr. Wall and Mr. Delloiacono and Mr. Hutchinson.

Charge 12 (6045)

Summary judgment is premature when Plaintiff was rated by the panel convened to rate resumes as the top candidate to be interviewed Plaintiff's Exhibit E, Page 001966. Instead, the selecting official, Mr. Russell, acting on his ageist view based on his review of Plaintiff's resume, chose not to interview Plaintiff.  Russell's ageist view was reported by Mr. Guerro. See Plaintiff's Exhibit P. This taint of age discrimination precludes the granting of summary judgment. See Babb v. Wilkie, 140 S. Ct. 1168, at 1171, 1173 (2020).

Charge 13 (6942)
Summary judgment is inappropriate when Plaintiff made a prima facie case of age, gender, and retaliation for prior protected activity when his request for reconsideration of his qualifications was ignored by Defendant for 8 years and Defendant chose Ms. Oberle, a 32 year-old female, who never previously worked in Israel. Plaintiff applied, was qualified, but not referred despite the fact that other applicants who lost consideration were provided priority consideration but they had not threatened to file an EEO complaint as Plaintiff had. It is undisputed that Plaintiff was qualified based on his having been granted priority consideration for Charge 19, Vacancy (0556) because both vacancies held identical position descriptions of H8336352 as explained herein at length.  The causal connection is found in that Defendant knew or had to have known that there had been an error made and chose to retaliate by not taking any corrective action for 8 years.

Charge 15 (4857)

Summary judgment is inappropriate when there was a taint of discrimination.  Mr. La Rue, a panelist, admitted that he advised all panelists that Plaintiff had filed previous EEO complaints and his fellow panelists should therefore be sure to be "very careful and meticulous" to avoid another occurrence. See Plaintiff's Exhibit H, Page 17 line 12. See Babb v. Wilkie, 140 S. Ct. 1168, at 1171, 1173 (2020).

Charge 18 (6646)

Summary judgment is inappropriate when there was a taint of discrimination. It is undisputed that Plaintiff was qualified based on his having been granted priority consideration for Charge 19, Vacancy (0556) which was based on PD H8336351 (See at Plaintiff's Exhibit A ROI Page 000469) and this held identical position description of H8336351 (Plaintiff's Exhibit A ROI Page 000486). Plaintiff resumes were identical for each. Even when Defendant learned of the error, other persons made the same

determination later which then constituted direct evidence of retaliatory discrimination. Also See 56(d).

Charge 19 (0556)
Summary judgment is inappropriate when Plaintiff made a prima facie case of age, and retaliation for prior protected activity when his request for reconsideration of his qualifications resulted in the granting of a priority consideration but became an 8-year sham.  The it undisputed that he applied, was qualified (granted priority referral), additional applicants were sought and hired. Vacancies occurred and AST never transferred a continuing priority to DLA which replaced AST thereby canceling his priority. The causal connection is found in that Defendant chose to retaliate by not referring him for the past 8 years despite the priority. See Paff.

Charge 20 (4693)

Summary Judgment is not appropriate where Defendant admitted to an alleged innocent error of not referring Plaintiff but has taken no action for 8 years to correct the error as explained at 91. Herein:

*"On November 26, 2014, Plaintiff was informed that he was not referred because he was outside the AOC: "IAOC You were not referred for this position because you were outside of the area of consideration." Doc. 215, PTO SF 86. DISPUTED. Defendant exhibits no remorse and had no reason not to take any corrective, even when it had no doubt than an error occurred. This converts what could have been innocent behavior to direct evidence of retaliatory discrimination after 8 years."*

Prima Facie case is met where Defendant fails to answer the claim in any meaningful way.  Plaintiff held protected statuses applied, was admittedly qualified, and Defendant makes no showing other than to admit an error.  The nexus is satisfied when Defendant has been silent. Further Defendant has had knowledge of Plaintiff's statuses and protected activity but seems to take the position that Plaintiff has the burden to demonstrate discrimination.  Plaintiff has met his burden but Defendant has not met its burden of Production because it prefers silence.

In its interrogatory to provide a reason, Defendant wrote:
*192. In regard to the above titled charge in Plaintiff's amended complaint, identify all material facts supporting your legitimate non-discriminatory reason(s) for not selecting Plaintiff. ANSWER: Christina Swisher reviewed Plaintiff's application packet and considered him outside the area of consideration because she did not believe that he provided a SF-50 to support being a current employee of the Department of Defense Employees, Reinstatement Eligible, Veterans and Preference Eligible under the Veterans Employment Opportunity Act (VEOA) of 1998, or Interagency Career Transition Assistance Plan (ICTAP) Eligible on a competitive appointment. Based on the SF-50 Plaintiff uploaded under the Title "SF-50," Ms. Swisher determined that Plaintiff was at*

*that time on an excepted appointment non VRA which is not eligible for consideration for the position. At the time Ms. Swisher made the determination that Plaintiff was not eligible for the position, she did not know Plaintiff's gender, age, religion, or prior protected activity. Defendant has since discovered that Plaintiff submitted two SF-50's for this vacancy. The first was uploaded as an "SF-50" and showed Plaintiff in the excepted service, the second was uploaded as an "Other" document and showed Plaintiff as part of the Competitive Service. By not recognizing the second SF-50, uploaded as an "Other" document, Ms. Swisher mistakenly found that Plaintiff was not within the area of consideration.*

Plaintiff has repeatedly requested to be made whole via his complaint believing that the error was purposeful but Defendant refused every effort for 8 years. See Paff.

Charge 23 (4634)

Summary Judgment is inappropriate where a material triable fact remains at issue. Defendant claims Plaintiff withdrew himself from consideration and Plaintiff denies that he withdrew. The individual who alleges Plaintiff's withdrawal has admitted his knowledge of Plaintiff's prior protected activity and statuses. Mr. Delloiacono attested that he heard from Julie White a week before his 6/29/15 testimony that Plaintiff had won a complaint against the Air Force. Plaintiff maintains that the selecting officials ignored his application and created a false basis to cover up their discrimination of not considering him based on their knowledge.

Charge 24 (7316)

Summary judgment is not appropriate where Plaintiff has met his prima facie claim because he is of protected status (over 40, male, Jewish, and has a history of prior protected activity that was known to the selecting official involved at the time of rejection, whenever it occurred).  This charge is based on a known numbered vacancy that was not canceled before he was rejected in favor of a much younger less qualified applicants who were interviewed when he was not. Mr. Dingman, YOB 1975 was selected. See Exhibit C ROI 001246 who had no known prior protected activity was selected.

This gives rise to an inference of age and retaliation discrimination, particularly when her own scoresheet shows how Plaintiff's qualifications should have qualified him for an interview. See Plaintiff's Exhibit C, Page 001253 where Mr. Dingman's ranking was identical to Plaintiff's, a "3". She conducted 7 interviews *and stated "To review the resumes, I looked at all areas within the Merit Promotion criteria with specific review of the five key areas in the functional experience: Contract Administration (procurement perspective; lower experience in manufacturing), Production Planning, Schedule*

*Analysis, Manufacturing, and Supply Chain Management; if there is a tie, I use training and education.*" Plaintiff Exhibit D, Page 001605.

Applying her methodology as alleged, the ties should have been broken in Plaintiffs favor and the selectee would have been interviewed at all. This is because Plaintiff's training and education was rated as .75 while Mr. Dingman's total was only .5. See Plaintiff's Exhibit C, Page 001253. The total number of interviews granted is a material fact that is in dispute. Her testimony states 7 interviews were "conducted" but her spreadsheet indicates 6 were highlighted in yellow as though slated for interview by score, and at the bottom of page where dates and times are shown, only 5 names are entered. This inconsistency, alone, precludes summary judgment because the number of interview slots determined whether or not Plaintiff should have been interviewed.

On August 15, 2014, Plaintiff submitted his application for this GS-1150- 11 Industrial Specialist position in Syracuse, NY. Defendant found Plaintiff best qualified and referred his application to the selecting official for consideration. Ms. White wrote comments on each resume that she reviewed. Ms. White interviewed 7 of the 14 applicants for interviews. Plaintiff alleges the true reason White failed to interview Plaintiff was because of his prior EEO activity of which she was aware. Ms. White did not use the mandated elements required by the Defendant's promotion regulation, specifically DAWIA certification which was a requirement of the position. Ms. White purposefully scored Plaintiff based on his protected status.

Plaintiff had the highest overall score of any applicant after applicant Robert Natale. Plaintiff was still not selected for an interview. Defendant destroyed or failed to preserve White's contemporaneous handwritten notes on the resumes and the applications of those who treated more favorably than Plaintiff by being interviewed.

Charge 26 - Vacancy Number SWH814P73154221245352
On November 17, 2014, Plaintiff submitted his application for this GS- 1150-11 Industrial Specialist position in Milwaukee, WI. On January 8, 2015 Plaintiff was notified that he was not referred to the selecting official because "ID You do not meet the minimum education and/or experience requirements for this specialty". Plaintiff appealed the next day to no avail.

Plaintiffs qualifications were based on his actual service in the position, his EEO deemed service in the position, his quality assurance experience which overlapped in responsibilities, and his training, his DAWIA level 3 in Production and Manufacturing. Plaintiff maintains that Lynch treated other applicants not of his protected more favorably. Plaintiff maintains Lynch's action was direct evidence of discrimination because such an error, particularly on appeal, would have been resolved in his favor but for her discriminatory intent to disqualify him. The same office referred Plaintiff for other GS- 1150-11 vacancies which used identical position description and identical or

similar application as he used here: SWH814EHA4045651268773,
      SWH814EHA4294541275650,and SWH814P6EHA1510901197316. See below
Plaintiffs "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.

Charge 27 - Vacancy Number SWH814P83037751225507
On November 10, 2014, Plaintiff submitted his application for this GS- 1910-11 Quality
Assurance Specialist position in San Diego, CA. On April 16, 2015, Plaintiff was notified
that he was not referred because he allegedly did "not meet the minimum education
and/or experience requirements for this specialty and grade." Plaintiff submitted a
resume that showed many years wherein he performed qualifying GS-1910 service as
employed by Defendant and others. Plaintiff was referred by the same office
personnelists for GS-1910- 11 (or higher) Quality Assurance Specialist vacancies when
Plaintiff cited the same experience as that which he cited in his instant application. See
below Plaintiffs "GS- 1910 and GS-1150 Vacancies Specialized Experience" for additional
facts.

Charge 28 - Vacancy Number SWH814PH3899701256979
On December 8, 2014, Plaintiff submitted his application for this GS- 1102-12 Contract
Procurement Analyst position in Boston, MA. On January 30, 2015, Plaintiff was notified
that he was not referred because he was outside the "Area of Consideration". The
personnelist, Ms. Everson alleged that Plaintiff was not referred because the SF-50
Plaintiff submitted showed he was in the excepted service. Ms. Everson maintained her
opinion even after her office advised her that she was wrong. Ms. Everson maintained
her opinion because of her intent to retaliate for Plaintiffs prior protected activity.
Defendant did not refer Plaintiff for the position.

Plaintiff was referred by the same personnel office for the following GS-1102-11 (or
higher) vacancies based on the nearly identical experience Plaintiff cited in his instant
application. See below Plaintiffs "GS-1102 Vacancies and Educational Requirements" for
additional facts. Plaintiffs age, religion, and prior protected activity were the "but for"
reasons in this hiring action.

Charge 29 - Vacancy Number SWH815EHA6129451373850
On April 10, 2015, Plaintiff submitted his application for this GS-1102-11 Contract
Specialist position in Palmdale, CA. On June 24, 2015 Plaintiff was notified that he was
not referred to the selecting official by Nancy Klaverweiden allegedly because he did
not: "meet the minimum education and/or experience requirements for this specialty
and grade." Plaintiff maintains that Nancy Klaverweiden retaliated against Plaintiff for
his prior complaint activity. Plaintiff maintains that the personnelist treated other
applicants more favorably and referred them. Plaintiff maintains that she also advised
her colleagues to improperly disqualify him in retaliation for his protected activities.
Plaintiff was referred by the same personnel office for the following GS-1102-11 (or
higher) vacancies based on the nearly identical experience Plaintiff cited in his instant

application. See below Plaintiff's "GS-1102 Vacancies and Educational Requirements" for additional facts.

Charge 30 - Vacancy Number SWH815P44027741326193
On February 20, 2015, Plaintiff submitted his application for this GS- 1102-11 Contract Specialist position in Endicott, NY. On April 14, 2015 Laber was notified that he was not referred to the selecting official by Amani Wood. Plaintiff maintains Wood treated applicants without prior EEO activity more favorably when she did not disqualify them on the same alleged bases. She advised her colleagues to disqualify him in retaliation for his complaints. Plaintiff was referred by the same personnel office for the following GS- 1102-11 (or higher) vacancies based on the nearly identical experience Plaintiff cited in his instant complaint. See below Plaintiff's "GS-1102 Vacancies and Educational Requirements" for additional facts.

Charge 31 Vacancy Number SWH815P45134861320413
On February 12, 2015, Plaintiff submitted his application for this GS- 1910-12 Quality Assurance Specialist position in Endicott, NY. The area of consideration stated in the vacancy announcement included "reinstatement eligible" applicants among other eligibilities. On April 9, 2015 Plaintiff received a notice that he was not referred to the selecting official by Ms. Klaverweiden because she determined that Plaintiff did not "meet the minimum education and/or experience requirements for this specialty and grade". On June 17, 2015, Ms. Klaverweiden stated to the investigator that Plaintiff could be granted priority for a like position based on the non-referral. See below Plaintiffs "GS-1910 and GS-1150 Vacancies Specialized Experience" for additional facts.
GS-1910 and GS-1150 Vacancies Specialized Experience
Plaintiff met the specialized experience requirements and qualifications for Charges 6, 9, 13, 18, 26, and 27. The personnelists involved made errors during their initial reviews of applications they processed. When, challenged by an applicant, a review is usually conducted to determine if indeed an error occurred and whether any corrective should be taken. The same AST office previously determined that Plaintiff met the specialized experience requirement for every job series and grade. Indeed, in Charge 28 Vacancy Number SWH814PH3899701256979 herein also required nearly the same specialized experience, Plaintiff was granted priority consideration. Indeed, that granting required higher level reviews.


CONCLUSION

Based on the remaining material disputes, Plaintiff requests Defendant's motion be denied in total

*Stan Laber*

Respectfully,
Stan Laber
703-981-2793

Certificate Service

I certify that I have submitted this filing to the court for distribution.

Respectfully,

Stan Laber

703-981-2793

*Stan Laber*