IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STAN LABER,

            Plaintiff,

v.                                                       Case No. 18-1351-JWB

LLOYD J. AUSTIN, III, SECRETARY,
UNITED STATES DEPARTMENT OF DEFENSE,

            Defendant.

**MEMORANDUM AND ORDER**

Plaintiff, who is proceeding pro se, filed this employment action against Defendant Lloyd Austin, III, Secretary, United States Department of Defense. This action is based on a substantial number of discrete failure to hire claims. For each discrete act of failure to hire, Plaintiff has asserted claims of religious, gender, and age discrimination and retaliation in violation of 42 U.S.C. § 2000e ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). This matter is now before the court on Plaintiff's motion to exclude Defendant's expert (Doc. 245). The motion has been fully briefed and is ripe for decision.[1] (Doc. 249.) Plaintiff's motion is DENIED for the reasons stated herein.

**I.    Background**

Defendant has retained Dr. Paul White, Ph.D., to opine regarding Plaintiff's economic damages. Dr. White completed his Doctor of Philosophy in labor economics in 1993, is a faculty member of the Institute for Workplace Equality in Washington, D.C., has significant experience in the application of labor economics and statistical methods, and has testified numerous times in state and federal courts. (Doc. 249 at 7, Exh. 1, App. A at 2-13) (citing cases). He was retained

---

[1] Plaintiff did not file a reply and the time for doing so has now passed.

1

in this case to review Plaintiff's expert's (Dr. Ben Zion) economic loss report and related materials and provide calculations of Plaintiff's potential earnings under different scenarios. (Doc. 249-1 at 2.) Although Plaintiff's claims include several vacancies, both experts' opinions are based on the position at issue in charge 2 of Plaintiff's second amended complaint (a claim for which Defendant has not moved for summary judgment).

Dr. White performed several calculations and issued opinions regarding (1) Plaintiff's potential earnings if he had been employed in the position at issue, (2) Plaintiff's salary had he not retired from the National Geospatial-Intelligence Agency in January 2015, and (3) Plaintiff's potential earnings had he obtained employment or performed work as a consultant in the private sector. (*Id.* at 4-13.) Dr. White set forth the sources that he reviewed in forming his opinions, which included documents produced in discovery, Plaintiff's annuity benefit documents, salary tables for Defendant's employees, United States Life Tables, Treasury Rates, and other related materials. (*Id.* at 2-3.)

Ultimately, Dr. White opines that Plaintiff did not suffer an economic loss from Defendant's decision not to hire Plaintiff for the vacancy if the fact finder determines that it should consider the value of Plaintiff's other potential earning streams, which include Plaintiff's annuity, Plaintiff's potential earnings for the job he voluntarily left in 2015, and the value of his earnings capacity if he pursued alternative employment in the private sector. Dr. White issued his report in November 2021. Plaintiff elected not to depose Dr. White. Plaintiff now moves to exclude his opinions.

**II.     Standard**

Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under this rule, the district court must satisfy itself that the testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.  *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)).  The district court must first determine whether the witness is qualified by knowledge, skill, training, experience, or education to render an opinion.  *Id.*  If so, the district court must determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology.  *Id.* at 1283.  The court is not required to admit opinion evidence that is "connected to existing data only by the *ipse dixit* of the expert," and may exclude the opinion if "there is simply too great an analytical gap between the data and the opinion offered."  *Id.* (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).  But the rejection of expert testimony is the exception rather than the rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 596 (1993).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*."  *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Bill Barrett*

3

*Corp. v. YMC Royalty Co.*, LP, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). In this instance, neither party has requested a *Daubert* hearing. Moreover, the nature of the opinions expressed, the relative completeness of the expert's report, and the materials cited lead the court to conclude that the motion can be decided without a *Daubert* hearing. *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (district court permissibly exercised its discretion in ruling without a formal *Daubert* hearing). Should additional *Daubert* issues arise at trial that require further inquiry, the court will determine at that time how to handle them. *Cf. Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 772 (10th Cir. 2019) ("a judge does not abuse his discretion by conducting a *Daubert* hearing in the presence of the jury through direct examination and voir dire.") (citing *Goebel*, 215 F.3d at 1087).

**II.   Analysis**

Plaintiff moves to exclude Dr. White's opinions on the basis that he is not qualified, his opinions do not seriously challenge Dr. Zion's report, his analysis of the income streams are speculative and lack foundation, and his opinions are not relevant. At the outset, the court notes that Plaintiff's motion lacks any serious challenge to Dr. White's credentials and opinions. Plaintiff's arguments are conclusory and fail to specifically identify how Dr. White's opinions should be excluded under *Daubert*. However, out of an abundance of caution, the court will briefly address the arguments Plaintiff has raised.

With respect to Dr. White's qualifications, Plaintiff argues that he is not qualified because he is not an expert in the area of human resources or vocational counseling. Plaintiff, however, fails to identify which opinions require a background in human resources or vocational counseling

and fails to cite any authority in support of his position that Dr. White must have such a background to formulate the opinions in his report. As evidenced by the report, Dr. White has performed mathematical calculations of potential alternative income streams for Plaintiff given Plaintiff's own employment history and testimony along with other relevant materials to which Plaintiff has not objected. Based on Dr. White's education and experience, the court finds that he is qualified to perform such calculations and opine as to the results.

Next, Plaintiff argues that Dr. White "barely mentions Dr. Ben Zion's report" and does not "challenge" the report. (Doc. 245 at 4.) This argument is not clear; however, as pointed out by Defendant, Dr. White was not offered as a rebuttal expert. While Dr. White's report identifies areas of agreement with Dr. Ben Zion, it also provides additional opinions on Plaintiff's damages which is directly relevant to Defendant's affirmative defense of failure to mitigate.

Plaintiff further asserts that Dr. White's opinions on "hypothetical and speculative income streams" are speculative and lack foundation. (*Id.*) Plaintiff fails to specifically identify which opinions are hypothetical and speculative. Dr. White has calculated the amount of income Plaintiff would receive under his annuity over a ten-year period. (Doc. 249-1 at 6–7.) Dr. White has also calculated Plaintiff's potential income if he had gained employment in the private sector based on national averages of jobs similar to jobs that Plaintiff was seeking with Defendant. (*Id.* at 11-12.) Dr. White has also calculated Plaintiff's potential income if he had continued to work as a consultant. In forming these opinions, Dr. White has identified his method in performing his calculations and the foundation for his data. Because Plaintiff has failed to lodge a specific objection to Dr. White's methodology, the court declines to delve into Dr. White's methods as to all of his opinions. It is also important to note that Plaintiff does not challenge the reliability of the sources used by Dr. White in forming his opinions. In sum, based upon a review of the

materials, the court finds that Dr. White's report and opinions stated therein rest upon sufficient facts and data, and Dr. White reliably applied mathematical and economic methodologies to the facts of this case in forming his opinions.

Finally, Plaintiff argues that Dr. White's opinions are not relevant and not helpful to the trier of fact. Clearly, an opinion regarding Plaintiff's damages is relevant to the issues the jury must resolve should it determine that Plaintiff established his claim of employment discrimination under Title VII or the ADEA. Dr. White's opinion is also directly relevant to Defendant's affirmative defense of failure to mitigate.[2] Moreover, Dr. White's opinions will be helpful to the jury because the issue of failure to mitigate damages involves complex calculations as evidenced in the report.

### III. Conclusion

Plaintiff's motion to exclude (Doc. 245) is DENIED.

IT IS SO ORDERED. Dated this 1st day of December, 2022.

__s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff concedes that Dr. White's opinions would be relevant to the defense of failure to mitigate damages but then states that Defendant makes no such claim. (Doc. 245 at 5.) Contrary to Plaintiff's assertion, Defendant has preserved this defense in the pretrial order. (Doc. 215 at 43.)