IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STAN LABER,

 Plaintiff,

v.                                                          Case No.  18-1351-JWB

LLOYD J. AUSTIN, III, SECRETARY,
UNITED STATES DEPARTMENT OF DEFENSE,

 Defendant.

## MEMORANDUM AND ORDER

Plaintiff, who is proceeding pro se, filed this employment action against Defendant Lloyd J. Austin, III, Secretary United States Department of Defense.  This action is based on a substantial number of discrete failure to hire claims.  For each discrete act of failure to hire, Plaintiff has asserted claims alleging religious, gender, and age discrimination and retaliation in violation of 42 U.S.C. § 2000e ("Title VII") and the Age Discrimination in Employment Act ("ADEA").  This matter is now before the court on cross motions for partial summary judgment (Docs. 240, 243) and Defendant's motion for review (Doc. 221).  The motions have been fully briefed and are ripe for decision.  (Docs. 222, 226, 234, 241, 251, 252, 253, 254, 260, 261.)  Defendant's motion for partial summary judgment (Doc. 240) is GRANTED and Plaintiff's motion (Docs. 243) is DENIED for the reasons stated herein.  Defendant's motion for review (Doc. 221) is MOOT.

## I.      Standard

 Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d

1215, 1219 (10th Cir. 2006).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies.  D. Kan. R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."  *Id.*  To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  The nonmoving party may also show that the movant "cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).  The court is not required to "conduct its own search of the record."  *Id.*

In accordance with this court's local rule regarding motions for summary judgment, D. Kan. Rule 56.1, Defendant provided Plaintiff with the notice regarding the rules applicable to motions for summary judgment.  (Doc. 242.)  This notice informed Plaintiff that Defendant's facts would be admitted if he failed to properly controvert those facts.  In reviewing Plaintiff's response to Defendant's motion, although Plaintiff identified a significant number of facts that were allegedly in dispute, Plaintiff failed to properly dispute most of those facts in accordance with the rules.  Because this case involves a vast number of facts, the court will group together several facts

that Plaintiff has failed to controvert.  The court notes that its discussion of these facts does not identify all of the facts which Plaintiff failed to properly controvert.  The court's ultimate recitation of the facts in this order reflects the court's determination of the uncontroverted facts and, where properly controverted, the facts viewed in a light most favorable to the non-moving party.

Plaintiff has identified several facts as "DISPUTED," yet Plaintiff failed to refer to the record in disputing the facts and, in some instances, did not include any statement other than "disputed."  (*See, e.g.*, Doc. 254 at ¶¶ 36[1], 37, 103, 122, 123, 128, 129, 138, 139, 142, 143, 151, 152, 153, 154, 162, 163, 194, 220.)  These responses have not properly controverted a proposed fact and, therefore, those facts are admitted.

Plaintiff has also asserted that several facts stipulated to in the pretrial order are disputed. (*See, e.g.*, Doc. 254 at ¶¶ 20, 31, 42, 49, 55, 83, 91, 95, 99, 107, 118, 119, 120, 124, 136, 148, 149, 159, 160, 168, 174, 181, 189, 204, 217, 228, 229, 230, 248, 262, 269, 286, and 358.)[2]  Defendant objects to Plaintiff's attempt to controvert the parties' stipulated facts in the pretrial order.  The pretrial order was entered on April 5, 2022, which was approximately one month prior to the start of summary judgment briefing.  The pretrial order states that it supersedes all other pleadings and cannot be modified except by consent of the parties and the court's approval or by an order of the court to prevent manifest injustice.  (Doc. 215 at 1.)  Plaintiff has not attempted to modify the pretrial order under this standard.  Therefore, the stipulated facts are deemed uncontroverted.

Plaintiff also asserts that several facts which are supported by reference to affidavits submitted by Defendant's employees, Plaintiff's amended complaint, Plaintiff's interrogatory responses, and other evidence are not supported by competent evidence.  (*See, e.g.*, Doc. 254 at ¶¶

---

[1] Plaintiff's responses directly correlate with the paragraphs in Defendant's statement of facts ("SOF"), i.e. Plaintiff's paragraph 103 is the response to Defendant's SOF 103.
[2] Plaintiff has objected to some of the stipulated facts as not supported by competent evidence.  This argument is conclusory, fails to cite to any authority for such a proposition, and lacks merit.

14, 15, 16, 21, 22, 32, 43, 56, 66, 70, 76, 77, 82, 84, 96, 108, 113, 119, 125, 137, 140, 141, 150, 161, 178, 184, 198, 211, 231, 264, 280, 300, 310, 312, 313, 336, 349, 359, 360, 361, 362, 363, 364, 365, and 366.)  Because Plaintiff is pro se, the court construes Plaintiff's assertions as an argument that the facts are not supported by evidence that will be admissible at trial.  A fact may be established at summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. of Civ. P. 56(c)(1).  Plaintiff may controvert a fact supported by such evidence by showing that the evidence cannot be presented in a form that would be admissible at trial, that the affidavit is not made on personal knowledge, or that the affiant is not competent to testify to the matters stated.  *Id.* at (c)(2), (4).  While an affidavit itself is not admissible at trial, it is the content or substance of the evidence that must be admissible at trial. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).  An affidavit can be converted to live testimony at trial and, therefore, the content of the affidavit is admissible if it is based on personal knowledge of the affiant and not hearsay.  *Id.*

Here, the vast majority of Plaintiff's objections fail to specify a reason that the evidence would not be admissible at trial.  For example, in response to Defendant's statement of fact ("SOF") number 140, which is supported by the declaration of Leslie Davis, Plaintiff states, "DISPUTED. Decl. no [sic] competent."  (Doc. 254 at ¶ 140.)  And, in response to Defendant's SOF 141, which is again supported by Davis's declaration, Plaintiff states "DISPUTED. Decle [sic] compt [sic] waived."  (*Id.* ¶ 141.)  Defendant argues that Plaintiff's objections are not sufficient to put it on notice of the basis of those objections.  The court agrees.  With the exception of a limited number of objections, Plaintiff has wholly failed to explain why the evidence cited by

4

Defendant will not be admissible at trial.  After reviewing the declarations, it is clear that all of the declarants have attested that their statements contained in the declarations are based on personal knowledge and Plaintiff makes no specific hearsay objection to any of the statements contained in the affidavits.  Therefore, the contents of the declarations would be admissible at trial should Defendant call those declarants as witnesses.  The conclusory objections made by Plaintiff fail to controvert those facts.  Plaintiff also makes a limited number of objections to some declarations and asserts that the declarant cannot have personal knowledge regarding the matter.  Almost all of the declarations are based on decisions made by the declarant and, therefore, such an objection lacks merit.[3]

Finally, Plaintiff has also responded to several facts by stating that they are disputed and citing to an affidavit.[4]  (*See, e.g.*, Doc. 254 at ¶¶ 3, 5, 24, 35, 46–48, 59, 74, 88, 100, 111, 126, 155, 164, 185, 199, 213, 214, 224, 238, 239, 265, 278, 293, 304–07, 330–32, 335, 337, and 339.)  Plaintiff, however, has not attached an affidavit to his response to Defendant's motion for summary judgment.  Moreover, although Plaintiff refers to this affidavit extensively, Plaintiff does not give it an exhibit number nor does Plaintiff's exhibit sheet reflect such an exhibit.  (Doc. 254-2.)  In his reply brief, Defendant asks the court to find that Plaintiff has not properly controverted these facts due to the missing affidavit and further notes that he contacted Plaintiff by e-mail on June 27, 2022, in order to inform Plaintiff that the affidavit is missing from the record.  (Doc. 260 at 6, n. 8.)  The record further reflects that Plaintiff was served with Defendant's reply brief by e-mail and postal mail on July 7, 2022.  (*Id.* at 31.)  More than four months have now passed since the e-mail notice in June and the reply brief filed in July and Plaintiff has not attempted to provide the court

---

[3] Plaintiff also asserts a lack of personal knowledge objection as to some SOFs supported by the declarations of Davis and Kathleen Butera-Fanney.  Plaintiff's objection on this basis also lacks merit for the reasons discussed herein.
[4] Plaintiff's response cites to an "Affidavit" or "Paff" or "Rule 56(d) affidavit."  (*See, e.g.*, Doc. 254 at ¶¶ 31, 33, 35.)  The court will refer to these citations as Plaintiff's affidavit or affidavit.

and Defendant with his affidavit.  Therefore, the court finds that Plaintiff has not met his burden to show that these facts are properly controverted.

The court further notes that it has serious doubts that Plaintiff's affidavit, had it been provided, would be sufficient to controvert most of the facts which it purports to controvert.  Based on his response, Plaintiff would attempt to use this missing affidavit to challenge **all** of the selecting officials' knowledge regarding Plaintiff's age[5], religion, and protected activity.  Plaintiff contends that the missing affidavit "explains when and how each named HR personnelist [sic] and selecting official was aware of Plaintiff's age, gender, religion, and prior or then current protected activity and rejected Plaintiff based on that awareness which was the 'but for' basis for his ultimate rejection." (*See, e.g.,* Doc. 254 at ¶ 35.)  As shown by Defendant, however, at no point in time has Plaintiff ever identified how each of the individuals involved in all 21 vacancies at issue knew about his religion and protected activity.  Rather, Plaintiff consistently stated that he was unable to provide a response to interrogatories asking if Plaintiff contended that any individuals in the hiring process had knowledge of his religion or protected activity.   And, when Plaintiff supplemented his interrogatory answers relating to his religious discrimination claims, he asserted, without any specificity, that the selecting officials, panelists, and HR specialists all knew about his religion because such knowledge was gained through "internet searches, word of mouth from colleagues, subordinates, or supervisors, from contacted references, from HR specialists, [and] from [the] EEO specialist" but that he did not know when these events occurred.  (Doc. 241-38 at 2.)  Therefore, even if Plaintiff had submitted the missing affidavit, the court harbors serious doubts that Plaintiff could establish that he has personal knowledge regarding how all of these individuals

---

[5] Although the individuals involved in the hiring process have stated that they did not know Plaintiff's age, it is clear from his resume that he is over the age of 40.  *See* Doc. 252-3 at 237 (listing 1966 as the date he received his bachelor's degree).

learned of his protected status or religious beliefs—as his response purports to have—and that he somehow gained this knowledge during the short period of time from which discovery closed and the dispositive motions were filed.

## II.   Facts and Procedural History

The following facts are uncontroverted or viewed in a light most favorable to the non-moving party.  Additional facts pertaining to specific vacancies will be discussed throughout the analysis.

Plaintiff is male, was born in 1945, and observes the Jewish religion.  Plaintiff retired from the National Geospatial-Intelligence Agency ("NGA"), a federal agency, in January 2015. Plaintiff worked for numerous federal agencies from 1981 until his retirement, including the Department of Veterans Affairs ("VA"), Defense Logistics Agency, U.S. Army Corps of Engineers, Department of the Army, and the Defense Contract Management Agency ("DCMA"). Plaintiff worked for DCMA, during some of the 1980s, most of the 1990s, and into October 2000. Plaintiff has not worked for DCMA since October 2000.

When Plaintiff retired from the NGA, it was a voluntary decision although he does not recall exactly why he retired.  Plaintiff testified that he "liked the work," but one of the "major reasons" for his retirement was because he "was not promoted."  (Doc. 252-31, Laber Dep., 193:7; 195:18–24.)  Plaintiff's "final decision to leave was" made "days before" his retirement.  (*Id.* 195:8-14.)  At the time of his retirement, Plaintiff was employed as a contract specialist, and earned an annual salary of $139,642, excluding awards or overtime.  (Doc. 252-1.)  Had Plaintiff continued in his position and absent poor performance, he would have received minimum pay increases each year.

At the time of his retirement, Plaintiff was covered by the Civil Service Retirement System ("CSRS").  Under CSRS, a retiree is entitled to an annuity for life that is calculated using a specified formula.  Plaintiff's annuity upon his retirement was calculated at $90,369.17.  (Doc. 215 at 3.)  Plaintiff's annuity is subject to periodic increases and, in 2021, was $97,776.  (*Id.*)

Plaintiff has not worked for compensation after retiring from the NGA.  At various times during his career, Plaintiff was paid for providing consulting services.  Plaintiff represented in his 2017 resume that he had provided consulting services since 2015 but later testified that he had not been paid for consulting services since 2006.  (Doc. 252-2 at 2; 252-31 at 56:21-25.)  Although he applied for a position with the State of New York, Plaintiff has not applied for any private sector jobs since 2014.  (*Id.* at 201:23-202:11.)

Plaintiff began seeking positions with DCMA in 2013 while he was still employed.  This action relates to 21 vacancies to which Plaintiff applied and was not hired during the years 2014 and 2015.  For all 21 non-selections or charges,[6] Plaintiff alleges disparate treatment based on age and religion, as well as retaliation.  With respect to eight charges (2, 5, 11, 12, 13, 15, 24, and 27), Plaintiff alleges disparate treatment based on gender.  Plaintiff further asserts a claim of failure to accommodate with respect to his religion and a claim of disparate impact based on age discrimination in relation to charges 2, 5, 11, and 15.  (Doc. 215 at 40-41.)

Application Process.  In 2014 and 2015, DCMA contracted with the Army Servicing Team ("AST"), part of the Department of the Army, to provide certain human resources ("HR") functions, including posting and processing DCMA job vacancies.  The HR services that AST provided included posting vacancies (or job opportunity announcements) on the website USAJobs

---

[6] Plaintiff's pleadings and the pretrial order refer to each failure to hire claim as a distinct "charge."  This order refers to Plaintiff's claims as charges.  Each charge is identified by a number which directly relates to the claims in the pretrial order.  The charges are not in numerical order as claims have been either voluntarily dismissed by Plaintiff or dismissed by the court as discussed herein.

and conducting an initial review of applicants to determine which applicants showed the minimum qualifications, the required specialized experience, and fell within the "area of consideration." (Doc. 232-3 ¶ 7.)[7]  After review, the AST HR specialist prepared a referral list for the selecting official.  Although this list was titled "Certificate of Eligibles," it was referred to as the referral list.  (*Id.*)  During the review of materials, the AST HR Specialists evaluated whether applicants met the required criteria based only on the application materials.  (*Id.* ¶ 8.)  When evaluating specialized experience, HR Specialists were to look to the descriptions provided for listed work experience and not just the job titles or series/grades.  (*Id.*)

After AST reviewed the applicants, the referral list was sent to the DCMA selecting official.  The selecting official could convene a panel to assist in reviewing applications, conducting interviews, and recommending an applicant for hire.  (Doc. 252-4 ¶ 30.)[8]  With respect to positions that were classified as GS-14 (pay grade) or below, the selecting official could review applicants, conduct interviews, and make a selection without the use of a panel.  (*Id.*)  Pursuant to

---

[7] This exhibit is the Declaration of Leslie Davis, who was employed as the Supervisory Human Resources Specialist (Branch Chief) at AST.  According to Davis, she made the declaration based on personal knowledge gained in her official capacity and based on her review of government records.  (Doc. 232-3 ¶ 4.)  Plaintiff repeatedly objects to Davis's declaration on the basis that it is not competent evidence and is not based on personal knowledge.  With respect to the facts pertaining to the process utilized by AST in reviewing applications for DCMA job vacancies, it is clear that she has personal knowledge as to this process based on her experience at AST.  With respect to the facts pertaining to the specific job vacancies at issue, if Davis was not involved in the decision making process, she is basing her statements on official records.  Davis was designated as Defendant's Rule 30(b)(6) witness as to AST.  Plaintiff cancelled Davis's deposition on short notice (less than 24 hours).  As discussed by Defendant in his response, Davis was fully prepared to testify regarding all decisions made by AST at issue in this case.  (Doc. 260 at 8–9.)  Plaintiff cannot now object to her declaration on the basis of a lack of personal knowledge when she was prepared to testify as a corporate representative on these issues.  Moreover, Davis will be available to testify at trial as to statements in her declaration and as to official government records based on her own experience, her knowledge as a supervisor, her access to the AST records, and her designation and preparation as a Rule 30(b)(6) witness.  The court finds that Plaintiff's objections to Davis's declaration stated throughout his response lack merit and are overruled.

[8] This exhibit is the Declaration of Kathleen Butera-Fanney, who is the Acting Executive Director of Total Force for DCMA and has previously served as the Executive Director of Human Capital for DCMA and the Deputy Executive Director for Total Force.  (Doc. 252-4 ¶¶ 1–4.)  In these roles, she was responsible for developing and overseeing the policies and processes which govern the worldwide civilian population of DCMA.  (*Id.* ¶¶ 3–4.)  Although Plaintiff argues that Butera lacks personal knowledge in an attempt to controvert this fact and others, her declaration clearly supports her assertion that she has knowledge regarding DCMA hiring procedures and policies.  Therefore, such objections by Plaintiff throughout his response lack merit.

DCMA practices, interviewers were to read a scripted introduction and all applicants were asked the same questions.  The applicants would then be evaluated based on their answers to the questions.  (*Id.* ¶ 31.)  Even when a panel is utilized, the selecting official is to make the ultimate hiring decision.  (*Id.* ¶ 30.)

During 2014 and 2015, AST routinely had more than 1000 vacancies pending and there were typically more than 300 vacancies which were in the referral stage (the period after the application had closed and before the referral list was issued) at any given time.  (Doc. 232-3 ¶ 12.)  During that time period, an AST HR Specialist would review on average between 20 and 40 applications per day. (*Id.* ¶ 14.)  There have been instances when applicants who should have been referred were not included on the referral list and there were also times where applicants were listed on the referral list but should not have been referred.  (*Id.* ¶ 15.)

DCMA's Policy regarding reemployed annuitants.  When a CSRS annuitant, such as Plaintiff, seeks reemployment with a non-DOD federal agency and is reemployed, the annuitant's annuity continues, "and the amount of annuity that applies to the period of reemployment is offset from the reemployed annuitant's salary." (Doc. 241 at ¶ 347) (citing CSRS & FERS Handbook, Chapter 100, Reemployed Annuitants (October 2013), p. 7.)  The Office of Personnel Management ("OPM") allows for a waiver of the offset in exceptional circumstances, including for temporary employment that "is necessary due to an emergency involving a direct threat to life or property or other unusual circumstances" and "[o]n a case-by-case basis for employees in positions for which there is exceptional difficulty in recruiting or retaining a qualified employee."  (*Id.*)  Congress has exempted DOD agencies from the offset in post-retirement employment.  *See* 5 U.S.C. § 9902(g).  Although they are exempt from the offset, DOD has issued policies and procedures governing the

employment of retired annuitants which severely restrict the employment of retired annuitants at DCMA.  (Doc. 252-4 ¶¶ 10-15.)

According to those policies, advance approval must be obtained to hire a retired annuitant. Retired annuitants are only to be hired to meet "critical mission needs," such as when a position is designated as hard-to-fill.  (*Id.* ¶ 15.)  Retired annuitants must be hired by "utilizing the non-competitive process."  (*Id.* ¶ 15.b.)  Moreover, a request to hire a retired annuitant must be approved prior to submitting a request to AST to post a vacancy.  Annuitants are hired for temporary reasons and the appointment is not to be more than one year for a full time position or two years for a part time position.  An exception may only be made by the Director of DCMA. (*Id.* ¶ 15.e.)

With respect to the vacancies in charges 5, 6, 7, 9, 10, 11, 12, 15, 19, 26, 28, 29, 30, and 31, the competitive selection or merit promotion process was utilized.  DCMA did not request to fill any of those vacancies with a reemployed annuitant.  Moreover, none of the individuals hired for these vacancies were retired annuitants.  DCMA has not approved a retired annuitant from the time period of at least 2014 to present.  (*Id.* ¶ 22.)

Plaintiff's applications.  Prior to his retirement, Plaintiff began applying for the vacancies at issue in this action.  In late January 2015, Plaintiff received an offer for a contract specialist position with the VA in Milwaukee, Wisconsin.  In early February, Plaintiff received an email from a VA HR specialist informing him that he would not receive a salary if he accepted the position because his annuity exceed the salary he would have received under the OPM's salary offset policy applicable to retired annuitants seeking employment with non-DOD agencies.  (Doc. 252-33.)  Plaintiff declined the position.  (*Id.* at 2.)

Plaintiff continued to apply for positions with DCMA and did not receive another offer of employment.  Plaintiff alleges in his second amended complaint that, beginning in 2013, DCMA has "serially and systemically discriminated and retaliated against Plaintiff and his efforts to seek employment for like or related vacancies."  (Doc. 141 ¶ 23.)

The remaining claims in this action involve 21 vacancies.  Of those, Plaintiff was not included on the referral list to DCMA for twelve vacancies and, of the remaining nine vacancies, Plaintiff was selected to be interviewed for some vacancies but not all.  Because of the extensive facts involved, the facts pertaining to the vacancies will be set forth later in the analysis as to each charge.

EEO Activity.  Since 2014, Plaintiff has filed several Equal Employment Opportunity ("EEO") complaints with DCMA, and has formally challenged his non-selection for 84 separate vacancies.  From approximately the year 2000 until December 9, 2014, Plaintiff did not engage in any other EEO activity involving DCMA.  (Doc. 252-31 at 253:12-24.)   On December 9, 2014, Plaintiff contacted DCMA's EEO office regarding the claims at issue in this action.  The EEO office assigned EEO Counselor Richard Harris to engage in informal counseling.  Harris asked Plaintiff to sign a "rights and responsibilities" document that allowed a complainant to waive anonymity, so that Harris could contact potential witnesses to investigate.  (Doc. 232-35 ¶4.)  On February 27, 2015, Plaintiff returned the signed "rights and responsibilities" form.  (*Id.* ¶ 6.) After that date, Harris began to reach out to AST and DCMA personnel regarding Plaintiff's complaint.

This action.  After Plaintiff completed the administrative process, he filed a complaint in this court on December 26, 2018.  The complaint alleged claims of discrimination under Title VII and the ADEA pertaining to 29 distinct vacancies or charges.  (Doc. 1.)  Plaintiff filed an amended

complaint shortly thereafter and it included claims related to 31 charges.  (Doc. 15.)  Defendant moved for partial summary judgment on several charges based on its exhaustion defense.  (Doc. 37.)  The court granted the motion in part which resulted in summary judgment on claims related to five charges.  (Doc. 101.)  Later, the parties stipulated to the dismissal of Plaintiff's claim related to charge 21.  (Doc. 112.)  Plaintiff then moved to amend to add an additional claim of discrimination (charge 32).  (Doc. 122.)  That motion was granted and Plaintiff filed his second amended complaint.  (Docs. 138, 141.)  After filing the second amended complaint, the parties filed a stipulation of dismissal as to charges 1, 3, 16, 25, and 32.  (Doc. 168.)

The remaining claims in this action relate to 21 charges as discussed herein.  Defendant has moved for summary judgment on all of Plaintiff's claims related to all charges except for those related to charge 2.  Plaintiff has moved for summary judgment on his claims pertaining to charge 2.[9]

## III.    Analysis

### A.    Legal Standard for Plaintiff's Claims

Plaintiff has brought claims under the ADEA and Title VII.  Both statutes prohibit discrimination in federal employment.  Claims brought under the ADEA and Title VII which rest on circumstantial evidence have been consistently evaluated under the *McDonnell Douglas* framework.[10] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013); *Laul v. Los Alamos Nat'l*

---

[9] Although Plaintiff's motion for summary judgment asserts that he is seeking judgment on charge 2 and on "other discrete items regarding all charges," Plaintiff's memorandum appears to only addresses charge 2 and fails to identify any other on which he seeks summary judgment.  (Doc. 243 at 1.)  Therefore, to the extent Plaintiff seeks summary judgment on other issues not identified herein, the motion is denied.

[10] Although Plaintiff repeatedly states that evidence in this case is direct evidence of discrimination, the court disagrees.  The court declines to address all of Plaintiff's averments of direct evidence of discrimination as most are conclusory and he offers no evidence to support his assertions.  With respect to instances where Plaintiff has cited to statements regarding knowledge of his protected activity, these statements do not qualify as direct evidence because he has not shown that "the speaker had decisionmaking authority and acted on his or her discriminatory beliefs."  *Tabor*, 703 F.3d at 1216.

*Lab'ys,* 714 F. App'x 832, 839 (10th Cir. 2017) (same standard for Title VII and the ADEA); *Cummings v. United States Postal Serv.,* No. 20-7066, 2021 WL 4592271, at \*5 (10th Cir. Oct. 6, 2021); *Guy v. McDonough*, No. 20-6158, 2021 WL 3854764, at \*2 (10th Cir. Aug. 30, 2021) ("We analyze Title VII and ADEA discrimination cases in which the employee attempts to prove discrimination circumstantially using the three-step *McDonnell-Douglas* framework.")  Under that framework, Plaintiff carries the initial burden of establishing a prima facie case although the burden is not onerous at this stage.  *Id.*

To state a prima facie case of retaliation under the ADEA and Title VII, Plaintiff must show (1) he "engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quotation marks and citation omitted).  To state a prima facie case of discrimination, Plaintiff must demonstrate by a preponderance of the evidence that (1) he belongs to a protected class; (2) he applied for an available position for which []he was qualified; (3) and he "was rejected under circumstances which give rise to an inference of unlawful discrimination."  *Tabor*, 703 F.3d at 1216 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  *See also id.* at n. 4 (discussing the Tenth Circuit's preference for the three part test set forth in *Burdine* instead of the older four part test).  An inference of unlawful discrimination can be shown by "a variety of circumstances," ranging from "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" to "the timing or sequence of events leading to" the employment action.  *Laul*, 714 F. App'x at 836.

Further, with respect to Plaintiff's claims under the ADEA, the Supreme Court has recently held that under the law applicable to federal employers, "age must be a but-for cause of

14

discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020). This standard is different than the one for private employers which is based on an interpretation of 29 U.S.C. § 623(a)(1), the private-sector provision of the ADEA, and which requires a plaintiff to prove that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009). The federal employment portion of the ADEA, § 633a, "does not require proof that an employment decision would have turned out differently if age had not been taken into account." *Id.* at 1174. Rather, "if age discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination." *Id.* Notably, however, a plaintiff must prove age discrimination was the but-for cause of the employment action to obtain full relief, including "hiring, reinstatement, backpay, and compensatory damages." *Id.* Where a plaintiff only can prove that discrimination was the but-for cause of *differential treatment*, but not the but-for cause of the adverse employment action, the plaintiff is limited to "injunctive or other forward-looking relief." *Id.* at 1178. Here, Defendant argues, and the court agrees, that Plaintiff's requested damages only include monetary damages related to the failure to hire. As such, Plaintiff must show that his age was the but-for cause of the failure to hire Plaintiff for the vacancy in order to obtain the relief he seeks.[11]

The Tenth Circuit has yet to determine how the recent ruling in *Babb* affects its framework for age discrimination claims under the ADEA. Defendant argues that the burden shifting framework under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 804 (1973) continues to

---

[11] Plaintiff's response does not object to the government's position and he appears to concede that but-for causation is required based on his arguments throughout his response brief asserting that his protected status was the but-for cause of the ultimate decision. (*See, e.g.*, Doc. 254 at ¶¶ 281, 293.) Nevertheless, based on the evidence, the court finds that he has not shown that the employment decisions for which the court has granted summary judgment herein were tainted by differential treatment based on age discrimination as discussed herein.

apply in cases involving circumstantial evidence. (Doc. 241 at 59.) Plaintiff implicitly agrees on this standard as is apparent in his own motion for summary judgment. (Doc. 243 at 31.)

Upon remand from *Babb*, the Eleventh Circuit held that the *McDonnell Douglas* framework is inapplicable to § 633a cases because *Babb* established that a personnel action made by a federal employer cannot be "tainted by differential treatment based on age." *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1204 (11th Cir. 2021). The burden shifting framework is rendered inapplicable when evidence of differential treatment has been established at the outset because "even when there are non-pretextual reasons for an adverse employment decision ... the presence of those reasons doesn't cancel out the presence, and the taint, of discriminatory considerations." *Id.*

Prior to *Babb*, the Tenth Circuit regularly assessed ADEA claims—including those brought under § 633a—under *McDonnell Douglas*. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010). In an unpublished opinion issued after *Babb*, the Tenth Circuit continued to apply *McDonnell Douglas* to a federal employee's ADEA discrimination claim. *See Cummings*, 2021 WL 4592271, *5. Other courts have also continued to do so. *See, e.g., Patterson v. Comm'r of Soc. Sec.*, 834 F. App'x 737, 738 (3d Cir. 2021) (applying *McDonnell Douglas* to both ADEA and Title VII). Therefore, because the Tenth Circuit has not directly addressed this issue but has continued to apply *McDonnell Douglas* after *Babb*, the court will analyze Plaintiff's ADEA claim under *Babb's* substantive legal standard but it will do so using the *McDonnell Douglas* framework.[12]

---

[12] Both the Eleventh and the Seventh Circuits have held that *Babb's* substantive holding is applicable to Title VII claims against a federal employer because the language in the provision at issue in *Babb* is identical to the language in § 2000e-16, the statute applying Title VII to the federal government. *See Babb*, 992 F.3d at 1199-1204; *Huff v. Buttigieg*, 42 F.4th 638, 645–46 (7th Cir. 2022). Defendant agrees that *Babb* is applicable to Title VII claims but argues that Plaintiff must show that his protected status was the but-for cause of the employment decision to prevail on his claims because of the ultimate relief that he seeks. (Doc. 241 at 59.) The Tenth Circuit has not yet commented on *Babb's* effect, if any, on § 2000e-16 claims. Therefore, the court will follow pre-*Babb* Tenth Circuit caselaw that

If Plaintiff states a prima facie case of discrimination or retaliation, the burden shifts to Defendant to proffer "a legitimate non-discriminatory purpose for the adverse employment action." *Tabor*, 703 F.3d at 1216-17 (citation omitted).  If Defendant puts forth this evidence, Plaintiff will avoid summary judgment if he shows that his protected status was "a determinative factor in the ... employment decision, or show[s] the [employer's] explanation for its action was merely pretext.'" *Id.* (quoting *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)).  A plaintiff shows pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co*., 493 F.3d 1160, 1167 (10th Cir. 2007)

## B.     Analysis as to Each Charge

The parties have filed cross motions for summary judgment.  Defendant seeks summary judgment on all charges except for Plaintiff's claims on charge 2.  Defendant further moves for summary judgment on its affirmative defense of failure to mitigate damages.  Plaintiff has moved for partial summary judgment as to charge 2.

### i.     Charge 2

With respect to charge 2, Plaintiff moves for partial summary judgment on his claims of retaliation and discrimination on the basis of age and religion.[13]  Defendant has moved for partial

---

applies the traditional Title VII standard, including the *McDonnell Douglas* framework, to § 2000e-16 claims.  Even if the Tenth Circuit were to hold that *Babb* changed the § 2000e-16 analysis, however, the court's conclusion as to Plaintiff's claims would not change because, for the reasons stated herein, Plaintiff has raised insufficient evidence that any personnel action (except for the actions taken with respect to Charge 2) was "tainted by differential treatment based on" gender, religion, or prior protected activity.  *Babb*, 140 S. Ct. at 1174.

[13] Plaintiff does not seek summary judgment on his gender discrimination claim as to charge 2.

summary judgment on its affirmative defense of failure to mitigate damages.  The facts related to this charge are as follows.

In September 2014, Plaintiff applied for a contract administrator position located in Milwaukee, Wisconsin.  Plaintiff was placed on the referral list for the position.  Mark Bennett was the selecting official for the vacancy and utilized a panel to interview applicants.  The panel members included John Moffatt, Douglas Yee, and Aaren Hanson.  (Doc. 215 at 3.)  Plaintiff received a phone interview in early November 2014.  The panel interviewed six applicants.  Mr. Bennett determined the questions to be asked by the panel.  Mr. Yee, who is now deceased, had previously worked with Plaintiff and had knowledge of his age, gender and religion.  At some point after the interview, Yee recounted to the panel members that Plaintiff had prior EEO activity.  (Doc. 244-5 at 252.)  The panel members did not select Plaintiff as a finalist for the position.  Yee stated in his declaration that Plaintiff's prior EEO activity was a factor in his decision, he considered Plaintiff to be "high risk," and that it was possible that his statement influenced the panel's decision.  *Id.*  The prior EEO activity that Yee was concerned about involved Plaintiff's actions against the Army that Yee read about in an article which appeared in a Google search he performed after the interview.  *Id.* at 249, 251.  According to Hanson, Yee did not make specific statements regarding Plaintiff's prior EEO activity to her but had said to "Google" Plaintiff if she wanted to learn more about him.  (*Id.* at 245.)  Moffatt recalled that Yee made a comment at some point regarding some legal action involving Plaintiff but that he did not remember the details.  (Doc. 244-7 at 81:17-82:13.)  Hanson, Moffatt, and Bennett have all submitted declarations stating that Plaintiff's age, gender, religion, and prior EEO activity were not factors in their decisions.  (Doc. 244-5 at 214, 223, 238-39.)

18

Ultimately, the vacancy was cancelled. At this stage, Plaintiff has introduced evidence that Plaintiff's EEO activity likely tainted Yee's decision in not recommending Plaintiff. He has also shown that the other panel members had some knowledge that Plaintiff was previously involved in complaints and/or litigation. However, Defendant has introduced evidence that Plaintiff's protected activity was not a factor in the decision of the other panel members and Bennett. For example, Hanson stated that Plaintiff was not the best candidate, other applicants gave a "much better interview." (*Id.* at 238.) Moreover, both Moffatt and Bennett were concerned that Plaintiff was overqualified for the position and not a good candidate for that reason. There are several additional facts regarding the vacancy and the reasons proffered for Plaintiff's nonselection. Notably, the parties expended more than 150 pages in briefing related to the claims regarding charge 2. The court declines to address all of the factual issues at this time. The court finds that there is a genuine dispute of material fact as to Plaintiff's claims regarding charge 2 and denies Plaintiff's motion for summary judgment.[14]

### ii.      Charge 5

On or about October 22, 2014, Plaintiff applied for a full time, permanent contract administrator position in Fort Wadsworth, NY. The salary range for this position was $65,377 to $84,990. Eileen Kelley served as the selecting official for this vacancy. On December 7, 2014, Plaintiff was referred for the position. Five candidates were selected to interview for the position with the hiring panel, which consisted of Maria Chappe, Helen Mejia (now Helen Luke), and Vasken Kolancian. On January 7, 2015, Plaintiff had a phone interview with the hiring panel. (Doc. 215 at 4.) As is consistent with DCMA policy, each interviewee was asked the same

---

[14] With respect to Plaintiff's claims of age and religious discrimination, the evidence of discrimination is minimal. Defendant, however, has not moved for summary judgment on these claims. Therefore, these issues will be presented at trial.

questions.  After the interviews, the panel members had a discussion regarding the extent to which the interviewees demonstrated they had the target skills for the position and how they answered each of the eight questions.  The panel then completed a spreadsheet indicating whether there was (1) "strong evidence that skill is not present," (2) "some evidence that skill is not present," (3) "some evidence that skill is present," (4) "strong evidence that skill is present," or (5) "insufficient evidence for or against skill."  (Doc. 252-18 at 2, 10-14.)

The panel recommended Ellen Reed for the position based on her contracting experience and interview performance.  (Doc. 252-17.)  Based on the spreadsheets completed by the panel, Reed was found to have strong evidence the skill was present for six questions and some evidence the skill was present for two questions.  (Doc. 252-18 at 2, 10.)  With respect to Plaintiff's evaluation, the panel did not give any marks suggesting strong evidence a skill existed; but he received five marks indicating some evidence a skill existed, two marks indicating some evidence a specified skill was not present, and one mark indicating insufficient evidence.  (*Id.* at 13.)

On January 15, 2015, the panel submitted the interview results.  Kelly selected Reed for the position but she declined.[15]  (Doc. 252-17 at 2, 6-7.)  After Reed declined, the job opportunity announcement ("JOA") for the position was cancelled.  (Doc. 252-17 at 7.)  Kelly and all panel members have stated that they did not know Plaintiff's age, religion, or whether he had engaged

---

[15] Plaintiff attempts to dispute this fact by attaching a document that includes a list of names which Plaintiff contends shows that five additional applicants were referred and offered the position.  (Docs. 254 at 28, 254-4 at 270.)  The document cited by Plaintiff, however, does not state that the individuals were all selected for the vacancy at issue in charge 5 and Plaintiff does not offer any foundation for the document and what it is purported to be.  The document states as follows: "Documentation pertaining to the nonselection for the GS- 1102-11, Contract Administrator position, JOA: SWH814EHA3492621236403, DCMA Eastern Region, New York, NY: 50. Please see below and attached." (Doc. 254-4 at 270.)  It then provides names, including Reed's, and states whether the position was declined or the offer was withdrawn.  In response to Plaintiff's assertion, Defendant has submitted a declaration from Kelly stating that this document was produced during the administrative investigation and it was responsive to data request 50, which asked for hiring selections made by Kelly during a two-year time period, and also submitted evidence of that data request. (Doc. 260-3.)  Based on this evidence and the absence of evidence by Plaintiff that the document is what he claims it to be, Plaintiff has not controverted the fact that Kelly selected Reed for this vacancy.

in prior protected activity at the time of their decisions and that Plaintiff's gender, age, religion, and prior protected activity played no part in their decision.  (Docs. 252-17 at 2-3, 252-18 at 2, 252-19 at 2-3, 252-20 at 2-3.)

Plaintiff argues that he has set forth an inference of discrimination on this charge by asserting that the declarations are self-serving after the fact denials, his qualifications were superior, some documents have been withheld or destroyed, alleged inconsistencies in the evidence, and that the panel knew of his religion based on his answers to interview questions. (Doc. 254 at 511-53.)  Plaintiff's arguments regarding the officials' declarations are entirely conclusory and lack merit.  Because these individuals were not deposed, Defendant has offered the officials' declarations and Defendant has also attached the sworn statements they made in the administrative investigation.  These exhibits are proper and admissible evidence at this stage.

Plaintiff next argues that his qualifications are superior.  Plaintiff's complaints, however, amount to his subjective beliefs regarding his qualifications and interview performance.  Plaintiff has failed to put forth sufficient evidence to support his contention.  A judge's role "is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 604 (10th Cir. 2014) (citation omitted).  Courts are to proceed with caution when considering the merits of candidates for employment. *Id.* at 602 (citing *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (per curiam)).  A court can "draw an inference of pretext where the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Id.* (quoting *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007)). But "minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext." *Id.* (quoting *Jaramillo*, 427 F.3d at 1308–

21

09).  Here, Plaintiff argues that he had several more years' experience than the candidate selected and, therefore, he was the clear choice for the position.  Plaintiff further argues that the questions and scoring criteria for the interview were subjective and he cannot demonstrate disparate treatment because the individual score sheets were destroyed.

The court rejects Plaintiff's arguments.  Plaintiff has not shown that he is better qualified than the other candidates or that he performed better in the interview.  Plaintiff argues that he is more qualified than Reed because she has less experience in federal service, but he merely points out her experience in her current position and does not offer any facts regarding any other experience that may have been required in the position.  (Doc. 254 at 51.)  Moreover, based on the interview scores, Reed clearly outperformed Plaintiff in the interview based on questions uniformly asked of all applicants.  Plaintiff's own opinions regarding his qualifications are not sufficient to create a dispute of material fact nor do they create an inference that the decision was tainted by discrimination.[16]  *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317-18 (10th Cir. 1999) (a plaintiff's own opinions regarding his or her qualifications do not give rise to a dispute of material fact regarding pretext).

Finally, although Plaintiff insists that he informed the panel members of his religion, Plaintiff fails to cite to evidence to support this assertion.[17]  Even if Plaintiff did so, knowledge of Plaintiff's religion, without any other evidence, is not sufficient to show that Plaintiff's religion played a part in the decision not to recommend him for the vacancy.  The court finds that Plaintiff

---

[16] Plaintiff also makes conclusory arguments that documents, such as handwritten notes, were intentionally destroyed or withheld.  Plaintiff, however, has not shown that DCMA requires selecting officials to retain handwritten notes from interviews.  Plaintiff was given an extensive opportunity to conduct discovery regarding these claims and could have deposed one or more of these officials regarding other notes if he wanted to pursue that evidence.  Given that he has no evidence regarding the alleged destruction of evidence, the court rejects  this argument.

[17] Even if Plaintiff testified as such, Plaintiff has failed to cite to the relevant portions of his deposition.  The court is not required to search the record evidence to support Plaintiff's assertions.  *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1246, n. 13 (10th Cir. 2003).

has failed to make a prima facie case of age, gender, or religious discrimination.  Plaintiff has not come forward with any evidence to give rise to an inference of gender or religious discrimination. *See Bennett v. Windstream Commc'ns., Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (holding that circumstances surrounding a plaintiff's termination did not give rise to an inference of discrimination, because she did not present evidence "either direct or circumstantial, supporting a claim of animus").  Further, although Plaintiff has asserted a claim of failure to accommodate his religion with respect to this charge, Plaintiff has not produced any evidence that he requested an accommodation or that the decision-makers knew of his need for a religious accommodation during the interview.  Plaintiff has also failed to show that his age was the cause of his differential treatment or the but-for cause of the ultimate decision not to hire Plaintiff.  *See Babb*, 140 S. Ct. at 1173.  Plaintiff offers nothing more than his own speculation that he was discriminated against on the basis of his age, gender, or religion.  His brief is replete with conclusory statements regarding discrimination.  Plaintiff has also failed to show that these officials retaliated against him because of, or at least in part because of, his prior protected activity.  None of the officials had any knowledge of his prior protected activity at the time this decision was made.[18]  To succeed on his claim of retaliation, Plaintiff must "come forward with evidence from which a reasonable factfinder could conclude that those who [made the employment decision] had knowledge of his protected activity."  *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008).  He has failed to do so.  Finally, even if Plaintiff had established a prima facie case of discrimination, Defendant put forward a legitimate non-discriminatory reason for not hiring him.  Simply put, Defendant did not believe he was the best candidate for the position.  Plaintiff has failed to put forth evidence that this reason is pretext for discrimination.

---

[18] Although Plaintiff submitted his initial EEO complaint in December 2014, Harris did not begin investigating his complaint until late February 2015 which was after the hiring decision in charge 5.

Defendants' motion for summary judgment as to Plaintiff's claims surrounding charge 5 is granted.

### iii.    Charges 6, 9, 13, 18, 26, 27, 29, 30, and 31

These charges all relate to positions for which Plaintiff was not referred because the AST HR specialist determined he was not qualified.  With respect to these charges, the court will first summarize the facts related to each charge before addressing the merits of Plaintiff's claims.  Based on a review of the facts as discussed below, Defendant is entitled to summary judgment on these vacancies.

Charge 6.  On or about December 15, 2014, Plaintiff submitted his application for a full time, permanent Quality Assurance Specialist (Electronics) position in San Diego, CA. The HR Specialist who reviewed Plaintiff's application was Phyllis Williams.  On January 20, 2015, Williams rated Plaintiff's application.  Williams issued the referral list on January 22, 2015, and Plaintiff was not included.  Williams entered the following in the record regarding her decision not to refer Plaintiff for the position: "resume lacks at least one year of specialized experience equivalent to at least the GS-09 grade level or equivalent under other pay systems in the Federal service which involved the Quality Assurance (Electronics) principles, concepts, and methodology when analyzing the products or services of a contractor[']s processes."  (Doc. 252-3 ¶ 24.)  Although Plaintiff agrees that Williams entered this justification, Plaintiff contends he was qualified.  (Doc. 254 at 53.)  At the time of her decision, Williams did not know Plaintiff's age or religion, and did not know of Plaintiff's prior protected activity.  (Doc. 252-5 at 6.)  Notably, Williams referred Plaintiff for a different vacancy on August 7, 2015.  (Docs. 252-3 ¶ 91.)

Charge 9.  On or about December 15, 2014, Plaintiff also submitted an application for a full time, permanent Quality Assurance Specialist position in Syracuse, NY.  (Doc. 215 at 5.)

Rachel Owens was the HR Specialist who reviewed Plaintiff's application for this position and determined that he was not qualified.  Owens rated Plaintiff's application on January 29, 2015, and entered the following reason for the non-referral: "Resume does not include 52 weeks of experience at the GS-09 level with quality assurance manufacturing, electronics or mechanical principles, concepts and methodology when analyzing the products or services of a contractor's processes."  (Docs. 252-3 ¶ 29.)  Although Plaintiff does not dispute that Owens provided this justification for his non-referral, Plaintiff argues that he was qualified for the position based on an assertion that he was granted priority consideration for another position with an identical position description number.  (Doc. 254 at 8-9, 55.)  At the time of her decision, Owens had no knowledge of Plaintiff's age, religion, or prior protected activity.  (Doc. 252-6 at 6-7.)  Notably, Owens referred Plaintiff for at least six subsequent positions.  (Docs. 252-3 ¶ 91.)

Charge 13.  On or about August 29, 2014, Plaintiff submitted an application for a full time, permanent Quality Assurance Specialist position in Herzliya, Israel.  On October 6, Monique King, an HR Specialist, rated Plaintiff's application.  She made a determination that Plaintiff did not meet the qualifications for the specialized experience and noted the following: "lacks specialized experience at the GS-11 as a Quality Assurance Specialist manufacturing, production methods, processes, inspection systems and testing techniques to determine product conformance to contractual quality and technical requirements; performing statistical and quality data analysis and evaluation to determine contractor compliance; and experience of acquisition quality assurance to design, plan, and implement an economical risk management program."  (Docs. 252-3 ¶ 34.)  Although Plaintiff does not dispute that King provided this justification for his non-referral, Plaintiff argues that he was qualified for the position based on an assertion that he was granted

priority consideration for another position with an identical position description number.  (Doc. 254 at 10-11, 56.)

On October 7, King submitted the referral list and did not include Plaintiff.  The referral list included 21 individuals and sixteen of those individuals had traditionally male names.  (*Id.* ¶ 35.)  At the time she reviewed Plaintiff's application, King did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity, and did not check Plaintiff's gender during the rating period but assumed that he was a male based on his name.  (Doc. 252-7 at 2, 3-4.)  King has stated that Plaintiff's age, gender, religion, and prior protected activity played no role in her decision regarding Plaintiff's application.  (*Id.* at 5.)  Notably, King referred Plaintiff for subsequent positions, including those at issue in charges 12 and 15.

Charge 18.  On or about October 14, 2014, Plaintiff submitted an application for a Quality Assurance Specialist position in San Antonio, TX.  On December 11, 2014, Owens reviewed Plaintiff's application.  (Doc. 215 at 7.)  Owens is the same specialist who reviewed Plaintiff's application at issue in charge 9.  After review, Owens determined that Plaintiff did not meet the requirement for specialized experience and entered the following note into the USAStaffing database: "Resume does not include 1 year of experience at the GS- 09 level which involved the full range of principles, concepts, and methodology related to functional programs, performing statistical and quality data analysis and evaluation to determine supplier compliance with contractual requirement."  (Doc. 252-6 at 2.)  Although Plaintiff does not dispute that Owens provided this justification for his non-referral, Plaintiff argues that he was qualified for the position based on an assertion that he was granted priority consideration for another position with an identical position description.  (Doc. 254 at 56.)  At the time of her decision, Owens did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity.  (*Id.*)

Charge 26.  On or about November 17, 2014, Plaintiff applied for a full time, permanent Industrial Specialist (General) position in Milwaukee, WI.  The HR Specialist who reviewed Plaintiff's application was Kyshia Hayes.  (Doc. 215 at 10.)  On January 8, 2015, Hayes rated Plaintiff's application and stated that he was not referred because "the information provided does not reflect that he meets the specialized experience reflected in the job announcement...."  (Doc. 252-12 at 4.)  Although Plaintiff does not dispute that Hayes made this determination, he contends that he was qualified.  (Doc. 254 at 59.)  That same date, Plaintiff was notified that he was not referred because he did "not meet the minimum education and/or experience requirements for this specialty." (Doc. 215 at 10.)  At the time Hayes reviewed Plaintiff's application, she did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity.  (Doc. 252-12 at 3–4.)  Hayes further stated that Plaintiff's age, religion, and prior protected activity did not play any part in her analysis.  On February 9, 2015, Hayes referred Plaintiff for a vacancy (charge 3) which has since been dismissed.

Charge 27.  On or about October 14, 2014, Plaintiff applied for a Quality Assurance Specialist position in San Diego, CA.  On November 20, 2014, HR Specialist Williams (the same specialist involved in charge 6) rated Plaintiff's application and determined that he would not be referred because his resume lacked one year of specialized experiences involving "the full range of principles, concepts, and methodology related to the mechanical and electronics commodities to evaluate suppliers conformance to contractual quality requirements. Experience in mechanical and electronics manufacturing, production methods, processes, product characteristics, and testing techniques. Experience performing statistical and quality data analysis and evaluation to determine supplier compliance with contractual requirements."  (Doc. 252-5 at 4.)  Although Plaintiff does not dispute that Williams made this determination, he contends that he was qualified and had been

referred for other vacancies which have similar position description codes.  (Doc. 254 at 60.)  Of the 17 individuals on the referral list, approximately 15 appear to be traditionally male names. (Doc. 252-3 ¶ 58.)  At the time of non-referral, Williams did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity.  (Doc. 252-5 at 4-5.)

Charge 29.  On or about April 19, 2015, Plaintiff submitted an application for a Contract Administrator position in San Diego, CA.  On June 24, 2015, HR Specialist Nancy Klaverweiden rated Plaintiff's application and did not include Plaintiff on the referral list she issued that same date.  The position included the following education requirement in the JOA: "A bachelor's degree from an accredited educational institution authorized to grant baccalaureate degrees AND at least 24 semester hours in any combination of the following fields: accounting, business finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management."  (Doc. 252-3 ¶ 69, 197.)  There was an exception to the education requirement for current employees who held an 1102-series position prior to September 30, 2000. (*Id.* ¶ 70.)  Plaintiff's undergraduate degree and master's degree were both in communications. After reviewing Plaintiff's materials, Klaverweiden entered the following note into the USAStaffing database as the reason for non-referral: "Transcripts provided did not provide 24 semester hours in any combination of the [required] fields...Applicant is retired so he cannot be grandfathered for this position."  (*Id.* ¶ 72; *see also* Doc. 252-14 at 2.)  Klaverweiden stated that she did not refer Plaintiff because he did not have the required education and that his age, religion, or prior protected activity did not have any influence on her determination.  (Doc. 252-14 at 2-3.)

Charge 30.  On February 19 or 20, 2015, Plaintiff applied for a Contract Administrator position in Endicott, NY.  The education requirement for this position was the same as the requirement for charge 29.  HR Specialist Amani Wood rated Plaintiff's application on April 8,

2015, and did not refer Plaintiff for further consideration because his transcript did not show he "possessed 24 hours of business related courses which is a minimum qualification for the 1102 series."   (Doc. 252-15 at 4.)   At the time Ms. Wood did not refer Plaintiff, she did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity.  (*Id.*)

Charge 31.  On or about February 11, 2015, Plaintiff submitted his application for a Quality Assurance Specialist (Electronics) position in Syracuse, NY.   The HR Specialist was Nancy Klaverweiden, the same individual who did not refer Plaintiff for charge 29 although he applied for this vacancy prior to the vacancy at issue in charge 29.   On April 8, Klaverweiden rated Plaintiff's application and determined that he did not have the required specialized experience. (Doc. 252-3 ¶ 80.)  At the time of the non-referral, Klaverweiden did not know Plaintiff's age, or religion, or whether he had engaged in prior protected activity.  (Doc. 252-16 at 7-8.)   In her declaration, Klaverweiden stated that Plaintiff should have been on the list and said this was an "oversight" on her part. (*Id.* at 7.)  Klaverweiden had failed to review Plaintiff's past positions in determining whether he had the experience.  (*Id.*)

Analysis as to these charges.  Defendant moves for summary judgment on Plaintiff's claims of age and religious discrimination and retaliation on the basis that none of the HR specialists involved in these vacancies had knowledge of his age, religion, or prior protected activity.  In his response, Plaintiff has not controverted the HR specialists' lack of knowledge.  Plaintiff claims to have "awareness" of certain facts supporting his assertions that all of the HR Specialists' involved in these charges knew of his age, religion, and prior protected activity.  But Plaintiff has failed to produce this evidence.  Moreover, as pointed out by Defendant, at no time has Plaintiff identified any evidence that the HR specialists involved in these charges had such knowledge nor did Plaintiff identify any material facts that supported his contention that he experienced discrimination based

on his age, religion, or prior protected activity with respect to these charges.  (*See* Doc. 241 at 44-46) (quoting Plaintiff's Responses to Interrogatories at Docs. 241-37, 241-38.)

With respect to Plaintiff's claims of retaliation and religious discrimination as to these charges, Plaintiff cannot establish a prima facie case without evidence that the decisionmaker had knowledge of his religion or prior protected activity.  *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1213 (10th Cir. 2018) ("For how can decisionmakers retaliate against an employee if they do not know about the protected activity?"); *see also Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1266 (10th Cir. 1998) (holding that a plaintiff must show he "was intentionally retaliated against by [his] employer."); *Mousa v. Cap. Area Hum. Servs.* Dist., 463 F. App'x 253, 254 (5th Cir. 2012) (finding that summary judgment was warranted when there was no evidence that employer had knowledge of the plaintiff's religion); *O'Connor v. Northshore Int'l Ins. Servs*., 61 F. App'x 722, 724 (1st Cir. 2003) (same).  Therefore, Plaintiff has not established a prima facie case of religious discrimination or retaliation as to these charges as the decisionmakers had no knowledge of his religious affiliation or his prior protected activity.[19]

Although it may be clear that Plaintiff is over 40 years of age given his experience included in his resume, Plaintiff points to no evidence that would support a finding that age played a part in the treatment of his application review or the decision not to refer him for these positions.  Even if Plaintiff is correct that he should have been referred for these positions, Defendant has come forward with a legitimate reason for these non-referrals: the HR Specialists believed that Plaintiff was not qualified after reviewing his materials.  The Tenth Circuit has repeatedly held that the court is not a super personnel department and it will not second guess an employers' honestly held

---

[19] Even if Plaintiff had evidence to show that these HR Specialists had such knowledge, the court would grant summary judgment because Defendant has provided legitimate non-discriminatory reasons for its decisions and Plaintiff has failed to establish a genuine issue as to pretext.  Plaintiff has simply failed to show that his religion or prior protected activity played any part (let alone the but-for cause) in these non-referrals.

—even if erroneous—business judgment.  *Young*, 468 F.3d at 1250.  A human resources department error is not a basis for a discrimination claim.  *Orr v. City of Albuquerque*, 531 F.3d 1210, 1217 (10th Cir. 2008) ("[A]fter all, people make mistakes and Title VII does not provide a cause of action for every human resources department error.")  Rather, Plaintiff must "come forward with evidence from which a jury could conclude that the defendants' behavior was the result of something *more* than a mistake—namely, discriminatory animus."  *Id.* (emphasis in original).  Plaintiff has failed to do so.

Plaintiff appears to recognize that he does not have evidence that these HR Specialists acted with discriminatory intent and concedes that some of these decisions were errors instead of discriminatory animus.  (*See* Doc. 254 at 44, 53-57, 61) ("Plaintiff met the specialized experience requirements and qualifications for Charges 6, 9, 13, 18, 26, and 27. The personnelists [sic] involved made errors during their initial reviews of applications they processed.")  Plaintiff then goes on to argue that Defendant has discriminated against him on the basis of his protected status because Defendant failed to take corrective action after learning of the errors.  Plaintiff fails to identify any authority for this proposition—that corrective action is required when a mistake was made in reviewing an application but not discovered until **after** a hiring decision has been made.  Moreover, as noted by Defendant, Plaintiff failed to exhaust such a claim.

Further, with respect to charges 6, 9, 13, 18, 26, and 27, the HR Specialists involved in reviewing Plaintiff's application later referred Plaintiff for other vacancies.  (*See* Doc. 241 at 72.)  Such evidence suggests that the decisions made with respect to those vacancies were not motivated by an improper animus.  *See, e.g., Laber v. Rumsfeld*, No. CIV.A. 03-170-A, 2003 WL 23641779, at *1 n. 4 (E.D. Va. Oct. 8, 2003), *aff'd*, 96 F. App'x 925 (4th Cir. 2004) (noting in a case filed by this Plaintiff that "any claim of discriminatory or retaliatory animus . . . [was] greatly undercut by

[the] inclusion of plaintiff's name on the selection certificate for the second position," and if the HR specialist preparing the referral list "wished to discriminate or retaliate against plaintiff in his application for the first position, the Court cannot see why she would not do the same with his application for the second position"). It makes little sense that an HR Specialist failed to refer Plaintiff because of his age, gender, religion, or prior protected activity, but then referred him for another position only a few short months later. *See Bryant v. Nebraska Furniture Mart,* No. 20-2216-DDC-JPO, 2021 WL 259294, at *6 (D. Kan. Jan. 26, 2021) (citing *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183-84 (10th Cir. 2006)).

Finally, with respect to Plaintiff's claims of gender discrimination as to charges 13 and 27, Plaintiff has failed to establish that the decisions were influenced by his gender.  Although the HR Specialists likely inferred that Plaintiff is a male because of his name, mere knowledge of his gender is not a basis for a claim of gender discrimination. *See Stover v. Martinez*, 382 F.3d 1064, 1077 (10th Cir. 2004).  Moreover, the evidence with respect to these charges shows that the HR Specialists referred several individuals with typical male names for these vacancies and these specialists also referred Plaintiff for later positions.  Therefore, even if Plaintiff could establish a prima facie case, Defendant has put forth evidence of legitimate non-discriminatory reasons for its decisions and Plaintiff has wholly failed to show that the decisions in these vacancies were influenced in any way by his gender.

Defendants' motion for summary judgment as to Plaintiff's claims of discrimination and retaliation for charges 6, 9, 13, 18, 26, 27, 29, 30, and 31 is granted.

iv.     **Charges 19, 20, and 28**

These charges relate to positions for which Defendant concedes that Plaintiff was qualified but Plaintiff was not referred to the position by the HR Specialist. The court finds that Defendant is entitled to summary judgment on these claims.

Charge 19. On or about December 4, 2014, Plaintiff submitted an application for a Quality Assurance Specialist (Nuclear) position in Milwaukee, WI. Elizabeth Infante is the HR Specialist who did not refer Plaintiff for this position. This vacancy was only open to (1) current DoD employees; (2) reinstatement eligible applicants; (3) certain veterans; and (4) Interagency Career Transition Assistance Plan ("ICTAP") eligible applicants. (Doc. 252-3 ¶ 39, Attach. M.) To fall within the Area of Consideration ("AOC") as a "current DoD employee," Plaintiff, or any other applicant, had to be employed as a permanent career or career-conditional employee in the competitive service. (*Id.* ¶ 42.) When he submitted his application, Plaintiff uploaded two Standard Form 50s ("SF-50s") with his application. An SF-50 is an official notice of a personnel action issued by OPM. Plaintiff labelled one form "SF-50" and the other SF-50 was labelled "Other." (*Id.* ¶ 40; Doc. 252-9 at 6.) The first SF-50 was Plaintiff's most current SF-50 from his recent position and showed that he was in the excepted service. The second SF-50, titled "Other," showed that he had previously held a position in the competitive service. (Doc. 252-9 at 6.)

On January 29, 2015, Infante rated Plaintiff's application and determined that Plaintiff was outside of the AOC. Infante's note in the USAStaffing database gave the following reason for the non-referral: "SHOWS EXCEPTED SERVICE – DOES NOT MEET AOC." (Doc. 252-3 ¶ 41.) Infante did not see that Plaintiff uploaded another SF-50 in a file marked "Other." (Doc. 252-10 at 4.) The second SF-50 showed that Plaintiff was in the AOC because he had previously been employed in the competitive service and was reinstatement eligible. Therefore, Plaintiff should have been referred for the vacancy. (*Id.* at 6.) At the time Infante reviewed Plaintiff's application

and made her determination, she did not know Plaintiff's age, gender (although she assumed it was male), religion, or whether he had engaged in prior protected activity.  (*Id.* at 2-4.)  Infante had previously referred Plaintiff for other positions prior to this vacancy and also referred Plaintiff for additional vacancies after.  (Doc. 241 ¶ 77.)  After learning of the error of non-referral, on May 22, 2015, DCMA notified Plaintiff that he was entitled to priority consideration for the next Quality Assurance Specialist (Nuclear) position in Milwaukee, WI.  (Doc. 252-9 at 9.)

Charge 20.  On or about November 17, 2014, Plaintiff applied for a Contract Administrator position in Woburn, MA.  This vacancy had the same requirements as Charge 19.  Again, Plaintiff submitted his recent SF-50 and uploaded it as a "SF-50."  Plaintiff then uploaded the second SF-50 as a document titled "Other."  (Doc. 252-3 ¶ 46.)  HR Specialist Christina Swisher rated Plaintiff's application on November 26, 2014.  (*Id.* ¶ 45.)  Swisher believed that Plaintiff was not eligible for referral based on his recent SF-50.  (Doc. 252-11 at 5.)  Plaintiff should have been considered eligible based on his second SF-50.  At the time Swisher rated Plaintiff's application and determined he was not qualified, she did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity.  (*Id.* at 4–5.)  On November 26, Plaintiff was informed that he was "not referred for this position because [he was] outside of the area of consideration."  (Doc. 215 at 8.)

Charge 28.  On December 8, 2014, Plaintiff submitted an application for a Procurement Analyst position in Boston, MA.  Again, this vacancy had the same restrictions on applicants as Charge 19.  Plaintiff again submitted two SF-50s for this vacancy, titling his recent SF-50 as "SF-50" and the second SF-50 as "Other documents."  (Doc. 252-9 at 4.)  On December 30, 2014, HR Specialist Jesecah Everson rated Plaintiff's application and determined that he was outside the AOC because he was in the excepted service.  (Doc. 252-3 ¶ 60.) Everson entered the following

into the USAStaffing database: "Applicant is in the excepted service." (*Id.*)  On January 30, 2015, Plaintiff received notice that he was not referred because he was outside the AOC.  (*Id.* ¶ 64.)  The selecting official first took action with respect to this referral on February 3, 2015.

As noted with respect to charges 19 and 20, Plaintiff's most recent SF-50 would not place him in the AOC but his second SF-50 did demonstrate that he was eligible for the vacancy.  At the time Everson rated Plaintiff's application, she did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity.  (Doc. 252-13 at 3–4.)

Upon review of his application, AST team lead Jason Nonamaker determined Everson did not refer Plaintiff due to an "administrative error."  (Doc. 252-9 at 4.)  The SF-50 titled "Other documents" entitled him to reinstatement eligibility and therefore, he was in the AOC.  (*Id.*)  Because an applicant had already been selected for the position, DCMA issued Plaintiff a letter stating that he would be entitled to priority consideration for the next Procurement Analyst position located in Boston.  (*Id.* at 4, 10.)  Another applicant, who was born in 1982, complained to AST that he should have been referred because he had previously been offered the same position in the past.  (Doc. 252-3 ¶ 66.)  DCMA has no record of EEO activity from that applicant.  (Doc. 252-8 ¶ 5.)

Analysis.  Based on the uncontroverted facts, it is clear that Plaintiff should have been placed on the referral list for the positions at issue in charges 19, 20, and 28 because he was in the AOC.  According to Defendant, Plaintiff's second SF-50 was overlooked because it was uploaded as "Other" or "Other documents" and, therefore, the specialists involved did not see that SF-50.  Upon learning of the mistake as to charges 19 and 28, DCMA notified Plaintiff that he would be entitled to priority consideration.

Based on the uncontroverted evidence, the court finds that Defendant is entitled to summary judgment for all claims as to charges 19, 20, and 28. Although Plaintiff should have been referred for these positions, the evidence shows that the non-referrals were due to a mistake. Plaintiff has failed to introduce any evidence that these decisions were tainted by discriminatory animus. *See Orr*, 531 F.3d at 1217.

With respect to his claim of retaliation as to these charges, the evidence is that the HR Specialists reviewing his application had no knowledge of any protected activity. Therefore, Plaintiff cannot meet his prima facie burden with respect to his claim of retaliation. *See Lincoln*, 900 F.3d at 1213. The HR Specialists also had no knowledge of his religion. Therefore, their decision could not have been affected by Plaintiff's religious affiliation.

Finally, although the HR Specialists may have been able to presume that he was over 40, Plaintiff has failed to introduce any evidence that the non-referral decision was tainted by age. Even if Plaintiff were to establish a prima facie case of age discrimination, he has failed to introduce evidence of pretext. Plaintiff argues in his response brief that he has shown evidence of a discriminatory intent because Defendant failed to take corrective action after learning of the mistake with respect to these charges. (Doc. 254 at 57-58.) Plaintiff, however, fails to offer any evidence to show that Defendant's explanation of the non-referrals is pretext for discrimination. Plaintiff offers no authority that would support that an employer has a duty to take some corrective action upon learning that an applicant was erroneously determined unqualified as a result of an innocent mistake especially when that discovery is after the position has been filled. In light of Defendant's reason for the employment decision, Plaintiff must come forward with evidence of discriminatory animus or other evidence of pretext. *Orr*, 531 F.3d at 1217. Plaintiff's conclusory

assertions that these specialists discriminated against him and were biased are not sufficient to meet his burden without any facts to support such an inference.

Defendant's motion for summary judgment as to charges 19, 20, and 28 is granted.

**v.    Charge 7**

On December 15, 2014, Plaintiff applied for an Industrial Specialist (General) position in Pittsfield, MA.  The HR Specialist reviewing Plaintiff's application referred Plaintiff to the selecting official on February 3, 2015.  (Doc. 215 at 5.)  Russell Sherman, the selecting official, did not utilize a panel in selecting a candidate for the vacancy.  (*Id.*)  Sherman did not conduct interviews.  (Doc. 252-21 at 6.)  Sherman reviewed and ranked the resumes of the candidates based on experience, education, awards, training, and outside activities.  He considered production experience as the most important factor.  (*Id.* at 2.)  In evaluating candidates, Sherman used P for "Poor", G for "Good", and E for "Excellent."  (*Id.* at 6.)  Plaintiff was ranked as "Poor" in production experience, "Good" in education, "Good" in awards, "Poor" in outside activities, and "Excellent" in training. (*Id.* 2, 10.)  The applicant selected for the position was rated as "Excellent" for production experience, "Excellent" in education, "Poor" for awards, "Good" for outside activities, and "Good-Poor" with more "Good" than "Poor" for training.  (*Id.* at 2.)  Sherman ranked Plaintiff 4th or 5th overall and he was not considered the top candidate because he did not have production experience that Sherman could see from the resume, did not have "in-plant production experience, which is important for [the] position," and his degree was not related to the position's function.  (*Id.* at 7.)  The selected candidate had a degree directly applicable to the position and experience in a production environment.[20]  (*Id.*)  At the time Sherman made his

---

[20] Plaintiff attempts to controvert these facts regarding his experience and the selected candidate's experience; however, he offers no evidence to support his conclusory assertions that he was more qualified and that the selectee lacked experience.  (*See* Doc. 254 ¶¶ 193, 195-97.)

selection, on February 4, 2015, he did not know Plaintiff's age or religion, or whether he had engaged in prior protected activity.  (*Id.* at 2.)

With respect to Plaintiff's claims of religious discrimination and retaliation, Defendant is entitled to summary judgment as Plaintiff has failed to show that Sherman had any knowledge of his religion or his prior protected activity.  Although Plaintiff submitted his EEO complaint in December 2014, that complaint was reviewed and investigated by Harris in the EEO office and there is no evidence that Sherman had any knowledge of this activity.  Therefore, Plaintiff cannot establish a prima facie claim of retaliation. *Lincoln*, 900 F.3d at 1213.

With respect to his claim of age discrimination, there is similarly no evidence from which a factfinder could infer that age discrimination played a part in Sherman's decision.  Even if Plaintiff could establish a prima facie case of age discrimination, Plaintiff has failed to show that Defendant's non-discriminatory justification for its hiring decision was tainted by age discrimination.  Although Plaintiff claims that he was more qualified than the selectee, Plaintiff fails to provide any analysis of the selectee's qualifications nor does he set forth any facts regarding those qualifications.  (Doc. 254 at 54.)  Therefore, Plaintiff's arguments amount to his subjective beliefs regarding his qualifications.  As stated herein, the court can "draw an inference of pretext where the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Santana*, 488 F.3d at 865.  Here, Plaintiff merely offers his conclusory statements regarding the selectee's qualifications without specific facts regarding the selectee's background and education or citations to the evidence.  Plaintiff has failed to meet his burden to show that he is superior to the selectee.  Plaintiff's own opinions regarding his qualifications are not sufficient to create a dispute of material fact nor do they create an inference that the decision was tainted by discrimination. *See  Bullington*, 186 F.3d at 1317-18.

38

Defendant's motion for summary judgment as to Plaintiff's claims regarding charge 7 is granted.

### vi.    Charge 10

On December 15, 2014, Plaintiff submitted his application for an Operations Research Analyst position in Syracuse, NY.  (Doc. 215 at 5.)  The HR Specialist referred Plaintiff for the position on February 4, 2015.  (*Id.*)  The selecting official for the vacancy was Wayne Wall who had wanted to hire an engineer for the vacancy but was required to post the vacancy as both an Operations Research Analyst position and a General Engineer position.  (Doc. 251-3 ¶ 5.)  Wall received two referral lists, one for each position.  Plaintiff was on the referral list for the Operations Research Analyst position.  Wall did not consider any applicant whose name solely appeared on the Operations Research Analyst position.  (*Id.* ¶ 7.)  Wall conducted interviews with candidates from the Engineer referral list and the selectee held an engineering degree and had an engineering background.  (*Id.* ¶ 8.)[21]  On February 23, 2015, Wall returned his selection to AST and the selectee was hired as a "General Engineer."  (Doc. 252-3 ¶ 85.)  At the time the selection was made, Wall did not know Plaintiff's age or religion, or whether Plaintiff had engaged in prior protected activity. (Doc. 251-3 ¶ 9.)

Again, Defendant is entitled to summary judgment on Plaintiff's claims as to charge 10. There is no evidence which would support a finding that Plaintiff's age, religion, or protected activity played any part in Wall's decision.  Notably, Wall had no knowledge of Plaintiff's age, religion, or protected activity at the time of his decision.  Therefore, Plaintiff cannot establish a prima facie case.  Although Wall may have been able to deduce that Plaintiff was over 40 years of

---

[21] Plaintiff attempts to controvert the facts regarding Wall's procedure of reviewing applicants by citing to a certificate that is not in the record and asserting that there is no evidence that two positions were required to be posted.  Plaintiff has failed to properly controvert Defendant's supported facts by failing to support his citation with evidence in the record.  Moreover, contrary to Plaintiff's arguments, Wall's affidavit is sufficient evidence to support these facts.

age from his resume, Plaintiff points to no other evidence to support a finding that Wall's decision was tainted by age discrimination.

Therefore, Defendant's motion for summary judgment as to charge 10 is granted.

**vii.    Charge 11**

On December 15, 2014, Plaintiff submitted an application for an Industrial Specialist (General) position in Syracuse, NY.  The selecting official for this vacancy was Julie White who did not employ a panel to assist with the selection.  On February 9, 2015, Plaintiff was referred for the position and White conducted a phone interview a few days later.  (Doc. 215 at 6.)  After the interviews, White ranked Plaintiff third among the candidates.  White selected a candidate for the position that had more experience with the manufacturing process, including hands-on experience with a government contractor.  (Doc. 252-22 ¶ 11.)  White believed that Plaintiff's background evidenced more "contracting" than "manufacturing."  (*Id.*)  While White presumed Plaintiff was male at the time she conducted the interview, she did not know his age, religion, or whether he engaged in prior protected activity.  (*Id.* ¶ 12.)

Plaintiff has again failed to introduce any evidence that would allow a factfinder to infer that White's decision was influenced by or tainted by discriminatory animus.  Notably, there is no evidence that White even knew about Plaintiff's religion, his alleged need of a religious accommodation, or his prior protected activity.  Although White knew Plaintiff's gender and she likely inferred he was above 40 years of age, there is no evidence in the record that Plaintiff was subjected to differential treatment because of his gender or age.  In response to Defendant's motion for summary judgment on this charge, Plaintiff asserts that White knew of his protected status and rejected him on this basis.  (Doc. 254 at 55.)  Plaintiff has no evidence to support his assertions.  Plaintiff's argument is entirely conclusory and based on his subjective belief that White, along

with every other official at DCMA, has discriminated against him on the basis of his age, gender, religion, and protected activity.

Defendant is entitled to summary judgment on Plaintiff's claims as to charge 11.

**viii.    Charge 12**

On January 4, 2015, Plaintiff applied for a full time, permanent Contract Administrator position in San Diego, CA, and he was placed on the referral list for the vacancy. The selecting officials for this vacancy were Gregory Russell and Bridget Guillory. (Doc. 215 at 6.) After receiving a second referral list for the position on March 2, 2015, the applications were reviewed to determine who to interview for the vacancy. (Doc. 252-23 ¶ 4.) The panel consisted of Karen Stierer, Clarence Westbrook, and Jill Mahdessian. Michelle Romero and Mary Ferren also assisted in reviewing applications. On March 3, Russell emailed the names of applicants that he believed should be interviewed for the position and Plaintiff did not make the interview list. (*Id.* ¶ 5.) Interviews for this position were completed by the panel on March 10, 2015.

The panel then made recommendations to Russell. (*Id.* ¶ 7.) AST was notified on March 12, 2015, of the name of the male candidate who was selected. After he declined the position, a female candidate was selected. At the time the selections for interviews were made, Romero, Farren, and Russell did not have any knowledge of Plaintiff's religion or prior protected activity.

Notably, Plaintiff also applied for a similar position in the same vicinity, which Plaintiff had previously included in his second amended complaint as charge 32. It was subsequently dismissed. On March 9, Russell, who was the primary selecting official for that position, invited Plaintiff to interview for that vacancy. On March 11, Plaintiff interviewed for the position and the panel recommended Plaintiff as the top candidate. According to Russell, Plaintiff could not be hired because he was a retired annuitant. (Doc. 252-23 ¶ 14.)

Defendant moves for summary judgment on Plaintiff's claims related to charge 12. Plaintiff asserts that Russell's decision was tainted by Plaintiff's age and that he was identified as the number one candidate for the position in charge 12. In support of his assertion that he was the number one candidate, Plaintiff cites to a spreadsheet that is part of the administrative record. (Doc. 254-7 at 67.)[22] The spreadsheet contains a list of applicants and it provides a rank based on points given for various qualities. The spreadsheet is titled "copy of evaluation form CA 1286045" and lists the panel members as those identified for charge 12. Moreover, the JOA for charge 12 does end in 1286045. (Doc. 215 at 6.) Plaintiff is included on the spreadsheet and had a final score of 5.0263 and a rank of 1. (Doc. 254-7 at 67.) The next highest candidate on the spreadsheet had a score of 4.0329.

In response to Plaintiff's assertion that he was the highest ranked candidate, Defendant argues that Plaintiff has failed to provide support that the spreadsheet was prepared by any of the individuals involved in selecting the applicants for interviews and further states that the spreadsheet was not prepared by an individual who selected interviewees. (Doc. 260 at 26.) Reviewing the record in a light most favorable to Plaintiff, a declaration completed by Karen Stierer during the administrative investigation states that she received a matrix from Michelle Brown to rank the candidates and that Plaintiff was ultimately ranked number one. (Doc. 254-7 at 62-63) ("According to our matrix, he rated number one.") Stierer then states that she attached the matrix to her declaration. (*Id.* at 62.) An email immediately follows Stierer's declaration which includes a copy of the evaluation from JOA "1286045 consolidated list." (*Id.* at 65.) Therefore, it appears that Plaintiff has submitted evidence to suggest that the spreadsheet is a ranking of

---

[22] Defendant argues that Plaintiff has failed to properly cite to the exhibit. (Doc. 260 at 13.) Plaintiff's response initially cited to page 1996 in Exhibit D. (Doc. 254 ¶ 234.) Exhibit D does not have a page 1996. Later, in his analysis, however, Plaintiff cites to Exhibit E at page 1966. (Doc. 254 at 56.) This page does include a spreadsheet. It appears that his citation in response to SOF 234 was a typographical error.

candidates for charge 12 prepared by Brown or someone involved in the hiring process and that Plaintiff was ranked number 1. Stierer states that she does not know why Plaintiff was not interviewed and assumed it was because Russell did not select him for an interview. Further, a declaration by Clarence Westbrook, another panel member, stated under oath that he had ranked Plaintiff as number one out of the list of candidates prior to the selection. (Doc. 254-7 at 137.) He stated that all the members of the panel rated the applicants and then provided the list to Michelle Brown. Westbrook stated that Plaintiff was highly qualified and that he was not sure why Plaintiff did not get selected for an interview. (*Id.*)

Based on the evidence, it is clear that Russell was involved in selecting the applicants for an interview. Plaintiff asserts that his age influenced Russell's decision and cites to an email from Roberto Guerra. (Doc. 254-11.) The email contains a bates stamp number of USA-00113519 which suggests that it was produced by Defendant in discovery. In that email, Guerra states that Plaintiff had been their "number 1 choice and Greg Russell was preparing to hire him. Greg had concerns that Stan would not have the energy to keep up with the team and work load in Poway. He mentioned to me that he spoke to Stan's old supervisor and skirted around in conversation about how old Stan was and also asked the supervisor if he thought Stan had the energy to keep up with a high paced work load." (*Id.*) Plaintiff asserts that this is evidence that Russell's decision not to interview him for charge 12 was because of his age.

Defendant argues that Plaintiff has not laid a sufficient foundation for the email, including what vacancy it was referencing or when the vacancy occurred, the email is hearsay to the extent it is describing a third party conversation, and it constitutes speculation as to what Russell was thinking. (Doc. 260 at 14.) With respect to the vacancy, Defendant asserts that this email relates to the position at issue in charge 32, which involved Guerra, and that his interview for that position

43

did not occur until **after** the determination that Plaintiff would not interview for the vacancy at issue in charge 12.  (*Id.*)  While Plaintiff has not introduced evidence of what vacancy was at issue when Russell voiced his concerns to Guerra, the evidence shows that the decisions regarding these positions were made within the same time period.  Notably, the interviews for charge 12 took place on March 10 and Plaintiff was asked to interview for the position at issue in charge 32 on March 9 and did interview on March 11.  Therefore, viewing the evidence in a light most favorable to Plaintiff, Russell's concerns to Guerra about Plaintiff's age may have impacted his decision as to charge 12 especially in light of the evidence from the other two panel members stating that Plaintiff was the number one candidate for charge 12.

Therefore, the court finds that there is a material dispute of fact as to whether Plaintiff's age played a part or was the but-for cause of Russell's decision not to interview Plaintiff for charge 12.

Defendant, however, further moves for summary judgment on the basis that Plaintiff was not eligible to be hired for this position because of his status as a retired annuitant.  (Doc. 241 at 63–64.)  In order to state a claim of age discrimination, Plaintiff must be qualified for the position. *Jones v. Azar*, 772 F. App'x 692, 697 (10th Cir. 2019).  Defendant contends that Plaintiff was not qualified because DCMA did not receive approval for the hiring of a retired annuitant prior to posting this position and the position did not meet DCMA policy regarding the hiring of retired annuitants in that charge 12 was for a permanent position, not temporary; none of the limited circumstances allowing hiring of a retired annuitant were met for this vacancy; and the hiring for this vacancy did not follow a non-competitive process.  Plaintiff does not respond to this argument in his brief although he has attempted to controvert the facts related to this issue.  Plaintiff asserts that these facts are controverted because he was not told that he was ineligible due to his status as

a retired annuitant. Plaintiff, however, has not controverted the fact that DCMA has such a policy and this vacancy does not meet the requirements for the hiring of a retired annuitant. Nor does Plaintiff controvert the fact that DCMA has not granted permission to hire a reemployed annuitant for a permanent full-time vacancy.

The court finds that Plaintiff has not established that he was qualified for the vacancy at issue in charge 12 because of his status as a retired annuitant at the time Russell considered the applicants. Therefore, Defendant is entitled to summary judgment on his age discrimination claim.

With respect to Plaintiff's claims of discrimination based on his gender, religion, or prior protected activity, Plaintiff further failed to introduce any evidence that the decision not to interview him was based, at least in part, on his gender, religion, or prior protected activity.[23] The uncontroverted evidence is that Russell and the other officials had no knowledge of Plaintiff's religion or prior protected activity. With respect to gender, the position was initially offered to a male, who ultimately declined. Therefore, there are no facts suggesting that Plaintiff's gender influenced the decision not to interview him.

Defendant's motion for summary judgment on charge 11 is granted.

### ix.    Charge 15

On December 8, 2014, Plaintiff applied for a Contract Administrator position in Endicott, NY. Robert Clark was the Selecting Official for this vacancy. (Doc. 215 at 7.) On February 1, 2015, Plaintiff was referred for this position. On February 20, Plaintiff had a phone interview with the hiring panel who consisted of Joy Parish, Gary Hmurcik, Marianne Del Greco, and Homer La Rue. (*Id.*) Consistent with DCMA policy, all of the candidates interviewed were asked the same

---

[23] Although Defendant would be entitled to summary judgment on the basis that Plaintiff was not qualified due to his status, the court further finds that Plaintiff has failed to introduce any evidence of discrimination under these protected bases.

five questions.  (Doc. 252-24 ¶ 6 & 10.)  The panel members scored the candidates based on their

performance during the interview.  The panel members scored Plaintiff's interview answers lower

than the candidates that were ultimately recommended for the position.  (*Id.* at 11-22.)[24]  Parish

found Plaintiff to be a "really good resume writer," but he did not answer the interview questions

"with anything remotely close to what we were looking for in the interview" which resulted in him

"completely bomb[ing] the entire interview." (*Id.* at 6-7.)  Hmurcik agreed with Parish and stated

there "was a significant disconnect between the resume and the answers [Plaintiff] provided in the

interview."  (Doc. 252-26 at 5.)  In rating his interview, Hmurcik assigned a negative (-) rating to

Plaintiff's answers to questions 3, 4, and 5, and found his responses to the questions "very brief."

(*Id.* at 4.)  Del Greco stated that Plaintiff "talked around subjects due to not having utilized

processes."  (Doc. 252-25 at 5.)

The panel recommended three candidates for the position, two of those candidates were

male.  Clark first selected a female to fill this position, and after she declined, selected a male who

accepted the position.  (Doc. 215 at 7.)  At the time the decisions were made pertaining to this

vacancy, Clark, Parish, Hmurcik, Del Greco, and La Rue[25] did not know Plaintiff's age, religion,

---

[24] Plaintiff attempts to controvert the facts related to the scoring of the interviews by stating that there are not any "original notes to substantiate this and scores of interview responses were otherwise prohibited by Defendant's regulation." (Doc. 254 at 37-38.)  Plaintiff cites to Paragraph 9.1.1.1 of the Merit Promotion Policy but fails to identify how the panel member's informal ranking of the candidates violates the policy.  (*See* Doc. 260 at 15.)  Moreover, even if the informal ranking somehow violates the policy, Plaintiff has not controverted the fact that he scored lower than the candidates selected.  With respect to his assertion that Defendant has not provided the original notes, Plaintiff fails to cite to any requirement that Defendant retain original notes.  The evidence cited by Defendant is admissible and sufficient to support the facts put forth surrounding the interview process on this charge.

[25] Plaintiff asserts that LaRue had knowledge of his prior protected activity and informed the panel members prior to the interview.  (Doc. 254 ¶ 266.)  In support of this, Plaintiff points to LaRue's deposition.  In the cited testimony, LaRue testified that he has been on several hiring panels and he had previously informed a hiring panel that one of the applicants (Plaintiff) had filed an EEO complaint without mentioning the applicant's name.  (Doc. 254-10 at 16:21-17-22.)  LaRue, however, could not remember the date of the interview.  Notably, however, LaRue further testified that he did not have knowledge of Plaintiff's EEO activity when he sat on the panel for the vacancy at issue in charge 15.  (*Id.* at 60:22-61:1.)  That testimony is consistent with LaRue's declarations that he did not have knowledge of Plaintiff's activity at the time Plaintiff was interviewed for charge 15 but later gained knowledge of his EEO activity directly related to the complaint for charge 15.  (*See* Doc. 252-27 at 2-3; 260-4 at 3 ("I was a hiring panel member in March 2015 (approximately).  I was interviewed in relation to complainant's EEO activity in July of 2015."))  Further, although LaRue could not recall the hiring panel in which he discussed Plaintiff's EEO activity without naming

or whether he had engaged in prior protected activity.  (Docs. 252-24 at 2; 252-25 at 2–3; 252-26 at 2–3; 252-27 at 2–3; Doc. 252-28 at 2–3.)

Based on a review of the uncontroverted facts as set forth herein, Defendant is entitled to summary judgment as to all claims on charge 15.  The evidence shows that Plaintiff was not selected for this position because he did not perform well in the interview compared to the other candidates.  The court will not second guess the panel's decision in this case without evidence that shows an "overwhelming disparity in qualifications."  *Hamilton*, 563 F. App'x at 602.  Plaintiff has failed to point to any such evidence.  Plaintiff's own opinions regarding his qualifications are not sufficient to create a dispute of material fact nor do they create an inference that the decision was tainted by discrimination.  *See  Bullington*, 186 F.3d at 1317-18.

Plaintiff's argument in opposition only contends that he has established his claim of retaliation because the panel members knew of his protected activity.  This assertion is inaccurate as the uncontroverted facts show that the panel members did not know of Plaintiff's protected activity at the time of their decision.  Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation.

Plaintiff's lack of argument as to his remaining claims amounts to a waiver.  *See Hinsdale v. City of Liberal, Kan*., 19 F. App'x 749, 768–69 (10th Cir. 2001) (plaintiff abandoned claim by failing to respond to arguments made in support of summary judgment).  Nevertheless, the court finds that Plaintiff has failed to state a prima facie case on the remaining discrimination claims.  Even if Plaintiff established a prima facie case, he has not shown any evidence of pretext.

Plaintiff cannot establish his claim of religious discrimination because the hiring officials

---

Plaintiff, Defendant points out that LaRue was on a hiring panel that interviewed Plaintiff in October 2016.  (Doc. 260-5.)  Plaintiff has failed to create a material issue as to LaRue's knowledge during the time period at issue in charge 15.  The uncontroverted evidence is that LaRue did not know about Plaintiff's activity until after he was informed of the EEO charge related to charge 15.

had no knowledge of his religion or his alleged need for a religious accommodation during the interview.  Further, Plaintiff has failed to state a claim of gender or age discrimination as there are no facts to support an inference of discrimination based on the panel's recommendation and the ultimate hiring decision.  The evidence shows that the panel recommended two males and a female for the position and a male ultimately was hired.  Therefore, no evidence supports a claim of gender discrimination.  There is also no evidence to suggest that Plaintiff's age had any influence on the decision of the panel members.

Therefore, Defendant's motion for summary judgment as to the claims involving charge 15 is granted.

### x.    Charge 23

On August 1, 2014, Plaintiff submitted his application for a Contract Administrator position in Boston, MA.  The Selecting Official for this vacancy was Dane Hutchison.  (Doc. 215 at 8.)  On September 15, 2014, Plaintiff was referred for the vacancy and he was later selected to be interviewed.  Ultimately, Plaintiff was not interviewed.  Hutchinson utilized a panel for this vacancy and the members were Michael Delloiacono, Cheryl Gonzalez, Jayson Thornton, Paul Sullivan, and Deborah Jansen.  Delloiacono served as the panel lead.  (*Id.*)

Delloiacono stated that he had emailed Plaintiff to offer him an interview but did not hear from Plaintiff.  Delloiancono then called Plaintiff and left a voicemail to schedule an interview.  On or about September 23, 2014, Delloiacono received a voicemail from an applicant who stated that he was withdrawing from consideration for the vacancy.  (Doc. 252-29 at 4.)  Delloiacono believed the message stated, "This is Stan Laber. I am no longer interested in the position. Thank you."  (*Id.*)  Delloiacono put a sticky note on Plaintiff's resume that said "left voice mail message declined."  (Doc. 251-4 1, 9.)  That same date, Delloiacono informed fellow panelist Thornton that

48

"Stan Leber [sic] has declined."  (Doc. 252-30.)  Plaintiff disputes that he called and left the voicemail message.  (Doc. 254 ¶¶ 275–76.)

The panel conducted interviews on September 24 and 25, 2014, and then recommended four candidates to Hutchison.  Because of the strict guidelines on rehiring retirees, Hutchison was told that he could not select his initial choice, who was a retired annuitant.  (*See* Doc. 251-4 at 7.)  Plaintiff later received the following notice explaining his nonselection: "Code Definition: Withdrawn from Consideration" and "Code Explanation: The selecting office has indicated that you requested to be withdrawn from further consideration."  (Doc. 215 at 9.)  On December 15, 2014, Plaintiff emailed the AST applicant help inbox and stated that he had no communication with the Selecting Official and did not request to be withdrawn from further consideration.  (*Id.*)

At the time of the events surrounding charge 24, Delloiacono and Hutchison did not know Plaintiff's age, religion, or whether he had engaged in prior protected activity.  (Doc. 251-4 at 7; Doc. 252-29 at 4.)

In response to Defendant's motion for summary judgment on the claims surrounding charge 23, Plaintiff contends that he never called Delloiacono to withdraw and that the selecting officials ignored his application because of their knowledge of his prior protected activity and "created a false basis to cover up their discrimination of not considering him based on their knowledge."  (Doc. 254 at 58.)  In support of this argument, Plaintiff cites to Delloiacono's declaration which states that he learned about Plaintiff's protected activity from Julie White. Reviewing Delloiacono's declaration, he states that he talked to White in June 2015 regarding Plaintiff and that was the first time that he had knowledge of Plaintiff's protected activity.  (Doc. 252-29 at 3, 5.)  The hiring decision related to charge 23 occurred in September 2014 and Plaintiff has failed to cite to any other evidence suggesting that Delloiacono had knowledge of any other

protected activity.  Notably, the undisputed facts are that Plaintiff did not file an EEO charge related to DCMA until December 2014.  Therefore, Plaintiff's outlandish allegation that the selecting officials fabricated Plaintiff's withdrawal because of their knowledge of his protected activity is not supported by the evidence.

Based on the uncontroverted evidence, Plaintiff cannot show that the decision related to charge 23 was tainted by discrimination or retaliation.  There is simply no evidence, other than Plaintiff's own speculation, that age, religion, or retaliation played any part in the hiring decision. Defendant's motion for summary judgment on Plaintiff's claims relating to charge 23 is granted.

### xi.    Charge 24

On September 4, 2014, Plaintiff applied for a full time, permanent Industrial Specialist (General) position in Syracuse, NY.  On September 19, Plaintiff was referred for the vacancy.  The Selecting Official was Julie White and she did not use a panel in filling the vacancy.  (Doc. 215 at 9.)  Plaintiff was not selected to be interviewed and he learned of the decision on October 29, 2014.

In determining the applicants to interview, White reviewed the resumes and rated their functional experience and training.  She decided to interview those applicants based on how much manufacturing and quality experience they had.  (Doc. 252-22 at 19.)  Functional experience was the number one priority in selecting candidates to interview.  She determined that Plaintiff's resume reflected primarily contract experience with minimal manufacturing experience.  (*Id.*) Also, she determined that Plaintiff's contracting experience was not relevant to the position.  White further believed that the candidates she selected to interview had more relevant experience than Plaintiff.  (*Id.* at 19-20.)  At the time she made the decision not to interview Plaintiff, White did not have knowledge of Plaintiff's age, religion, or prior protected activity.

Defendant has moved for summary judgment on this charge on the basis that Plaintiff has failed to establish a prima facie case on all of his claims of discrimination. Plaintiff argues that White had knowledge of his protected status, rejected him in favor of younger applicants, and "the true reason White failed to interview Plaintiff was because of his prior EEO activity of which she was aware." (Doc. 254 at 59.) Plaintiff's arguments lack merit and are not supported by the evidence.

With respect to Plaintiff's claim of religious discrimination as to charge 24, Plaintiff has failed to introduce evidence that White had any knowledge of his religion. Therefore, summary judgment is appropriate. Turning to his claim of retaliation, Plaintiff argues that White had knowledge of his protected activity. White's decision, however, occurred prior to Plaintiff's protected activity in December 2014. Therefore, Plaintiff cannot show that White's decision was influenced by his protected activity. Plaintiff has also advanced a claim of gender discrimination as to this charge. However, there is no evidence to support an inference of gender discrimination in connection with White's decision not to interview Plaintiff. The evidence shows that White's initial choice for the position was a male. Plaintiff offers no evidence or argument to suggest that White's decision was tainted by gender discrimination.

Finally, Plaintiff argues that he was rejected because of his age. Although White did not know Plaintiff's age, she could likely infer that he was over 40 based on his work experience. In support of his argument that White discriminated against him, Plaintiff contends that White's reasons for declining to interview him are contradicted by her spreadsheet ranking the candidates and he asserts that he has more experience than another candidate who was younger than him. (Doc. 254 ¶ 291 & p. 58.) Reviewing the spreadsheet, the younger candidate identified by Plaintiff did receive the same ranking as Plaintiff for functional experience but Plaintiff had a higher score

for training and education.  (Doc. 254-5 at 254.)  Plaintiff argues that because his total score was higher than that candidate, he should have also been interviewed.  Defendant contends that Plaintiff's arguments regarding the spreadsheet amount to speculation as White has given a sworn statement identifying how she selected the applicants to interview.  (Doc. 260 at 29.)

Viewing the light in the evidence most favorable to Plaintiff, the court finds that he has introduced some evidence to support his assertion that he should have been interviewed for the position because he scored higher than a younger individual who was interviewed.  Therefore, the court finds that he has stated a prima facie case of age discrimination as to charge 24.  White, however, has submitted a sworn statement in which she states that she did not interview Plaintiff because his experience was not suited for the position as compared to those she did interview.

The minimal evidence cited by Plaintiff does not support a finding that Defendant's reason for not interviewing Plaintiff is pretext for age discrimination.  Although the spreadsheet ranks Plaintiff higher than the younger candidate, there is no evidence that the spreadsheet was the only manner White used to select candidates to interview.  Moreover, Defendant has introduced evidence that White had recently selected and hired a male applicant born in 1948 for a position as an Industrial Specialist. (Doc. 252-22 ¶ 14.)  A few months after this decision, White selected Plaintiff to interview for the position at issue in charge 11.  (*Id.* ¶ 8.)  This uncontroverted evidence shows that White's decision not to interview Plaintiff was not tainted by age discrimination.  *See Bryant,* 2021 WL 259294, at *6; *Antonio*, 458 F.3d at 1183-84.

Defendant's motion for summary judgment is granted on all claims as to charge 24.

**xii.     Disparate impact**

Finally, Plaintiff has also asserted a disparate impact claim under the ADEA as to charges 2, 5, 11, and 15.  To establish such a claim of disparate impact, Plaintiff must show (a) an

employment practice that (b) causes a disparate impact on a protected group. *Tabor*, 703 F.3d at 1220. Defendant moves for summary judgment on this claim on the basis that Plaintiff has failed to identify a specific employment practice that caused a discriminatory impact. (Doc. 241 at 78-79.) Plaintiff has wholly failed to respond to Defendant's arguments on this claim and has failed to set forth facts or introduce any evidence regarding a discriminatory employment practice. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of disparate impact under the ADEA.

### xiii.    Failure to Mitigate

Defendant has moved for summary judgment on his affirmative defense of failure to mitigate damages. (Doc. 241 at 79-81.) After the rulings by the court in this order, the only claims left for trial pertain to charge 2. Therefore, Defendant's motion on his affirmative defense will be reviewed as to the facts surrounding charge 2.

Defendant argues that Plaintiff is precluded from economic damages related to charge 2 because Plaintiff created his alleged loss of earnings and unemployment by voluntarily retiring from the NGA. "One claiming damages for losses such as back pay has the duty to take such reasonable steps under the circumstances as will minimize those damages." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990) (internal citation and quotations omitted). "A claimant need only make a reasonable and good faith effort, and is not held to the highest standards of diligence." *Id.* (internal citation omitted). The burden is on Defendant to establish that Plaintiff did not exercise reasonable diligence. *See id.* To meet this burden, Defendant must show "(1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *EEOC v. Sandia*

*Corp.*, 639 F.2d 600, 627 (10th Cir. 1980) (internal citations and quotations omitted).  This court has previously held that a defendant may meet this burden by showing that the plaintiff failed "to search for alternative work," refused to "accept substantially equivalent employment," or voluntarily quit "alternative employment without good cause." *Leidel v. Ameripride Servs.*, Inc., 276 F. Supp. 2d 1138, 1142 (D. Kan. 2003) (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, (1982) (opining that a Title VII plaintiff's duty to mitigate does not require the plaintiff to "go into another line of work, accept a demotion, or take a demeaning position" but failure to accept a job substantially similar to the one he was denied by the defendant will amount to failure to mitigate).  "To hold that employers are liable for losses incurred due to a claimant's unjustified, voluntary termination of interim employment renders the back pay obligation punitive, and abuses the intent of the remedy." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1278 (4th Cir. 1985).  A plaintiff who voluntarily quits comparable employment for personal reasons fails to mitigate damages. *Id.*; *see also E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992).  A plaintiff does not fail to mitigate damages when he quits his employment due to unreasonable working conditions or an earnest search for better employment. *Id.*

Defendant argues that Plaintiff failed to mitigate his damages because he retired from employment without good cause.  Notably, his salary at NGA was higher than the salary for the position at issue in charge 2.  In his deposition, Plaintiff testified that he could not remember why he chose to retire but he did recall that he was disappointed that he did not receive a promotion. (Doc. 252-31 at 192:23-196:2.)  Although he failed to attach an affidavit to his brief in support of summary judgment, Plaintiff's memorandum states that his decision to retire was due to the lack of a promotion and because he desired to work closer to family members.  Defendant objects to the consideration of Plaintiff's new justification on the basis that it is not supported and that his

prior testimony and his applications contradict this representation.  (Doc. 253 at 4-5.)  While Plaintiff did fail to include an affidavit in support of the fact pertaining to family location, he did testify that he could not recall all of the reasons that he left his position at the NGA.  Therefore, this new assertion is not necessarily contradicted by his testimony.  However, the court finds that it is not sufficient to create an issue of material fact.

The court finds that Defendant has met its burden to show that Plaintiff failed to mitigate his damages by retiring from his job at NGA.  At the time of his retirement, Plaintiff's salary was $139,642 as a contract specialist and the salary range for the contract administrator position in charge 2 was $59,983 to $77,978.  Plaintiff's position at NGA would have resulted in annual pay increases, continuation of his benefits, and the ability to increase his future pension.  Plaintiff asserted that he retired because he did not receive a promotion and because he wanted to be near family.  With respect to his claim regarding the promotion, Plaintiff fails to introduce any evidence that he applied for a promotion or the details surrounding the promotion.  Moreover, he failed to introduce evidence that he was precluded from applying or receiving any future promotions at NGA.  Therefore, there are no facts from which the court could conclude that his decision to retire was based on good cause.  *See E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 343–45 (S.D.N.Y. 2014) (finding that a plaintiff who did not receive a promotion did not mitigate her damages when she voluntarily resigned).  With respect to Plaintiff's assertion that he would like to be near family, Plaintiff has failed to introduce evidence to support these facts; nevertheless, this is a personal reason which is not sufficient to satisfy his duty to mitigate his damages.  *Brady*, 753 F.2d at 1278.

Plaintiff made his decision to voluntarily retire from a position that paid substantially more than the position at issue in charge 2.  The uncontroverted facts establish that this decision was made without good cause and, as such, the law does not allow him to recover backpay, front pay,

related benefits and economic damages associated with those damages.  *See Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1041 (10th Cir. 2021) ("Both awards [front pay and back pay], however, are subject to earlier termination based on, for example, failing to mitigate damages or obtaining substantially equivalent employment.")

C.     **Motion for Review and to Strike Damages**

Defendant moves the court to review Magistrate Judge Birzer's ruling in which she overruled Defendant's objection to Plaintiff's damages as set forth in the pretrial order and asks the court to strike portions of Plaintiff's damages on the basis that he failed to timely disclose his damages.  (Doc. 221.)

Based on the rulings in this order, the only remaining claims at issue involve charge 2. Moreover, the court has determined that Plaintiff failed to mitigate his economic damages as to that charge and, as a result, the vast majority of Plaintiff's economic damages set forth in the pretrial order are not recoverable.  Plaintiff cannot recover front pay, back pay, interest from back pay, tax payments, other reimbursements, health savings account, other leave benefits, and retirement account benefits as they are all economic benefits related to the pay and benefits for the position.  Plaintiff could possibly recover nominal damages, costs, and compensatory damages, which were set at $1.  (Doc. 215 at 46.)  To the extent that Plaintiff believes a category of damages identified in the pretrial order would remain available to him (other than those identified herein), Plaintiff may file a motion in limine regarding those damages on or before the deadline pertaining to motions in limine which will be set in a forthcoming trial scheduling order.  In support of his motion, Plaintiff must identify the legal authority showing that he can still recover that category of damages in light of this court's ruling that he failed to mitigate his damages.

As a result of the rulings in this order, the court finds that Defendant's motion for review and to strike damages (Doc. 221) is moot.

**IV.     Conclusion**

Defendant's motion for partial summary judgment (Doc. 240) is GRANTED and Plaintiff's motion (Docs. 243) is DENIED for the reasons stated herein.  Defendant's motion for review (Doc. 221) is MOOT.


IT IS SO ORDERED.  Dated this 1st day of December 2022.

_____ s/ John W. Broomes _____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE