IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STAN LABER,

                Plaintiff,

v.                                                    Case No. 18-1351-JWB

LLOYD J. AUSTIN, III, SECRETARY,
UNITED STATES DEPARTMENT OF DEFENSE,

                Defendant.

**MEMORANDUM AND ORDER**

This is an employment discrimination case. On February 9, 2023, a jury returned a verdict finding Defendant Lloyd J. Austin, III, Secretary, United States Department of Defense (Defendant or DoD) retaliated against Plaintiff when Defendant failed to hire Plaintiff because of his opposition to unlawful employment practices in violation of Title VII. This matter comes before the court on the parties' proposed findings of fact and conclusions of law as to Plaintiff's claim of age discrimination against Defendant. (Docs. 330, 331.) Plaintiff has also moved to amend his complaint and the pretrial order (Docs. 322, 324) and to compel Defendant to produce all copies of Trial Exhibit 7 and associated emails in native format (Doc. 332). These matters are fully briefed. (Docs. 325, 329, 333, 334, 335, 336.)

**I.    Background**

On December 26, 2018, Plaintiff, who is proceeding pro se, filed this employment action against Defendant Lloyd Austin, III, Secretary, United States Department of Defense. This action is based on a substantial number of discrete failure to hire claims, which are referred to as distinct charges in the second amended complaint. (Doc. 141.) For each discrete act of failure to hire,

1

Plaintiff asserted claims alleging religious, gender, and age discrimination and retaliation in violation of 42 U.S.C. § 2000e ("Title VII") and the Age Discrimination in Employment Act ("ADEA").

On December 1, 2022, the court granted Defendant's motion for summary judgment which disposed of all of Plaintiff's claims except for those relating to Charge 2, which involved a position of contract administrator located in Milwaukee, WI, and for which Plaintiff was interviewed in November 2014. (Doc. 270.) The order further granted Defendant's motion for summary judgment on its affirmative defense of failure to mitigate. As a result, the only remaining damages left for trial were compensatory damages. Plaintiff did not seek any declaratory or injunctive relief in the pretrial order.

On February 6, 2023, a jury was impaneled. On its own motion and pursuant to Federal Rule of Civil Procedure 39(c), the court notified the parties that the jury would be impaneled to render an advisory verdict as to Plaintiff's ADEA claims. At the conclusion of the evidence, Defendant moved for judgment as a matter of law on Plaintiff's claims. The court heard argument on the matter and notified Plaintiff that it was inclined to grant Defendant's motion as to Plaintiff's claim of retaliation under the ADEA. Plaintiff then voluntarily dismissed his claim of sex discrimination under Title VII and his claim of ADEA retaliation. Those claims were not submitted to the jury. On the claims presented to it, the jury concluded that Defendant retaliated against Plaintiff in failing to hire him based on his prior protected activity. The jury further found that Defendant did not discriminate against him on the basis of his religion or age. (Doc. 315.) The jury declined to award compensatory damages.

On March 17, 2023, the parties filed their proposed findings of fact and conclusions of law regarding Plaintiff's ADEA claim. (Docs. 330, 331.) The parties have filed responses in

opposition. (Docs. 333, 334.) Plaintiff contends that the evidence warrants a finding of age discrimination notwithstanding the jury's verdict. This issue is fully briefed.

Plaintiff has also moved to amend his complaint and the pretrial order to add a request for injunctive relief in the form of instatement to a position with Defendant. Defendant objects to Plaintiff's motion. Further, Plaintiff has moved to compel Defendant to produce a trial exhibit in its native format and any associated emails. Those matters are fully briefed.

## II.     Analysis on ADEA Claim

As a federal employee at the time of these events, Plaintiff has no right to a jury trial when he brings an ADEA suit against the government. *See Lehman v. Nakshian*, 453 U.S. 156, 164 (1981). Rule 39(c) authorizes a district court, in its discretion, to impanel an advisory jury in any case "not triable of right by a jury."

> [T]he findings of such a jury are, of course, *merely advisory*; the trial court must ... make its own findings and review on appeal is of the findings of the court as if there had been no verdict from the advisory jury. While the district court may exercise its discretion to accept or reject the advisory jury's verdict, the advisory jury's decision is not binding on the district court and the district court has the ultimate responsibility for deciding the case's legal and factual issues.

*OCI, Wyo. v. PacifiCorp*, 479 F.3d 1199, 1206 (10th Cir. 2007) (internal citations and quotation marks omitted) (emphasis in original).

Under Federal Rule of Civil Procedure 52(a), the court is required to "find the facts specially and state separately its conclusions of law thereon." The district court's findings "should be sufficient to indicate the factual basis for the court's general conclusion as to ultimate fact[,] ... should indicate the legal standards against which the evidence was measured [,] ... [and] should be broad enough to cover all material issues." *OCI*, 479 F.3d at 1203 (quotation and citation omitted). In this case, the undersigned finds, as the jury did, that Defendant did not discriminate against

Plaintiff based on his age. The following findings of fact and conclusions of law support this determination.

**1. Findings of Fact**

Plaintiff Stan Laber was born in 1945 and was over the age of 40 at the time of the events giving rise to this action. Plaintiff began his employment with Defendant in August 1981, as a GS-0305-03 File Clerk. (Doc. 215, PTO at 2.) The abbreviation "GS" stands for "General Schedule" which is the scale of pay grades for some federal government employees. (Doc. 319, Fanney, 93:22–94:6.) The lowest grade on the GS is a GS-1 and the highest grade is a GS-15. An entry level grade for a contract administrator position at the Defense Contract Management Agency ("DCMA") is GS-11. In 1988, Plaintiff reached a GS-13 level position. Plaintiff's work experience involving DCMA mostly occurred in the 1980's and 1990's. (Doc. 320, Laber, 175:24–176:1.) The last time Plaintiff worked for DCMA was 2000. (*Id.* at 176:2–3.) In 1991, Plaintiff took his first position in the 1102-series, which is the contracting series, and Plaintiff held positions in this series for the rest of his career. (Doc. 319, Laber, 125:17–126:10; Tr. Ex. 02, p. 2.) Plaintiff has previously been employed as a supervisory contract specialist. (Doc. 320, Laber, 176:15–17.)

In 2013, Plaintiff was employed at the National Geospatial Intelligence Agency ("NGA") but began applying for positions with DCMA (*Id.* at Laber, 178:11–13.) In a February 26, 2016 affidavit, Plaintiff stated that he was considering relocating in 2014 but he ended up retiring because he had not found a position as a retired annuitant.[1] (*Id.* at 187:7–188:4.) Plaintiff's affidavit further stated that during his job search[2], he had explained that he was retiring or had

---

[1] When an individual is retired from federal service, that individual is a retired annuitant because he is retired and collecting an annuity from the federal government for his years of service.
[2] The affidavit does not indicate that Plaintiff made this statement with respect to a specific job posting.

retired and enjoyed mentoring younger workers although he never discussed his age. (*Id.* at 188:7–18.)

On September 18, 2014, Plaintiff applied for a GS-1102-11 full time, permanent Contract Administrator position in Milwaukee, Wisconsin. (Doc. 215 at 3.) At the time of posting, the salary range for the Milwaukee position was $59,983 to $77,978. (*Id.*) Had Plaintiff been selected for the position, the maximum salary he could have received in 2015 was $78,759. (Doc. 319, Fanney, 100:18-25.)[3] At the time he applied for this position, Plaintiff's salary at NGA was $139,642 and it was equivalent to the salary of a GS-15.[4]

The Milwaukee position was a nonsupervisory position and required the selectee to obtain a Level II Defense Acquisition Workforce Improvement Act (DAWIA) certification within two years of employment. Plaintiff's resume reflected that he had three Level III DAWIAs, including a Level III DAWIA in contracting that he earned in 2002. (Tr. Ex. 806 at 7.) A Level III DAWIA is the highest DAWIA certification and is for employees who are at GS-13 level and above.

The evidence showed that DCMA HR personnel created a list of eligible applicants for the Milwaukee position for review by the selecting official and hiring panel on October 31, 2014. (Tr. Exh. 3, Certificate of Eligibles.) Plaintiff's name was on this first list. (*Id.*) The evidence further showed that Mark Bennett, the selecting official, did not select a name from the first list after the interviews and sought a second list from DCMA HR. This second list identified more individuals who had also applied for the original posting but scored lower than the individuals on the first list. (Doc. 319, Davis, 29:6–16.) Ultimately, no individual was hired for the Milwaukee position.

---

[3] Plaintiff argues that the evidence supports a finding that he could have requested and received pay retention and a relocation incentive. (Doc. 333 at 4.) The evidence cited by Plaintiff does not support this assertion.
[4] Plaintiff's position at NGA was not on the GS pay scale.

Plaintiff was selected to interview for the Milwaukee position. John Moffatt, Douglas Yee, and Aaren Hanson served as the panel members and Mr. Moffatt was the panel lead. The panel conducted interviews for the position and asked all the candidates the same questions. Plaintiff interviewed by phone on November 5, 2014. (Doc. 215 at 3.) The panel did not recommend Plaintiff as a top candidate after the interviews. Mr. Moffatt submitted the panel's recommendation to the selecting official, Mark Bennett. As the selecting official, Mr. Bennett had the ultimate responsibility to select the applicant for the position. (Doc. 319, Fanney, 105:18–20.) Mr. Bennett was the contracting supervisor for the Milwaukee office and was in charge of the contracting team. (Doc. 321, Bennett, 419:2–9.)

Both Moffatt and Hanson testified as to the interviews and their decisions. Mr. Moffat testified that he believed Plaintiff had a conversation with Mr. Yee shortly before the interview during which the two discussed retirement. (Doc. 320, Moffatt, 311:2–10.) Mr. Moffatt testified that Plaintiff told Mr. Yee that Plaintiff was "getting ready to retire." (*Id.* at 311:8.) Mr. Moffat testified that Plaintiff's age did not play a role in his recommendation. (Doc. 321, Moffatt, 386:7–9.) After Plaintiff's interview, Mr. Yee told the panel that Plaintiff had been counseled for assignments being late when Plaintiff worked with Mr. Yee at DCMA in 1985. (*Id.* at 306:1–12.) Mr. Moffatt prepared the recommendation memorandum for submission to Mr. Bennett. The panel recommended three individuals: Cornelius Stevenson, Scott Homner, and Sherri Jordan.[5] (Tr. Exh. 7.) There are two versions of the memorandum. (Tr. Exhs. 7, 811.) The first recommendation stated as follows with respect to Plaintiff:

---

[5] Plaintiff contends that the evidence was that these three individuals were "significantly younger" than Plaintiff. (Doc. 331 at 4.) In support, Plaintiff cites to their resumes which include their education history but those exhibits do not include dates of birth. Plaintiff has not cited to any evidence that the panel members or Mr. Bennett reviewed those same resumes and concluded what the approximate age of these individuals was, nor has he cited to testimony regarding the age of the applicants. Therefore, the court will not speculate as to the applicants' age based on their resumes.

> Stan Laber (Not Selected): Mr. Laber interviewed very well but we felt he was not in the top three interviewed. Mr. Laber currently works at National Geospatial-Intelligence Agency in Springfield, VA as a Contract Specialist. He has been with DCMA in previous years as an IS as one panel member remembers his employment at the agency with his performance to be questionable. He currently has a DAWAI Level III certification and possesses knowledge of Government contracting, although it is also questionable as to his ability to work within a team environment in a government setting; also found in the Milwaukee office. While we felt he had the correct level of contracting knowledge it appeared his underlining desire was to return to the Milwaukee area to retire from Federal Government employment, which is not the type of hire we wanted to recommend for this long-term fill position.

(Tr. Exh. 811.)

The second recommendation is the same except for the last sentence, which states, "While we felt he had the correct level of contracting knowledge, it was overshadowed by the overall performance history." (Tr. Ex. 7.) Mr. Moffatt revised the memorandum on November 7, 2014, the same day he had submitted it, because Mr. Bennett did not like that the panel included retirement information in the recommendation.[6]  (Doc. 320, Moffatt, 309:4–8.)  Mr. Moffatt testified that he had problems with his memory and that it was difficult to recall the events at issue in this case which had occurred more than eight years earlier. For example, Mr. Moffatt testified that he was only involved in the review of the applicants on the first list with respect to the position. But the evidence, including testimony by Mr. Bennett, was that the same panel was utilized in reviewing candidates on the second list. (Doc. 321, Bennett, 400:2–18; Tr. Ex. 22.)  Because of his difficulty recalling events surrounding the vacancy, the court views his testimony as less credible than the other witnesses.

Hanson rated each candidate that was interviewed by marking a plus for positive, a minus for negative, and a checkmark for those who fell in the middle. (Doc. 320, Hanson, 265:20–266:6.)

---

[6] Mr. Bennett was not questioned regarding the two variations of the recommendation memorandum or his direction to Mr. Moffatt to revise the memorandum.

7

Although no applicant received a plus, her highest mark, two received a checkmark+ (Homner and Stevenson), Plaintiff and two other applicants received a checkmark, and one applicant received a checkmark-. (Tr. Ex. 810.) Plaintiff was not one of Ms. Hanson's top two candidates and she could not recall who was her personal third choice prior to having a consensus meeting with the panel members. She recalled that they were looking for a candidate who would join the team for at least three years. (Doc. 320, Hanson, 243:14–16.)

Ms. Hanson testified that Mr. Homner's interview went well, he was very engaged, enthusiastic, and highlighted his experience to show why he was the best candidate. (*Id.* at 271:1–6.) With respect to Mr. Stevenson, Ms. Hanson testified that he had high energy, was candid in his interview, had great communication skills, and good responses in his interview. (Id. at 275:14–22.) She believed that Mr. Stevenson would be a great asset. Ms. Hanson testified that Ms. Jordan was very professional, well-articulated, and was able to answer the questions well. Ms. Hanson thought she would make a good candidate for the intern program. (*Id.* at 271:22–273:3.)

With respect to Plaintiff, Ms. Hanson testified that he was qualified for the position, adequately answered the questions in the interview, but that he was not very engaging. (*Id.* at 277:3–7.) She further testified that it was unclear why he wanted this position as it was two steps down from his current position. The panel could not ask Plaintiff this question and he did not explain why he was essentially applying for a demotion. (*Id.* at 277:11–20.) She said it was not typical for someone to take such a demotion. (*Id.* at 277:17.) Her ultimate assessment was that Plaintiff had a run of the mill interview and she scored him with a checkmark. She did not recall the panel discussing Plaintiff's desire to return to Milwaukee to retire. Ms. Hanson made no attempt to determine Plaintiff's age at the time of the interview and his age or approximate age did not play a role in her decision. (*Id.* at 282:10–12.) Ms. Hanson disagreed with the statement

regarding Plaintiff's performance history; however, she agreed that the memorandum was a summation of the interview panel. (*Id.* at 211:9–20.) The court finds Ms. Hanson's testimony to be credible and consistent with the evidence.

Mr. Yee previously gave a sworn statement regarding his involvement in the hiring panel in 2015. (Tr. Ex. 1.) Mr. Yee is deceased. In his statement, Mr. Yee stated that he did not know Plaintiff's age until after the selection process was completed. Mr. Yee stated that Plaintiff's age was not a factor in his decision not to recommend Plaintiff although Plaintiff's protected activity was a factor in his decision. (*Id.* at 6.) The court finds Mr. Yee's affidavit credible.

Mr. Bennett testified that he typically reviews the resumes in addition to the panel's recommendation when making a hiring decision. (Doc. 321, Bennett, 389:23–390:4.) Mr. Bennett recalled reviewing Plaintiff's resume and believing that Plaintiff was a GS-14 equivalent and that Plaintiff held a position at that time which was considered to be above Mr. Bennett's position. (*Id.* at 393:5–10.) Mr. Bennett further testified that his first and second level superiors were the equivalent of a GS-14. Mr. Bennett felt that Plaintiff would not be a good fit, as he was essentially a second-tier supervisor and he would come into a position where he was reporting to a GS-12 contracting officer. (*Id.* at 396:3–17.) Mr. Bennett was also concerned with the short time period that Plaintiff had been in his current position, which was less than one year. (*Id.* at 427:13–19.) Mr. Bennett testified that he never hired someone with Plaintiff's extensive experience as a supervisory contracting specialist for a GS-11 contract administrator position. (*Id.* at 428:23–429:1.) Mr. Bennett further testified that he would not have hired Plaintiff even if the panel had recommended him for the position. (*Id.* at 429:5–8.) In making his decision, Mr. Bennett did not consider Plaintiff's age and he was unaware of Plaintiff's age at the time. Ultimately, Mr. Bennett did not hire anyone from the list of applicants containing Plaintiff's name. (*Id.* at 398:13–15.) Mr.

Bennett did offer the position to an individual[7] on the second list, Ms. Heath, but she did not accept the position. (*Id.* at 406:17–407:7.) The court finds Mr. Bennett to be a credible witness.

On January 9, 2015, Plaintiff retired from government service. (Doc. 215 at 2.) Plaintiff's salary on the date of his retirement was $139,642. (*Id.*)

## 2. Conclusions of Law

Under 29 U.S.C. § 633a, all "personnel actions affecting employees or applicants for employment who are at least 40 years of age...shall be made free from any discrimination based on age." Recently, the Supreme Court interpreted this statutory provision of the ADEA, which applies to federal employees and applicants for federal employment. The court held that the statute "does not require proof that an employment decision would have turned out differently if age had not been taken into account." *Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020). Rather, "if age discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination." *Id.* Notably, however, a plaintiff must prove age discrimination was the but-for cause of the employment action to obtain full relief, including "hiring, reinstatement, backpay, and compensatory damages." *Id.* Where a plaintiff can only prove that discrimination was the but-for cause of *differential treatment*, but not the but-for cause of the adverse employment action, the plaintiff is limited to "injunctive or other forward-looking relief." *Id.* at 1178. Plaintiff's requested damages only include monetary damages related to the failure to hire. (Doc. 215 at 45–46.) As such, Plaintiff must show that his age was the but-for cause of the failure to hire Plaintiff for the vacancy in order to obtain the relief he seeks.[8]

---

[7] Plaintiff has set forth a statement of fact which asserts that Ms. Heath was "significantly younger than Plaintiff." (Doc. 331 at 7.) In support of this statement, however, Plaintiff cites to an exhibit which was not entered into evidence. (*Id.*) (citing Exhibit 26); *see* Doc. 312 (Exhibit List). Plaintiff fails to cite any evidence from the trial record to support this assertion of fact. Therefore, it will not be considered.

[8] Plaintiff's belated request for instatement would also require him to prove that his age was the but-for cause of his nonselection. *Babb*, 140 S. Ct. at 1174.

As the jury did, the court finds that Plaintiff has failed to show that his age was the but-for cause of his nonselection. The evidence at trial did not establish that the panel members and Mr. Bennett had knowledge of Plaintiff's age. While they could have determined an approximate age range based on Plaintiff's work history, there is no evidence that they did so. Moreover, the panel and Mr. Bennett testified that they did not consider his age in making their recommendations and hiring decision.

The evidence at trial established that Mr. Bennett was the sole decision maker as to who would be hired for the position. Mr. Bennett testified that he did not hire Plaintiff because he was a supervisory contract specialist and essentially overqualified for the position. He further testified that he had never hired someone with Plaintiff's work history as a GS-11 contract specialist. Also, Mr. Bennett was concerned about Plaintiff's short time period in his current position and that Plaintiff was trying to obtain a new position for half of the pay and half of the responsibility. (Doc. 321, Bennett, 440:2–5.) A judge's role "is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 604 (10th Cir. 2014) (citation omitted). The court finds Mr. Bennett's explanation of his decision to be plausible and a legitimate basis to decline the position to Plaintiff.

Plaintiff argues that the evidence showed inconsistencies and implausibilities which would support a finding that the stated reasons were a pretext for discrimination. The court disagrees. First, Plaintiff argues that the intentionally revised memorandum clearly reflects age discrimination because it mentions Plaintiff's desire to retire. (Doc. 331 at 10.) Plaintiff asserts that the only reason to delete the reference to retirement was to hide age discrimination and include a false claim about performance history. The court disagrees.

11

A reference to Plaintiff's retirement plans in the recommendation letter does not discredit Mr. Bennett's testimony in which he stated the reasons that he did not offer the position to Plaintiff. Mr. Moffatt testified that he included the language regarding Plaintiff's desire to return to Milwaukee and retire because that was relayed to him by Mr. Yee.[9]  Further, Mr. Moffatt testified that he revised the memorandum because Mr. Bennett told him that he didn't like that the memorandum referenced retirement.  Other than this isolated reference to retirement, which was based on Plaintiff's statement prior to the interview, Plaintiff has failed to point to any evidence of age discrimination.  *Cf. Miller v. Jefferson Cnty. Bd. of Cnty. Commissioners,* No. 16-CV-2445-JWL, 2018 WL 1116673, at *9 (D. Kan. Mar. 1, 2018) (citing *Wagoner v. Pfizer, Inc.*, 391 Fed. Appx. 701, 708 (10th Cir. 2010) (supervisor's inquiry into plaintiff's retirement plans did not raise inference of age discrimination under particular facts).  Further, this reference was made by Mr. Moffatt, who was not the final decisionmaker.  Plaintiff has failed to point to any evidence that would suggest that Mr. Bennett discriminated against Plaintiff because of his age.

Plaintiff also argues that there is evidence of age discrimination because the individuals recommended by the panel and Ms. Heath were significantly younger than him.  First, the three individuals recommended by the panel were not treated more favorably than Plaintiff because they were not offered the position.  Second, Plaintiff fails to point to any evidence in the record which establishes Ms. Heath's age (or the other three applicants for that matter).  Third, the fact that these individuals were younger than Plaintiff, in and of itself, is not sufficient to support a finding that age discrimination was the reason that Plaintiff was not selected.  *See Perry v. St. Joseph Reg'l Med. Ctr.*, 110 F. App'x 63, 68 (10th Cir. 2004) (discussing that Plaintiff still had the burden to

---

[9] Plaintiff asserts that he did not have a conversation with Mr. Yee regarding his retirement plans.  However, Plaintiff's own affidavit shows that he informed hiring personnel of his impending retirement during his job search. (Doc. 320, Laber at 187:7–188:18.)  Moreover, Plaintiff fails to cite to any evidence to support a finding that Mr. Moffatt's testimony regarding the conversation relayed to him by Mr. Yee was false or fabricated.

prove age was the but-for cause of the employment decision even when the individual replacing the plaintiff was younger). Plaintiff has not pointed to evidence in support of his assertion that age was the but for reason of his nonselection.

Finally, Plaintiff argues that even if he doesn't establish but-for causation that he has established that age tainted the decision making process. (Doc. 331 at 14) (citing *Babb*, 140 S. Ct. at 1174.) As discussed herein, this standard is not applicable because Plaintiff has not sought any forward-looking relief. In any event, under that standard the court would find that Plaintiff has failed to meet his burden.

The court finds that Defendant is entitled to judgment on Plaintiff's claim of age discrimination under the ADEA.

### III. Pending Motions

#### A. Motion to Compel

Plaintiff moves to compel Defendant to produce all copies of Exhibit 7 and associated emails. (Doc. 332.) Defendant objects on the basis that the motion is untimely and that Defendant previously produced all emails during discovery that were within the search parameters. (Doc. 335.)

During trial, Mr. Moffatt testified regarding Exhibit 7, which was the panel recommendation after the interviews. Plaintiff argues that Mr. Moffatt's testimony included various inconsistencies regarding the preparation of Exhibit 7. Plaintiff asserts that he did not learn of the "full extent of the inconsistencies" until he reviewed the trial transcript and is now seeking discovery of all copies of Exhibit 7 and the related emails.

Plaintiff's motion is denied as untimely. Any motion to compel must be filed within 30 days of the alleged default or failure to disclose. D. Kan. R. 37.1. According to Defendant,

Plaintiff deposed Mr. Moffatt on May 10, 2021 and specifically questioned him regarding Exhibit 7. Therefore, to the extent Plaintiff believed that Defendant failed to disclose evidence related to Exhibit 7, Plaintiff should have filed a motion to compel within 30 days after the deposition. Moreover, to the extent this alleged failure became known based on Mr. Moffatt's trial testimony, the motion is untimely because the testimony was elicited more than 30 days prior to the filing of the motion. Further, the motion to compel is moot based on Defendant's assertion that he has produced all emails in this matter.

Plaintiff's motion to compel (Doc. 332) is denied.

### B. Motion to Amend

Plaintiff failed to preserve his request for injunctive relief in the pretrial order and now seeks leave to amend his complaint and the pretrial order after the trial has concluded in this matter. As the court stated during a hearing held after the trial, Plaintiff's request is untimely. Therefore, the court stands on its previous ruling that Plaintiff has failed to preserve his claim to instatement.

The court further recognizes that Federal Rule of Civil Procedure 54(c) provides that the court is to award all relief to which a plaintiff is entitled even if it was not requested. Here, Plaintiff seeks an award of instatement to a position of contract administrator based on the jury's finding of retaliation. Such relief is available to a plaintiff who prevails in a failure to hire case. *See Equal Emp. Opportunity Comm'n v. Safeway Stores, Inc.*, 634 F.2d 1273, 1284 (10th Cir. 1980). The Tenth Circuit has held that a court has discretion to consider this remedy even if it was not preserved. *See Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir. 1980). The court finds that an order of instatement is not appropriate in this case.

In April 2022, the pretrial order was entered in this case. (Doc. 215.) According to this court's rules, that order controls the course of the proceedings. D. Kan. R. 15.1. Instead of seeking

14

instatement, Plaintiff sought an award of front pay on all of his claims. (Doc. 215 at 45–46.) Reinstatement (or instatement) and front pay are mutually exclusive remedies for the same injury. *See James v. Sears, Roebuck & Co.*, 21 F.3d 989, 997 (10th Cir. 1994). Then, in moving for summary judgment, Defendant sought an order that Plaintiff failed to mitigate his damages. The court found that Plaintiff did fail to mitigate his damages by voluntarily retiring from his position in January 2015. As a result, Plaintiff was precluded from obtaining back and front pay. *See Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1041 (10th Cir. 2021) (discussing that both back and front pay are subject to termination based on a failure to mitigate).

The issue of instatement was not addressed in the summary judgment briefing. However, Defendant did argue that Plaintiff's claims failed on some nonselection claims because he could not be appointed as a reemployed annuitant under DoD policy at the time of the hiring decision. (Doc. 270 at 44–45.) Although this argument was not raised as to charge two because Plaintiff was not retired at the time of his interview, Defendant raises it in opposition to Plaintiff's request for instatement. Defendant cites to uncontested facts on summary judgment regarding the hiring of retired annuitants and argues that Plaintiff should not be granted instatement because of his status as a retired annuitant. Those facts include that DoD has issued policies and procedures which severely restrict the employment of retired annuitants at DCMA. (Doc. 252-4 ¶¶ 10-15.) According to DoD's policy, advance approval must be obtained to hire a retired annuitant. Retired annuitants are only to be hired to meet "critical mission needs," such as when a position is designated as hard-to-fill. (*Id.* ¶ 15.) Moreover, a request to hire a retired annuitant must be approved prior to submitting a request to AST to post a vacancy. Annuitants are hired for temporary reasons and the appointment is not to be more than one year for a full time position or two years for a part time position. An exception may only be made by the Director of DCMA.

(*Id.* ¶ 15.e.) Significantly, DCMA had not approved a retired annuitant from the time period of at least 2014 to the filing of the summary judgment in May 2022. (*Id.* ¶ 22.) In response, Plaintiff disputes some, but not all, of Defendant's interpretation of its policies. Notably, Plaintiff does not dispute that DCMA has not approved the hiring of a retired annuitant for several years. Rather, Plaintiff disputes Defendant's assertion that retired annuitants cannot be hired permanently. Plaintiff argues that the policy allows for a permanent placement in a vacant position; however, such position "will remain open during the reemployed annuitant's appointment. If a match occurs, the reemployed annuitant is terminated and the PPP match is placed into the position." (Doc. 329 at 4.) Plaintiff makes no attempt to discuss the significance of this policy. Importantly, while the retired annuitant could be placed into a permanent position, Defendant may fill that position at any time and the retired annuitant is terminated. Therefore, the permanent aspect of such a position is illusory as it is not truly a permanent position.

Further, Plaintiff chose to voluntarily retire, making himself a retired annuitant. Had Defendant terminated Plaintiff's employment resulting in Plaintiff being a retired annuitant involuntarily, the court might be inclined to consider ordering instatement in this case. That is not the evidence, however. Based on the evidence, Plaintiff voluntarily retired and began collecting his pension which paid more than the salary for the disputed position. Defendant's policy regarding hiring retired annuitants significantly restrains hiring officials and the undisputed evidence on summary judgment was that Defendant has not hired retired annuitants for several years. As a result, the court declines to order Defendant to instate Plaintiff into the next contract administrator position.

Based on this ruling, Plaintiff's motions to amend the pretrial order are denied as moot.

**IV.  Summation**

In accordance with this order and the jury verdict, the court will enter judgment in Plaintiff's favor on his Title VII retaliation claim. The jury declined to award compensatory damages to Plaintiff. In light of the jury's finding that Defendant declined to hire Plaintiff because of his opposition to unlawful employment practices, the court finds that Plaintiff should be awarded nominal damages of $1 on his retaliation claim and that Plaintiff may timely seek his costs as requested in the pretrial order. Fed. R. Civ. P. 54(c); Doc. 215 at 46. *See also* D. Kan. R. 54.1 (setting forth the deadline to seek costs). The court will enter judgment in Defendant's favor on the remaining claims.

## V.  Conclusion

The court finds that Defendant is entitled to judgment in his favor on Plaintiff's ADEA claim. Judgment will be entered in accordance with this order and the jury verdict.

Plaintiff's motions to amend his complaint and the pretrial order (Docs. 322, 324) are DENIED AS MOOT. Plaintiff's motion to compel Defendant to produce all copies of Trial Exhibit 7 and associated emails in native format (Doc. 332) is DENIED.

IT IS SO ORDERED.  Dated this 27th day of April, 2023.

                                     __s/ John W. Broomes_____
                                     JOHN W. BROOMES
                                     UNITED STATES DISTRICT JUDGE